## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL<br>ENTERTAINMENT INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, CHAPTER 7 TRUSTEE,<br><br>Plaintiff.<br><br>v.<br><br>WILLIAM J. ROUHANA, JR., AMY L.<br>NEWMARK, CHRISTOPHER MITCHELL, FRED<br>M. COHEN, COSMO DENICOLA, MARTIN<br>POMPADUR, CHRISTINA WEISS LURIE, DIANA<br>WILKIN, VIKRAM SOMAYA, JASON MEIER,<br>AMANDA R. EDWARDS, CHICKEN SOUP FOR<br>THE SOUL PRODUCTIONS, LLC, CHICKEN<br>SOUP FOR THE SOUL, LLC, CHICKEN SOUP<br>FOR THE SOUL HOLDINGS, LLC,<br><br>Defendants. | Adv. Proc. No. 25-ap-50399 (MFW)<br><br>**Related Docket Nos. 6, 12, 13** |

### REPLY IN SUPPORT OF WILLIAM J. ROUHANA, JR., AMY L. NEWMARK, CHICKEN SOUP FOR THE SOUL PRODUCTIONS, LLC, CHICKEN SOUP FOR THE SOUL, LLC AND CHICKEN SOUP FOR THE SOUL HOLDINGS, LLC'S MOTION TO EXTEND THE TIME TO ANSWER OR OTHERWISE RESPOND TO THE COMPLAINT

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment, Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

William J. Rouhana, Jr., ("Mr. Rouhana") and Amy L. Newmark ("Ms. Newmark") (collectively, the "Individual Defendants"), and Chicken Soup for the Soul Productions, LLC ("CSS Productions"), Chicken Soup for the Soul, LLC ("CSS") and Chicken Soup for the Soul Holdings, LLC ("CSS Holdings") (collectively, the "CSS Entities"), (and collectively, all movants are referred to as the "Defendants"), by and through their undersigned counsel, hereby respectfully submit this reply (the "Reply") in further support of *Willian J. Rouhana, Jr., Amy L. Newmark, Chicken Soup for the Soul Productions, LLC, Chicken Soup for the Soul, LLC and Chicken Soup for the Soul Holdings, LLC's Motion to Extend the Time to Answer or Otherwise Respond to the Complaint* (Adv. D.I. 6) (the "Motion to Extend") for entry of an order under section 105 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 7012-2 and 9006-2 of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Rules"), extending the Defendants' time to answer or otherwise respond to the Complaint in the above-captioned action (Adv. D.I. 1) (the "Complaint") to June 13, 2025.  In support of this Reply, Defendants respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1.     Contrary to the bald and sensationalized assertions set forth in Plaintiff's Opposition (Adv. D.I. 12), the relief requested by the Motion to Extend – an extension to answer or otherwise respond to the Complaint - is appropriate and the relief requested by the Motion to Extend should be granted.

2.     The Plaintiff concedes it filed the Complaint "as swiftly as possible."  (Pl. Opp. at ¶ 2.)  Plaintiff's swift work product –reads more like fiction than a well pled complaint.  The

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion to Extend.

Complaint ignores the nearly 9,000 pages of documents Mr. Rouhana and CSS provided to Plaintiff and his counsel both in discovery and following the parties' resolution of Mr. Rouhana and CSS's Omnibus Objection to Plaintiff's Application for an Order Authorizing Retention of Retain Pachulski Stang Ziehl & Jones LLP ("PSZJ"), (the "Objection").  (B.R. D.I. 283).   In the Stipulation resolving the Objection, the parties asserted their agreement that, "it is in the best interests of the Debtors and the Debtors' estates that . . . the Parties [Mr. Rouhana, CSS and Trustee] work together to maximize the value for the Debtors' estate".  (B.R. D.I. 471.)   Had Plaintiff relied on the documents Mr. Rouhana gave it, considered all details in the Debtors' extensive public filings with the Securities and Exchange Commission ("SEC") and attachments thereto, and acknowledged other information Mr. Rouhana voluntarily shared with Plaintiff to help maximize the Debtors' estates, then perhaps the Complaint would have focused on the true cause of the Debtors' demise: the wrongful acts of the Debtors' secured lender, HPS Investment Partners, LLC ("HPS"), and the Debtors' Strategic Review Committee ("SRC") controlled by directors appointed by and beholden to HPS.  (*See generally* B.R. Doc. No. 283.)   Instead, the Complaint sues all former directors and officers *other than* HPS's appointees, knowingly ignoring them and intentionally dodging HPS.  The complete absence of HPS's wrongdoing from this Complaint is astonishing given the robust record of its liability shown by Mr. Rouhana in the Objection proceedings and his cooperation with Plaintiff thereafter pursuant to their Stipulation.

