## IN THE UNITED STATES BANKRUPCTY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL<br>ENTERTAINMENT, INC., *et al.*,<br><br>                  Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, CHAPTER 7 TRUSTEE,<br><br>                  Plaintiff.<br><br>v.<br><br>WILLIAM J. ROUHANA, JR., AMY L. NEWMARK,<br>CHRISTOPHER MITCHELL, FRED M. COHEN,<br>COSMO DENICOLA, MARTIN POMPADUR,<br>CHRISTINA WEISS LURIE, DIANA WILKIN,<br>VIKRAM SOMAYA, JASON MEIER, AMANDA R.<br>EDWARDS, CHICKEN SOUP FOR THE SOUL<br>PRODUCTIONS, LLC, CHICKEN SOUP FOR THE<br>SOUL, LLC, CHICKEN SOUP FOR THE SOUL<br>HOLDINGS, LLC,<br><br>                  Defendants. | Adv. Proc. No. 25-ap-50399 (MFW) |

## OPENING BRIEF IN SUPPORT OF
## DEFENDANT AMANDA R. EDWARDS'
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Dated:  July 11, 2025

**HALLORAN FARKAS + KITTILA LLP**

By :   */s/ James G. McMillan, III*
James G. McMillan, III (No. 3979)
*jm@hfk.law*
William E. Green, Jr., Esq. (No. 4864)
*wg@hfk.law*
5722 Kennett Pike
Wilmington, Delaware 19807
Telephone: (302) 268-6875

*Co-counsel to Defendant Amanda R. Edwards*

**ELLIOTT KWOK LEVINE JAROSLAW NEILS LLP**

By : ___*/s/ Jared R. Clark*_____
Jared R. Clark, Esq.
*jclark@ekljnlaw.com*
Lynn A. Neils, Esq.
*lneils@ekljnlaw.com*
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, New York 10165
Telephone: (212) 321-0510

*Co-counsel to Defendant Amanda R. Edwards*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ............................... 3

SUMMARY OF THE ARGUMENTS ......................................................... 4

THE PARTIES.......................................................................... 4

STATEMENT OF FACTS FOR PURPOSES OF DEFENDANT EDWARD'S RULE 12(b)(6) MOTION.................................................................................. 4

ARGUMENT ........................................................................... 6

  I.    THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS AGAINST EDWARDS TO SURVIVE A MOTION TO DISMISS UNDER RULE 12(B)(6)....................................... 6

  II.    THE COMPLAINT RELIES UPON IMPROPER GROUP PLEADING ....................... 11

  III.    THE COMPLAINT FAILS TO SET FORTH ANY RIGHT TO RELIEF AS TO EDWARDS.......................................................................... 13

    A.    The Complaint Fails to State a Claim for Breach of Fiduciary Duty (Third Claim for Relief) ....................................................................... 13

      1.    The Claims Are Barred by the Release................................... 14

      2.    The Complaint Fails to Plead Facts Showing Any Breach of Fiduciary Duty by Edwards.......................................................................... 15

        i.    The Complaint Pleads No Breach of the Duty of Care by Edwards...................... 15

        ii.    The Complaint Pleads No Loyalty Breach by Edwards..................................... 16

        iii.    The Complaint Entirely Fails to Plead Lack of Good Faith by Edwards............ 16

      3.    The Complaint Merely Bemoans an Unsuccessful Transaction ............................ 18

    B.    The Complaint Fails to State a Claim against Edwards for Aiding and Abetting Breaches of Fiduciary Duty (Fifth Claim)............................................ 20

    C.    The Complaint Fails to Plead Fraudulent Transfers to Edwards or Declaration of Illegal Dividends by Edwards (Eighth, Ninth and Tenth Claims for Relief)................................. 21

    D.    The Complaint States No Claim against Edwards for Non-Payment of Employee Wage, Benefit and Tax Obligations under FLSA (Eleventh Claim for Relief).................... 22

      1.    The Complaint Fails to State a Claim for Relief Under the FLSA ......................... 22

        i.    The Eleventh Claim Fails to Plead a Claim of a Minimum Wage or Overtime Compensation Violation of the FLSA ........................................................ 22

        ii.    Claims for Failure to Pay Medical Benefits or Withholding Taxes Are Not Violations of the FLSA .............................................................. 24

      2.    The Trustee Lacks Authority to Assert Any Claim for Relief Under the FLSA .... 25

        i.    The Trustee Lacks Standing Under the FLSA...................................... 25

        ii.    The Trustee Lacks Statutory Authority Under the Bankruptcy Code to Assert Claims under the FLSA ............................................................ 26

i

**3.**     The Complaint Does Not Allege Sufficient Facts to Hold Edwards Liable As an "Employer" Under the FLSA............................................................................... 27

**E.**    The Complaint Pleads No Basis for Disallowance and Equitable Subordination of Claims Against the Debtors' Estates (Twelfth and Thirteenth Claims for Relief) ............... 30

CONCLUSION.......................................................................................................................... 30

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 6, 11

*Barba v. New Century Chinese Buffet, Inc.*, No. 2:20-cv-01557,
    2023 WL 6348825 (W.D. Pa. Sept. 29, 2023) ................................................... 25

*Barsa v. Theseus Strategy Grp., LLC (In re Old BPSUSH, Inc.)*,
    Adv. P. No. 19-50726 (BLS), 2020 WL 6818435 (Bankr. D. Del.
    June 30, 2020), *aff'd*, 2021 WL 4453595 (D. Del. Sept. 29, 2021) ........................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 6

*Bone v. XTO Energy, Inc.*, No. 21-1460, 2023 WL 5428754
    (D. Del. Aug. 23, 2023) ........................................................................................ 23

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .................................................................. 15

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006) ..................................... 8

*Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22 (Bankr. D. Del. 2011) ............... 15

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011),
    *cert. denied*, 566 U.S. 921 (2012) .............................................................................. 7

*Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993) ............................ 13, 15, 16

*Cherichetti v. PJ Endicott Co.*, 906 F. Supp. 2d 312 (D. Del. 2012) ........................... 25

*Davis v. Abington Memorial Hosp.*, 765 F.3d 236 (3d Cir. 2014) .......................... 22, 23

*Diaz v. Amedeo Hotels Ltd. P'ship*, No. 12-CV-4418 (JMA),
    2016 WL 1254243 (E.D.N.Y. Mar. 29, 2016) ........................................................ 24

*East v. Bullock's Inc.*, 34 F. Supp. 2d 1176 (D. Ariz. 1998) ....................................... 25

*Gantler v. Stephens*, 965 A.2d 695 (Del. 2009) ........................................................... 13

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013) ........................................ 22

*H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129 (Del. Ch. 2003) .............................. 16

*Howland v. Kumar*, No. 2018-0804-KSJM, 2019 WL 2479738
    (Del. Ch. Jun. 13, 2019) ....................................................................................... 12

*Hurwitz v. Mahoney (In re Space Case f/k/a Masten Space Systems, Inc.)*,
    Case No. 22-10657 (BLS), Adv. Pro. No. 23-50748 (BLS),
    2024 WL 1628440 (Bankr. D. Del. April 15, 2024) ........................... 7, 19, 20

*In re Bridgeport Holdings, Inc.*, 388 B.R. 548 (Bankr. D. Del. 2008) ...................... 14, 15

*In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) ...................... 17, 20

*In re Champion Enters., Inc.*, No. 09-14014 KG, 2010 WL 3522132
    (Bankr. D. Del. Sept. 1, 2010) ............................................................................. 30

*In re Citigroup Inc. S'holder Litig.*, No. 19827, 2003 WL 21384599
    (Del. Ch. Jun. 5, 2003), *aff'd sub nom. Rabinovitz v. Shapiro*,
    839 A.2d 666 (Del. 2003) ..................................................................................... 17

*In re Cred Inc.*, 650 B.R. 803 (Bankr. D. Del. 2023), *aff'd*,
    658 B.R. 783 (D. Del. 2024) ........................................................................... 15, 16

*In re DSI Renal Holdings, LLC*, 574 B.R. 446 (Bankr. Del. 2017) ............................. 20

*In re Emoral, Inc.*, 740 F.3d 875 (3d Cir.), *cert. denied sub nom.*
  *Diacetyl Plaintiffs v. Aaroma Holdings, LLC*, 574 U.S. 974 (2014) ...................................... 26

*In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*,
  683 F.3d 462 (3d Cir. 2012) .......................................................................................... 28

*In re First Guar. Mortg., Corp.*, No. 22-10584, 2023 WL 8940688
  (Bankr. Del. Dec. 27, 2023).......................................................................................... 27

*In re First Guar. Mortg., Corp.*, No. 24-0001-CFC, 2025 WL 963134
  (D. Del. Mar. 31, 2025) ........................................................................................... 26, 27

*In re Gen. Motors Co. Deriv. Litig.*, C.A No. 9627 (VCG),
  2015 WL 3958724 (Del. Ch. Jun. 26, 2015) .................................................................. 17

