## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.*,<br><br>              Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, CHAPTER 7 TRUSTEE<br><br>              Plaintiff.<br>      v.<br><br>WILLIAM J, ROUHANA, JR., AMY L. NEWMARK, CHRISTOPHER MITCHELL, FRED M. COHEN, COSMO DENICOLA, MARTIN POMPADUR, CHRISTINA WEISS LURIE, DIANA WILKIN, VIKRAM SOMAYA, JASON MEIER, AMANDA R. EDWARDS, CHICKEN SOUP FOR THE SOUL PRODUCTIONS, LLC, CHICKEN SOUP FOR THE SOUL, LLC, CHICKEN SOUP FOR THE SOUL HOLDINGS, LLC,<br><br>              Defendants. | Adversary No. 25-50399 (MFW)<br><br>**Re: Adv. D.I. 1** |

### THE INDEPENDENT DIRECTORS' OPENING BRIEF IN SUPPORT OF
### MOTION TO DISMISS ADVERSARY COMPLAINT

Dated: July 11, 2025

**SAUL EWING LLP**
Evan T. Miller (No. 5364)
1201 North Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6864
Facsimile: (302) 421-6813
Email: evan.miller@saul.com

-and-

**HOLLAND & KNIGHT LLP**
Jessica Magee (Admitted *Pro Hac Vice*)
Texas Bar No. 24037757
Steven J. Levitt (Admitted *Pro Hac Vice*)
Texas Bar No. 24092690
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214-964-9500
Jessica.Magee@hklaw.com
Steven.levitt@hklaw.com

*Counsel for Defendant Cosmo DeNicola*

**TROUTMAN PEPPER LOCKE LLP**
David M. Fournier (DE No. 2812)
Christopher B. Chuff (DE No. 5729)
Tori L. Remington (DE No. 6901)
Tyler R. Wilson (DE No. 7129)
1313 N. Market Street, Suite 1000
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
david.fournier@troutman.com
chris.chuff@troutman.com
tori.remington@troutman.com
tyler.wilson@troutman.com

*Counsel for Defendants Fred M. Cohen, Christina Weiss Lurie, Martin Pompadur, and Diana Wilkin*

**THOMAS LAW LLC**
 Mary S. Thomas (DE Bar No. 5072)
1521 Concord Pike, Suite 301
Wilmington, DE 19803
Telephone: (302) 647-1203
mthomas@marythomaslaw.com

-and-

**LAW OFFICES OF THIRU VIGNARAJAH LLC**
Thiru Vignarajah, Esq.
Ross Ingram, Esq.
211 Wendover Road
Baltimore, MD 21218
Telephone: (410) 456-7552
thiru@thirulaw.com
ross@thirulaw.com

*Counsel for Defendant Vikram Somaya*

ii

## TABLE OF CONTENTS

Pages(s)

INTRODUCTION and SUMMARY ........................................................................... 1

STATEMENT OF FACTS ...................................................................................... 4

    I.      The Parties and Relevant Non-Parties ................................................. 4

    II.    The Management and License Agreements and the Fees Paid Thereunder ......... 5

    III.   The Dividends ....................................................................... 6

    IV.   The RedBox Merger .................................................................. 7

    V.     The IP Agreements ................................................................... 8

    VI.   The Wages and Taxes ................................................................ 8

ARGUMENT ...................................................................................................... 8

    I.      The Release Bars All Claims Before August 2022 .................................. 9

    II.    Plaintiff's Breach of Fiduciary Duty Claim Against the Independent Directors (Count II) Must Be Dismissed Under the Exculpatory Provision ......... 9

          1.     Plaintiff Has Not Pleaded that the Independent Directors Were Interested .......................................................... 11

          2.     Plaintiff Has Not Pleaded that the Independent Directors Lacked Independence ....................................................... 13

          3.     Plaintiff Has Not Pleaded that the Independent Directors Acted in Bad Faith ........................................................ 16

          4.     Plaintiff's Fiduciary Duty Claims for any Actions Occurring Before June 29, 2021 Are Partially Time-Barred ....... 19

    III.   Plaintiff's Aiding and Abetting Breach of Fiduciary Duty Claim Against the Independent Directors (Count V) Must Be Dismissed .................................. 19

    IV.   Plaintiff's Unlawful Dividend Claim (Count X) Against the Independent Directors Must Be Dismissed ............................................................. 20

          1.     The Fees Are Not Dividends Subject to Sections 170-174 of the DGCL ........................................................... 20

          2.     Plaintiff Fails to Plead a Violation of Sections 170-174 for Fees and Dividends from January 1, 2020 through June 30, 2023 ................................................................... 20

    V.     Plaintiff's Fair Labor Standards Act Claim (Count XI) Against the Independent Directors Must Be Dismissed ........................................................... 24

          1.     Plaintiff Lacks Standing to Bring a Claim Under the FLSA ....... 24

          2.     Plaintiff Has Not Pleaded a Willful Violation of the FLSA ........ 25

   3. Plaintiff's FLSA Claim Is Limited to a Claim for Allegedly Unpaid Minimum Wage and Overtime Pay.................................. 26

VI. Plaintiff's Fraudulent Transfer Claims (Counts VIII and IX) Against the Independent Directors Must Be Dismissed........................................................ 26

   1. The Complaint Does Not Plead a Fraudulent Transfer................ 27

   2. The Complaint Cannot Seek to Avoid the Release Because It Is Just One Component of a Larger, Integrated Transaction.................................................................................... 29

VII. Counts XII and XIII Must Be Dismissed............................................................ 30

CONCLUSION................................................................................................................ 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alloy, Inc. S'holder Litig.*,
　C.A. No. 5626-VCP, 2011 WL 4863716 (Del. Ch. Oct. 13, 2011)........................................14

*In re AMC Invs., LLC*,
　524 B.R. 62 (Bankr. D. Del. 2015) ....................................................................................19

*In re Answers S'holder Litig.*,
　C.A. No. 6170-BVN, 2012 WL 1253072 (Del. Ch. Apr. 11, 2012)......................................11

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)..........................................................................................................9, 27

*Barba v. New Century Chinese Buffet, Inc.*,
　No. 2:20-cv-01557, 2023 WL 6348825 (W.D. Pa. Sept. 29, 2023) ....................................26

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)..............................................................................................................9

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
　891 A.2d 150 (Del. Ch. 2005)..............................................................................................14

*Buchspies v. Pfizer, Inc.*,
　Civ. No. 18-16083, 2019 WL 5078853 (D.N.J. Oct. 10, 2019)...........................................25

*Carlson v. Hallinan*,
　925 A.2d 506 (Del. Ch. 2006)..............................................................................................19

*Chaffin v. GNI Grp., Inc.*,
　Civ. A. 16211-NC, 1999 WL 721569 (Del. Ch. Sept. 3, 1999)............................................15

*In re Chelsea Thera. Int'l Ltd. S'holders Litig.*,
　C.A. No. 9640-VCG, 2016 WL 3044721 (Del. Ch. May 20, 2016)......................................16

*In re Chemours Co. Deriv. Litig.*,
　C.A. No. 2020-0786, 2021 WL 5050285 (Del. Ch. Nov. 1, 2021) ................................21, 22

*Cherichetti v. PJ Endicott Co.*,
　906 F. Supp. 2d 312 (D. Del. 2012)................................................................................24, 26

*Citron v. Fairchild Camera & Instr. Corp.*,
　569 A.2d 53 (Del. 1989) ......................................................................................................14

*CMS Inv. Holdings, LLC v. Castle*,
  C.A. No. 9468-VCP, 2015 WL 3894021 (Del. Ch. June 23, 2015) ........................19

*In re Cornerstone Therapeutics Inc. S'holder Litig.*,
  115 A.3d 1173 (Del. 2015) ........................................................................9, 10

*In re Ctr. City Healthcare, LLC*,
  641 B.R. 793 (Bankr. D. Del. 2022) .....................................................................28

*Davis v. Abington Mem'l Hosp.*,
  765 F.3d 236 (3d Cir. 2014).................................................................................26

*Dent v. Ramtron Int'l Corp.*,
  C.A. No. 7950-VCP, 2014 WL 2931180 (Del. Ch. June 30, 2014) ......................16

*In re Emoral, Inc.*,
  740 F.3d 875 (3d Cir. 2014).................................................................................24

*In re FAH Liquidating Corp.*,
  572 B.R. 117 (Bankr. D. Del. 2017) ...............................................................22, 23

*Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Materials, Inc.*,
  318 A.3d 1105 (Del. Ch. 2024).............................................................................10

*Fisk Ventures, LLC v. Segal*,
  C.A. No. 3017-CC, 2008 WL 1961156 (Del. Ch. May 7, 2008)...........................16

*In re Foothills Tex., Inc.*,
  476 B.R. 143 (Bankr. D. Del. 2012) .................................................................9, 22

*Frederick Hsu Living Tr. v. ODN Holding Corp.*,
  C.A. No. 12108-VCL, 2017 WL 1437308 (Del. Ch. Apr. 14, 2017) ....................11

*In re GoPro, Inc.*,
  C.A. No. 2018-0784, 2020 WL 2036602 (Del. Ch. Apr. 28, 2020) ......................15

*H-M Wexford LLC v. Encorp, Inc.*,
  832 A.2d 129 (Del. Ch. 2003)...............................................................................12

*Haybarger v. Lawrence Cnty. Adult Probation & Parole*,
  667 F.3d 408 (3d Cir. 2012).................................................................................25

*In re Hechinger Inv. Co. of Del.*,
  327 B.R. 537 (D. Del. 2005).............................................................................29, 30

*Horbal v. Three Rivers Hldgs., Inc.*,
  No. 1273-N, 2006 WL 668542 (Del. Ch. Mar. 10, 2006) ....................................20

*Houseman v. Sagerman*,
  C.A. No. 8897-VCG, 2014 WL 1600724 (Del. Ch. Apr. 16, 2014) .......................................18

*Kahn v. Stern*,
  C.A. No. 12498-VCG, 2017 WL 3701611 (Del. Ch. Aug. 28, 2017) ....................................18

*In re KKR Fin. Holdings LLC S'holder Litig.*,
  101 A.3d 980 (Del. Ch. 2014)...............................................................................................14

*Klang v. Smith's Food & Drug Ctrs., Inc.*,
  No. Civ. A. 1997 WL 257463 (Del. Ch. May 13, 1997) ........................................................21

*In re Le Cafe Creme, Ltd.*,
  244 B.R. 221 (Bankr. S.D.N.Y. 2000)....................................................................................29

*Lyondell Chem. Co. v. Ryan*,
  970 A.2d 235 (Del. 2009) .......................................................................................................16

