# **EXHIBIT 10-B**

DocuSign Envelope ID: 62319C93-19A2-4037-8B34-7FE67104F96C



May 10, 2024

DJCTM Lending, LLC

Dear Dean Bloxom,

Set forth below are the essential deal terms pursuant to which Screen Media Ventures, LLC ("Screen Media") has agreed to license to DJCTM Lending, LLC ("DJC") the following rights.

1. <u>Pictures</u>.
   "The Pictures' as set forth on Schedule A, attached hereto and made a part hereof (individually referred to herein as a "Picture" collectively referred to herein as "Pictures").

2. <u>Rights.</u>
   Screen Media hereby grants and assigns DJC the following rights:
   As of the date hereof and subject to the availability of each Picture as set forth on Schedule A, Screen Media grants and assigns DJC the right to exploit the Pictures via subscription video-on-demand ("SVOD") services throughout the "Territory" (defined hereafter) and Amazon's PVOD (Prime Video Direct) service and Google's SVOD service.

3. <u>Reserved Rights</u>
   All rights not specifically granted to DJC hereunder are reserved by Screen Media.

4. <u>Territory.</u>
   The "Territory" shall mean the United States of America and its territories, possessions, and protectorates (which shall mean and include American Samoa, Baker Island, Caroline Islands [including Palau and the Federated States of Micronesia], Guam, Marshall Islands, Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands [including St. Croix, St. John, and St. Thomas], and Wake Island),.

5. <u>Term.</u>
   Subject to any limitations as set forth on Schedule A the "term of this Agreement" shall commence immediately and continuing through April 30, 2034, the Term may be extended if at the conclusion of the Term, DJC has not recouped the Minimum Guarantee (defined hereafter) until such time as DJC recoups the Minimum Guarantee..

6. <u>Advance</u>
   DJC, upon execution hereof, shall pay Screen Media an Advance of ▮▮▮▮▮▮▮▮▮▮

7. <u>Distribution Fee</u>

    [redacted]

8. <u>Sales Agent Fee</u>

    [redacted]

9. <u>Allocation of Gross Receipts.</u>

    [redacted]

10. <u>Third Party Obligations.</u>

    [redacted]

11. <u>Delivery Materials</u>
    DJC acknowledges and agrees that upon execution of this Agreement Screen Media has satisfied its delivery requirements by providing DJC with a fully executed Lab Access Letter as set forth in Schedule B and DJC further acknowledges that it is accepting delivery on an as is basis.

12. <u>Buy Back</u>

    [redacted]



13. Statements and Payments.
    DJC shall provide Screen Media with quarterly statements and payments of account for the first two (2) years and semiannually thereafter, together with payments then due, detailing all income and expenses. Screen Media to have industry-standard audit and inspection rights. All statements shall be deemed incontestable after two (2) years from the date issued unless specifically objected to in writing by Screen Media.

14. Screen Media's Representation and Warranties. To induce DJC to enter into this Agreement, and in consideration thereof, the Screen Media represents and warrants to the DJC as follows:

    a) Authority. Screen Media has the right and power to enter into this Agreement and to make all the grants herein contained and to perform Screen Media's obligations hereunder.

    b) Ownership. Screen Media owns or controls all of the rights herein sold, granted or licensed to DJC.

    c) Rights Unimpaired. Screen Media has not done, nor authorized to be done, nor will it authorize to be done, any act or thing by which any of the rights herein granted have been or will be in any way materially adversely impaired. The granted and licensed rights are and will remain free and clear of any liens or encumbrances (excluding customary guild liens, such as SAG, DGA, AFTRA) or claims or rights or charges which would or might serve to materially adversely impair, limit or restrict the rights granted and licensed to DJC hereunder or the exercise by DJC of such rights. Screen Media will not henceforth do, authorize or permit any act, thing, lien, encumbrance, claim, right or charge that would materially adversely affect DJC's rights in the Pictures hereunder. Screen Media has not heretofore and shall not hereafter, grant to any third party any rights herein granted to DJC.

    d) Noninfringement. Neither the rights granted to DJC hereunder, nor its exercise of such rights, will violate or infringe upon the trademark, tradename, copyright, right of privacy, property right or any other right of any entity or third party.

    e) Licenses. The Pictures have proper and effective licenses for the Term (i) the use

of the sound recording system employed in the production of the Pictures; (ii) the use of any copyrighted music or other material therein; and (iii) the use of any patented processes, methods and inventions employed in the production thereof.