3.      As a result of Plaintiff's "swift" work product, the Court and the Defendants are left mulling through a vague, muddled and puzzling thirteen (13) count Complaint, which, contrary to Plaintiff's Opposition, raises complex legal issues at every turn, that require time and consideration to respond to carefully and appropriately.

3

4.      To be clear, the Defendants, and likely the co-defendants, look forward to exonerating their names and reputations which have been maligned by the unsubstantiated allegations set forth in the Complaint, as well as made in the bankruptcy cases.  A day of reckoning will come and Plaintiff's wild assertions will be proven false, untrue and wholly without merit. Unfortunately, that day is not yet before the Court.

5.      In an effort to resolve the Plaintiff's objection to the requested extension, Defendants proposed a compromise date of May 22, 2025, for the Defendants to answer or otherwise respond to the Complaint.  In extending the compromise, the CSS Entities agreed to waive the service of process defects present in the case.  The Plaintiff flatly rejected the Defendants' proposal, thereby necessitating the filing of this Reply.

6.      The Opposition asserts that: (1) Plaintiff adequately served the CSS Entities or that technically proper service should be overlooked; (2) the thirteen count Complaint against 14 defendants is not complex; (3) Defendants' counsel is familiar with this bankruptcy so it should not take them long to respond; (4) coordination with the other non-movant co-defendants and obtaining a D&O Insurance Order to help facilitate counsel arrangements for the many individual defendants the Plaintiff elected to name in this action is not important.

7.      By this reply, Defendants rebut each of these conclusory arguments by showing:

    a.   Plaintiff's service of the CSS Entities by serving the Connecticut Secretary of State ("CT SoS") was not effective because serving the CT SoS is not an authorized method of serving a Connecticut LLC.  Additionally, service of a Connecticut LLC at its principal office when the LLC ceased to have a registered agent can only be achieved by "*registered* or *certified* mail, return receipt requested, or by similar

4

*commercial* delivery service," so Plaintiff's regular mail service did not comply with these requirements.  (*See* Conn. Gen. Stat § 34-243r.)

b.  Plaintiff's service of the CSS Entities at their corporate address was also legally ineffective to trigger a response date because the CSS Entities never received the service packages, nor were they correctly addressed.

c.  Plaintiff's exhibits reveal a further service deficiency, acknowledging that its attempted service on CSS Holdings and others at the CSS Entities' corporate office was intercepted by the United States Postal Service and forward to the Trustee's office address.  Thus, Plaintiff knew that its initial method of service was failing due to the packages being forwarded *to himself*.  Inexplicably, Plaintiff has not bothered to ensure proper service by serving the CSS Entities' new registered agent, and instead has opted to bicker with the CSS Entities.

d.  The claims asserted in the Complaint are complex, and while Defendants' counsel's familiarity with the matter certainly renders them well-informed and more than capable to dispute the bald and unsubstantiated allegations in the Complaint, counsel's prior knowledge could not prepare them for the myriad of false accusations, fabrications and irresponsible conclusory allegations upon which Plaintiff has premised his revisionist Complaint.  Indeed, the Complaint is so vastly lacking in reality, that counsel must undertake substantial new work and legal research to ferret out and demonstrate the scores of defects with the pleading.  Counsel must do so with respect to each of counsel's five (5) clients.

e. The establishment of insurance coverage to protect the CSSE Directors and Officer who worked diligently for years to support CSSE cannot be understated, especially where counsel for the Trustee failed to include among the director defendants their former clients, John Young and Robert Warshauer, who were appointed to CSSE's Board and SRC at the behest of HPS. It is these unnamed individuals and entities that are the real culprits of CSSE's demise. Defendants should be afforded an orderly opportunity to coordinate retention of counsel, as well as accessing available insurance, including seeking relief from the Court to avail themselves of applicable insurance proceeds through a Motion for Relief from the Automatic Stay To Allow Payment of Defense Costs and Expenses before this Court.