*In re Lids Corp.*, 260 B.R. 680 (Bankr. D. Del. 2001) ................................................................ 30

*In re McDonald's Corp. S'holder Derivative Litig.*,
  289 A.3d 343 (Del. Ch. 2023) ................................................................................. 17, 18

*In re Troll Commc'ns, LLC*, 385 B.R. 110 (Bankr. D. Del. 2008) ............................................... 14

*In re Vertis Holdings, Inc.*, 536 B.R. 589 (Bankr. D. Del. 2015),
  *aff'd*, No. 12–51176–CSS, 2016 WL 7031282 (D. Del. Nov. 30, 2016) ................................ 3

*In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275 (Del. Ch. 2003)............................................. 14

*In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693 (Del. Ch. 2005),
  *aff'd*, 906 A.2d 27 (Del. 2006)............................................................................... 13, 15

*In re Wilton Armetale, Inc.*, 968 F.3d 273 (3d Cir. 2020) ......................................................... 26

*Johnson v. National Coll. Athletic Ass'n*, 108 F.4th 163 (3d Cir. 2024) ............................... 25, 27

*Kapila v. Gregory E. Matton, P.A. (In re American Managed
  Care, LLC)*, Case No. 8:13–bk–05952–KRM, Adv. No. 8:15–ap–00099–KRM,
  2016 WL 3621534 (Bankr. M.D. Fla., Jun. 28, 2016).......................................................... 7

*Kickflip, Inc. v. Facebook, Inc.*, 999 F. Supp. 2d 677 (D. Del. 2013) ......................................... 8

*Kravitz as Trustee of Aegean Litig. Trust v. Tavlarios*, 2020 WL 3871340
  (S.D.N.Y. July 8, 2020), *aff'd*, 2021 WL 5365582 (2d Cir. Nov. 18, 2021) ........................... 17

*Liquidation Tr. of Sols. Liquidation LLC v. Stienes (In re Sols.
  Liquidation LLC)*, 608 B.R. 384 (Bankr. D. Del. 2019)...................................................... 15

*Malone v Brincat*, 722 A.2d 5 (Del. 1998) ............................................................................. 13

*Miller v Anconnect, LLC (In re Our Alchemy LLC)*,
  Case No. 16-11596 (KG), Adv. No. 18-50633 (KG), 2019 WL 4447541
  (Bankr. D. Del. Sept. 16, 2019) .............................................................................. 14, 20

*Miller v. Bradley (In re W.J. Bradley Mortg. Capital, LLC)*, 598 B.R. 150
  (Bankr. D. Del. 2019) ............................................................................................ 14, 15

*Nystrom v. Vuppuluri (In re Essar Steel Minn. LLC)*, 2019 WL 2246712
  (Bankr. D. Del. May 23, 2019) ...................................................................................... 16

*Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v.
  Goldman Sachs Credit Partners, L.P. (In re Fedders N. Am., Inc.)*,
  405 B.R. 527 (Bankr. D. Del. 2009)........................................................................... 13, 19

*Rahal v. Mussel Beach Rest. Inc.*, No: 17-cv-80442, 2018 WL 1470838
  (S.D. Fla. Jan. 5, 2018) ................................................................................................... 3

*Sama v. Mullaney (In re Wonderwork, Inc.)*, 611 B.R. 169
(Bankr. S.D.N.Y. 2020) ........................................................................... 11

*Secretary U.S. Dep't of Labor v. Mosluoglu, Inc.*, No. 22-2749,
2023 WL 5972044 (3d Cir. Sept. 14, 2023) ............................................ 28

*Segway Inc. v. Cai*, C.A. No. 2022-1110-LWW, 2023 WL 8643017
(Del. Ch. Dec. 14, 2023) ......................................................................... 20

*Shabbouei v. Potdevin*, C.A. No. 2018-0847, 2020 WL 1609177
(Del. Ch. Apr. 2, 2020) ........................................................................... 16

*Sinclair Oil Corp. v. Levien*, 280 A.2d 717 (Del. 1971) ............................... 13

*Stone v. Ritter*, 911 A.2d 362 (Del. 2006) ............................................ 16, 18

*Tekstrom, Inc. v. Savla*, 918 A.2d 1171 (Del. 2007) ............................... 27, 29

*Tekstrom, Inc. v. Savla*, No. 05A–12–006 (JTV), 2006 WL 2338050
(Del. Super. Ct. Jul. 31, 2006) ............................................................... 29

*Traub v. Stardust389, Inc.*, No. 22-1582-SRF, 2024 WL 1434789
(D. Del. Apr. 3, 2024) ............................................................................. 23

*Trenwick Amer. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168
(Del. Ch. 2006) ...................................................................................... 19

*Victorin v. Maynard*, No. 2012–037, 2014 WL 4812088
(D.V.I. Sept. 29, 2014) ........................................................................... 25

*Wright v. Lehigh Valley Hosp. & Health Network*, No. 10–431,
2011 WL 2550361 (E.D. Pa. Jun. 23, 2011) ........................................... 30

*Wu v. East Ocean Agriculture Corp.*, No. 21-668-RGA,
2022 WL 609619 (D. Del. Feb. 9, 2022) ................................................. 23

*Zas v. Canada Dry Bottling Co. of N.Y., L.P.*, No. 12–1649 (SRC)(CLW),
2013 WL 3285143 (D.N.J. Jun. 27, 2013) ............................................... 30

## STATUTES

10 Del. C. § 8106 ...................................................................................... 15

11 U.S.C. § 108(a) .................................................................................... 15

11 U.S.C. § 323(a), (b) .............................................................................. 26

11 U.S.C. § 502(d) .................................................................................... 30

26 U.S.C. § 7501(a) .................................................................................. 24

8 Del. C. § 170(a) ..................................................................................... 10

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ..................................... 2

FLSA, 28 U.S.C. § 207(e)(4) ..................................................................... 24

FLSA, 29 U.S.C. § 203(d) ..................................................................... 27, 28

FLSA, 29 U.S.C. § 203(g) ......................................................................... 27

FLSA, 29 U.S.C. § 206 ............................................................................. 22

FLSA, 29 U.S.C. § 207 ............................................................................. 22

**RULES**

Fed. R. Bankr. P. 7008 ................................................................................................ 11

Fed. R. Bankr. P. 7012 .................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 11

**REGULATIONS**

29 C.F.R. § 778.215 ................................................................................................... 24

Defendant Amanda R. Edwards ("Defendant" or "Edwards") respectfully submits this opening brief (this "Brief") in support of her motion to dismiss (the "Motion" or "Motion to Dismiss") the Complaint (Adv. Proc. D.I. 1, the "Complaint" or "Compl.") in its entirety with prejudice for failure to state a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT[1]

The Complaint is virtually devoid of allegations as to Edwards. The Complaint leaves it to Edwards to guess what her alleged misconduct was and what duties she is alleged to have breached. This is so, despite the fact that the Trustee has had full access to the Company's records and public filings for many months now. There is a reason for the Complaint's silence when it comes to Edwards: she was never an officer charged with any of the duties alleged to have been breached. To illustrate, despite the Trustee's access to all of the corporate books and records of the Company, as well as to its public filings with the Securities and Exchange Commission, he cites to not one document to substantiate any of his claims as to Edwards' supposed titles, responsibilities, and dates of service at CSSE.[2]

---

[1]   All capitalized terms not defined herein have the definitions ascribed to them in the Complaint.

[2]   Indeed, a search of CSSE's filings on the SEC's EDGAR database for the word "Edwards" finds that name in only ten documents – all of which contain the identical reference to the film director Blake Edwards in the biography of defendant William J. Rouhana, Jr. ("Rouhana"). **Amanda** Edwards does not appear in **any** of CSSE's SEC filings.

Even accepting the Trustee's allegations as true, the Complaint against Edwards is wholly legally insufficient.[3]  In fact, the overwhelming majority of the Complaint's allegations fail to detail **any** conduct or decisions by Edwards – she simply is not mentioned at all.  In other paragraphs, the Complaint improperly makes claims against Edwards based on conclusory allegations that do not appear actually to implicate her.  Rather, the Complaint seeks to hold Edwards "guilty by association" by lumping her into group pleadings asserted against "Defendants," the "D&O Defendants," the "D&Os" or the "Officer Defendants," with no effort to identify what exactly Edwards is alleged to have done, or how her actions render her liable for any of the claims.

In short, the Complaint is completely devoid of any factual allegations whatsoever that could support the elements of the Trustee's claims of Edwards' alleged breaches of her duties of care. loyalty, and good faith, or that she purportedly aided and abetted the alleged breaches of fiduciary duties by the other individual defendants.  Furthermore, the Release bars any claim against Edwards related to conduct prior to August 11, 2022 – and the only (entirely conclusory) statement about any conduct by Edwards pertains to alleged conduct prior to that date.