*Maffei v. Palkon*,
  __ A.3d ___, 2025 WL 384054 (Del. Feb. 4, 2025) ..............................................................12

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
  845 A.2d 1040 (Del. 2004) .....................................................................................................14

*In re MFW S'holders Litig.*,
  67 A.3d 496 (Del. Ch. 2013)...................................................................................................13

*In re Midway Games Inc.*,
  428 B.R. 303 (Bankr. D. Del. 2010) .......................................................................................10

*Miramar Firefighters Pension Fund v. AboveNet, Inc.*,
  C.A. No. 7376-VCN, 2013 WL 4033905 (Del. Ch. July 31, 2013) ..................................14, 18

*Newman v. KKR Phorm Invs., L.P.*,
  C.A. No. 2022-0310, 2023 WL 5624167 (Del. Ch. Aug. 31, 2023, rev. Sept. 5, 2023) .......................................................................................................................................15

*In re Novell, Inc. S'holder Litig.*,
  C.A. No. 6032-VCN, 2014 WL 6686785 (Del. Ch. Nov. 25, 2024) ........................................18

*Oddo v. Bimbo Bakeries USA, Inc.*,
  Civ. No. 2:16-cv-04267, 2017 WL 2172440 (D.N.J. May 17, 2017)......................................24

*Off. Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*,
  C.A. No. 20228-NC, 2004 WL 1949290 (Del. Ch. Aug. 24, 2004)..................................10, 13

*In re Old CarCo LLC*,
  435 B.R. 169 (Bankr. S.D.N.Y. 2010).....................................................................................30

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002)........................................................................11

*In re Paramount Gold & Silver Corp. S'holders Litig.*,
    C.A. No. 10499-CB, 2017 WL 1372659 (Del. Ch. Apr. 13, 2017).........................16

*In re Pinktoe Tarantula Ltd.*,
    Case No. 18-10344, 2023 WL 2960894 (Bankr. D. Del. Apr. 14, 2023)................27

*Polk 33 Lending, LLC v. Schwartz*,
    555 F. Supp. 3d 38 (D. Del. 2021).................................................................4

*Postorivo v. AG Paintball Holdings, Inc.*,
    C.A. No. 2991-VCP, 3111-VCP, 2008 WL 553205 (Del. Ch. Feb. 29, 2008).........14

*Prod. Res. Grp., L.L.C. v. NCT Group, Inc.*,
    863 A.2d 772 (Del. Ch. 2004)......................................................................10

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
    102 A.3d 155 (Del. Ch. 2014)......................................................................20

*Ret. Sys. on Behalf of nCino, Inc. v. Insight Venture P'rs, LLC*,
    C.A. No. 2022-0846, 2023 WL 8948218 (Del. Ch. Dec. 28, 2023)....................15

*In re Riverstone Nat'l, Inc. Stockholder Litig.*,
    C.A. No. 9796-VCG, 2016 WL 4045411 (Del. Ch. July 28, 2016) .....................12

*Ryan v. Buckeye Partners, L.P.*,
    C.A. No. 2021-0432, 2022 WL 389827 (Del. Ch. Feb. 9, 2022) ...............16, 17, 18

*In re S.W. Equip. Rental, Inc.*,
    102 B.R. 132 (E.D. Tenn. 1989).................................................................24

*Shabbouei v. Potdevin*,
    C.A. No. 2018-0847, 2020 WL 1609177 (Del. Ch. Apr. 2, 2020) ......................12

*In re Sols. Liquidation LLC*,
    608 B.R. 384 (Bankr. D. Del. 2019) ............................................................17

*Souryavong v. Lackawanna County*,
    872 F.3d 122 (3d Cir. 2017).......................................................................25

*Teamsters Loc. 237 Additional Sec. Benefit Fund v. Caruso*,
    C.A. No. 2020-0620, 2021 WL 3883932 (Del. Ch. Aug. 31, 2021) ...................14

*Teamsters Loc. 677 Health Servs. & Ins. Plan v. Martell*,
    C.A. No. 2021-1075, 2023 WL 1370852 (Del. Ch. Jan. 31, 2023) ....................14

*Thompson v. Real Est. Mortg. Network*,
    748 F.3d 142 (3d Cir. 2014).........................................................................25

*In re Tropicana Ent., LLC*,
    520 B.R. 455 (Bankr. D. Del. 2014) ...........................................................28

*United Food & Com. Workers Union v. Zuckerberg*,
    250 A.3d 862 (Del. Ch. 2020)..................................................................9, 14

*Victorin v. Maynard*,
    Civ. No. 2012-037, 2014 WL 4812088 (D.V.I. Sept. 29, 2014) .................26

*In re Walt Disney Co. Deriv. Litig.*,
    825 A.2d 275 (Del. Ch. 2003)......................................................................18

*In re Walt Disney Co. Deriv. Litig.*,
    906 A.2d 27 (Del. 2006) ..............................................................................10

*In re Waterford Wedgwood USA, Inc.*,
    500 B.R. 371 (Bankr. S.D.N.Y. 2013) .......................................................29

*Weinstein Enters., Inc. v. Orloff*,
    870 A.2d 499 (Del. 2005) .......................................................................14, 15

*Williams v. Geier*,
    671 A.2d 1368 (Del. 1996) ..........................................................................11

*Wright v. Lehigh Valley Hosp. & Health Network*,
    Civ. No. 10-431, 2011 WL 2550361 (E.D. Pa. June 23, 2011) .................25

*Zas v. Canada Dry Bottling Co. of New York, L.P.*,
    Civ. No. 12-1649, 2013 WL 3285143 (D.N.J. June 27, 2013) ..................25

*Zazzali v. Hirschler Fleischer, P.C.*,
    482 B.R. 495 (D. Del. 2012) ...................................................................27, 28

**Statutes**

6 *Del. C.* § 1305 ...................................................................................................29

8 *Del. C.* § 154 ....................................................................................................21

8 *Del. C.* § 170 ....................................................................................................21

8 *Del. C.* § 172 ...............................................................................................21, 23

8 *Del. C.* § 173 .................................................................................................2, 20

10 *Del. C.* § 8106 ................................................................................................19

11 U.S.C. § 108 ................................................................................................19

11 U.S.C. § 510 ................................................................................................30

11 U.S.C. § 548 ............................................................................................27, 28

11 U.S.C. § 544 ................................................................................................29

11 U.S.C. § 548 ................................................................................................27

29 U.S.C. § 201, *et seq.* ..................................................................2, 4, 24, 25, 26

29 U.S.C. § 216 ................................................................................................24

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..................................................................8, 9, 10, 20

## INTRODUCTION AND SUMMARY

Defendants Fred M. Cohen, Cosmo DeNicola, Christina Weiss Lurie, Martin Pompadur, Vikram Somaya, and Diana Wilkin (the "Independent Directors") respectfully submit this Opening Brief in support of their Motion to Dismiss the claims asserted against them in the Adversary Complaint (the "Complaint" or "Compl.") filed by George L. Miller, the duly appointed chapter 7 trustee ("Plaintiff") of the estates of the Debtors.[1]

Plaintiff has taken a scorched earth approach in this action, suing nearly every director and officer of Chicken Soup for the Soul, Inc. (the "Company") for virtually every material transaction the Company has taken since 2020. In doing so, Plaintiff has attempted to embroil the Independent Directors—outside, professional directors who, even taking the Complaint as true, are not alleged to have any interest in the challenged transactions or independence-disabling ties to any interested parties, and who acted at all times in a way they reasonably believed to be in the best interests of the Company. Instead of pleading any actual conflicts of the Independent Directors, Plaintiff repeatedly questions the prudence of their good faith decisions and asks the Court to second guess them. Unfortunately for Plaintiff, Delaware law is clear. It is not the role of the Court to substitute its judgment for the business judgment of disinterested and independent directors without a legitimate reason to question the motive of those directors. Here, Plaintiff does not—and cannot—plead any facts sufficient to call into question the good faith motive of the Independent Directors. Thus, all claims against them must be dismissed.

Specifically, Plaintiff primarily[2] asserts five claims against the Independent Directors: (1) breach of fiduciary duty (Count II); (2) aiding and abetting breach of fiduciary duty (Count V);

---

[1] The Debtors are identified in the Complaint. *See* Compl. n.1.

[2] As set forth below, Counts XII and XIII relating to Independent Director claims against the Debtors should likewise be dismissed as, among other things, the Complaint does not identify any such claims.

(3) constructive fraudulent transfer (Counts VIII and IX); (4) an unlawful dividend claim pursuant to Section 173 of the Delaware General Corporation Law ("DGCL") (Count X); and (5) violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), for failure to pay payroll taxes (Count XI). Each of these claims must be dismissed for the following reasons.

*First*, Plaintiff's fiduciary duty claim (Count II) must be dismissed against each of the Independent Directors under the Company's exculpatory provision adopted pursuant to Section 102(b)(7) of the DGCL (the "Exculpatory Provision"). In Count II, Plaintiff challenges the following transactions allegedly approved by the Independent Directors (the "Challenged Transactions"):

1.  the merger (the "RedBox Merger") with RedBox Entertainment Inc. ("RedBox");

2.  the payment of roughly $55 million of fees (the "Management and License Fees" or "Fees") pursuant to a Management Services Agreement (the "Management Agreement") and trademark and intellectual property license agreement (the "License Agreement");

3.  payment of roughly $37 million in preferred dividends (the "Dividends");

4.  the entrance into intellectual property license agreements with the Debtors (the "IP Agreements"); and

5.  the failure to pay wages and $15 million in payroll taxes (the "Wages and Taxes").

To overcome the Exculpatory Provision, Plaintiff was required to show that each of the Independent Directors was either interested in the Challenged Transactions, lacked independence from a party that was interested in the Challenged Transactions, or acted in bad faith in approving the Challenged Transactions. Plaintiff does not come close to meeting this standard:

• With respect to interestedness, Plaintiff has not alleged that each of the Independent Directors was interested in the Dividends, Fees, IP Agreements, and/or the Wages and Taxes. For the RedBox Merger, Plaintiff asserts that the Independent Directors were interested because the transactional documents contained a release (the "Release") in their favor. Delaware law is clear, however, that a release does not render a director interested unless, at the time the release was signed, the director was aware of threatened or pending claims that presented a material liability risk,

such that the release provided a material incentive to approve the deal.  Plaintiff does not—and cannot—allege such facts.  Thus, the Release does not render the Independent Directors interested in the RedBox Merger.