f) Clearances. The Pictures have (i) proper and effective licenses for the Term or grants of authority to use the results of the services of performers and other persons connected with the production of the Pictures, in exercising the rights granted hereunder; and (ii) the consent of such persons to use their names, likenesses and biographies for the purposes of advertising and exploiting the Pictures in accordance with the terms hereof.

g) Music. DJC shall have the right to use all musical compositions for the Term contained in the Pictures in context, in connection with its exhibition and/or exploitation of the Pictures herein without payment of any fees, royalties or other payments to any third parties, except for music performance rights fees. All music performance rights relating to the musical compositions contained in the Pictures are controlled by ASCAP, BMI or SESAC or their affiliates, or are in the public domain, or are owned or controlled by SCREEN MEDIA. To the extent such rights are owned or controlled by Screen Media, Screen Media hereby grants DJC the right to utilize such musical compositions' performance rights at no cost or expense to DJC.

h) Copyright. Screen Media agrees that it will undertake all reasonable steps in accordance with its customary business practices necessary to protect the copyrights of the Pictures throughout the Territory during the Term hereof.

i) Litigation. There is no litigation, proceeding or claim pending or, to the best of Screen Media's knowledge, threatened against Screen Media which may materially adversely affect Screen Media's exclusive rights in and to the Pictures. There are and will be no agreements, commitments or arrangements whatsoever to which Screen Media is a party that may materially adversely affect DJC's rights hereunder.

j) Subsequent Delivery. Screen Media has all items in its lab sufficient to exercise the distribution rights granted hereunder, e.g. 4K DCM; UHD Master; high-def video masters, closed captioning files, name and likeness restrictions, and any additional materials needed to distribute to the rights granted.

k) No Rights Conflict. All SVOD rights granted hereunder are available as set forth on Schedule A. They do not conflict with rights granted for AVOD or TVOD for the Pictures.

15. DJC's Representations And Warranties. To induce Screen Media to enter into this Agreement, and in consideration thereof, DJC represents and warrants to Screen Media that:

a) <u>Authority</u>. DJC has the right to enter into this Agreement and to perform DJC's obligations hereunder. The person signing on behalf of the DJC has the power and authority to execute this Agreement for and on behalf of the DJC.

b) <u>Compliance</u>. DJC shall comply with its payment obligations and its other obligations set forth herein in accordance with the terms of this Agreement.

c) <u>Credits</u>. DJC shall not alter the credits or copyright notice for the Picture.

d) <u>Non-Infringement</u>. Any materials created by DJC shall not infringe on any third party right.

16. <u>Additional Rights; No Assumption Of Obligations</u>

   a) <u>Control</u>. Subject to the terms hereof and in compliance with all applicable rules and regulations, DJC shall have sole and complete control and discretion regarding all matters involving the licensing, distribution and exhibition of the Pictures hereunder.

   b) <u>No Assumption of Past Obligations</u>. The parties agree that DJC is not assuming any obligations or indebtedness of SCREEN MEDIA or relating to the Pictures prior to the date of this Agreement.

   c) The following additional rights are hereby granted to DJC:

   i. <u>Advertising and Promotion Rights</u>. To advertise, promote, publicize and market the Pictures by any and all means, whether now known or hereafter developed, including but not limited to television and radio broadcasts provided not more than 2-minutes of the Picture is utilized for any such advertising or promotion.

   ii. <u>Use of Titles</u>. To use, in connection with the distribution and exploitation of the Pictures, their present title(s) or, subject to any contractual restrictions and AWP's consent (not to be unreasonably withheld), different title(s) if the DJC so chooses.

   iii. <u>Use of Performers' Names</u>. Subject to any restrictions of which DJC is advised, to disseminate, reproduce, print and publish the names, likenesses and biographies of the performers, director(s), producer(s), author(s), and writer(s) who rendered services in or in connection with the production of the Pictures, for the sole purpose of advertising and promoting the Pictures hereunder. In no event shall such use be made so as to indicate or imply that any such person is endorsing a commercial project or service.

   iv. <u>Editing Rights</u>.