For all these reasons, Defendants' Motion should be granted.

## REPLY

8. Bankruptcy Code section 105(a) permits the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Further, Bankruptcy Rule 9006(b)(1) provides for extensions of time to be granted for cause shown. *See* Fed. R. Bankr. P. 9006(b)(1). The granting of an extension is left to the discretion of the Court.

**A. The Defendants' Proposal To Respond To The Complaint Collectively On June 13, 2025 Is Reasonable Because Plaintiff Has Not Properly Served The CSS Entities.**

3. Plaintiff's service of the CT SoS is not an effective method of service on the CSS Entities. (Adv. D.I. 3 (reflecting service on the CSS Entities, "c/o Connecticut Secretary of State").) Connecticut Gen. Stat. §§ 34-243r enumerates the proper methods of serving a Connecticut LLC, and serving the CT SoS is not one of them. Nor does Connecticut's general service statute authorize serving a Connecticut LLC via the CT SoS. *See id*. § 52-57.

6

4.      Plaintiff's service of the CSS Entities by regular U.S. mail was not effective either. As Plaintiff points out, the CSS Entities' Connecticut registered agent designation had lapsed at the time Plaintiff filed the Complaint.  In that circumstance, the LLC "may be served by *registered* or *certified* mail, return receipt requested, or by similar *commercial* delivery service, addressed to the company … at its principal office" as listed on the company's most recent annual report filed by the SoS. Conn. Gen. Stat. §§ 34-243r(c).  Per the SoS's website, the LLC's principal address is listed as 132 East Putnam Ave, 2nd Floor, Cos Cob, CT.  So, there are two defects with this method of service on the CSS Entities: (1) Plaintiff's failure to use registered or certified mail and failure to use a "commercial delivery service"; and (2) insufficient address missing the 2nd Floor suite designation.  The incomplete address deficiency is also applicable to the extent Plaintiff is relying on Bankruptcy Rule 7004(b)(3), which allows nationwide service of process by U.S. mail on LLCs if directed to "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment of law to receive service of process."

5.      Moreover, Plaintiff must have realized when the service packages were forwarded by the U.S. mail to his office in Philadelphia that his method of service was defective, for he purported to supplementally serve a limited group of defendants, including CSS Holdings.  (Adv. D.I. 12.)  But even this attempt was defective, because a Plaintiff must mail the summons and complaint within seven days after the summons was issued, which here was March 12, 2025.  Fed. R. Bankr. P. 7004(e)(1).  Thus, Plaintiff's supplemental service of CSS Holdings and others on April 3, 2025, was ineffective if Plaintiff re-served the expired summons, which it appears Plaintiff did.  (Adv. D.I. 4.)

6.      Additionally, Plaintiffs' reply discloses that the regular mail packages it was sending to the CSS Entities' business address were being forwarded to himself, and he knows the

CSS Entities re-instated a Connecticut registered agent on March 24, 2025.  (*See* Adv. D.I. 13-2.)

Yet Plaintiff has not bothered to serve the CSS Entities' new registered agent and instead appears

to expect the CSS Entities to acquiesce in service tactics that the Plaintiff thinks should be good

enough.    Plaintiff's lax perspective on service is wrong.    Courts lack discretion to ignore

deficiencies in service of process.  *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97

(1987).  And, Federal Rule 12(b)(5), which is incorporated by Fed. R. Bankr. P. 7012(b), provides

for courts to dismiss complaints which have not been properly served.[3]

**B.  The 13 Count Complaint Against 14 Defendants Is Complex And Counsel Should Be Afforded Ample Time To Defend Their 5 Clients.**