The Complaint further lacks any facts to show that Edwards was in any way involved in obtaining the Insider Releases, Preferred Dividends or Insider Revenues Transfers that the Trustee alleges to be fraudulent transfers.  Additionally, not only does the Complaint fail to state a claim under the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. §§ 201 *et seq.,* and fail to state any factual allegations sufficient to hold Edwards liable as an "employer" under the FLSA, the Trustee also lacks authority to assert any claim under the FLSA.  Finally, in the

---

[3]    Edwards reserves her rights to contest these pleadings in full during this adversary proceeding.

absence of any allegation that Edwards has filed a proof of claim against the Debtors' estates, there is no basis for the Trustee's assertions that her claims should be disallowed or subordinated.

For these reasons, and as will be discussed in greater detail below, Defendant Edwards respectfully asks the Court to dismiss the Complaint as against her in its entirety, and with prejudice.[4]

### STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiff filed the Complaint in this action on March 12, 2025, asserting thirteen causes of action: (1) breach of fiduciary duty against various defendants (First through Fourth Claims for Relief); (2) aiding and abetting breach of fiduciary duty (Fifth Claim for Relief); (3) fraudulent transfers (Sixth through Ninth Claims for Relief); (4) recovery of illegal dividends (Tenth Claim for Relief); (5) violations of the FLSA (Eleventh Claim for Relief); and (6) disallowance of and subordination of defendants' claims (Twelfth through Thirteenth Claims for Relief).  Plaintiff seeks damages, avoidance of transfers, recovery of dividends, disallowance and equitable subordination of defendants' claims, and attorneys' fees and costs.  Only the Third, Fifth and Eighth through Thirteenth Claims are pleaded against Edwards.[5]

Discovery has not commenced.  This is Defendant's Opening Brief.

---

[4]   Dismissal with prejudice is appropriate where amendment of a pleading would be futile. Even with all of the Debtors' corporate books and records, the Trustee has not pleaded any **facts** concerning Edwards.  *See In re Vertis Holdings, Inc.*, 536 B.R. 589, 623-644 (Bankr. D. Del. 2015) (claims in proposed amended complaint were "devoid" of any supporting facts, thus amendment was futile), *aff'd*, No. 12–51176–CSS, 2016 WL 7031282 (D. Del. Nov. 30, 2016); *see also Rahal v. Mussel Beach Rest. Inc.*, No: 17-cv-80442, 2018 WL 1470838, at *1-*2 (S.D. Fla. Jan. 5, 2018) (leave to amend denied where plaintiff could have accessed information in corporate books and records but failed to do so).

[5]   The allegations in the First, Second, Fourth, Sixth and Seventh Claims for Relief are not asserted as against Edwards, and thus are not addressed here.

## SUMMARY OF THE ARGUMENTS

Edwards makes the following arguments in support of her Motion:

1.  The Complaint fails to set forth sufficient facts, accepted as true, to state claims that are plausible on their face as against Edwards, warranting dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6);

2.  The Complaint impermissibly relies on group pleading in lieu of setting forth facts sufficient to state claims against Edwards;

3.  The Complaint fails to establish that Edwards breached any fiduciary duties; or aided or abetted any breaches of fiduciary duties; or fraudulently obtained any releases; or participated in the declaration of any unlawful dividends; or violated the FLSA; or that any claims filed by Edwards in the Bankruptcy Cases should be disallowed or subject to equitable subordination.

## THE PARTIES

Plaintiff George L. Miller is the Chapter 7 trustee of the Debtors' estates. The Complaint alleges that since 2017, Edwards served as Chief of Staff for Rouhana. The Complaint also alleges that for the period May 2022 through December 2023, Edwards served as the Company's Senior Vice President and Chief of Staff, and for the period January 2024 to October 2024, she served as the Company's Executive Vice President of Operations (Compl., ¶¶ 8, 20).

## STATEMENT OF FACTS FOR PURPOSES
## OF DEFENDANT EDWARD'S RULE 12(b)(6) MOTION

For purposes of this Motion, only the relevant facts alleged in the Complaint must be accepted as true.

The Complaint sets forth allegations describing Rouhana's "unchecked control over the Company" (Compl., ¶¶ 26-30); the "failure of internal controls at the Company and the Debtors'

demise" (Compl., ¶¶ 31-34); the circumstances leading up to the negotiation and consummation of the Redbox Merger and the various agreements entered into as part of that transaction, including the Insider Release Agreement (Compl., ¶¶ 35-61); the Insider Revenue Transfers by the Company to CSS pursuant to Insider Agreements (Compl., ¶¶ 62-67); the payment of fees by the Company and certain of the Debtors pursuant to a series of Intellectual Property License Agreements (Compl., ¶¶ 68-72); the payment by the Company of millions in dividends to shareholders while it was insolvent (Compl., ¶¶ 73-77); the failure by the Company's insiders to pay employee wages, medical benefits and payroll taxes (Compl., ¶¶ 78-81); and the submission of proofs of claims by Rouhana and CSS, as well as the potential for other defendants to file claims against the Debtors' estates (Compl., ¶¶ 82-84).

While many of these allegations contain actual facts, such as the allegations concerning the financial condition of the Company (*e.g.*, Compl., ¶¶ 31-32), the financial condition of Redbox (*e.g.*, Compl., ¶¶ 36-37), and the transactions in connection and/or concurrently with the consummation of the Merger (*e.g.*, Compl., ¶¶ 45-49), liberally interspersed among them are statements (if not full paragraphs) that purport to be facts, but instead contain recitals of the elements of the claims and/or mere conclusory statements that are broadly attributed to the D&O Defendants as a group. *See, e.g.*, Compl., ¶¶ 30, 34, 72, 77.

Significantly, within the **entirety** of the Complaint, only **five** paragraphs specifically mention Edwards **by name** – Paragraphs 20-21, 29, 43, and 57. Of these, only **one** states "facts" about Edwards, and only **one** even hints at what three defendants may have done or failed to do, without specifying what was done or not done by a particular individual:

> 20.          Defendant **Amanda R. Edwards ("Edwards")** is an individual. At all relevant times, since 2017, **Edwards** served as Chief of Staff for Rouhana. In addition, for the period May 2022 through December 2023, **Edwards** served as the Company's Senior Vice President and Chief of Staff and, for the period

5

January 2024 to October 2024, **Edwards** served as the Company's Executive
Vice President of Operations.

57.         The financial information provided by management – notably,
Rouhana, and other Officers on the financial and executive management teams,
including Mitchell, Meier, and **Edwards** – to support the Redbox Merger was
wildly optimistic, unrealistic and not based on reasonable assumptions, and its use
and presentation to the Board to support the Merger was negligent, grossly
negligent, misleading, in bad faith, and constituted a breach of fiduciary duty of
care and duty of loyalty by Rouhana and the other Officers on the financial and
executive management teams. …

Compl., ¶¶ 20, 57.  The other three paragraphs simply define the individuals as a group, or

describe **Rouhana'**s actions and make conclusory allegations that Edwards and other individuals

assisted him while under his Svengali-like control (Compl., ¶¶ 21, 29, 43).

## ARGUMENT

### I.    THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS AGAINST EDWARDS TO SURVIVE A MOTION TO DISMISS UNDER RULE 12(B)(6)

This Court is very familiar with the standards applicable to a motion to dismiss.  We

review here standards that apply with particular force to the scant allegations against Edwards in

the Complaint.  "[A] court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Moreover, the Complaint must contain

sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In applying *Twombly* and *Iqbal*, the Court of Appeals for the Third Circuit employs a

three-part test:

First, the court must "take note of the elements a plaintiff must plead to state a
claim." Second, the court should identify allegations that, "because they are no
more than conclusions, are not entitled to the assumption of truth." Finally,
"where there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Hurwitz v. Mahoney (In re Space Case f/k/a Masten Space Systems, Inc.)*, Case No. 22-10657 (BLS), Adv. Pro. No. 23-50748 (BLS), 2024 WL 1628440, at *4 (Bankr. D. Del. April 15, 2024) (quoting *Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied,* 566 U.S. 921 (2012)).

The vast majority of the allegations in the Complaint (including three of the five paragraphs that specifically name Edwards (Compl., ¶¶ 29, 43, 57)) consist of statements of the elements of the claims and legal conclusions based primarily on Rouhana's acts, and are devoid of any conduct directly attributable to her.  They are entitled to no deference on this Motion.

The only other "factual" paragraphs in the Complaint that mention Edwards by name (Compl., ¶¶ 20-21) are similarly lacking.  Paragraph 21 simply characterizes Edwards as one of the "Officer Defendants" and serves only a definitional purpose in the Complaint.  Paragraph 20 purports to state facts by identifying Edwards' titles at the Company during particular time periods (which Edwards disputes), however, nowhere does the Trustee allege what duties and/or areas of responsibilities she had at the Company during her tenure in connection with those titles. As for the titles "Chief of Staff for Rouhana" that Edwards allegedly held "since 2017," and "the Company's … Chief of Staff" that Edwards supposedly had "for the period May 2022 through December 2023" (Compl., ¶ 20), the Complaint states absolutely **nothing** of what these titles meant or what Edwards did in these roles.  *See Kapila v. Gregory E. Matton, P.A. (In re American Managed Care, LLC),* Case No. 8:13–bk–05952–KRM, Adv. No. 8:15–ap–00099–KRM, 2016 WL 3621534, at *3 n.1 (Bankr. M.D. Fla., Jun. 28, 2016) ("the title 'Chief of Staff' is not a common title in private companies and does not give the Court any understanding of his role with the company").