- Plaintiff also fails to allege that each of the Independent Directors lacked independence from a person or entity allegedly interested in the Challenged Transactions, such as William Rouhana or the Parent Entities (defined below).  Indeed, Plaintiff fails to identify any relationship—financial, personal, or otherwise—between any of the Independent Directors, on the one hand, and Rouhana and the Parent Entities, on the other, that would cause the Independent Directors to favor their interests over the Company's interests.  Plaintiff alleges only that they had the "ability to remove" the Independent Directors without cause and then resorts over and over to a rote and generic incantation that the Independent Directors were "supine" or "beholden" to Rouhana and the Parent Entities.  But Delaware law is clear that such conclusory allegations, unsupported by any specific facts, are not enough to rebut the presumption of independence afforded to the Independent Directors.

- Finally, Plaintiff fails to plead that each of the Independent Directors approved any of the Challenged Transactions in bad faith.  Plaintiff wholly fails to plead *any* set of facts—let alone the "extreme" ones required under Delaware law—that would explain why each of the Independent Directors would *intentionally* breach their fiduciary duties and harm the Company in connection with the Challenged Transactions.

Thus, Plaintiff's breach of fiduciary duty claim (Count II) must be dismissed under the Exculpatory Provision.  Such claims are also time-barred for actions before June 29, 2021.

*Second*, Plaintiff's aiding and abetting breach of fiduciary duty claim (Count V) must be dismissed against the Independent Directors because such a claim can only be sustained against non-fiduciaries and each of the Independent Directors was a fiduciary at all relevant times.

*Third*, Plaintiff's fraudulent transfer claims (Counts VIII and IX) must be dismissed against the Independent Directors because the law prohibits a plaintiff from challenging as a fraudulent transfer one aspect of a larger, integrated transaction without pleading that the overall transaction lacked reasonable equivalent value.  These claims must also be dismissed because Plaintiff has failed to plead insolvency and a transfer within two years of the Petition Date.

*Fourth*, Plaintiff's unlawful dividend claim (Count X) must be dismissed because Plaintiff has failed to adequately allege that the Company lacked sufficient "surplus" from 2020 through June 30, 2023, or that the Independent Directors were "willful or negligent" in approving the Dividends during that timeframe. The Company's publicly filed financial statements actually confirm that the Company had a significant surplus from which to pay the Dividends and Fees.

*Fifth*, Plaintiff's FLSA claim (Count XI) against the Independent Directors must be dismissed because, in part, Plaintiff has no standing to bring the claim and has otherwise failed to sufficiently allege that each Independent Director may be held individually liable under the FLSA.

*Finally*, all of Plaintiff's claims against the Independent Directors (Counts II, V, VIII-XIII) are barred by the Release signed in connection with the RedBox Merger to the extent that these claims relate to actions or inactions of the Independent Directors on or before August 11, 2022.

## STATEMENT OF FACTS

### I.    The Parties and Relevant Non-Parties

This action arises out of the bankruptcy of the Company and its affiliated Debtors. The Company previously operated through its Debtor subsidiaries as a provider of streaming video and television services.[3]  The Company is a Delaware corporation and adopted the Exculpatory Provision under Section 102(b)(7) of the DGCL. The Company's Certificate of Incorporation states that, "[t]o the fullest extent permitted by law, a director of the [Company] shall not be personally liable to the [Company] or to its stockholders for monetary damages for any breach of fiduciary duty as a director."[4]

Plaintiff is the chapter 7 trustee of Debtors' estates. The defendants are the Company's parent entities, as well as its directors and officers. The entity defendants are Chicken Soup for

---

[3]    Compl. ¶ 26.

[4]    Ex. A at 5.  The Court may take judicial notice of the Company's certificate of incorporation at the motion to dismiss stage.  *Polk 33 Lending, LLC v. Schwartz*, 555 F. Supp. 3d 38, 40 n.1 (D. Del. 2021).

the Soul Productions, LLC ("CSSP"), Chicken Soup for the Soul, LLC ("CSS"), and Chicken Soup

for the Soul Holdings, LLC ("CSS Holdings") (collectively, the "Parent Entities").

In addition to the Independent Directors, the individual defendants are William J. Rouhana,

Jr. (the Company's Chief Executive Officer and Chairman of the Board), Amy L. Newmark (the

Company's Senior Brand Advisor), Christopher Mitchell (the Company's Chief Financial Officer

("CFO") from January 1, 2019 through November 2022), Jason Meier (the Company's CFO from

November 2022 onward), and Amanda R. Edwards (Rouhana's Chief of Staff).[5]  Rouhana and

Newmark are married and together own the Parent Entities.[6]

## II.    The Management and License Agreements and the Fees Paid Thereunder

The Company and CSS entered into the Management and License Agreements in May,

2016, shortly after the Company was incorporated (and before any Independent Director joined

the Board).[7]  Under the Management Agreement, CSS and its subsidiaries provided the Company

with resources and services in connection with the production and distribution of television,

motion picture, and online video content related to the *Chicken Soup for the Soul* brand.[8]  In

exchange, and regardless of its financial condition, the Company was required to pay CSS 5% of

its revenues for each fiscal quarter.[9]  Under the License Agreement, CSS agreed to provide the

Company with licensed rights for the production and distribution of *Chicken Soup for the Soul*

video content.[10]  Like the Management Agreement, the License Agreement required the Company

to pay CSS 5% of its revenues for each fiscal quarter to use the *Chicken Soup for the Soul* brand

---

[5] Compl. ¶¶ 10–12, 19–20.

[6] *Id.* ¶¶ 10–11.

[7] *See* Ex. B (Management Agreement); Ex. C (License Agreement).

[8] Ex. B at 1.

[9] *Id.* at 1, Schedule A.

[10] Ex. C at 1.

and related content, and for certain marketing support, regardless of its financial condition.[11]

Under these Agreements, the Company allegedly paid 10% of its revenues each quarter to CSS.[12]

Without alleging any facts suggesting they had any obligation, right, reason, or power to do so, the Complaint alleges that the Independent Directors should have "terminated one or both" of these Agreements—Agreements that were part of the Company's original capitalization and in exchange for the Company's rights to beneficially use or access *Chicken Soup for the Soul* good will.  The Complaint further alleges that the Independent Directors "made no reasonable effort to analyze or question the necessity of [the agreements]" or "renegotiate the terms of [the agreements] in any meaningful way."[13]  Plaintiff further asserts that the Independent Directors were "supine" and "beholden" to Rouhana, and so failed to act in the Company's best interests in respect of these Agreements.[14]  Plaintiff pleads no facts suggesting how that is so.

## III.  <u>The Dividends</u>

The Company also paid monthly cash dividends on its Series A Preferred Stock as follows:

| 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|
| $4.1 million | $9 million | $9.7 million | $14 million |

The Complaint alleges that these dividends were paid while the Company lacked sufficient surplus or net profits to lawfully declare such dividends, and that the Independent Directors failed to "request[ ] information sufficient to allow them to make an informed and reasoned determination with respect to . . . the [Dividends]," and were instead "beholden to" and "blindly followed" Rouhana's instructions.[15]  All such allegations are conclusory and unsupported.

---

[11] Compl. ¶ 63.

[12] *Id.* ¶ 64.

[13] *Id.* ¶ 67.

[14] *Id.*

[15] *Id.* ¶¶ 74–77.

IV.    **The RedBox Merger**

In 2022, the Company acquired Redbox.[16]  Redbox's business involved renting DVDs and Blu-ray Discs from a network of self-service kiosks.[17]  To evaluate the RedBox Merger, the Complaint admits that the Company retained a financial advisor, Guggenheim Securities, LLC ("Guggenheim"), to advise it on the transaction.[18]  The Complaint also admits that the Independent Directors received reports and projections from Guggenheim and management and conducted meetings to confer regarding the merger.[19]  In connection with and as part of the Redbox Merger, the parties executed a Release in May 2022 (the "May 2022 Release Agreement") wherein the Company released all claims against the Independent Directors regarding, *inter alia*, the RedBox Merger or the "management, ownership, . . . or operations or activities" of the Company that occurred on or before August 11, 2022.[20]  The merger ultimately resulted in substantial financial losses for the Company, leading to its eventual bankruptcy filing.[21]

According to Plaintiff, the Independent Directors breached their fiduciary duties to the Company in connection with the Redbox Merger by (i) relying on "unreasonable projections" provided by the Company's management, and (ii) being "supine and beholden to Rouhana."[22]  In other words, Plaintiff second guesses the Independent Directors' decisions in connection with the Redbox Merger without pleading any basis to question their motives in evaluating and authorizing that Merger.

---

[16] *Id.* ¶¶ 35, 46.

[17] *Id.* ¶ 36.

[18] *Id.* ¶¶ 38–42.

[19] *Id.*

[20] *Id.* ¶ 59.

[21] *See id.* ¶ 88.

[22] *Id.* ¶¶ 2, 57.

## V.    <u>The IP Agreements</u>

The Complaint also alleges that the Company entered into intellectual property license agreements prior to filing bankruptcy.[23]  These agreements were executed or approved by Rouhana and were allegedly not the product of fair dealing or a fair price.[24]  Although there is no allegation that the Independent Directors were even aware of these IP Agreements, let alone approved them, Plaintiff nevertheless repeats his conclusory allegation that the Independent Directors failed to "request[ ] information sufficient to allow them to make an informed and reasoned determination with respect to the [IP Agreements]," and were instead "supine" and "beholden to" Rouhana.[25]

## VI.    <u>The Wages and Taxes</u>

Finally, the Complaint alleges that the Company failed to pay millions of dollars in Wages and Taxes, including ~$15.5 million in payroll withholding taxes from October 3, 2023 to June 7, 2024.[26]  According to Plaintiff, the Independent Directors "knew or should have known that the Company was not paying its obligations to its employees," yet did not "request[ ] . . . adequate information or reporting with respect to the non-payment of employee obligations" and instead were "beholden to" and "blindly followed" Rouhana.[27]  Plaintiff pleads no facts that would allow the Court to reach such an inference.

## <u>ARGUMENT</u>

A complaint must be dismissed under Rule 12(b)(6) where, as here, it fails to state a legal claim or does not contain sufficient well-pleaded facts to support a "plausible entitlement to

---

[23] *Id.* ¶ 68.

[24] *Id.* ¶¶ 70–71.

[25] *Id.*  ¶¶ 68–72.

[26] *Id.* ¶ 79.

[27] *Id.* ¶ 81.

relief."[28]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.[29]  In deciding a Rule 12(b)(6) motion, courts "may consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and some matters judicially noticed."[30]  In addition, a 102(b)(7) clause is properly considered at the pleading stage.[31]

## I.      The Release Bars All Claims Before August 2022

All Plaintiff's claims relating to actions or inactions on or before August 11, 2022 are barred by the Release.  As admitted in the Complaint, as part of the Redbox Merger the Company released the claims asserted in this action against, *inter alia*, the Independent Directors.[32]  Because Plaintiff is suing on behalf of the Company, the Release bars claims regarding (i) the RedBox Merger, (ii) the Management and License Fees paid through August 11, 2022, (iii) the Dividends paid through August 11, 2022, and (iv) the IP Agreement entered into prior to August 11, 2022— *i.e.*, the Distribution Agreement dated June 29, 2022 between Debtor SMV and FilmRise Acquisitions LLC.  These claims, as to Counts II, V, and VIII-XIII, must therefore be dismissed.