  A. Subject to any third-party restrictions, that DJC has prior written notice of, DJC may make any and all changes and modifications in the Picture, including, without limitation, cutting, recutting, editing, re-editing, re-titling, deletions, dubbing, subtitling, or supplementing the Pictures or any part or parts thereof, which the DJC shall determine to be necessary or desirable, only to the extent necessary in DJC's good faith judgment to avoid litigation, to comply with the regulations of any governmental agency or department, or to conform to time requirements or continuity acceptance standards of any licensee, or to insert commercials, or to delete nudity, obscenity, or similar objectionable materials, and to otherwise comply with applicable broadcast standards and practices, or the standards and practices of a particular exhibitor;

  B. Subject to any contractual restrictions of which DJC is advised, the right to add credits in any customary form immediately before or after the main and/or end titles of the Pictures and in all advertising and publicity relating to the Picture identifying the DJC or its designees as the DJC of the Picture; and

  C. DJC agrees that it shall not delete any credits, copyright notices and trademarks that appear on material delivered or made available by Screen Media hereunder, provided that any inadvertent breach of these credit requirements shall not constitute a breach of this Agreement.

v. <u>Music Rights</u>. To use all music contained in the Pictures in context and only in connection with the exhibition and exploitation of the Pictures and trailers thereof. DJC may utilize up to 3 minutes of promotional clips to promote the pictures subject to any third party restrictions of which DJC has prior written notice.

vi. <u>Infringement Actions</u>. To bring actions to prevent infringements of the copyrights of the Pictures, or their unauthorized distribution or exhibition.

vii. <u>Commercials.</u> The right to authorize television exhibitors to broadcast and transmit commercial advertising and other announcements within or in connection with the exhibition of the Pictures.

viii. <u>Rights on Expiration of Third Party Licenses</u>. Upon the expiration of all Outstanding Licenses and further rights" relating to the Pictures, all rights encompassed within said licenses shall immediately be deemed granted to DJC hereunder, and DJC shall have the sole and exclusive right to exploit the rights encompassed by said licenses, including, without limitation to renew or extend such licenses. The rights herein granted to the DJC shall be exercisable by it directly or through its subsidiaries, affiliates, agents

and sub-distributors.

17. Royalties



18. Default; Relief
In the event of a breach by either party hereunder, the other party's sole remedy shall be an action at law for damages and in no event shall either party be entitled to an injunction, recision, termination, or any equitable relief.

19. Indemnity
Each party shall indemnify, defend and hold harmless the other party, television stations, and advertisers together with officers, directors, agents, employees, successors, and permitted assigns of each of the foregoing from all third party claims, liabilities, loss or damage, including reasonable attorneys' fees, arising out of or caused by any material breach by it of any representation, warranty, agreement or covenant set forth in this Agreement or by its failure to perform any of its obligations hereunder, or by any act or omissions of such party in connection with the exploitation of the Pictures. DJC may, in its discretion, and at its sole cost and expense, intervene in or otherwise participate in any legal proceeding brought against Screen Media that would materially adversely affect DJC's rights hereunder. If any such claim is made against either party hereto, said party shall so notify the other party in writing promptly upon learning thereof. There shall be included in the loss, liability, cost, damage and expense against which the indemnities are indemnified hereunder, all sums which any of the indemnitees may pay in settlement of any such claim. The parties agree that neither shall settle any claim affecting the other's rights without the other party's prior written consent, not to be unreasonably withheld.

20. Rights Cumulative
The rights and remedies of the parties hereunder, whether specified or otherwise, shall be cumulative, and the exercise of one or more of them shall not preclude the exercise of any other rights or remedies they may have hereunder, or by law.

21. Approvals
In each instance where approvals are required in this Agreement, the parties agree that such approvals shall not be unreasonably withheld.

22. Confidentiality
The parties agree to keep confidential all of the economic terms of this Agreement unless: (i) approved in writing by the other party, (ii) required by any court or governmental authority and (iii) to business, legal and accounting advisors.

23. Assignments
Either party may assign this agreement and Screen Media may assign any portions of the

payments due to Screen Media without any restriction unless the other party demonstrates that such assignment shall materially diminish its rights or remedies hereunder. In this connection, the party wishing to make an assignment shall so advise the other party in writing. The party so advised shall have a period of twenty (20) business days from its receipt of such notice to object, in writing, to such assignment, otherwise, the assignment shall be deemed approved. Notwithstanding the foregoing, DJC shall have the right, without Screen Media's consent, to assign this Agreement as part of a sale, merger, transfer or other disposition of all or substantially all of DJC's assets.

24. Relationship of Parties
Nothing herein contained shall be deemed to constitute a partnership, agency, employment relationship between or joint venture by the parties, nor shall either of them be deemed the agent for the other. Neither party shall become liable for any representation, act or omission of the other contrary to the provisions hereof.

25. Further Documents
Each party shall execute, acknowledge, and deliver to the other, or procure the execution, acknowledgment and deliver to the other, of any and all further assignments, agreements and instruments that the other party may deem necessary or expedient to effectuate the purposes of this Agreement.