7.    The Complaint is objectively complex – predicated on a complex business

acquisition and scores of business activities engaged in by a publicly traded company that occurred

over the course of many years.  Defendants' counsel's familiarity with the matter certainly renders

them well-informed, but the Complaint is also predicated on revisionist history, myriad

fabrications, false accusations of fact and irresponsibly conclusory allegations aimed solely at

triggering CSSE's D&O Insurance in hopes of a quick windfall.  The Complaint is so vastly

lacking in reality, though, that counsel must undertake substantial new work and legal research to

ferret out and demonstrate the scores of defects with this pleading with respect to each of counsel's

five clients.  There are far too many unnecessary parties and claims in this case.  Defendants'

counsel ought to have ample time to present the Court with fulsome motions to dismiss that allow

---

[3] Plaintiff's insinuation that other individual co-defendants have been properly served by serving
the State of Delaware Division of Corporations and had a deadline to respond to the Complaint
has no merit either.  When a plaintiff serves the directors and officers of a corporation by serving
the Delaware Secretary of State, service is not complete, and the time to respond does not begin to
run, until process is mailed by the Court (i.e. the prothonotary/Clerk of Court), and Plaintiff
presents no evidence that has occurred.  *See* Del. Code Ann. tit. 10, § 3114(a)-(c).

the Court to whittle this overcharged action down, lest the shear number of lawyers and parties involved will defeat any plausible recovery by the Plaintiff of funds for creditors from the D&O Insurance that is the true target of this lawsuit.

**C. It Is In The Best Interests Of The Bankruptcy Estate To Allow Defendants Additional Time To Establish Insurance Coverage, Engage Counsel And To Coordinate To Avoid Duplication Of Labor.**

8.      The establishment of insurance coverage and the ability to access proceeds of the insurance policy to pay defense costs and expenses to protect the CSSE directors and officers who worked diligently for years to support CSSE cannot be understated, especially where counsel for the Plaintiff failed to include among the director defendants their former clients, John Young and Robert Warshauer, who were appointed to CSSE's Board and the SRC at the behest of HPS.  (*See generally* B.R. D.I. 283.)   Young and Warshauer controlled the SRC HPS required CSSE to form as a condition of a forbearance agreement it entered into with CSSE.  *Id.*  Young and Warshauer nonetheless had the fiduciary duty to CSSE, not HPS, to act in its best interests, but they did not. *Id.*  They interfered with Mr. Rouhana's efforts to comply with certain financing obligations required by HPS's forbearance agreement, they directed CSSE's counsel to abandon the independent DIP financing CSSE, under Mr. Rouhana's leadership, had arranged in favor of HPS controlling the DIP (which it failed to fully fund).  *Id.*  They directed CSSE to hire PSZJ to represent it, then directed PSZJ to make the oral motion for conversion of the case to a Chapter 7, with no notice.  These events, together with HPS's fraudulent and bad faith conduct throughout its credit lending relationships with Redbox and CSSE, are the real causes of the destruction of the Debtor companies.

9.      The directors and officer who served CSSE prior to Young, Warshauer and HPS destroying it bear no blame and they should all be afforded an orderly opportunity to coordinate

retention of counsel in tandem with the procedural requirements necessary to establish insurance coverage, including seeking relief from the Court to avail themselves of applicable insurance proceeds through a Motion for Relief from the Automatic Stay To Allow Payment of Defense Costs and Expenses before this Court.

## **CONCLUSION**

WHEREFORE, the Defendants respectfully requests the Opposition be overruled and the Court enter the Proposed Order related to the Motion to Extend and grant the Defendants such further relief as is just and proper.

Dated: April 23, 2025        **WOMBLE BOND DICKINSON (US) LLP**
      Wilmington, DE

                      /s/ Donald J. Detweiler
                      Donald J. Detweiler (DE Bar No. 3087)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
Email:  don.detweiler@wbd-us.com

-and-

Cathy A. Hinger
(admitted *pro hac vice*)
2001 K. Street NW
Suite 400 South
Washington, D.C. 20006
Telephone: (202) 467-6900
Facsimile:  (202) 467-6910
Email:  cathy.hinger@wbd-us.com

Counsel to William J. Rouhana, Jr., Amy L. Newmark, Chicken Soup for the Soul Productions, LLC, Chicken Soup for the Soul, LLC and Chicken Soup for the Soul Holdings, LLC