Further, merely saying in purely conclusory fashion that Edwards was the Senior Vice President "from May 2022 through December 2023" and "the Company's Executive Vice President of Operations" from "January 2024 to October 2024" (Compl., ¶ 20) sheds no light on what Edwards actually did as part of her normal duties at the Company.  Indeed, the Company's own voluntary petition for relief in this Court[6] described its business as providing "premium content to value-conscious consumers" using a broad array of services in the entertainment industry.  Without any details of Edwards' duties at the Company, it is simply impossible for the Complaint to state a plausible claim that she has any liability for the alleged misconduct.

Additionally, given what the Complaint alleges in terms of when the purported wrongful conduct by all defendants occurred, it proves beyond a shadow of a doubt that Edwards could **not** have any liability.  Paragraphs 35-61 of the Complaint plead that the negotiations for the Merger had begun no later than **March 2022**, and that Company signed the Merger Agreement with Redbox and the Insider Release Agreement on **May 10, 2022**.  It stands to reason that any alleged mismanagement and/or or breaches of fiduciary duties by the D&O Defendants in connection with these transactions would have been well under way – if not substantially completed – at the **latest** by May 10, 2022.  Yet the Complaint states that Edwards did not become the "Senior Vice President" before an unspecified day in **May** 2022.

The most particular allegation against Edwards claims that she was part of a team spearheading the provision of financial information that was "wildly optimistic, unrealistic and

---

6    Case No. 24-11442 (MFW) [D.I. 1].  For purposes of a motion to dismiss, the Court may "consider … 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case'" without converting the motion to one for summary judgment.  *Kickflip, Inc. v. Facebook, Inc.*, 999 F. Supp. 2d 677, 682 (D. Del. 2013) (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).

not based on reasonable assumptions" in support of the Redbox Merger (Compl., ¶ 57).  Given that the Complaint says nothing about how Edwards participated in the provision of any financial information to anyone, and that none of her alleged titles (Chief of Staff for Rouhana, a Senior Vice President, and Executive Vice President of Operations) would appear to have a particular role with respect to the provision of such information, the allegation is wholly conclusory and cannot survive a motion to dismiss.

Moreover, while it may be *possible* that Edwards (1) became Senior Vice President on May 1, 2022, and (2) exerted such influence over the other D&O Defendants that she herself could be said to have spearheaded financial projections related to the Redbox Merger, it is not ***plausible***.  Consequently, the Complaint cannot – and does not – state a claim against Edwards for any liability arising out of these transactions.

Other allegations of the Complaint on their face absolve Edwards of liability for breaches of fiduciary duties concerning the Insider Agreements and the corresponding Insider Revenue Transfers, as these are all alleged to have been originally entered in **2016** (Compl., ¶ 66).  As Paragraph 20 pleads that Edwards first became an amorphous "Chief of Staff" in 2017, it was impossible for her to have been involved in the original negotiations of these Insider Agreements.  While the Complaint states that they were subsequently renewed (without specifying which ones or for which periods of time), the Complaint contains absolutely no facts that show that Edwards (in her alleged capacity of Senior Vice President) had any involvement in those renewals or in the continued Insider Revenue Transfers.  It is thus facially implausible for her to have any liability for any claims concerning the Insider Agreements and the Insider Revenue Transfers.

Paragraph 68 of the Complaint alleges that a series of Intellectual Property License Agreements were entered into by the Company and several of the other Debtors between June 29, 2022, and May 13, 2024.  While these dates plausibly fall within the time period during which Edwards was allegedly a Senior Vice President (May 2022-December 2023) and Executive Vice President of Operations (January 2024-October 2024), the Complaint has two facial defects concerning these allegations.  First – and always – the Complaint fails to say what Edwards did, and whether the negotiation and implementation of these Intellectual Property License Agreements were within the scope of her duties and responsibilities.  Second, of the thirteen agreements identified in Paragraph 68, only **one** is an agreement involving the Company (Compl., ¶ 68(d)).  The Complaint never alleges that Edwards had any relationship **at all** with the Debtors that were parties to the other twelve agreements.

As for the allegations of the Complaint concerning the wrongful payment of Preferred Dividends, again, the Complaint alleges that the Company was reporting significant net losses at least since 2020 – before Edwards is alleged to have become an officer – and that the payments of the Preferred Dividends were authorized by the Board through 2023.  Again, Edwards can have no liability for these payments before she is alleged to have become  an officer in May 2022.  The Complaint does not plead what Edwards did or failed to do with respect to these payments from 2022 through 2024.  In any case, as Edwards was not a member of the Board, she had no authority or responsibility concerning the declaration or payment of dividends.  *See* 8 Del. C. § 170(a) ("The **directors** of every corporation, subject to any restrictions contained in its certificate of incorporation, may declare and pay dividends …") (emphasis added).  Therefore, claims against Edwards concerning the Preferred Dividends are facially implausible.

The Complaint's allegations that Edwards has liability for not acting in the best interests

of the Company because "CSS and the Company failed to make approximately $15.5 million in accrued but unpaid withholding taxes during the nine-month period from October 3, 2023 to June 7, 2024," and for failing "to cause the Company to pay and provide medical benefits to its employees" (Compl., ¶ 79) are perplexing at best.  Again, the Complaint fails to state what Edwards did or failed to do that caused the Company not to make these payments, so on its face, these allegations are wholly without support.  Further, the failure to pay withholding taxes or medical benefits is not, as the Trustee seems to allege, a violation of the FLSA – and even if it were, the Trustee has no authority to assert such a claim.

Finally the allegations that Rouhana and CSS have filed proofs of claim against the Company, and that "[o]ther Defendants may assert claims against the Debtors' estates" (Compl., ¶¶ 82-84) on its face says nothing about the filing of any proofs of claim **by Edwards**.  This hardly constitutes a plausible pleading entitling the Trustee to seek disallowance and/or subordination of claims by Edwards.

## II.    THE COMPLAINT RELIES UPON IMPROPER GROUP PLEADING

Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable to this proceeding pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Failure to follow Rule 8 permits dismissal under Rule 12(b)(6).  *See Iqbal*, 556 U.S. at 684-687. Although Rule 8 is a minimal pleading standard, group pleading to assert a breach of fiduciary duty claim – *i.e.*, "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" – is impermissible.  *Sama v. Mullaney (In re Wonderwork, Inc.)*, 611 B.R. 169, 199 (Bankr. S.D.N.Y. 2020) (applying Delaware law to dismiss breach of fiduciary duty claims that used group pleading); *see Howland v. Kumar,* No. 2018-0804-KSJM,

2019 WL 2479738, at *5 (Del. Ch. Jun. 13, 2019) (dismissing group-plead claims of breach of fiduciary duty against individual officer where allegations simply lumped him in with other defendants but pleaded no facts to suggest his personal wrongdoing).

The Complaint utterly fails to parse responsibility among the Defendants, relying on group pleading in violation of notice pleading requirements.  Nearly all of the Complaint's specific allegations do not mention any actions by Edwards whatsoever.  The only allegations that generally make claims against her are group pleaded in terms of all "Defendants," or the "D&O Defendants" or the "D&Os" or the "Officer Defendants."  These group allegations fail to describe any defendant's – let alone Edwards' – role or responsibility at the Company.  The Complaint's group allegations do not identify the specific alleged breaches that supposedly fell within the scope of Edwards' duties as "Senior Vice President and Chief of Staff," or as "Executive Vice President of Operations."  And, as noted above, the Complaint never explains what responsibilities Edwards had in any of these amorphous roles.

The group pleadings in the "factual" allegations supporting the Third Claim and in the Third Claim itself allege that the "Defendants" or the "Officer Defendants" – into which Edwards is lumped – all breached their fiduciary duties of due care, loyalty, and good faith.  As already discussed, other allegations in the Complaint make clear that these alleged breaches simply cannot apply to Edwards, as the underlying conduct occurred during periods when she simply owed no such duties, as she is not even alleged to have been an officer during those times.

Impermissible group pleading is found in the Fifth, Eighth, Ninth, Tenth, Eleventh, Twelfth and Thirteenth Claims as well.  These indiscriminate, implausible, and conclusory allegations against Edwards cannot establish the Trustee's entitlement to relief under any of these Claims.  The Complaint should be dismissed accordingly.