## II.     Plaintiff's Breach of Fiduciary Duty Claim Against the Independent Directors (Count II) Must Be Dismissed Under the Exculpatory Provision

Plaintiff's breach of fiduciary duty claim against the Independent Directors (Count II) must be dismissed in its entirety because it is barred by the Exculpatory Provision adopted pursuant to

---

[28] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

[30] *In re Foothills Tex., Inc.*, 476 B.R. 143, 150 (Bankr. D. Del. 2012).

[31] *United Food & Com. Workers Union v. Zuckerberg*, 250 A.3d 862, 885 (Del. Ch. 2020), *aff'd sub nom. United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034 (Del. 2021) ("[T]he Delaware Supreme Court clarified how Section 102(b)(7) operates at the pleading stage." (citing *In re Cornerstone Therapeutics Inc. S'holder Litig.*, 115 A.3d 1173, 1175–76 (Del. 2015))); *see also id.* ("[T]he existence of an exculpatory provision operates more in the nature of an immunity, comparable to the extent to which sovereign immunity typically protects government employees from suit, rather than as an affirmative defense.").

[32] Compl. ¶¶ 58–61.

Section 102(b)(7) of the DGCL.  Section 102(b)(7) "authorizes Delaware corporations, by a provision in the certificate of incorporation, to exculpate their directors from monetary damage liability for a breach of the duty of care."[33]  Such provisions protect directors from liability for "actions taken that are even grossly negligent."[34]  This protection is paramount in situations like this—"[t]hat is, *when . . . the business plan of the firm did not generate financial success and the firm has become insolvent*."[35]  Indeed, in such situations, "the *possibility of hindsight bias about the directors' prior ability to foresee that their business plans would not pan out is at its zenith and when the exculpatory charter provision is most useful*."[36]

Given the important policy considerations underlying 102(b)(7), *even where entire fairness applies*, for a fiduciary duty claim to survive dismissal as to a director, a plaintiff *must plead a breach of the fiduciary duty of loyalty as to each director* that moves for dismissal pursuant to a 102(b)(7) clause.[37]  The plaintiff must show, *as to each director* seeking dismissal, that the director was: (i) interested in the transaction; (ii) lacked independence from an interested party; or (iii) acted in bad faith.[38]  If a plaintiff fails to make that showing, its claims must be dismissed.[39]

---

[33] *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 65 (Del. 2006).

[34] *Off. Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, C.A. No. 20228-NC, 2004 WL 1949290, at *9 n.37 (Del. Ch. Aug. 24, 2004).

[35] *Prod. Res. Grp., L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 777 (Del. Ch. 2004) (emphasis added).

[36] *Id.* (emphasis added).

[37] *In re Cornerstone*, 115 A.3d at 1180 ("[T]he mere fact that a plaintiff is able to plead facts supporting the application of the entire fairness standard to the transaction, and can thus state a duty of loyalty claim against the interested fiduciaries, does not relieve the plaintiff of the responsibility to plead a non-exculpated claim against each director who moves for dismissal."); *Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Materials, Inc.*, 318 A.3d 1105, 1160–61 (Del. Ch. 2024).

[38] *In re Cornerstone*, 115 A.3d at 1179–80 ("When a director is protected by an exculpatory charter provision," the plaintiff must "plead[ ] facts supporting a rational inference that the director harbored self-interest adverse to the stockholders' interests, acted to advance the self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith."); *Firefighters' Pension System*, 318 A.3d at 1160–61 (same).

[39] *In re Cornerstone*, 115 A.3d at 1187; *see also In re Midway Games Inc.*, 428 B.R. 303, 317 (Bankr. D. Del. 2010) ("[W]here a complaint does not adequately contain facts supporting a claim that directors acted in bad faith or conscious disregard of their responsibilities, Rule 12(b)(6) dismissal is appropriate.").

Here, Plaintiff challenges the following transactions (*i.e.*, the Challenged Transactions): (1) the RedBox Merger; (2) the Fees; (3) the Dividends; (4) the IP Agreements; and (5) the Wages and Taxes. But Plaintiff is unable to plead a non-exculpated claim against each of the Independent Directors as to any of the Challenged Transactions. That is because Plaintiff has not alleged facts that would show that each of the Independent Directors was interested, lacked independence, or acted in bad faith in connection with any of the Challenged Transactions.

Because Plaintiff cannot plead a non-exculpated claim, the breach of fiduciary duty claim against the Independent Directors (Count II) must be dismissed.

### 1.    Plaintiff Has Not Pleaded that the Independent Directors Were Interested

Plaintiff fails to plead that each of the Independent Directors was interested in any of the Challenged Transactions. Under Delaware law, there is a presumption that directors are disinterested.[40] This presumption is rebutted only "when (1) a director personally receives a benefit (or suffers a detriment), (2) as a result of, or from, the challenged transaction, (3) which is not generally shared with (or suffered by) the other stockholders of the corporation, and (4) that benefit (or detriment) is of such subjective material significance to that particular director that it is reasonable to question whether that director objectively considered the advisability of the challenged transaction to the corporation and its stockholders."[41]

Delaware law is also clear that releases and other liability-immunizing devices are not material and do not render directors interested in a challenged transaction, unless those devices are adopted in the face of a significant threat of liability known to the directors at the time of the

---

[40] *Williams v. Geier*, 671 A.2d 1368, 1377–78 (Del. 1996).

[41] *Orman v. Cullman*, 794 A.2d 5, 25 n.50 (Del. Ch. 2002); *see also Frederick Hsu Living Tr. v. ODN Holding Corp.*, C.A. No. 12108-VCL, 2017 WL 1437308, at *30 (Del. Ch. Apr. 14, 2017) (quoting *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993)); *In re Answers S'holder Litig.*, C.A. No. 6170-BVN, 2012 WL 1253072, at *7 (Del. Ch. Apr. 11, 2012).

transaction. Indeed, "[t]he argument that a general release obtained on behalf of a board [of] directors in a [transaction] is a basis to characterize the [transaction] as an 'interested party transaction' *has been squarely rejected*" by our courts.[42] "Delaware courts recognize[ ] that, except in egregious circumstances, the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors."[43] Instead, for releases to constitute disabling conflicts, the directors must have been "*aware that they faced a [threatened] claim at the time they were considering the Merger, that the claim was viable, and that potential liability was material to them.*"[44] In short, the release must have been signed in the face of a "*cloud of litigation* relating to past conduct."[45] Releases obtained during "litigation clear days" do not cause disabling conflicts.[46]

Here, Plaintiff does not even attempt to allege that each of the Independent Directors was interested in any of the Challenged Transactions, other than the Red Box Merger. Plaintiff does not—because he cannot—allege that each of the Independent Directors received any material benefit from the Fees, Dividends, IP Agreements, or Wages and Taxes. Thus, Plaintiff has not adequately pled that the Independent Directors were interested in those Challenged Transactions.

---

[42] *Shabbouei v. Potdevin*, C.A. No. 2018-0847, 2020 WL 1609177, at *8 (Del. Ch. Apr. 2, 2020) (emphasis added) (citation omitted) (dismissing fiduciary duty claim despite argument that a release caused directors to be interested).

[43] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 149 (Del. Ch. 2003) (emphasis added) (citation omitted) (granting motion to dismiss claims of unfairness and breach of fiduciary duty arising from a settlement transaction despite a release from liability obtained by the directors); *see also Maffei v. Palkon*, __ A.3d ___, 2025 WL 384054, at *20 (Del. Feb. 4, 2025) (noting that "providing protection to directors against future liability exposure does not automatically convey a non-ratable benefit").

[44] *In re Riverstone Nat'l, Inc. Stockholder Litig.*, C.A. No. 9796-VCG, 2016 WL 4045411, at *15 (Del. Ch. July 28, 2016) (emphasis added); *see also H-M Wexford LLC*, 832 A.2d at 149 ("Because the threat of personal liability was so insubstantial, there is no force to Wexford's contention that, because the Settlement Agreement includes releases running in favor of the directors, those directors were 'interested' in that transaction.").

[45] *Maffei*, 2025 WL 384054, at *24 (emphasis added).

[46] *Id.* at *21 n.187.

As for the RedBox Merger, Plaintiff asserts that the Independent Directors were interested because of the Release. As discussed above, however, releases that are part of broader transactions do not render directors interested in the transaction, unless the directors were "aware that they *faced a [ ] claim* at the time they were considering the Merger, that the claim was viable, and that potential liability was material to them."[47] The Complaint does not allege that the directors were aware of a claim that was brought or threatened against them at the time of the RedBox Merger, let alone whether such a hypothetical claim was viable or subjected the Independent Directors to a potential liability that was material to them. Nor is there any allegation that the Independent Directors even knew that a release was signed in their favor in connection with the RedBox Merger. Without such allegations, the existence of the Release is insufficient to render the Independent Directors interested in the RedBox Merger. For these reasons, Plaintiff has failed to plead that each of the Independent Directors was interested in the Redbox Merger.

### 2.    Plaintiff Has Not Pleaded that the Independent Directors Lacked Independence

Plaintiff also fails to plead facts sufficient to infer that each of the Independent Directors lacked independence with respect to any of the Challenged Transactions. Under Delaware law, there is a presumption that directors are "independent."[48] To rebut this presumption, "a plaintiff must allege facts that raise sufficient doubt that a director's decision was based on extraneous considerations or influences, and not on the . . . merits of the transaction."[49] "Conclusory" allegations that a director is "beholden" to an interested party or "supine" are insufficient to

---

[47] *See supra* nn.41-45 and accompanying text.

[48] *In re MFW S'holders Litig.*, 67 A.3d 496, 509 (Del. Ch. 2013), *aff'd sub nom. Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014).