26. Waivers
No waiver by either party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default.

27. Governing Law.
This Agreement shall be construed and enforced in accordance with, and shall be governed by, the internal laws of the State of New York, without reference to conflicts of laws principles. The parties hereby agree to exclusive venue and personal jurisdiction in the United States District Court for the Southern District of New York, unless for any reason the Federal Court should lack jurisdiction over the action, in which case the parties agree that exclusive venue and jurisdiction shall be in any State Court sitting in New York, NY.

28. Intellectual Property
Screen Media agrees and acknowledges that: (1) the Pictures are works of authorship protected under Title 11 of the United States Code and are intended to constitute, and do constitute, "Intellectual Property" within the meaning of sections 101(35)(A) and 365(n) of Title 11 of the United States Code (the "Bankruptcy Code"); (2) the rights of Screen Media hereunder are "rights to intellectual property" within the meaning of such sections; and (3) the obligations of Screen Media set forth in the Agreement shall continue in full force and effect, and shall bind Screen Media or any Trustee in Bankruptcy of Screen Media, in the circumstances described in subsections (3) and (4) of such section 365(n) of the Bankruptcy Code.

29. Modification

This Agreement constitutes the complete understanding between the parties and supersedes any other agreements and arrangements relating to the subject matter of this Agreement. This Agreement cannot be modified except by written agreement signed by the party to be charged.

30. Notices

    a) All notices to be sent to Screen Media shall be sent by fax and registered or certified mail (with delivery deemed to be the date of mailing) to:

        Screen Media Ventures LLC
        757 Third Avenue, 2nd Floor
        New York, New York 10017
        Attention: David T. Fannon, EVP
        E-mail david@screenmedia.net
        Telefax Number: (212) 308-1791

    b) All notices to be sent to DJC shall be sent by fax and registered or certified mail (with delivery deemed to be the date of mailing) to:

        Fortitude Family Office, LLC
        8901 E Pima Center Pkwy,
        Suite 145
        Scottsdale, AZ 85258
        Att: Matt Walker  matt@fortitudefo.com
        602 834 0090

        With a copy to
        Surpin, Mayersohn & Coghill
        1880 Century Park East, ste 404
        Los Angeles, CA 90067
        Att: Paul F. Mayersohn pmayer@surpmaylaw.com
        310 553 6503

31. Agreement Complete
    This Agreement (together with the Schedules and Exhibits attached hereto) contains the entire understanding of the parties and, without limiting the foregoing, supersedes and replaces any and all previous understandings, projections, and/or agreements between the parties hereto concerning the subject matter hereof. No such prior understanding, projection, or agreement may be used by either party hereto to establish, deny, maintain, or challenge a claim for damages in any legal proceeding concerning a dispute hereunder except as may be permitted by the applicable "parole evidence rule" and/or related law. Neither of the parties hereto has made any representation, warranty, covenant, or undertaking of any nature whatsoever, expressed or implied, in connection with or relating to this Agreement other than as herein expressly set forth.

If the terms set forth above meet with your approval, please indicate by signing in the space provided below.

Yours truly,

**SCREEN MEDIA VENTURES, LLC**

By: _William J. Rouhana, Jr._

AGREED TO AND ACCEPTED

**DJC.**

By: _Dean Blossom_

Date: May 16, 2024

DocuSign Envelope ID: 62319C93-19A2-4037-8B34-7FE67104F96C

SCHEDULE B

March 9, 2024
Screen Media ventures, LLC
Attn: Alex Girard
    **Re:**    **Laboratory Access Letter**

Dear Alex:

You hereby acknowledge that you are holding on deposit in the name of the undersigned Screen Media ventures, LLC ("**Screen Media**") at the laboratory certain negative and pre-print materials, for the audio visual works set forth on Exhibit A attached hereto ("**Materials**"). You further acknowledge that the Materials are of standard commercial quality and suitable for making duplicating materials from which commercially acceptable release prints of the Picture can be manufactured, including dubbed and subtitled versions thereof.

Licensor has granted to DJC ("**DJC**") certain distribution and other rights in the Materials. Accordingly, you are hereby instructed, authorized, and directed to provide immediate access to the Materials to **DJC** and to honor all orders for Materials by **DJC** and its successors, assigns and licensees with respect to such Materials.

Screen Media hereby warrants and represents that it controls the rights to grant these rights to **DJC** and shall indemnify Deluxe Media Entertainment for any claims made or threatened with respect to this Access Letter.

Very truly yours,


David Fannon
President Screen Media Ventures, LLC
David@screenmedia.net
646 732 9098