### III.    THE COMPLAINT FAILS TO SET FORTH ANY RIGHT TO RELIEF AS TO EDWARDS

#### A.  The Complaint Fails to State a Claim for Breach of Fiduciary Duty (Third Claim for Relief)

Fiduciaries of a corporation owe the corporation a triad of duties: due care, loyalty, and good faith . *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners, L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 539 (Bankr. D. Del. 2009) (citing *Malone v Brincat*, 722 A.2d 5, 10 (Del. 1998)).  The "fiduciary duties of officers are the same as those of directors." *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009).  The business judgment rule is the default standard of review for claims of breaches of fiduciary duties.

> The rule posits a powerful presumption in favor of actions taken by the directors in that a decision made by a loyal and informed board will not be overturned by the courts unless it cannot be "attributed to any rational business purpose." *Sinclair Oil Corp.[ v. Levien]*, 280 A.2d [717,] 720 [(Del. 1971)].  …  To rebut the rule, a shareholder plaintiff assumes the burden of providing evidence that directors, in reaching their challenged decision, breached any one of the *triads* of their fiduciary duty—good faith, loyalty or due care.  …  If a shareholder plaintiff fails to meet this evidentiary burden, the business judgment rule attaches to protect **corporate officers** and directors and the decisions they make, and our courts will not second-guess these business judgments.

*Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993) (italics in original; bold emphasis added; other citations omitted).  Thus, as long as the fiduciary's conduct can be "attributed to any rational business purpose," the fiduciary is protected by the business judgment rule with respect to business decision-based duty of care claims that lack "fraud, bad faith, or self-dealing."  *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 747 (Del. Ch. 2005) ("*Disney II*"), *aff'd*, 906 A.2d 27 (Del. 2006) .

While the business judgment rule is an affirmative defense, an exception exists that permits it to be considered on a motion to dismiss if the issue appears on the face of the complaint.  *Miller v. Bradley (In re W.J. Bradley Mortg. Capital, LLC)*, 598 B.R. 150, 163

(Bankr. D. Del. 2019).  The Trustee must plead sufficient facts showing both the existence of a fiduciary duty and that the fiduciary breached that duty.  *Id.* at 162-163.  "To state a plausible claim for a breach of fiduciary duty, the plaintiff should allege specific conduct by each individual officer …."  *Miller v Anconnect, LLC (In re Our Alchemy LLC),* Case No. 16-11596 (KG), Adv. No. 18-50633 (KG), 2019 WL 4447541, at *10 (Bankr. D. Del. Sept. 16, 2019).  A breach of fiduciary duty claim against an officer fails when a complaint lacks sufficient facts showing that: "(1) [the officer] took part in the challenged conduct and (2) failed to demonstrate the due care attendant to his particular office in doing so."  *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 573 (Bankr. D. Del. 2008); *see also In re Troll Commc'ns, LLC*, 385 B.R. 110, 120 (Bankr. D. Del. 2008) (dismissing a breach of fiduciary duty claim because the complaint lacked adequate detail regarding each defendant's specific conduct).

At the motion to dismiss stage, a plaintiff must rebut the protections of the business judgment rule by pleading "particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the [fiduciary] was adequately informed in making the decision."  *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003) ("*Disney I*").  Because the Complaint entirely fails to plead any duty at all with respect to Edwards, none of the exceptions to the business judgment rule have been pleaded as to Edwards.

### 1.  The Claims Are Barred by the Release

All Plaintiff's claims relating to actions or inactions on or before August 11, 2022 are barred by the Release.  The Complaint details the Release granted by the Company (Compl. ¶¶ 58–61).  As discussed in Section III.C below, because the Trustee has failed to avoid the Release, the Release bars any claims relating to the RedBox Merger against Edwards.  The only

conduct alleged against Edwards at all – in wholly conclusory fashion – relates to the RedBox Merger.[7]

### 2. The Complaint Fails to Plead Facts Showing Any Breach of Fiduciary Duty by Edwards

#### i. The Complaint Pleads No Breach of the Duty of Care by Edwards

The duty of care is "the duty to act on an informed basis." *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 41 (Bankr. D. Del. 2011) (citing *Cede & Co.*, 634 A.2d at 361). Fiduciaries of a company must both "(1) 'use that amount of care which ordinarily careful and prudent men would use in similar circumstances'; and (2) 'consider all material information reasonably available.'" *In re Bridgeport Holdings, Inc.*, 388 B.R. at 568 (quoting *Disney II*, 907 A.2d at 749).

To state a claim for breach of duty of care, the Complaint must allege that the defendant acted with gross negligence. *In re W.J. Bradley Mortg.*, 598 B.R. at 163; *see Brehm v. Eisner*, 746 A.2d 244, 259 (Del. 2000) (standard for evaluating informed decision-making is gross negligence). To establish gross negligence, the plaintiff must plead "that the defendant was recklessly uninformed or acted outside the bounds of reason." *In re Cred Inc.*, 650 B.R. 803, 821 (Bankr. D. Del. 2023) (citing *Liquidation Tr. of Sols. Liquidation LLC v. Stienes (In re Sols. Liquidation LLC)*, 608 B.R. 384, 404 (Bankr. D. Del. 2019)), *aff'd*, 658 B.R. 783 (D. Del. 2024).

Other than the purely conclusory allegation contained in Paragraph 57, the Complaint says nothing about a breach of a duty of care by Edwards.

---

[7] In addition, all claims relating to conduct more than three years before the Petition Date (*i.e.*, June 29, 2021) are time barred under Delaware's three-year limitations period for breaches of fiduciary duty. 10 Del. C. § 8106; 11 U.S.C. § 108(a).

### ii. The Complaint Pleads No Loyalty Breach by Edwards

"[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co.*, 634 A.2d at 361. Generally, a breach of duty of loyalty claim is predicated upon a self-interested transaction that was unfair to the plaintiffs. *See id.* at 361-362. A breach of the fiduciary duty of loyalty can also be premised on a failure to act in good faith.

> [T]he fiduciary duty of loyalty is not limited to cases involving financial or cognizable fiduciary conflict of interest. It also encompasses cases where the fiduciary fails to act in good faith. … Where directors fail to act in the face of a known duty to act, demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith.

*Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). Such claims are "notably – and intentionally – difficult claims to assert." *Nystrom v. Vuppuluri (In re Essar Steel Minn. LLC)*, 2019 WL 2246712, at *7 (Bankr. D. Del. May 23, 2019).

The Complaint nowhere pleads that Edwards disregarded a known duty to act, or that she was an interested party in any of the challenged transactions, including the Redbox Merger.[8]

### iii. The Complaint Entirely Fails to Plead Lack of Good Faith by Edwards

The duty of good faith is, therefore, a subset – *i.e.*, a condition – of the duty of loyalty. *See In re Cred*, 650 B.R. at 830; *Stone*, 911 A.2d at 370. A claim for failing to act in good faith

---

[8]  As set forth more fully in Section II.1 of the Independent Directors' Opening Brief, incorporated here by reference, the mere fact that officers and directors received a release in connection with the Redbox Merger does not make them "interested." *See Shabbouei v. Potdevin*, C.A. No. 2018-0847, 2020 WL 1609177, at *8 (Del. Ch. Apr. 2, 2020); *see also H-M Wexford LLC v. Encorp, Inc.,* 832 A.2d 129, 149 (Del. Ch. 2003) (where threat of personal liability was insubstantial, releases in settlement agreement given to directors did not make those directors "interested" in that transaction).

requires alleging **more** than gross negligence.  *In re Cred Inc.*, 650 B.R. at 831.  "A lack of good

faith is shown by alleging conduct motivated by a subjective bad intent, or conduct that is an

'intentional dereliction of duty or the conscious disregard for one's responsibilities.'"  *Id.* (quoting

*Barsa v. Theseus Strategy Grp., LLC (In re Old BPSUSH, Inc.)*, Adv. P. No. 19-50726 (BLS),

2020 WL 6818435, at *10 (Bankr. D. Del. June 30, 2020), *aff'd*, 2021 WL 4453595 (D. Del. Sept.

29, 2021)).

A breach of duty of loyalty premised on bad faith can be based on a fiduciary's conscious

disregard of oversight obligations.  *See In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 971

(Del. Ch. 1996).  However,

> The Delaware Supreme Court has repeatedly characterized *Caremark* claims as
> "'possibly the most difficult theory in corporation law upon which a plaintiff might
> hope to win a judgment.'" … That is because under *Caremark* and its progeny,
> "a showing of bad faith is a <u>necessary precondition</u> to director oversight liability."
> … "Pleadings, even specific pleadings, indicating that directors did a poor job of
> overseeing risk in a poorly-managed corporation do not imply director bad faith."
> *In re Gen. Motors Co. Deriv. Litig.*, C.A No. 9627 (VCG), 2015 WL 3958724, at
> *17 (Del. Ch. Jun. 26, 2015) [emphasis in original; other internal quotations
> omitted].

*Kravitz as Trustee of Aegean Litig. Trust v. Tavlarios*, 2020 WL 3871340, at *8 (S.D.N.Y. July 8,

2020) (applying Delaware law), *aff'd*, 2021 WL 5365582 (2d Cir. Nov. 18, 2021).