[49] *Elkins*, 2004 WL 1949290, at *10.

establish a lack of independence.[50]  Indeed, "it is not enough to merely allege that the Board went

along with [the controller's] plan or succumbed to his desire to steer . . . the Company to" its

desired outcome.[51]    Rather, a lack of independence is established only through "*facts*

demonstrating that *through personal or other relationships* the directors are beholden to the

controlling person or so under their influence that their discretion would be sterilized."[52]  In other

words, "a plaintiff must plead facts that would support the inference that because of the nature of

a relationship or additional circumstances *other than the interested director's stock ownership or*

*voting power*, the non-interested director *would be more willing to risk his or her reputation than*

*risk the relationship with the interested [party]*."[53]

Notably, the mere fact that a corporation has a "controlling interest or majority stock

ownership does not deprive the corporation's directors of the 'presumptions of independence.'"[54]

Indeed, "[a]lleging only that [a] controller[ ] could remove Board members 'at will' *says nothing*

---

[50] *Zuckerberg*, 250 A.3d at 894; *In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 996–97 (Del. Ch. 2014), *aff'd sub nom. Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304 (Del. 2015) (rejecting conclusory allegations that a director is "beholden" to an interested party); *Teamsters Loc. 677 Health Servs. & Ins. Plan v. Martell*, C.A. No. 2021-1075, 2023 WL 1370852, at *22 (Del. Ch. Jan. 31, 2023) (finding the plaintiff's conclusory allegations insufficient to support a breach of fiduciary duty claim, including allegations "that 'Martell spearheaded the sale process,' 'personally convinced the supine Board to proceed' with the Merger, and 'was motivated' to do so by an undisclosed 'self-interest' in his continued employment and executive pay" (citation omitted)); *Postorivo v. AG Paintball Holdings, Inc.*, C.A. No. 2991-VCP, 3111-VCP, 2008 WL 553205, at *7 (Del. Ch. Feb. 29, 2008) (similar).

[51] *Teamsters Loc. 237 Additional Sec. Benefit Fund v. Caruso*, C.A. No. 2020-0620, 2021 WL 3883932, at *15 (Del. Ch. Aug. 31, 2021); *see also In re Alloy, Inc. S'holder Litig.*, C.A. No. 5626-VCP, 2011 WL 4863716, at *8–10 (Del. Ch. Oct. 13, 2011) (holding that conclusory allegations that two management directors "dominated" the seven outside directors did not support an inference that the outside directors were not independent.); *Miramar Firefighters Pension Fund v. AboveNet, Inc.*, C.A. No. 7376-VCN, 2013 WL 4033905, at *3 (Del. Ch. July 31, 2013) (dismissing claim based upon exculpatory provision where plaintiff failed to plead any disabling interest or lack of independence: "The Complaint . . . contains conclusory allegations that the Board 'went along with LaPerch's plan' and 'succumbed' to LaPerch's desire to 'steer the sale of the Company to private equity buyers.' Without more, allegations that the AboveNet Directors acquiesced in LaPerch's plan are insufficient to raise a reasonable inference that they were beholden to, or controlled by, LaPerch.").

[52] *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 175 (Del. Ch. 2005) (cleaned up).

[53] *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1052 (Del. 2004) (emphasis added).

[54] *Weinstein Enters., Inc. v. Orloff*, 870 A.2d 499, 512 (Del. 2005); *Citron v. Fairchild Camera & Instr. Corp.*, 569 A.2d 53 (Del. 1989).

of their independence."[55]  Instead, "[t]here must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person [or entity]."[56]  Such relationships can include employer-employee relationships and familial relationships between the director and the interested party.[57]

Here, Plaintiff has not met this high hurdle with respect to each of the Independent Directors.  Plaintiff does not allege *any* financial, personal, or other relationship between Rouhana or the Parent Entities, on the one hand, and each of the Independent Directors, on the other hand, that would support a reasonable inference that such Independent Director failed to act independently of Rouhana or the Parent Entities.  Instead, Plaintiff alleges only that Rouhana and the Parent Entities had the "ability to remove the [ ] D&Os without cause,"[58] and then resorts over and over again to rote, generic, and conclusory incantations that the Independent Directors were "supine" and "beholden" to Rouhana, "did not question [his] decisions," "did not act contrary to his wishes," "rubber-stamped [his] determinations and dictates," "blindly followed" his direction, and "simply did his bidding."[59]  But merely repeating a conclusory statement over and over again does not transform it into a cognizable factual allegation.  And, as explained above, our courts have made abundantly clear that the mere fact that a purported controller has the ability to remove

---

[55] *In re GoPro, Inc.*, C.A. No. 2018-0784, 2020 WL 2036602, at *2 (Del. Ch. Apr. 28, 2020) (emphasis added); *see also City of Hialeah Emps.' Ret. Sys. on Behalf of nCino, Inc. v. Insight Venture P'rs, LLC*, C.A. No. 2022-0846, 2023 WL 8948218, at *9 (Del. Ch. Dec. 28, 2023) (rejecting argument that directors lacked independence because they were appointed by the alleged controller and depended on the alleged controller for reappointment); *Newman v. KKR Phorm Invs., L.P.*, C.A. No. 2022-0310, 2023 WL 5624167, at *6 (Del. Ch. Aug. 31, 2023, rev. Sept. 5, 2023) ("[P]recedent has recognized that a controlling stockholder's voting power and 'selection' of directors do not, without more, render directors 'beholden' to the controller." (citing cases)).

[56] *Weinstein Enters.*, 870 A.2d at 512.

[57] *See, e.g.*, *Chaffin v. GNI Grp., Inc.*, Civ. A. 16211-NC, 1999 WL 721569, at *5 (Del. Ch. Sept. 3, 1999).

[58] Compl. ¶ 27

[59] *Id.* ¶¶ 1, 27, 30, 34, 57, 67, 72, 77, 81.

a director is insufficient to raise an inference that the director was beholden or supine, and is therefore not enough to attack the director's independence and state a claim.[60]

Because Plaintiff has not identified any relationship—financial or otherwise—between Rouhana or the Parent Entities and each of the Independent Directors that would make it plausible that such Independent Director chose to favor Rouhana's or the Parent Entities' interests over the Company's, Plaintiff fails to rebut the presumption that they were independent.

### 3.    Plaintiff Has Not Pleaded that the Independent Directors Acted in Bad Faith

Plaintiff also fails to plead facts sufficient to infer that each of the Independent Directors acted in bad faith in connection with any of the Challenged Transactions.  To show bad faith, a plaintiff must allege well pleaded facts of intentional fiduciary breaches.[61]  To make this showing at the pleading stage, a plaintiff must proffer an "*extreme set of facts*" to infer that "disinterested directors were *intentionally* disregarding their duties."[62]  The Delaware Supreme Court has recognized that "there is a vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties."[63]  Thus, the plaintiff must "offer a factual narrative that provides at least some explanation of the *motive of the supposed bad faith actor*."[64]  "A conclusory incantation of the words 'bad faith' is not enough."[65]  Given this high

---

[60] *See supra* nn.54-55 and accompanying text.

[61] *In re Chelsea Thera. Int'l Ltd. S'holders Litig.*, C.A. No. 9640-VCG, 2016 WL 3044721, at *1 (Del. Ch. May 20, 2016).

[62] *Dent v. Ramtron Int'l Corp.*, C.A. No. 7950-VCP, 2014 WL 2931180, at *7 (Del. Ch. June 30, 2014) (emphasis added) (citation omitted).

[63] *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009).

[64] *Ryan v. Buckeye Partners, L.P.*, C.A. No. 2021-0432, 2022 WL 389827, at *12 (Del. Ch. Feb. 9, 2022), *aff'd*, 285 A.3d 459 (Del. 2022).

[65] *Buckeye Partners*, 2022 WL 389827, at *12; *see also In re Paramount Gold & Silver Corp. S'holders Litig.*, C.A. No. 10499-CB, 2017 WL 1372659, at *14 (Del. Ch. Apr. 13, 2017) (finding that "plaintiffs' allegations of bad faith" were insufficient to state a claim because they were "wholly conclusory"); *Fisk Ventures, LLC v. Segal*, C.A. No.

standard, "[t]he well-pled allegation of bad faith is a *rare bird*."[66]  Courts thus frequently reject at the pleading stage claims of bad faith based upon allegations similar to those here.[67]

Here, Plaintiff does not come close to meeting this high standard with respect to each of the Independent Directors.  Plaintiff has pleaded no set of facts—let alone an extreme set—sufficient to infer that each Independent Director was "intentionally" breaching their fiduciary duties.  Plaintiff wholly fails to identify any "motive," financial or otherwise, that the Independent Directors had to: (1) approve an allegedly imprudent merger (the RedBox Merger); (2) not take action to stop paying the Fees, not to the Independent Directors, but to one of the Parent Entities; (3) authorize Dividends—again not to themselves—to the preferred stockholders; (4) enter into certain IP Agreements; and/or (5) cause the Company not to pay the Wages and Taxes.

Rather, Plaintiff once again resorts to a conclusory incantation in which he assumes that the Independent Directors must have acted in "bad faith,"[68] without providing any facts to support that contention.   Delaware law is clear that such allegations are not enough.   Plaintiff's allegations—that the Independent Directors "were *negligent*," "failed to make reasoned and *informed decisions*," and failed to request "sufficient information"—implicate, at most, the duty of care.[69]  The care-based nature of Plaintiff's allegations is perhaps most obvious with respect to

---

3017-CC, 2008 WL 1961156, at *11 (Del. Ch. May 7, 2008) (noting that a "hollow invocation of 'bad faith' does not magically render a deficient complaint dismissal-proof").

[66] *Buckeye Partners*, 2022 WL 389827, at *12 (citations omitted).

[67] *In re Sols. Liquidation LLC*, 608 B.R. 384, 402 (Bankr. D. Del. 2019) ("The Complaint mentions that the Parent Defendants failed to take 'necessary steps to diligence X7's true condition . . . in the face of a known duty to act in SDI's best interest and in conscious disregard of such duties.' However, there is no factual support provided whatsoever to forward this allegation past the point of being conclusory."); *In re Old BPSUSH, Inc.*, Adv. Pro. No. 19-50726, 2020 WL 6818435, at *13 (Bankr. D. Del. June 30, 2020) ("[T]here is no alleged behavior that rises to the level of bad faith needed to support a claim against the Directors for breach of the fiduciary duty of loyalty and good faith.").

[68] Compl. ¶ 99.

[69] *Id.* ¶¶ 30, 37, 51, 57, 67, 72, 77, 81.

the RedBox Merger, which was an arm's length transaction with an unaffiliated third party that the Independent Directors would have no motive to enter into, other than because they believed it would benefit the Company.

Plaintiff effectively admits that the Board went through a reasonable process to evaluate the merger, including by retaining Guggenheim, receiving reports and projections from Company management, and holding meetings to confer regarding the merger.[70]  Plaintiff offers no legitimate basis to conclude that each of the Independent Directors was conflicted as to the RedBox Merger. Instead, the entire premise of Plaintiff's claim regarding the merger is that it turned out to be a bad decision.  But this is precisely the type of second guessing the Exculpatory Provision is intended to avoid.[71]  To be sure, our courts are clear that the care-oriented allegations in Plaintiff's Complaint are nowhere near enough to infer bad faith and survive dismissal in the face of an exculpatory provision like the one here.[72]  Put simply, Plaintiff's allegations against each of the Independent Directors fall far short of the "rare bird" that is the "well-pled allegation of bad faith."[73]

---

[70] *See, e.g.*, *id.* ¶¶ 38, 41.