Lack of oversight claims require finding that fiduciaries ignored "red flags … either

waved in one's face or displayed so that they are visible to the careful observer."  *In re Citigroup*

*Inc. S'holder Litig.*, No. 19827, 2003 WL 21384599, at *2 (Del. Ch. Jun. 5, 2003), *aff'd sub nom.*

*Rabinovitz v. Shapiro*, 839 A.2d 666 (Del. 2003).  The plaintiff must show that the fiduciaries

"acted in bad faith by consciously ignoring red flags."  *In re McDonald's Corp. S'holder*

*Derivative Litig.*, 289 A.3d 343, 378 (Del. Ch. 2023).  Bad faith can also be established under

*Caremark* when fiduciaries (1) "utterly failed to implement any reporting or information system

or controls," or (2) "having implemented such a system or controls, consciously failed to monitor

or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*, 911 A.2d at 370.

The scope for which officers can be held liable for breach of fiduciary duty claims – specifically *Caremark* oversight claims – is narrow. Officers "generally have a more constrained area of authority," and do not have "plenary authority over the business and affairs of the corporation" as directors do. *See McDonald's*, 289 A.3d at 369. Specifically, regarding duty of oversight claims, the board "has oversight duties regarding the corporation as a whole," while "officers generally only will be responsible for addressing or reporting red flags within their areas of responsibility." *Id*. at 369-70. As such, an officer must "identify red flags, report upward, and address them **if they fall within the officer's area of responsibility**." *Id*. at 366 (emphasis added).

The Complaint does not allege how addressing or reporting red flags ever fell within Edwards' area of responsibility, let alone that Edwards supposedly ignored any red flags. And it certainly does not allege that Edwards – who was never a Board member – had any responsibility to supervise the Board.

### 3. The Complaint Merely Bemoans an Unsuccessful Transaction

As already noted, the Complaint lacks any details concerning Edwards. It does not identify what she even is alleged to have done **at all**, let alone identify her areas of responsibility and whether the purported wrongful conduct by **anyone** fell within those areas.

The allegations against Edwards do not support an actionable breach of fiduciary duty claim under the standards for breaches of duty of care, duty of loyalty or duty of good faith. Because the Complaint lacks any allegations that Edwards took part in a self-interested transaction, it must plead sufficient facts showing that she acted with gross negligence or in bad

faith, as the D&O Defendants' business decisions are protected by the business judgment rule.[9]

And there is simply no factual allegation in the Complaint that Edwards acted with gross

negligence or in bad faith.

The Trustee's ire is directed at conduct by other defendants (for he has not alleged any

conduct by Edwards) that in hindsight was unsuccessful.  As the *Fedders* court noted,

> [B]usiness failure is an ever-present risk.  The mere fact that a strategy turned out
> poorly is in itself insufficient to create an inference that the officers and directors
> who oversaw the strategy breached their fiduciaries duties.  *Trenwick [Amer.*
> *Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 193 (Del. Ch. 2006)].  ***Even***
> ***when a company is insolvent, its directors and officers may "take action that***
> ***might, if it does not pan out, result in the firm being painted in a deeper hue of***
> ***red.***"  *Id*. at 174.  The fact that a firm is insolvent does not mean that the
> company's officers and directors "cannot choose to continue the firm's operations
> in the hope that they can expand the inadequate pie such that the firm's creditors
> get a greater recovery."  *Id.*

*Fedders*, 405 B.R. at 541 (emphasis added); *see Hurwitz*, 2024 WL 1628440, at *8.

Additionally,

> Officers' management of day-to-day matters does not make them guarantors of
> negative outcomes from imperfect business decisions.  … [Plaintiff's] claim rests
> on the misimpression that an oversight claim pursued against an officer is easier
> to plead than one against a director.  Irrespective of the defendant's corporate
> title, a *Caremark* claim is "possibly the most difficult theory in corporation law
> upon which a plaintiff might hope to win a judgment."  At a minimum, a plaintiff
> pursuing an oversight claim against an officer would need to demonstrate that the
> officer failed to make a good faith effort to monitor central compliance risks
> ***within her remit*** that pose potential harm to the company or others. No such
> reasonably conceivable claim is stated here.

---

[9]    The Complaint uses the term "bad faith" and "gross negligence" to describe the Defendants'
conduct solely in the context of group pleading, and only in conclusory fashion.  The
Complaint does not connect any of its supposedly "factual" allegations to bad faith and/or
gross negligence standards.  Merely labeling conduct as "grossly negligent," without facts
showing that any decisions were in fact grossly negligent at the time, is insufficient to meet
applicable pleading standards.

*Segway Inc. v. Cai,* C.A. No. 2022-1110-LWW, 2023 WL 8643017, at *5 (Del. Ch. Dec. 14, 2023) (quoting *Caremark,* 698 A.2d at 967; emphasis added).

The Trustee's allegations in the Complaint appear to be a litany of ill-pleaded grievances about the D&O Defendants' operations of the Company. Even if there is a breach of some fiduciary duty by one of these other D&O Defendants, it is difficult to see how such claims against Edwards can stand.

### B.  The Complaint Fails to State a Claim against Edwards for Aiding and Abetting Breaches of Fiduciary Duty (Fifth Claim)

The Complaint attempts to make an alternative claim against Edwards, alleging in the Fifth Claim that "each of the Defendants breached his, her, or its respective fiduciary duties of loyalty and care that were owed to the Company … [and] aided and abetted the foregoing breaches by knowingly participating in these breaches of fiduciary duties" (Compl., ¶ 133). To state a claim for aiding and abetting a breach of a fiduciary duty, the complaint must state (1) the existence of a fiduciary relationship; (2) a breach of the duty by the fiduciary; (3) knowing participation in the breach by a defendant who is not a fiduciary; and (4) damages proximately caused by the breach. *See Hurwitz,* 2024 WL 1628440, at *10; *In re Our Alchemy,* 2019 WL 4447541, at *16.

The Complaint says nothing that is not purely conclusory about Edwards knowingly helping anyone to misstate anything. The claim fails accordingly.

Furthermore, under Delaware law, as a fiduciary of CSSE, Edwards cannot be held liable for aiding and abetting another fiduciary of the same entity. *In re DSI Renal Holdings, LLC,* 574 B.R. 446, 474 (Bankr. Del. 2017) ("fiduciaries cannot aid and abet their own fiduciary duties"). While Edwards may stand as a non-fiduciary to Debtors SMV, TOFG, and Halcyon, the Complaint fails to allege what Edwards did with respect to the Intellectual Property License

Agreements to which those Debtors were parties (Compl., ¶ 68).  Indeed, the Complaint alleges

that "Rouhana acted in his own self-interest, ***deceived, and manipulated*** the Debtors and ***the***

***other D&Os***, and did not act in the best interests of the Debtors in causing them to enter into the

Intellectual Property License Agreements" (Compl., ¶ 71).  The factually-bare Complaint does

not – and cannot –  establish that she knowingly participated in any scheme or breach

whatsoever.

### C.  The Complaint Fails to Plead Fraudulent Transfers to Edwards or Declaration of Illegal Dividends by Edwards (Eighth, Ninth and Tenth Claims for Relief)

As set forth above, the Complaint contains no factual or legal basis to hold Edwards

liable for these Claims, which should be dismissed.  Paragraph 58 of the Complaint notes that the

Release Agreement was entered into on May 10, 2022 – yet the Complaint does not allege that

Edwards was actually an employee, let alone an officer, of CSSE by May 10, 2022.[10]  For the

reasons stated in Section VI of the Independent Directors' Opening Brief, incorporated here by

reference, the Eighth and Ninth Claims fail as a matter of law.

As for the Tenth Claim, as already noted, Edwards can have no liability for dividend

payments before she allegedly became an officer in May 2022.  The Complaint does not plead

what Edwards did or failed to do with respect to these payments from 2022 through 2024.  In any

case, as Edwards was not a member of the Board, she had no authority or responsibility

concerning the declaration or payment of dividends.

---

[10]  The Trustee failed to annex the Release Agreement as an exhibit.  This Court may take
judicial notice of this document, which is publicly available as Exhibit 10.1 to CSSE's Form
8-K filed with the SEC on May 12, 2022.
https://www.sec.gov/ix?doc=/Archives/edgar/data/0001679063/000110465922059491/tm221
5197d3_8ka.htm

**D. The Complaint States No Claim against Edwards for Non-Payment of Employee Wage, Benefit and Tax Obligations under FLSA (Eleventh Claim for Relief)**

The Eleventh Claim, which purports to assert the Defendants' failures to pay employee wages, medical benefits and payroll taxes in violation of the FLSA (Complaint, ¶¶ 2, 78-81, 175-179), causing damage to the **Company**, should be dismissed for multiple reasons. First, the Eleventh Claim fails to state a cause of action, as the Trustee has failed to allege any facts that would plausibly show that in any given workweek, any **non-exempt employee** was paid less than the required minimum wage or was not paid overtime compensation, and the failure to pay medical benefits or to pay withholding taxes does not constitute a violation of the FLSA.