[71] *In re Novell, Inc. S'holder Litig.*, C.A. No. 6032-VCN, 2014 WL 6686785, at *9 (Del. Ch. Nov. 25, 2024) (dismissing fiduciary duty claims, stating that "it is not the Court's job to second-guess decisions made by a majority independent Board which show that its decision-making process and actions were reasonable, though perhaps imperfect.  And, because Plaintiffs do not present facts to question the motives of a majority of the Board's members, there is no genuine issue of material fact for trial that the Board acted in bad faith.  Even assuming that the Board made mistakes in the sales process, such mistakes were—at most—breaches of the duty of care, and Novell's Section 102(b)(7) provision precludes monetary liability . . . ."); *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 286–87 (Del. Ch. 2003) ("The Court is appropriately hesitant to second-guess the business judgment of a disinterested and independent board of directors.").

[72] *Novell*, 2014 WL 6686785, at *9; *Miramar Firefighters*, 2013 WL 4033905, at *8 n.70; *Kahn v. Stern*, C.A. No. 12498-VCG, 2017 WL 3701611, at *13 (Del. Ch. Aug. 28, 2017); *Houseman v. Sagerman*, C.A. No. 8897-VCG, 2014 WL 1600724, at *7 (Del. Ch. Apr. 16, 2014) (stating that allegations of "flaws in the sales process that might amount to a breach of the duty of care," including that the Company "failed to adequately inform itself of the value of the Company by (1) failing to obtain a formal fairness opinion from KeyBanc [and] (2) failing to hire a tax advisor to value its net operating losses," "fall short of demonstrating bad faith").

[73] *Buckeye Partners*, 2022 WL 389827, at *12.

\* \* \* \* \* \*

In sum, Plaintiff has not adequately alleged that each of the Independent Directors was interested, lacked independence, or acted in bad faith.  Therefore, Plaintiff's fiduciary duty claim (Count II) against the Independent Directors must be dismissed under the Exculpatory Provision.

> ### 4.     Plaintiff's Fiduciary Duty Claims for any Actions Occurring Before June 29, 2021 Are Partially Time-Barred

Delaware law sets a three-year statute of limitations for breach of fiduciary duty that runs from the date of the alleged harm.[74]  Under Section 108 of the Bankruptcy Code, a limitations period fixed by non-bankruptcy law that has not ended by the petition date expires on the later of (i) the end of such period, or (ii) two years after the petition date.[75]  The petition date is June 29, 2024 (the day the chapter 11 case was filed).  Thus, Plaintiff's fiduciary duty claims under Count II of the Complaint based on any actions occurring prior to June 29, 2021 are time-barred.

## III.    Plaintiff's Aiding and Abetting Breach of Fiduciary Duty Claim Against the Independent Directors (Count V) Must Be Dismissed

Plaintiff's aiding and abetting claim against the Independent Directors must be dismissed because such a claim only lies against "non-fiduciaries," and the Independent Directors were fiduciaries at the time of each of the Challenged Transactions.  "[A]s a matter of law, aiding and abetting liability generally cannot attach to defendants who themselves owe fiduciary duties to the relevant entity and plaintiff."[76]  Instead, a claim for aiding and abetting can only be sustained against "a nonfiduciary defendant."[77]  Because the Independent Directors were fiduciaries at the relevant times, the aiding and abetting claim must be dismissed as against them.

---

[74] 10 *Del. C.* § 8106; *In re AMC Invs., LLC*, 524 B.R. 62, 80 (Bankr. D. Del. 2015) (citing 10 Del. Code § 8106).

[75] *See* 11 U.S.C. § 108(a).

[76] *CMS Inv. Holdings, LLC v. Castle*, C.A. No. 9468-VCP, 2015 WL 3894021, at *20 (Del. Ch. June 23, 2015).

[77] *Carlson v. Hallinan*, 925 A.2d 506, 542 (Del. Ch. 2006).

## IV.    Plaintiff's Unlawful Dividend Claim (Count X) Against the Independent Directors Must Be Dismissed

Plaintiff's unlawful dividend claim (Count X) against the Independent Directors must be dismissed (1) with respect to the Fees because they do not constitute dividends subject to Sections 170-174 of the DGCL, and (2) with respect to both the Dividends and Fees paid on or before June 30, 2023 because the Company's records demonstrate the Company had adequate surplus.

### 1.    The Fees Are Not Dividends Subject to Sections 170-174 of the DGCL

First, Plaintiff's effort to recast the Fees as dividends[78] that the Court may declare unlawful under Sections 170-174 of the DGCL fails as a matter of law.  As the Court of Chancery has clearly explained, "[t]he declaration of a dividend is a specific corporate act governed by specific sections of the DGCL."[79]  "No section of the DGCL extends the restrictions governing the payment of dividends to other transactions between a corporation and stockholders, including its sole stockholder."[80]  Thus, Delaware courts have *repeatedly rejected* the proposition that "management fees," "license fees," and "service fees" under contracts with stockholders may be categorized as a dividend.[81]  The Court should reach the same conclusion here.

### 2.    Plaintiff Fails to Plead a Violation of Sections 170-174 for Fees and Dividends from January 1, 2020 through June 30, 2023

Second, even if the Fees constituted dividends (they do not), Plaintiff's unlawful dividend claim (Count X) must still be dismissed for all Dividends and Fees paid through June 30, 2023

---

[78] *See* Compl. ¶ 169 ("The [Fees] were the equivalent of dividends paid to its controlling shareholder.").

[79] *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 102 A.3d 155, 202 (Del. Ch. 2014) (citing 8 *Del. C.* §§ 170, 172, 173, 174).

[80] *Id.*

[81] *Id.* (dismissing claim under Rule 12(b)(6) that "service and license fees" can be characterized as "dividends" under Section 173 of the DGCL); *Horbal v. Three Rivers Hldgs., Inc.*, No. 1273-N, 2006 WL 668542, at *3–4 (Del. Ch. Mar. 10, 2006) (dismissing claim under Rule 12(b)(6) that sought to recast compensation to insiders as a "de facto dividend").

because Plaintiff failed to plead that the Company did not have sufficient surplus or that each of the Independent Directors acted willfully or negligently in declaring those dividends.  Under Section 170 of the DGCL, "[t]he directors of every corporation . . . may declare and pay dividends . . . [o]ut of its surplus . . . ."[82]  While directors may be held liable if they "negligently or willfully" issue dividends without surplus,[83] this liability "is tempered by Section 172 of the DGCL."[84]  Under Section 172, each director, in calculating surplus, "*shall be fully protected* in relying" upon the "corporation's records, officers and employees, committees of the board, or experts."[85]

There is no blueprint for determining surplus.  Surplus is defined in the DGCL as the Company's total assets, minus total liabilities, minus capital, and capital equals the par value of all the corporation's issued stock.[86]  The statute "does not require any particular method of calculating surplus, but simply prescribes factors that any such calculation must include."[87]  "Those factors are the corporation's total assets and total liabilities."[88]  Thus, surplus may be calculated by any "methods that fully take into account the assets and liabilities of the corporation."[89]  In that regard, the Court of Chancery has, in dismissing an unlawful dividend claim at the pleading stage, explicitly upheld directors' reliance on "GAAP-based accounting" for determining surplus.[90]

---

[82] 8 *Del. C.* § 170(a).

[83] *Id.* § 174; *In re Chemours Co. Deriv. Litig.*, C.A. No. 2020-0786, 2021 WL 5050285, at *1 (Del. Ch. Nov. 1, 2021).

[84] *In re Chemours*, 2021 WL 5050285, at *13.

[85] 8 *Del. C.* § 172; *In re Chemours*, 2021 WL 5050285, at *13 ("[D]irectors are 'fully protected' under Section 172 from liability if they rely 'in good faith' upon the corporation's records, officers and employees . . . .").

[86] 8 *Del. C.* § 154; *In re Chemours*, 2021 WL 5050285, at *14.

[87] *In re Chemours*, 2021 WL 5050285, at *16; *see also Klang v. Smith's Food & Drug Ctrs., Inc.*, No. Civ. A. 1997 WL 257463, at *4 (Del. Ch. May 13, 1997), *aff'd*, 702 A.2d 150 (Del. 1997).

[88] *In re Chemours*, 2021 WL 5050285, at *16.

[89] *Id.*; *see also Klang*, 1997 WL 257463, at *4 (acknowledging same).

[90] *In re Chemours*, 2021 WL 5050285, at *17 (acknowledging that "Delaware corporations . . . follow generally accepted accounting principles" (*i.e.*, GAAP) and that a complaint needs to "allege with particularity why the Board was required to depart from this 'generally accepted' approach" where GAAP-based figures suggest that there was, in fact, surplus).

Where a "[c]omplaint does not allege with particularity that the Board's surplus determinations fell short of [this] criteria . . . , the determinations comply with Sections 160, 170, and 173."[91] "And if the Board's surplus determinations comply with those sections, there is no 'willful or negligent' violation for which to hold the Director Defendants liable."[92]