Second, even assuming that the Eleventh Claim pled a cognizable claim under the FLSA, the Trustee lacks any authority to assert such claims. Finally, even if the Complaint stated a cognizable claim under the FLSA, and even assuming that the Trustee had standing and/or statutory authority to assert claims under the FLSA, the Trustee has not pleaded any facts sufficient to hold Edwards liable as an "employer."

**1. The Complaint Fails to State a Claim for Relief Under the FLSA**

**i. The Eleventh Claim Fails to Plead a Claim of a Minimum Wage or Overtime Compensation Violation of the FLSA**

The remedial scope of the FLSA addresses the failure to pay wages – specifically, minimum wages (FLSA, 29 U.S.C. § 206) and overtime compensation (FLSA, 29 U.S.C. § 207). *See Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014). Violations of these provisions subject an employer to liability "to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." *Id.* (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)).

These wage-and-hour protections do not extend to claims for unpaid "gap time" – non-overtime hours for which an employee is not compensated – which appears to be the only wage claim asserted in the Eleventh Claim. *Davis*, 765 F.3d at 244 ("pure gap time claims – straight time wages for unpaid work during pay periods without overtime – are not cognizable under the FLSA"); *Traub v. Stardust389, Inc.*, No. 22-1582-SRF, 2024 WL 1434789, at *3 (D. Del. Apr. 3, 2024) ("the plain language of the FLSA does not provide recourse for pure or overtime gap time pay violations").

The Complaint does not contain any allegations to show that any non-exempt employee was not paid the minimum wage for any given workweek, or was not paid overtime compensation for any given workweek in which the employee worked more than 40 hours. The only allegations in the Complaint about the failure to pay wages consist of conclusory statements that employees were not paid (Complaint, ¶¶ 2(5), 4, 79 & n. 36). In the absence of any concrete factual allegations, the Eleventh Claim fails to state a plausible claim for a violation of the minimum wage or overtime provisions of the FLSA. *See Davis,* 765 F.3d at 241-243 (plaintiffs who failed to plead that they worked more than 40 hours in any given week and were not compensated for those extra hours could not state claims for overtime violations); *cf. Bone v. XTO Energy, Inc.*, No. 21-1460, 2023 WL 5428754, at *4-*7 (D. Del. Aug. 23, 2023) (claim has facial plausibility when it pleads factual content allowing court to draw a reasonable inference that the defendant is liable; plaintiffs plausibly alleged that they had worked more than 40 hours in every workweek and were not paid overtime); *Wu v. East Ocean Agriculture Corp.*, No. 21-668-RGA, 2022 WL 609619, at *5-*6 (D. Del. Feb. 9, 2022) (finding allegations that plaintiffs "generally" worked more than 11 hours per day, seven days a week, and were not paid for an

entire month "plausibly state a claim of unpaid wages, failure to pay minimum wage and failure to pay overtime wages").

### ii. Claims for Failure to Pay Medical Benefits or Withholding Taxes Are Not Violations of the FLSA

There simply is no cause of action under the FLSA for a failure to pay medical benefits or to pay withholding taxes.  As noted above, the remedial scope of the FLSA addresses the failure to pay **wages**.  The alleged failure to pay medical benefits (presumably, the Defendants' failure to pay the employer's share of premiums for medical benefits to health care providers) does not constitute a failure to pay wages to an employee.  Indeed, for the purposes of defining the "regular rate" of pay (from which an employee's overtime rate is calculated), the FLSA expressly excludes from remuneration for employment paid to or on behalf of an employee "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees."  FLSA, 28 U.S.C. § 207(e)(4); *see* 29 C.F.R. § 778.215 (exclusion of benefit-plan contributions from FLSA Section 207(e)(4)); *Diaz v. Amedeo Hotels Ltd. P'ship*, No. 12-CV-4418 (JMA), 2016 WL 1254243, at *4-*5 (E.D.N.Y. Mar. 29, 2016) (finding that contributions made to benefit funds were not payments to employees and met the requirement for exclusion from remuneration).  As the payments for medical benefits are not wages within the meaning of the FLSA, the alleged failure to make these payments is not a cognizable claim under the Act.

Nor does the failure to remit withholdings taxes as required constitute a violation of the FLSA.  The employer's obligation to withhold income taxes from an employee's wages arises out of the relationship between the employer and the **government**, not the employer and the employee.  26 U.S.C. § 7501(a); *Cherichetti v. PJ Endicott Co.*, 906 F. Supp. 2d 312, 314 n.2 (D.

Del. 2012); *see Victorin v. Maynard,* No. 2012–037, 2014 WL 4812088, at *3 n.5 (D.V.I. Sept.

29, 2014) (noting that while plaintiff's allegations that the employer had failed to withhold

Social Security payments and to maintain worker's compensation insurance were not referenced

as part of his FLSA claim, "the FLSA imposes no duty on employers related to" such payments);

*see also Barba v. New Century Chinese Buffet, Inc.*, No. 2:20-cv-01557, 2023 WL 6348825, at

*10 (W.D. Pa. Sept. 29, 2023) (finding that plaintiff could not prevail on argument that employer

had committed a "willful" violation of the FLSA by violating the federal and state tax laws by

paying plaintiff in cash and not withholding taxes).

### 2. The Trustee Lacks Authority to Assert<br>Any Claim for Relief Under the FLSA

#### i. The Trustee Lacks Standing Under the FLSA

As noted, the FLSA is a remedial statute that provides protections to **employees** from an

employer's failure to pay minimum wages and overtime compensation. *See, e.g., Johnson v.*

*National Coll. Athletic Ass'n*, 108 F.4th 163, 175 (3d Cir. 2024) ) (FLSA protects employees

from overwork and underpay).

> There are three main vehicles for enforcing the provisions of FLSA. First, under
> § 216(b), an employee may sue an employer for unpaid minimum or overtime
> wages. Second, the Secretary of Labor may sue under § 216(c) to recover an
> employee's unpaid minimum or overtime wages. Finally, the Secretary of Labor
> is authorized under § 217 to obtain an injunction against an employer for
> violations of § 215.

*East v. Bullock's Inc.*, 34 F. Supp. 2d 1176, 1182 (D. Ariz. 1998).

Nowhere in the statutory scheme is a right given under the FLSA to any other person to

bring an action to enforce its provisions. Given that the Trustee is neither the U.S. Secretary of

Labor nor an employee of the Debtors, he lacks standing to assert the Eleventh Claim for Relief

in which he alleges violations of the FLSA.

### ii. The Trustee Lacks Statutory Authority Under the
### Bankruptcy Code to Assert Claims under the FLSA

Related to the Trustee's lack of standing to bring claims under the FLSA is the Trustee's

lack of statutory authority under the Bankruptcy Code to assert these claims.  A court-appointed

trustee in bankruptcy has the sole right, as the representative of the debtor's estate, to pursue

causes of action relating to the property **of the estate**.  11 U.S.C. § 323(a), (b); *see In re Wilton*

*Armetale, Inc*., 968 F.3d 273, 280 (3d Cir. 2020).  A trustee only has the authority to pursue

claims that could have been asserted by a debtor on its own behalf.  *In re First Guar. Mortg.,*

*Corp.*, No. 24-0001-CFC, 2025 WL 963134, at *4 (D. Del. Mar. 31, 2025) ("*In re First Guar.*

*Mortg. II*").  Such a claim must be a general or derivative one that inures to the benefit of all

creditors by enlarging the estate, thus promoting the "'orderly distribution of assets in the

bankruptcy' by funneling all **asset-recovery litigation** through a single plaintiff: the trustee." *In*

*re Wilton*, 968 F.3d at 282 (emphasis added) (quoting *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d

Cir.), *cert. denied sub nom. Diacetyl Plaintiffs v. Aaroma Holdings, LLC*, 574 U.S. 974 (2014)).

On the other hand, if a specific creditor suffers a direct or particularized injury that can be

directly traced to the defendant's conduct, that claim is "personal to the creditor and not property

of the estate." *In re Wilton*, 968 F.3d at 283; *see In re First Guar. Mortg., II*, 2025 WL 963134,

at *5.

The thrust of the Trustee's Eleventh Claim is that by failing to make the payments for

employee wages, medical benefits and withholding taxes, the Defendants caused an injury to the

**Debtors' estate** arising under the FLSA.  *See* Complaint, ¶¶ 178-179 ("The willful violations of

the FLSA based on the non-payment of the Employee Wage, Benefit and Tax Obligations are

attributable to the Defendants ….  As a direct and/or proximate result of the non-payment of the

Employee Wage, Benefit and Tax Obligations by the Defendants, **the Company suffered damages**") (emphasis added).