Here, Plaintiff fails to plead a lack of surplus or how each of the Independent Directors was "willful or negligent" in paying the Dividends or Fees.  In fact, Plaintiff pleads himself out of Court.  Throughout his Complaint, Plaintiff cites to and incorporates the Company's publicly filed financial statements.[93]  As set forth below, those financials—including the *audited* financial statements prepared in accordance with GAAP—show that the Company's surplus was *tens of millions of dollars greater* than the Dividends and Fees that the Company paid out from January 1, 2020 through June 30, 2023.[94]

| Date | Total Assets | Total Liabilities | Capital | Surplus | Dividends | Management and License Fees | Surplus > Dividends/Fees |
|---|---|---|---|---|---|---|---|
| 12/31/2019 | $ 167,665,484 | $ 76,644,782 | $ 1,367 | $ 91,019,335 | $ 3,304,947 | $ 5,536,390 | $ 82,177,998 |
| 3/31/2020 | $ 158,175,801 | $ 78,390,498 | $ 1,368 | $ 79,783,935 | $ 974,272 | $ 1,324,407 | $ 77,485,256 |
| 6/30/2020 | $ 155,243,494 | $ 85,282,934 | $ 1,368 | $ 69,959,192 | $ 974,272 | $ 1,352,054 | $ 67,632,866 |
| 9/30/2020 | $ 159,644,997 | $ 94,392,712 | $ 1,381 | $ 65,250,904 | $ 1,017,691 | $ 1,936,175 | $ 62,297,038 |
| 12/31/2020 | $ 156,280,786 | $ 91,178,995 | $ 1,492 | $ 65,100,299 | $ 4,142,376 | $ 6,635,696 | $ 54,322,227 |
| 3/31/2021 | $ 166,231,244 | $ 86,232,443 | $ 1,776 | $ 79,997,025 | $ 2,253,385 | $ 2,319,684 | $ 75,423,956 |
| 6/30/2021 | $ 234,218,324 | $ 161,623,641 | $ 1,814 | $ 72,592,869 | $ 2,253,385 | $ 2,213,493 | $ 68,125,991 |
| 9/30/2021 | $ 282,920,360 | $ 158,790,633 | $ 2,017 | $ 124,127,710 | $ 2,253,385 | $ 2,909,686 | $ 118,964,639 |
| 12/31/2021 | $ 245,426,099 | $ 153,826,946 | $ 2,025 | $ 91,597,128 | $ 9,013,540 | $ 11,039,547 | $ 71,544,041 |
| 3/31/2022 | $ 270,944,175 | $ 196,582,668 | $ 2,094 | $ 74,359,413 | $ 2,282,069 | $ 2,920,620 | $ 69,156,724 |
| 6/30/2022 | $ 300,274,060 | $ 247,339,438 | $ 2,124 | $ 52,932,498 | $ 2,391,442 | $ 3,763,695 | $ 46,777,361 |
| 9/30/2022 | $ 917,398,943 | $ 792,100,579 | $ 2,728 | $ 125,295,636 | $ 2,443,970 | $ 4,774,758 | $ 118,076,908 |
| 12/31/2022 | $ 883,879,409 | $ 804,131,470 | $ 2,775 | $ 79,745,164 | $ 9,745,950 | $ 18,400,648 | $ 51,598,566 |
| 3/31/2023 | $ 884,206,275 | $ 844,802,180 | $ 3,038 | $ 39,401,057 | $ 3,012,591 | $ 7,852,141 | $ 28,536,325 |
| 6/30/2023 | $ 878,599,264 | $ 859,789,561 | $ 3,900 | $ 18,805,803 | $ 3,323,756 | $ 4,926,349 | $ 10,555,698 |

---

[91] *Id.* at *16.

[92] *Id.*

[93] *See, e.g.*, Compl. ¶¶ 31–33.  The Court "may consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and some matters judicially noticed."  *In re Foothills*, 476 B.R. at 150; *In re FAH Liquidating Corp.*, 572 B.R. 117, 128 (Bankr. D. Del. 2017) (acknowledging same).

[94] *See* Exs. D–R.

Notably, each of the financial statements used to compile the above table was signed by the Company's CFO and/or audited by the Company's independent auditor, each of whom represented that the financials were accurate and prepared in accordance with GAAP.[95]  And while Plaintiff openly cites to corporate records showing the Company did, in fact, have surplus from 2020 through June 30, 2023, Plaintiff makes no credible attempt to explain why each of the Independent Directors should not be entitled to rely on those records—as they are explicitly authorized to do under Section 172 of the DGCL—or how each of the Independent Directors was "willful[ ] or negligent[ ]" in relying on those records and approving the Dividends/Fees.

The only fact that Plaintiff points to in this regard is a statement by the Company in its Form 10Q filed *on May 20, 2024*, shortly before the Company declared bankruptcy, stating that "[m]anagement concluded that the Company's internal controls over financial reporting were not effective at the reasonable assurance level *as of December 31, 2023*."[96]  It says nothing of the internal controls over financial reporting for earlier periods—*i.e.*, as of June 30, 2023 and before. Plaintiff also conveniently and misleadingly ellipses out the remainder of the disclosure, which states that despite the concerns over internal controls, "*the Company believes the risk of a material misstatement relative to the financial reporting is minimal*."[97]  This allegation does not undermine that: (1) the Company had sufficient surplus from January 1, 2020 through June 30, 2023; and (2) each of the Independent Directors was entitled to rely on the Company's financial statements from January 1, 2020 through June 30, 2023.  Thus, Plaintiff's unlawful dividend claim (Count X) must be dismissed for all Dividends and Fees paid from January 1, 2020 through June 30, 2023.

---

[95] *Id.*

[96] Compl. ¶ 33; Ex. S.

[97] Ex. S (emphasis added).

## V.    Plaintiff's Fair Labor Standards Act Claim (Count XI) Against the Independent Directors Must Be Dismissed

Plaintiff's FLSA claim against the Independent Directors must be dismissed (1) because Plaintiff does not have standing, (2) because Plaintiff does not plead facts sufficient to demonstrate that each of the Independent Directors may be held liable as employers under the FLSA, and (3) to the extent it seeks recovery for anything other than minimum wage or overtime violations.

### 1.    Plaintiff Lacks Standing to Bring a Claim Under the FLSA

As a threshold matter, it is axiomatic that a trustee only has standing to bring actions that are property of the estate and could have been brought by the debtor.[98]  Federal law grants the right to pursue an FLSA claim to the aggrieved employees, not their employer.[99]  Specifically, any harm suffered by employees for any alleged FLSA violation is particular to each employee, and recovery therefore would be reserved for such employees, not enriching the estate as a whole.[100]  Indeed, "[b]ecause the remedy sought is specifically limited by the FLSA as a personal right of action for the benefit of the unpaid employees, the claim is not one that can be said to be property of the bankrupt estate, and it is beyond the reach of the trustee's powers under section 541 to collect and reduce to money the legal and equitable interests of the debtor."  *Id.* at 139.  Accordingly, Count XI must be dismissed for lack of standing.

---

[98] *See, e.g.*, *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (holding that a claim is property of the estate "if the claim existed at the commencement of the filing *and the debtor could have asserted the claim on his own behalf*" under non-bankruptcy law (emphasis added)).

[99] *See* 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer . . . by any one or more *employees*." (emphasis added)); *see also Cherichetti v. PJ Endicott Co.*, 906 F. Supp. 2d 312, 316 (D. Del. 2012) ("[T]he FLSA applies only to employees of covered employers."); *Oddo v. Bimbo Bakeries USA, Inc.*, Civ. No. 2:16-cv-04267, 2017 WL 2172440, at *10–11 (D.N.J. May 17, 2017) (similar).

[100] *See In re S.W. Equip. Rental, Inc.*, 102 B.R. 132, 136 (E.D. Tenn. 1989) ("Under the FLSA, the recovery of unpaid wages is a remedy reserved for the employees . . . . There is no authority supporting the claim that a section 216(b) claim can be considered a cause of action belonging to the debtor[-employer].  The instant FLSA claim asserted by the trustee is, therefore, not within the definition of 'property of the estate.'").

## 2.    Plaintiff Has Not Pleaded a Willful Violation of the FLSA

Even if Plaintiff had standing, he has not pleaded facts sufficient to demonstrate that each of the Independent Directors may be held liable under the FLSA, much less for a willful violation. An individual is potentially subject to liability under the FLSA "when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest."[101]    An individual has adequate authority to be held individually liable "when the supervisor 'independently exercise[s] control over the work situation.'"[102]    Plaintiff does not come close to meeting this standard because the Complaint does not set forth any facts that, if true, would demonstrate that each of the Independent Directors exercised sufficient supervisory control over any employees or had any specific role in the alleged FLSA violation.[103]    Instead, Plaintiff simply repeats conclusory allegations about the Individuals Directors as a whole and merely states that the alleged non-payments were "willful violations,"[104] which is insufficient to maintain a claim for a willful violation of the FLSA.[105] Consequently, Count XI must be dismissed.

---

[101] *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 153–54 (3d Cir. 2014) (quoting *Haybarger v. Lawrence Cnty. Adult Probation & Parole*, 667 F.3d 408, 417 (3d Cir. 2012)).

[102] *Haybarger*, 667 F.3d at 417 (quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)).

[103] *See Wright v. Lehigh Valley Hosp. & Health Network*, Civ. No. 10-431, 2011 WL 2550361, at *3–4 (E.D. Pa. June 23, 2011) (denying motion to amend to assert FLSA claim where plaintiff failed to allege whether the proposed individual defendants had specific roles in determining personnel, financial, and compensation practices in accordance with the FLSA); *Zas v. Canada Dry Bottling Co. of New York, L.P.*, Civ. No. 12-1649, 2013 WL 3285143, at *4 (D.N.J. June 27, 2013) (dismissing FLSA claims against individual defendants where complaint was devoid of allegations that they played a role in failing to pay or denying plaintiffs overtime or making impermissible deductions from wages).

[104] Compl. ¶ 178.

[105] *See Souryavong v. Lackawanna County*, 872 F.3d 122, 126 (3d Cir. 2017) ("Willful FLSA violations require a more specific awareness of the legal issue."); *Buchspies v. Pfizer, Inc.*, Civ. No. 18-16083, 2019 WL 5078853, at *4 (D.N.J. Oct. 10, 2019) (finding that plaintiff failed to plead willfulness based on conclusory assertions "devoid of factual allegations to support [defendant's] knowledge that the alleged conduct was prohibited by the FLSA or a reckless disregard of its obligations under the FLSA").

### 3. Plaintiff's FLSA Claim Is Limited to a Claim for Allegedly Unpaid Minimum Wage and Overtime Pay

Finally, most, if not all, of Plaintiff's FLSA claim exceeds the scope of that statute, which creates employer liability only for unpaid minimum wage and overtime pay.[106]  Plaintiff's FLSA claim, however, does not mention minimum wage or overtime pay at all, and instead seeks the recovery of alleged "Wage, Benefit and Tax Obligations."[107]  But the FLSA does not create such liability except to the extent that the employer has not paid the requisite minimum wage or overtime pay.[108]  Nor does it create liability for an employee who improperly fails to remit benefits or payroll taxes.[109]  Rather, the Internal Revenue Code requires certain tax withholdings, creating a relationship "between the government and the employer, not the employer and the employee."[110]  Accordingly, Plaintiff's FLSA claim must be dismissed to the extent it seeks recovery of anything other than allegedly unpaid minimum wage and overtime pay.

## VI. Plaintiff's Fraudulent Transfer Claims (Counts VIII and IX) Against the Independent Directors Must Be Dismissed

Plaintiff's fraudulent transfer claims must be dismissed against the Independent Directors because the Complaint (i) fails to plead insolvency, lack of reasonable equivalent value, and/or a

---

[106] *See generally* 29 U.S.C. § 201, *et seq.*; *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014) (holding that claims for straight time wages during pay periods without overtime "are not cognizable under the FLSA, which requires payment of minimum wages and overtime wages only").

[107] *See, e.g., Compl.* ¶ 175.