But this is a nonsensical statement.  As noted, no cause of action exists under the FLSA for the failure to pay medical benefits or withholding taxes, and the Complaint fails plausibly to plead any minimum wage or overtime violations under the FLSA.  Even if this was viably pleaded by the Trustee, it is not a derivative or general claim that could be asserted by the Trustee on behalf of the Debtors.  Rather, these would still be payment obligations **of** the estate, and any successful claims would not result in a recovery of assets **to** the estate.  To the extent that the Eleventh Claim in fact successfully alleged claims for violations of the FLSA, these would be direct claims, personal to the affected individual **employees** as creditors of the Debtors.  *See In re First Guar. Mortg., Corp.*, No. 22-10584, 2023 WL 8940688, at *5 (Bankr. Del. Dec. 27, 2023) ("*In re First Guar. Mortg. I*") (explaining that claims against officers or directors seeking to hold them personally for a debtor's unpaid wages to employees would benefit only the affected employees, and would be examples of direct claims that could not be asserted by a trustee), *aff'd, In re First Guar. Mortg. II*, 2025 WL 963134 (D. Del. Mar. 31, 2025).

### 3.  The Complaint Does Not Allege Sufficient Facts to Hold Edwards Liable As an "Employer" Under the FLSA

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  FLSA, 29 U.S.C. § 203(d); *see Johnson*, 108 F.4th at 176 (to "employ" is "to suffer or permit to work"); *Tekstrom, Inc. v. Savla*, 918 A.2d 1171, at *4 (Del. 2007) ("*Tekstrom II*") (quoting FLSA, 29 U.S.C. § 203(g)).  For an individual (as opposed to an entity) to be an "employer" within the meaning of the statute, something more is required than the individual being an owner or officer of a company, or otherwise making

corporate decisions that have nothing to do with an employee's function. As the Third Circuit

has recognized,

> Section 203(d) of the FLSA defines the term "employer" to include "any person
> acting directly or indirectly in the interest of an employer in relation to an
> employee[.]" 29 U.S.C. § 203(d). "[T]he alleged employer must exercise
> significant control" over employees, as we explained in *In re Enterprise Rent-A-*
> *Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 468 (3d Cir. 2012) (internal
> quotation marks and citation omitted). To determine whether a party is an
> employer under the FLSA, we apply the four-factor test from *Enterprise Rent-A-*
> *Car.* We consider the alleged employer's (1) "authority to hire and fire" the
> relevant employees; (2) "authority to promulgate work rules and assignments"
> and to set the employees' conditions of employment; (3) "involvement in day-to-
> day employee supervision, including employee discipline;" and (4) "actual control
> of employee records, such as payroll, insurance, or taxes." *Id.* at 469. That list is
> not exhaustive, and we can consider other indicia of significant control. *Id.* at
> 469-70.

*Secretary U.S. Dep't of Labor v. Mosluoglu, Inc.,* No. 22-2749, 2023 WL 5972044, at *2 (3d Cir.

Sept. 14, 2023); *see Enterprise*, 683 F.3d at 469-470.

As set forth above, the only facts pleaded in the Complaint concerning Edwards are that

> since 2017, Edwards served as Chief of Staff for Rouhana. In addition, for the
> period May 2022 through December 2023, Edwards served as the Company's
> Senior Vice President and Chief of Staff and, for the period January 2024 to
> October 2024, Edwards served as the Company's Executive Vice President of
> Operations.

(Complaint, ¶ 20.)

The only other allegations that remotely state Edwards's supposed liability under the

FLSA are that

> The willful violations of the FLSA based on the non-payment of the Employee
> Wage, Benefit and Tax Obligations are attributable to the Defendants as a
> consequence of their authority over and responsibility for the decisions that
> resulted in the FLSA violations. Each Defendant exercised control over
> significant day-to-day operational aspects of the Company, including holding a
> position of authority and responsibility for employee compensation and benefits,
> and ensuring the payment of the Employee Wage, Benefit and Tax Obligations.

(Complaint, ¶ 178.)

These conclusory allegations do not come close to satisfying the four-factor economic reality test. There are no factual allegations that Edwards **herself** had the power to hire or fire employees, supervise or control the employees' work schedules and conditions of employment, determine the rate and method of the employees' pay, or maintained the employees' records of employment, or that she herself exercised sufficient operational control to be deemed an employer under the FLSA. There are no factual allegations whatsoever concerning any of Edwards' supposed responsibilities with respect to employees. Even under the most flexible interpretations of the economic realities factors, these allegations simply do not suffice to create liability for Edwards as an employer. At most, her status as an officer of CSSE may vest her with the kind of power to hire/fire employees and to control employees' work schedules or conditions of employment that would typically be attributed to an "employer." However, the Trustee has not even hinted at what part Edwards played in (a) hiring or firing any employees at CSSE; (b) supervising or controlling any employee's work at CSSE; (c) supervising or controlling any employee's schedule at CSSE; (d) supervising or controlling any employee's conditions of employment at CSSE; or (e) determining the rate and method of any employee's pay at CSSE.

Given the complete lack of any allegations tending to show that Edwards had any degree of involvement in any employee's employment at CSSE, the Complaint fails to approach the level of specificity required to establish that that she was an "employer." *See Tekstrom, Inc. v. Savla*, No. 05A–12–006 (JTV), 2006 WL 2338050, at \*9 (Del. Super. Ct. Jul. 31, 2006) (finding individual who served as vice president of company and personally recruited and hired employee not liable as employer, as those facts did not prove individual had operational control of company at the time in question) ("*Tekstrom I*"), *aff'd,* 918 A.2d 1171 (Del. 2007); *see also Zas*

*v. Canada Dry Bottling Co. of N.Y., L.P.*, No. 12–1649 (SRC)(CLW), 2013 WL 3285143, at *4 (D.N.J. Jun. 27, 2013) (proposed amended complaint generally alleged that officers had authority to hire/fire employees, control conditions of employment, and set rates and hours of pay, but lacked any factual allegations showing that the individuals had a role in failing to pay overtime; motion to amend denied); *Wright v. Lehigh Valley Hosp. & Health Network*, No. 10–431, 2011 WL 2550361, at *3 (E.D. Pa. Jun. 23, 2011) (proposed amendment failed to plead any facts to show officers and directors had "operational control" or any specific role in determining employee compensation).

For these reasons, the Eleventh Claim against Edwards must be dismissed.

### E. The Complaint Pleads No Basis for Disallowance and Equitable Subordination of Claims Against the Debtors' Estates (Twelfth and Thirteenth Claims for Relief)

As set forth above, the Complaint contains no factual or legal basis to grant the Trustee the requested relief. The Trustee has not even alleged that Edwards has filed any claims in the Bankruptcy Cases, making both the Twelfth and Thirteenth Claims premature. The Trustee is not entitled to disallow her claims until he has first obtained a judgment in his favor on an avoidance claim. 11 U.S.C. § 502(d); *see In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001). The Trustee also has not alleged any facts to show how Edwards (as opposed to any of the other Defendants) engaged in any conduct warranting subordination of her claims. Barring that showing, equitable subordination is inappropriate. *In re Champion Enters., Inc.*, No. 09-14014 KG, 2010 WL 3522132, at *5-*14 (Bankr. D. Del. Sept. 1, 2010).

### CONCLUSION

For the foregoing reasons, Defendant Amanda R. Edwards respectfully requests that this Honorable Court dismiss the Complaint for failure to state a claim pursuant to Federal Rule 12(b)(6).

Dated: July 11, 2025
Wilmington, Delaware

**HALLORAN FARKAS + KITTILA LLP**

By : ___/s/ James G. McMillan, III_____
James G. McMillan, III (No. 3979)
*jm@hfk.law*
William E. Green, Jr., Esq. (No. 4864)
*wg@hfk.law*
5722 Kennett Pike
Wilmington, Delaware 19807
Telephone: (302) 268-6875
*Co-counsel to Defendant Amanda R. Edwards*

**ELLIOTT KWOK LEVINE JAROSLAW
NEILS LLP**

By : ___/s/ Jared R. Clark_____
Jared R. Clark, Esq.
*jclark@ekljnlaw.com*
Lynn A. Neils, Esq.
*lneils@ekljnlaw.com*
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, New York 10165
Telephone: (212) 321-0510

*Co-counsel to Defendant Amanda R. Edwards*

TO:   **PACHULSKI STANG ZIEHL & JONES LLP**
      Richard M. Pachulski (admitted *pro hac vice*)
      Alan J. Kornfeld (admitted *pro hac vice*)
      Steven W. Golden (DE Bar No. 6807)
      Tavi C. Flanagan (admitted *pro hac vice*)
      919 N. Market Street, 17th Floor
      P.O. Box 8705
      Wilmington, DE 19899-8705 (Courier 19801)
      Telephone: (302) 652-4100
      Facsimile: (302) 652-4400
      Email: *rpachulski@pszjlaw.com*
             *akornfeld@pszjlaw.com*
             *sgolden@pszjlaw.com*
             *tflanagan@pszjlaw.com*

*Counsel to Plaintiff George L. Miller, Chapter 7 Trustee*