[108] *See Davis*, 765 F.3d at 244 ("[T]o the extent Plaintiffs seek recovery under the FLSA for hours worked but not compensated *below* the [forty]-hour weekly threshold . . . the FLSA does not provide [them] the remedy they seek." (alterations in original) (citation omitted)).

[109] *See, e.g., Victorin v. Maynard*, Civ. No. 2012-037, 2014 WL 4812088, at *3 n.5 (D.V.I. Sept. 29, 2014) (acknowledging that allegations that defendant failed to withhold taxes or provide other benefits did not support FLSA claim); *Barba v. New Century Chinese Buffet, Inc.*, No. 2:20-cv-01557, 2023 WL 6348825, at *10 (W.D. Pa. Sept. 29, 2023) ("[T]he Plaintiffs can't prevail on [their FLSA claim] simply by arguing that the Defendant was violating the federal and state tax laws by paying the Plaintiffs in cash with no withholding of taxes.").

[110] *Cherichetti v. PJ Endicott Co.*, 906 F. Supp. 2d 312, 314 n.2 (D. Del. 2012).

transfer within two years of the Petition Date, and (ii) treats the May 2022 Release Agreement as an isolated transaction rather than one component of an integrated transaction.

### 1.    The Complaint Does Not Plead a Fraudulent Transfer

Under Bankruptcy Code Section 548(a)(1)(B), a trustee may set aside as constructively fraudulent a transfer made or incurred in the two years prior to the petition date, if the debtor received less than a reasonably equivalent value in exchange for such transfer and the debtor was insolvent, had unreasonably small capital, or intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.[111]  To adequately plead claims under Section 548(a)(1)(B), *Iqbal* requires more than a mere "recitation of the statutory requirements" supported by conclusory statements.[112]

Here, the Complaint is devoid of any specific factual allegations that, if true, would establish the insolvency of the Company at the time of the granting of the transfer the Trustee seeks to avoid in Count VIII.  For example, Plaintiff alleges that "the Company reported significant net losses from at least 2020 and was or was rendered insolvent, undercapitalized, and/or generally unable to pay its debts as they came due during the relevant period."[113]  Even if "the Company reported significant net losses from at least 2020," this alone does not establish insolvency.[114]  The remaining portion of this allegation is wholly conclusory.  Paragraph 155 of the Complaint similarly parrots one statutory element of the claim,[115] but pleads no specific facts to support these

---

[111] *See* 11 U.S.C. § 548.

[112] *See, e.g.*, *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 520 (D. Del. 2012) (citation omitted).

[113] Compl. ¶ 75.

[114] *See, e.g.*, *In re Pinktoe Tarantula Ltd.*, Case No. 18-10344, 2023 WL 2960894, at *9–10 (Bankr. D. Del. Apr. 14, 2023) (finding that insolvency was not adequately pled where plaintiff alleged, among other things, that "*[t]he Debtors have lost money each year they have been in operation*" (emphasis added)).

[115] Compl. ¶ 155.

conclusions, which is insufficient as a matter of law.[116]  To make matters worse, the documents

cited by Plaintiff in the Complaint actually support the Company's *solvency* at the time of the

alleged transfer.  For example, the very first page of the Annual Report (Form 10-K) for the fiscal

year ending December 31, 2022 states that, "[a]s of June 30, 2022, the aggregate market value of

the shares of the registrant's common stock held by non-affiliates was approximately $110.5

million."[117]  It also shows assets ($883,879,409) in excess of liabilities ($804,131,470) as of

December 31, 2022.

The Complaint also fails to adequately plead a lack of reasonably equivalent value.  At

paragraph 60, Plaintiff makes the bald assertion that "none of the Defendants provided any

consideration to the Company in exchange for causing the Company to enter into the Release

Agreement,"[118] and later, in paragraph 154, alleges that "[t]he Debtors did not receive reasonably

equivalent value in exchange for the [*sic*] granting the Insider Releases."[119]  Plaintiff pleads no

other facts to support his claim, and Count VIII is thus insufficient as a matter of law.[120]

Count VIII also fails to state a claim insofar as it seeks to avoid an alleged transfer made

more than two years prior to the Petition Date.  Plaintiff alleges that the "Insider Releases were

transfers of property of the Debtors within two years of the Petition Date."[121]  Plaintiff

acknowledges at paragraph 58, however, that the Insider Releases were granted by the Release

---

[116] *See In re Ctr. City Healthcare, LLC,* 641 B.R. 793, 804 (Bankr. D. Del. 2022) ("[A] plaintiff seeking to avoid transfers under section 548 must allege facts sufficient to support a finding that the debtor was insolvent at the time of the transfers or that the transfers rendered it insolvent."); *In re Tropicana Ent., LLC*, 520 B.R. 455, 472 (Bankr. D. Del. 2014) (holding "conclusory statements" insufficient to plead insolvency); *Zazzali,* 482 B.R. at 521–22 (similar).

[117] Ex. P at 1; *see* Compl. ¶ 22 n.3.

[118] Compl. ¶ 60.

[119] *Id.* ¶ 154.

[120] *See Zazzali*, 482 B.R. at 521.

[121] Compl. ¶ 153.

Agreement dated May 10, 2022.  Thus, insofar as the actual transfer the Trustee is seeking to avoid under Count VIII is the May 2022 Release Agreement, the relevant date of any transfer for purposes of a claim under Section 548(a) is May 10, 2022.[122]  The Petition Date in this case was June 29, 2024, over two years after the May 2022 Release Agreement was executed.  Plaintiff thus cannot adequately plead a claim for a fraudulent transfer and Count VIII must be dismissed.

Count IX must be dismissed for similar reasons.  Under Section 544(b) of the Bankruptcy Code, a trustee may avoid any transfer that is voidable under applicable state law.[123]  Under Section 6 *Del. C.* § 1305, a transfer made or obligation incurred by a debtor is fraudulent if the debtor made the transfer or incurred the obligation (i) without receiving a reasonably equivalent value, and (ii) the debtor was insolvent.[124]  As explained, Plaintiff's conclusory statements that the Company did not receive reasonably equivalent value and was insolvent fail to state such a claim.

> ### 2.    The Complaint Cannot Seek to Avoid the Release Because It Is Just One Component of a Larger, Integrated Transaction

Both Counts VIII and IX must also be dismissed because Plaintiff seeks to avoid only one component (the Release) of a broader, integrated transaction (the entire Redbox Merger).  Under the "integrated transaction" doctrine, two "interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction."[125]  Here, the RedBox Merger was memorialized by a Merger Agreement.[126]  Section 8.08 of the Merger Agreement specifies that it and "all exhibits annexes, and schedules referred to" therein "constitute the entire

---

[122] *See In re Cafe Creme, Ltd.*, 244 B.R. 221, 237–38 (Bankr. S.D.N.Y. 2000) (holding that, where a debtor signs an indivisible contract obligating it to make a future transfer, the relevant date for purposes of Section 548(a) is date the contract was signed, not date of ultimate transfer).

[123] 11 U.S.C. § 544(b).

[124] *See* 6. *Del. C.* § 1305.

[125] *In re Waterford Wedgwood USA, Inc.*, 500 B.R. 371, 379 (Bankr. S.D.N.Y. 2013) (citation omitted); *see also In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 546–47 (D. Del. 2005) (acknowledging the doctrine).

[126] Ex. T (RedBox Merger Agreement).

Agreement."[127]    The Release is attached as Exhibit C to the Merger Agreement.[128]    Thus, the Release is just one component of the larger, integrated Redbox Merger transaction.

Despite this, Counts VIII and IX inappropriately dissect and isolate the Release from the larger integrated Redbox Merger and assert, in a wholly conclusory manner, that the Debtors did not receive reasonably equivalent value in exchange for the Release.  In doing so, Plaintiff does not address any reasonably equivalent value (or lack thereof) resulting from the Redbox Merger and the Release *as a single transaction*.  Because the Complaint fails to address or assert a lack of reasonably equivalent value in connection with the fully integrated transaction—the Redbox Merger—Counts VIII and IX fail to adequately plead a fraudulent transfer.[129]

**VII.    <u>Counts XII and XIII Must Be Dismissed</u>**

Finally, Count XII and Count XIII must be dismissed as against the Independent Directors because they have not made any claims in the bankruptcy.  Further, as set forth above, Plaintiff has not pleaded any specific, non-conclusory facts that would demonstrate that each of the Independent Directors committed gross negligence, willful misconduct, bad faith, or similar liability-generating acts that would justify equitable subordination of any of their claims under Bankruptcy Code Section 510(c).

<u>CONCLUSION</u>

For these reasons, the Independent Directors respectfully request that the Court grant their Motion to Dismiss.

---

[127] *Id.* § 8.08.

[128] *Id.*, Recitals.

[129] *In re Old CarCo LLC*, 435 B.R. 169, 179–87 (Bankr. S.D.N.Y. 2010) (accepting the collapsing doctrine and holding that "the Complaint fails to state a claim because it does not include, or even reference, the significant value received . . .  pursuant to the overall transaction").

Dated: July 11, 2025

**SAUL EWING LLP**

*/s/ Evan T. Miller*
Evan T. Miller (No. 5364)
1201 North Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6864
Facsimile: (302) 421-6813
Email: evan.miller@saul.com

-and-

**HOLLAND & KNIGHT LLP**
Jessica Magee (Admitted *Pro Hac Vice*)
Texas Bar No. 24037757
Steven J. Levitt (Admitted *Pro Hac Vice*)
Texas Bar No. 24092690
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214-964-9500
Jessica.Magee@hklaw.com
Steven.levitt@hklaw.com

*Counsel for Defendant Cosmo DeNicola*

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Christopher B. Chuff*
David M. Fournier (DE No. 2812)
Christopher B. Chuff (DE No. 5729)
Taylor B. Bartholomew (DE No. 6223)
Tori L. Remington (DE No. 6901)
Tyler R. Wilson (DE No. 7129)
1313 N. Market Street, Suite 1000
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
david.fournier@troutman.com
chris.chuff@troutman.com
tori.remington@troutman.com
tyler.wilson@troutman.com

*Counsel for Defendants Fred M. Cohen,
Christina Weiss Lurie, Martin Pompadur,
and Diana Wilkin*

**THOMAS LAW LLC**

*/s/ Mary S. Thomas*
 Mary S. Thomas (DE Bar No. 5072)
1521 Concord Pike, Suite 301
Wilmington, DE 19803
Telephone: (302) 647-1203
mthomas@marythomaslaw.com

-and-

**LAW OFFICES OF THIRU VIGNARAJAH
LLC**
Thiru Vignarajah, Esq.
Ross Ingram, Esq.
211 Wendover Road
Baltimore, MD 21218
Telephone: (410) 456-7552
thiru@thirulaw.com
ross@thirulaw.com

*Counsel for Defendant Vikram Somaya*