## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.*, | Case No. 24-11442 (MFW) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| GEORGE L. MILLER, CHAPTER 7 TRUSTEE, | Adv. Proc. No. 25-ap-50399 (MFW) |
| Plaintiff. | [Related Docket Nos. 1, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47] |
| v. | |
| WILLIAM J. ROUHANA, JR., AMY L. NEWMARK, CHRISTOPHER MITCHELL, FRED M. COHEN, COSMO DENICOLA, MARTIN POMPADUR, CHRISTINA WEISS LURIE, DIANA WILKIN, VIKRAM SOMAYA, JASON MEIER, AMANDA R. EDWARDS, CHICKEN SOUP FOR THE SOUL PRODUCTIONS, LLC, CHICKEN SOUP FOR THE SOUL, LLC, CHICKEN SOUP FOR THE SOUL HOLDINGS, LLC, | |
| Defendants. | |

**TRUSTEE'S OMNIBUS <u>RESPONSIVE BRIEF I</u> IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE TRUSTEE'S COMPLAINT FOR (I) BREACH OF FIDUCIARY DUTY; (II) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; (III) AVOIDANCE OF FRAUDULENT TRANSFERS; (IV) RECOVERY OF ILLEGAL DIVIDENDS; (V) DAMAGES FOR NONPAYMENT OF EMPLOYEE WAGES, BENEFITS, AND PAYROLL TAXES; (VI) EQUITABLE SUBORDINATION; AND (VII) DISALLOWANCE OF CLAIMS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**I. PRELIMINARY STATEMENT** ...........................................................................................1

**II.      6**

**LEGAL ARGUMENT** ..........................................................................................................6

    A.    The Complaint Satisfies the Notice and Plausibility Requirements of Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure ....................................6

    B.    The Complaint Provides Detailed and Specific Allegations Sufficient to Put Each of the Defendants on Notice of the Claims Against Them.......................9

    C.    The Complaint Does Not Impermissibly Rely on "Group Pleading" ...................14

    D.    Exculpation Is an Affirmative Defense That Is Not Properly Considered at the Motion to Dismiss Stage and Exculpation Provisions Do Not, as a Matter of Law, Bar Breach of Duty of Loyalty Claims Against Directors (First and Second Claims for Relief), Any Breach of Fiduciary-Duty Claims Against Officers (Third Claim for Relief), or Any Claims for Aiding and Abetting a Breach of Fiduciary Duty (Fifth Claim for Relief) ...........17

    E.    The Business Judgment Rule is an Affirmative Defense That is Not Properly Considered at the Motion to Dismiss Stage ...........................................23

    F.    The Breach of Fiduciary Duty Claims Are Plausible  and Survive the Motions to Dismiss ...............................................................................................28

        1.    The Complaint Alleges That Each of the Defendants Served in a Fiduciary Capacity at the Times of the Challenged Breaches of Fiduciary Duties.......................................................................................29

        2.    The Complaint Alleges That Each of the Defendants Breached His, Her, or Its Fiduciary Duties to the Company ..............................................32

        3.    The Redbox Merger Was an Interested-Party Transaction.......................37

**III. CONCLUSION**...............................................................................................................**42**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ad Hoc Comm. of Eq. Holders v. Wolford*
554 F. Supp. 2d 538 (D. Del. 2008)........................................................................... 19, 27

*Anderson v. Leer*
265 A.3d 995 (Del. 2021) ........................................................................................... 17

*Arnold v. Soc'y. for Sav. Bancorp*
650 A.2d 1270 (Del. 1994) ......................................................................................... 22

*Aronson v. Lewis*
473 A.2d 805 (Del. 1984) ........................................................................................... 41

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ..................................................................................................... 7

*Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*
473 B.R. 525 (Bankr. D. Del. 2012) ...................................................................... 19, 35

*Balasiano v. Borell (In re Furniture Factory Ultimate Holding, L.P.)*
2023 Bankr. LEXIS 2164 (Bankr. D. Del. Aug. 21, 2023) ................................. 10, 14, 21

*Barsa v. Theseus Strategy Grp. (In re Old BPSUCH, Inc.*
2020 Bankr. LEXIS 1697 (Bankr. D. Del. June 30, 2020).............................................. 40

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)...................................................................................................... 7

*Bocock v. Innovate Corp.*
2022 Del. Ch. LEXIS 307 (Oct. 28, 2022) ..................................................................... 16

*Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig.)*
906 A.2d 27 (Del. 2006) ............................................................................................... 22

*Brick Law PLLC v. Sticky's Holdings (In re Sticky's Holdings)*
2025 Bankr. LEXIS 1333 (Bankr. D. Del. June 3, 2025)................................................. 20

*Buchwald Cap. Adv. v. Schoen (In re OPP Liq.)*
2022 Bankr. LEXIS 651 (Bankr. D. Del. March 14, 2022)9, 10, 14, 18, 20, 24, 25, 26, 28, 32, 33, 35, 36, 37, 41

*Burtch v. Milberg Factors, Inc.*
662 F.3d 212 (3d Cir. 2011)........................................................................................ 7, 8

*Burtch v. Owlstone, Inc. (In re Advance Nanotech, Inc.)*
    2014 Bankr. LEXIS 1362 (Bankr. D. Del. April 2, 2014) .......................................... 28, 37

*Burtch v. Zachem (In re TZEW Holdco)*
    2023 Bankr. LEXIS 2306 (Bankr. D. Del. Sept. 19, 2023) ............................................. 17

*Carickhoff v. Cantor (In re Live Well Fin.)*
    2023 Bankr. LEXIS 1569 (Bankr. D. Del. June 14, 2023) ............................................. 25

*Center City Healthcare v. McKesson Plasma & Biologics LLC (In re Center City Healthcare)*
    641 B.R. 793 (Bankr. D. Del. 2022) ............................................................................... 26

*Cognizant Tech. Sols. Corp. Derivative Litig.*
    101 F.4th 250 (3d Cir. 2024) .......................................................................................... 23

*Dershaw v. Nevels (In re Swarthmore Grp.)*
    667 B.R. 258 (Bankr. E.D. Pa. 2025) ............................................................................ 24

*Edwards v. City of Goldsboro*
    416 F.3d 231 (4th Cir. 1999) .......................................................................................... 21

*EisnerAmper, LLC v. Morgan (In re SRC Liquidation, LLC)*
    765 F. App'x 726 (3d Cir. 2019) .................................................................................... 33

*Essendant, Inc. S'holder Litig.*
    2019 Del. Ch. LEXIS 1404 (Dec. 30, 2019).................................................................. 20

*EZCORP Inc. Consulting Agmt. Deriv. Litig.*
    130 A.3d 934 (Del. 2016) ............................................................................................... 20

*Finkel v. Parzych (In re Midnight Madness Distilling, LLC)*
    2024 Bankr. LEXIS 1699 (Bankr. E.D. Pa. July 23, 2024) ........................................... 14

*Firefighters' Pension Sys. v. Found. Bldg. Materials*
    318 A.3d 1105 (Del. Ch. 2024)....................................................................................... 22

*Friedman v. Wellspring Cap. Mgmt. (In re SportCo Holdings)*
    2021 Bankr. LEXIS 2848  (Bankr. D. Del. Oct. 14, 2021)............................................. 19

*Genworth Fin. Consol. Derivative Litig.*
    2021 Del. Ch. LEXIS 223 (Sep. 29, 2021) .................................................................... 17

*Grabski v. Andreessen*
    2024 Del. Ch. LEXIS 29, 2024 WL 390890 (Del. Ch. Feb. 1, 2024) ............................ 31

*Guiliano v. Schnabel (In re DSI Renal Holdings)*
    574 B.R. 446 (Bankr. D. Del. 2017) ......................................................................... 21, 37

*H-M Wexford LLC v. Encorp, Inc.*
    832 A.2d 129 (Del. Ch. 2003) ............................................................ 38, 39, 41

*Howland v. Kumar*
    2019 Del. Ch. LEXIS 22 (June 13, 2019) .......................................... 17

*Hurwitz v. Mahoney (In re Space Case)*
    2024 Bankr. LEXIS 902 (Bankr. D. Del. Apr. 15, 2024) ................... 27

*Kapila v. Gregory E. Matton, P.A. (In re Am. Managed Care, LLC)*
    2016 Bankr. LEXIS 2404 (Bankr. M.D. Fla. June 28, 2016) ............ 30

*Katchadurian v. NGP Energy Cap. Mgmt. (In re Northstar Offshore Grp.)*
    616 B.R. 695 (Bankr. S.D. Tex. 2020) .............................................. 15

*Kost v. Kozakiewicz*
    1 F.3d 176 (3d Cir. 1993) .................................................................. 8

*Leal v. Meeks (In re Cornerstone Therapeutics Inc. S'holder Litig.)*
    115 A.3d 1173 (Del. 2015) ................................................... 17, 19, 20, 22

*Lipscomb v. Clairvest Eq. Partners (In re LMI Legacy Holdings)*
    2017 Bankr. LEXIS 1150 (Bankr. D. Del. Apr. 27, 2017) ................. 8

*Liquidation Tr. v. Stiens (In re Solutions Liq.)*
    608 B.R. 384 (Bankr. D. Del. 2019) .................................................. 40

*MBIA Ins. Co. v. Tilton (In re Zohar III)*
    2021 Bankr. LEXIS 1947 (Bankr. D. Del. July 23, 2021) .................. 9, 14

*Miller v. Bradley (In re W.J. Bradley Mortg. Cap. )*
    598 B.R. 150 (Bankr. D. Del. 2019) .................................................. 18, 28

*Miller v. McCown De Leeuw & Co. (In re The Brown Schools)*
    368 B.R. 394 (Bankr. D. Del 2007) ................................................... 18, 19, 20, 25

*Miller v. Mott*
    2023 Bankr. LEXIS 2460 (Bankr. D. Del. Oct. 4, 2023) ................... 8

*Nguyen v. Barrett*
    2016 Del. Ch. LEXIS 147 (Sept. 28, 2016) ....................................... 20

*Off. Comm. of Unsecured Creditors v. Elkins (In re Integrated Health Serv.)*
    2004 Del. Ch. LEXIS 122 (Aug. 24, 2004) ....................................... 22

*Official Comm. of Unsecured Creditors v. Indep. Purchasing Coop. (In re Quantum Foods, LLC)*
    558 B.R. 111, 115 (Bankr. D. Del. 2016) .......................................... 8

*Official Comm. v. Goldman Sachs Credit Partners (In re Fedders N. Am.)*
405 B.R. 527 (Bankr. D. Del. 2009) ...................................................... 40

*Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*
496 F. Supp. 2d 404 (D. Del. 2007) ...................................................... 8

*Pinktoe Liq. Tr. v. Dellal (In re Pinktoe Tarantula Ltd.)*
2023 Bankr. LEXIS 1030 (Bankr. D. Del. April 14, 2023) ............................ 21

*Prod. Res. Grp. v. NCT Grp.*
863 A.2d 772 (Del. Ch. 2004) ............................................................ 22

*Raj & Sonal Abhyanker Family Trust v. Blake*
2021 Del. Ch. LEXIS 120 (June 17, 2021) .............................................. 16

*Sama v. Mullaney (In re Wonderwork, Inc.)*
611 B.R. 169 (Bankr. S.D.N.Y. 2020) ................................................... 15

*Scheuer v. Rhodes*
416 U.S. 232 (1974) ....................................................................... 8

*Shabbouei v. Laurent*
2020 Del. Ch. LEXIS 121 (Apr. 2, 2020) ............................................... 39

*Shamrock Holdings v. Arenson*
456 F. Supp. 2d 599 (D. Del. 2006) ..................................................... 28

*Sheldon v. Pinto Tech. Ventures*
220 A.3d 245 (Del. 2019) ................................................................ 29

*Stanziale v. Heico Holdings (In re Conex Holding)*
514 B.R. 405 (Bankr. D. Del. 2014) .................................................... 17

*Stanziale v. Nachtomi (In re Tower Air)*
416 F.3d 229 (3d Cir. 2005) ....................................... 18, 20, 21, 22, 23, 24, 25, 27, 32, 40

*Stanziale v. Versa Cap. Mgmt. (In re Simplexity)*
2017 Bankr. LEXIS 37 (Bankr. D. Del. Jan. 5, 2017) .................................. 25

*Tabachnick v. Catterton Mgmt. (In re Worth Collection)*
666 B.R. 726 (Bankr. D. Del. 2024) ..................................................... 7

*Think3 Litig. Trust v. Zuccarello (In re Think3, Inc.)*
529 B.R. 147 (Bankr. W.D. Tex. 2015) ............................................... 21, 22

*United Food & Com. Workers Union v. Zuckerberg*
250 A.3d 862 (Del. Ch. 2020) ........................................................... 20

*USG Corp. S'holder Litig.*
    2020 Del. Ch. LEXIS 281 (Aug. 31, 2020) ....................................................................... 17

*Walt Disney Co. Derivative Litig*.
    825 A.2d 275 (Del. Ch. 2003).......................................................................................... 23

*Zucker v. Bowl Am.*
    2022 U.S. Dist. LEXIS 186959 (D. Md. Oct. 11, 2022)................................................... 21

**Statutes**

8. Del. Code Ann. §102(b)(7) ..................................................................................... 17, 18, 20

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................. 5, 6, 7, 9, 18, 22, 26, 27, 35, 39, 40

Federal Rule of Civil Procedure 23.1 ................................................................................... 23

Federal Rule of Civil Procedure 8(a) ...................................................................... 5, 6, 7, 9, 15

Federal Rules of Bankruptcy Procedure 7008 ............................................................................ 6

Federal Rules of Bankruptcy Procedure 7012 ............................................................................ 6

George L. Miller, the duly appointed chapter 7 trustee of the above-captioned Debtors' estates (the "Trustee"), on behalf of Chicken Soup for the Soul Entertainment, Inc., and its related debtors (the "Company"), and as Plaintiff in the above-captioned adversary proceeding, hereby submits this *Omnibus Responsive Brief I in Opposition to Defendants' Motions to Dismiss the Trustee's Complaint For (I) Breach of Fiduciary Duty; (II) Aiding and Abetting Breach of Fiduciary Duty; (III) Avoidance of Fraudulent Transfers; (IV) Recovery of Illegal Dividends; (V) Damages for Nonpayment of Employee Wages, Benefits, and Payroll Taxes; (VI) Equitable Subordination; and (VII) Disallowance of Claims* ("Responsive Brief I").[1]

# I.

## PRELIMINARY STATEMENT

The Complaint alleges that, prior to seeking bankruptcy protection in June 2024, the Company was the victim of mismanagement and pillaging by insiders on a scale rarely seen with public companies.  The Company was at all relevant times dominated and controlled by William J. Rouhana, Jr. ("Rouhana"), who directly and indirectly owned the majority of the Company's voting stock, served as the chairman of the Company's board of directors ("Board"), and acted as its chief executive officer.  Although the Company reported net losses every year beginning in 2018, Rouhana treated the Company as his personal piggybank throughout, while neglecting the most basic corporate duties.  The Company's other directors and officers were conflicted, beholden to Rouhana, supine, and failed to exercise independent judgment or to act in the interests of the Company.

---

[1]   Filed concurrently herewith is the Trustee's *Omnibus Responsive Brief II in Opposition to Defendants' Motions to Dismiss the Trustee's Complaint for (I) Breach of Fiduciary Duty; (II) Aiding and Abetting Breach of Fiduciary Duty; (III) Avoidance of Fraudulent Transfers; (IV) Recovery of Illegal Dividends; (V) Damages for Nonpayment of Employee Wages, Benefits, and Payroll Taxes; (VI) Equitable Subordination; and (VII) Disallowance of Claims* ("Responsive Brief II").

The Complaint details the Defendants' misconduct, which included causing the Company to:

- Pay to its controlling shareholders 10% of its net revenues each quarter, totaling over $55 million since 2020 (the "Insider Revenue Transfers"), notwithstanding the Company's insolvency and enormous losses during that period;

- Pay tens of millions of dollars in dividends to its preferred shareholders (the "Preferred Dividends") when the Company was insolvent and did not have a sufficient surplus to lawfully declare dividends;

- Assume hundreds of millions of dollars in debt that the Company had no ability to service in connection with the acquisition of an insolvent entity (the "Redbox Merger"), solely on the basis of management's unreasonable projections (rather than those of the Company's retained financial advisor), and to obligate the Company to pay a portion of the acquired entity's revenues pursuant to insider management and licensing fee arrangements and, upon the consummation of the transaction, to purportedly release the Defendants from all claims in exchange for no consideration (the "Insider Releases");

- Enter into numerous licensing agreements with Rouhana's personal contacts and others for less than fair value (the "Intellectual Property License Agreements"); and

- Fail to pay millions of dollars in employee wages, medical benefits, and payroll taxes (the "Employee Wage, Benefit, and Tax Obligations"), while transferring millions of dollars to the Company's shareholders.

As described in the Complaint, Rouhana breached his fiduciary duties to the Company, based on his undue control and influence over the Company, the other directors[2] and officers,[3] and the CSS Entities.[4]  Through deception and manipulation, Rouhana ran the Company with a focus first and foremost on maintaining his control and influence, and on maximizing shareholder gain for his benefit, even while the Company was insolvent.  Rouhana (aided by the officers on his financial management and executive teams, including Mitchell and Meier, and his right-hand

---

[2]   The Non-Rouhana Director Defendants are Amy L. Newmark ("Newmark"), Christopher Mitchell ("Mitchell"), Fred M. Cohen ("Cohen"), Cosmo DeNicola ("DiNicola"), Martin Pompadur ("Pompadur"), Christina Weiss Lurie ("Lurie"), Diana Wilkin ("Wilkin"), and Vikram Somaya ("Somaya").

[3]   The Non-Rouhana Officer Defendants are Mitchell, Jason Meier ("Meier"), and Amanda Edwards ("Edwards").

[4]   The CSS Entities are Defendants Chicken Soup for the Soul Productions, LLC ("CSSP"), Chicken Soup for the Soul, LLC ("CSS"), and Chicken Soup for the Soul Holdings, LLC ("CSS Holdings").

person Edwards), adopted wildly unrealistic business projections and plans—which the other D&Os blindly accepted—leading the Company to a dire position: zero liquidity, deteriorating assets; entry into insider and unfavorable transactions that drained the Company's coffers; the nonpayment of millions of dollars in employee payroll, medical benefits, and taxes; and, ultimately, the Company's free-fall bankruptcy filing.

The other D&Os breached their fiduciary duties to the Company by allowing Rouhana to exert undue and unreasonable control and influence over them, the Company, and the CSS Entities. The other D&Os did not act as proper directors and officers of a publicly traded Delaware corporation. They were supine and loyal to Rouhana and utterly failed to adequately oversee him and curtail his entry into self-interested and unreasonable transactions. They were negligent and failed to make reasoned and informed decisions; instead, beholden to Rouhana, they abdicated their fiduciary responsibilities and placed Rouhana's and their own interests ahead of those of the Company. The Company's Board minutes reflect that the other D&Os unreasonably relied on, did not question, and/or rubber-stamped Rouhana's determinations and dictates. The other D&Os consistently failed to obtain and/or ignored pertinent information that would have allowed them to make reasoned and informed decisions and act for the benefit of the Company, as they were required by law to do. Instead, the D&Os' loyalties lay with Rouhana at the expense of the Company. The other D&Os' failure to oversee and check Rouhana's self-interested, deceptive, and manipulative actions led to the demise of the Company.

The Complaint sets forth the causes of action asserted against each of the Defendants and the detailed and specific facts underlying each of the claims. The Complaint details (a) the breach of fiduciary duty claims against Rouhana, the other D&Os and the CSS Entities relating to, among other things, the Redbox Merger, the Insider Releases, the Insider Revenue Transfers, the payment

of the Preferred Dividends, and the nonpayment of Employee Wage, Benefit, and Tax Obligations (First through Fourth Claims for Relief); (b) the claims against each Defendant for aiding and abetting said breaches of fiduciary duty of the other Defendants (Fifth Claim for Relief); (c) the claims against Rouhana, Newmark and the CSS Entities seeking to avoid the Insider Revenue Transfers as fraudulent transfers (Sixth and Seventh Claims for Relief); (d) the claims against all Defendants seeking to avoid the Insider Releases as fraudulent transfers (Eighth and Ninth Claims for Relief); (e) the claims against all Defendants for recovery of the Preferred Dividends and Insider Revenue Transfers as illegal dividends (Tenth Claim for Relief); and (f) related claims, including disallowance and equitable subordination of any claims asserted by any Defendant (Twelfth and Thirteenth Claims for Relief).

The Defendants fully understand the Trustee's claims.  They collectively submitted over 228 pages of briefing in seven separate motions seeking dismissal of each and every cause of action set forth in the Complaint (the "Motions to Dismiss"), along with 147 exhibit references, and 8,549 pages of exhibits in response to the allegations set forth in the Complaint, in an effort to dispute the Trustee's factual allegations.[5]  However, a motion to dismiss is not an opportunity to litigate disputes concerning the factual allegations in a complaint.  Nor is it a mini-trial that allows the parties to put forth their whole case and competing viewpoints of what the ultimate outcome should be.  The context here is a motion to dismiss—the context is *not* a motion for summary judgment following discovery, nor is it a trial on the merits where the Court is asked to resolve factual

---

[5]    Rouhana Motion to Dismiss and related brief [D.I. 36, 37] ("Rouhana Br."); Newmark Motion to Dismiss and related brief [D.I. 38, 39] ("Newmark Br."); CSS Entities Motion to Dismiss and related brief [D.I. 40, 41] ("CSS Entities Br."); Other Directors Motion to Dismiss and related brief [D.I. 31, 35] ("Other Directors Br."); Mitchell Motion to Dismiss and related brief [D.I. 45, 46] ("Mitchell Br."); Meier Motion to Dismiss and related brief [D.I. 43, 44] ("Meier Br."); Edwards Motion to Dismiss and related brief [D.I. 33, 34] ("Edwards Br.").  Rouhana, Newmark and the CSS Entities also filed an 805-page Appendix of Exhibits [D.I. 42] and Mitchell filed 1,543 pages of exhibits attached to the Declaration of Douglas P. Baumstein [D.I. 47].

disputes.  Here, the Complaint contains detailed and specific factual allegations identifying the dates, parties, actions or inactions of each Defendant (to the extent such facts are available to the Trustee without yet conducting necessary and appropriate discovery)—which is what is required for the Complaint to satisfy the notice and plausibility requirements of Federal Rules of Civil Procedure 8(a) and 12(b)(6), and survive the Motions to Dismiss.

In light of the voluminous nature of the Motions to Dismiss, the Trustee provides his response in two parts.  This is the Trustee's Responsive Brief I, which responds to and addresses the following issues:

- The Complaint satisfies the notice and plausibility requirements of Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure.  Responsive Brief I § II.A.

- The Complaint provides detailed and specific allegations sufficient to put each of the Defendants on notice of the Trustee's claims against them.  *Id.* § II.B.

- The Complaint does not impermissibly rely on "group pleading."  *Id.* § II.C.

- The existence and application of exculpatory provisions is an affirmative defense that is not properly considered at the motion to dismiss stage, and exculpation provisions do not, as a matter of law, bar breach of duty of loyalty claims against the Director Defendants, any breach of fiduciary duty claims against the Officer Defendants, or any claims for aiding and abetting a breach of fiduciary duty against any Defendant.  Therefore, exculpation does not bar any of the Trustee's claims for relief.  *Id.* § II.D.

- The "business judgment rule" is an affirmative defense that is not properly considered at the motion to dismiss stage and, therefore, does not bar any of the Trustee's claims.  *Id.* § II.E.

- The Complaint's breach of fiduciary duty claims against all Defendants are plausible and survive the Motions to Dismiss.  *Id.* § II.F.

Filed concurrently herewith is the Trustee's Responsive Brief II, which responds to and addresses the following issues:

- The Complaint's aiding and abetting breach of fiduciary duty claims against all Defendants are plausible and survive the Motions to Dismiss.  Responsive Brief II § II.A.

- The Complaint sets forth a plausible claim that the Insider Releases are avoidable as constructively fraudulent transfers and, therefore, the Insider Releases do not bar any of the Trustee's claims for relief. *Id.* § II.B.

- The Complaint sets forth a plausible claim that the Insider Revenue Transfers are avoidable as constructively fraudulent transfers. *Id.* § II.C.

- The Complaint adequately pleads a lack of reasonably equivalent value, insolvency, and the existence of a "triggering creditor" in connection with the Trustee's fraudulent transfer claims. *Id.* § II.D.

- The Complaint sets forth a plausible claim to recover Preferred Dividends and Insider Revenue Transfers as illegal dividends. *Id.* § II.E.

- Other issues raised by the Motions to Dismiss, including that the CSS Entities are properly considered to be "controlling shareholders," that the claims for relief for disallowance and equitable subordination are proper and should not be dismissed at this juncture, and that the nonpayment of Employee Wages, Benefits, and Tax Obligations form part of the Trustee's breach of fiduciary duty allegations (and that liability for such non-payment will be determined in connection with a pending class action brought on behalf of the employees themselves). *Id.* § II.F.

As detailed herein and in Responsive Brief II, the Complaint contains detailed and specific allegations sufficient to withstand dismissal on all counts being pursued by the Trustee. The Trustee, therefore, respectfully requests that the Court deny the Motions to Dismiss.

## II.

## LEGAL ARGUMENT

### A. The Complaint Satisfies the Notice and Plausibility Requirements of Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure

The Defendants move to dismiss the Complaint pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rules 7008 and 7012 of the Federal Rules of Bankruptcy Procedure. The Complaint easily satisfies the standards under each of these rules, which require only that (a) the Defendants have notice of the claims asserted against them, and (b) the Complaint provides sufficient facts which, accepted as true, state

a claim to relief that is "plausible" on its face. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To satisfy that rule, the complaint must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Tabachnick v. Catterton Mgmt.* (*In re Worth Collection*), 666 B.R. 726, 734-35 (Bankr. D. Del. 2024) (quoting *Twombly*, 550 U.S. at 555). Rule 8(a)(2) requires "some showing sufficient to justify moving the case beyond the pleadings to the next stage of the litigation." The required "showing" under Rule 8(a) is therefore informed by the "plausibility" standard enunciated in *Twombly*.

Rule 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion; rather, the factual allegations must only be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Fundamentally, in the context of a motion to dismiss under Rule 12(b)(6), "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims.'" *Lipscomb v. Clairvest Eq. Partners (In re LMI Legacy Holdings)*, 2017 Bankr. LEXIS 1150, *9 (Bankr. D. Del. Apr. 27, 2017) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  When reviewing a motion to dismiss, the court will construe the complaint in the light most favorable to the plaintiff.  *Burtch v. Milberg*, 662 F.3d at 220.  The moving defendant carries the burden of demonstrating that dismissal is appropriate.  *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 408 (D. Del. 2007).

The Defendants' attempt to contradict the factual allegations in the Complaint through the introduction of thousands of pages of documents here is wholly inappropriate.  *Miller v. Mott*, 2023 Bankr. LEXIS 2460, *14 (Bankr. D. Del. Oct. 4, 2023) (CTG) ("A motion to dismiss . . . tests the validity of the complaint as pled.  It is not the occasion to introduce new facts to establish a defense to the complaint's allegations.").  Indeed, the Defendants' Motions to Dismiss demonstrate that they not only have full notice of the claims against them, but also that the Trustee's claims meet the *Twombly* "plausibility" standard.

For purposes of a motion to dismiss, the Trustee's allegations must be taken as true.  A dispute as to the veracity of the allegations simply demonstrates that this matter should proceed to discovery and a trial on the merits of the Trustee's claims.  *See, e.g., Official Comm. of Unsecured Creditors v. Indep. Purchasing Coop. (In re Quantum Foods, LLC)*, 558 B.R. 111, 115 (Bankr. D. Del. 2016) ("'The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.'"); *Intel Corp.*, 496 F. Supp. 2d at 407 (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)).  A motion to dismiss focuses solely on the narrow and fundamental question of whether, if everything the plaintiff alleges is true, the plaintiff can prevail.  A motion to dismiss is not "a mini trial for parties to put forth their whole case and competing viewpoints of what the ultimate outcome should be." *MBIA Ins. Co. v. Tilton*

*(In re Zohar III)*, 2021 Bankr. LEXIS 1947, *17 (Bankr. D. Del. July 23, 2021) (KBO).   The

Complaint here satisfies both the notice and plausibility requirements of Rules 8(a) and 12(b)(6).

**B.      The Complaint Provides Detailed and Specific Allegations Sufficient to Put Each of the Defendants on Notice of the Claims Against Them**

        The Defendants argue that the Complaint lacks sufficiently detailed allegations to put the

Defendants on notice of the claims against them.   That argument simply cannot be reconciled with

the detailed allegations contained in the Complaint.   As a preliminary matter, it is evident that the

Defendants fully appreciate the Trustee's claims from the fact that they collectively submitted over

228 pages of briefing and argument, 147 exhibit references, and 8,549 pages of exhibits in response

to the allegations set forth in the Complaint in an effort to dispute the Trustee's factual allegations.[6]

While they may not agree with the allegations, each Defendant is well aware of the claims asserted

by the Trustee in the Complaint.

        A motion to dismiss is not an opportunity to litigate disputes concerning the factual

allegations in the complaint.   *See, e.g., Buchwald Cap. Adv. v. Schoen (In re OPP Liq.*), 2022

Bankr. LEXIS 651, *18 (Bankr. D. Del. March 14, 2022) (MFW) (considering the allegations in

the complaint versus the allegations to the contrary raised by defendants, and holding that, "[a]t

the motion to dismiss stage . . . the Court must accept the allegations in the Amended Complaint

as true and not the 'allegations' of the Defendants to the contrary.").

---

[6]      *See* Rouhana Br. at 5-16; Newmark Br. at 4-11; and CSS Entities Br. at 2-6 (and incorporating sections of Newmark Br.), specifically addressing, and disputing, the Complaint's allegations and "theories," including what they call "the Redbox Acquisition Theory, the CSS Agreements Theory, the Third-Party Licensing and Distribution Agreements Theory, the Dividend Theory, the FLSA Employee Wage and Benefit Claim Theory, and the Release Theory."   *See also* Other Directors Br. at 1-8; Mitchell Br. at 1-7; Meier Br. at 2-8; and Edwards Br. at 4-6, addressing and disputing the Trustee's claims.   *See also* the improperly filed 805-page Appendix of Exhibits submitted by Rouhana, Newmark and the CSS Entities and the 1,543 pages of exhibits attached to the Declaration of Douglas P. Baumstein submitted by Mitchell.

Allegations in a complaint are sufficient to withstand a motion to dismiss if they identify the "dates, parties, and actions or inactions" of the defendants which are "'sufficient to put them on notice of the specific conduct that gives rise to the . . . claims asserted against them.'" *Balasiano v. Borell (In re Furniture Factory Ultimate Holding, L.P.)*, 2023 Bankr. LEXIS 2164, *23-27 (Bankr. D. Del. Aug. 21, 2023) (quoting *OPP Liq.*, 2022 Bankr. LEXIS 651, at *20). Here, the Complaint contains detailed and specific factual allegations identifying the "dates, parties, and actions or inactions" of each Defendant (to the extent such facts are available to the Trustee without yet conducting necessary and appropriate discovery)[7] that give rise to the claims against each Defendant, which are summarized as follows:[8]

- *__Allegations Regarding Each of the Defendant's Involvement in the Challenged Transactions__*.  The Complaint contains detailed and specific factual allegations regarding the Defendants' respective roles and involvement in the events alleged in the Complaint and the dates they served in such capacities, as follows:

  (a) *Rouhana* served as chairman of the Board and CEO of the Company at all times relevant to the allegations in the Complaint from its formation, and controlled the Company and its subsidiaries, as well as CSS and the other CSS Entities. Complaint ¶ 10.

  (b) *Newmark* served on the Board and as senior brand advisor of the Company at all times relevant to the allegations in the Complaint from its formation and, with her husband, Rouhana, owns the CSS Entities. *Id.* ¶ 11.

  (c) *Non-Rouhana/Newmark Board Defendants* served on the Board at all times relevant to the allegations in the Complaint, as follows: (i) Mitchell (from June 2016) (*id.* ¶ 12); (ii) DiNicola (from June 2019) (*id.* ¶ 13); (iii) Cohen (from June 2016) (*id.* ¶ 14); (iv) Lurie (from June 2016) (*id.* ¶ 15);

---

[7]   Rouhana asserts that the Trustee has had access to Board minutes, public filings, and "more than 9,000 pages of documents relating to the Redbox Merger and HPS's alleged failure to satisfy its obligations under the Credit Agreement."  Rouhana Br. at 22 n.19.  To be clear, the Trustee has not yet undertaken discovery in connection with the claims at issue in this adversary proceeding; any documents provided to date are, at best, incomplete.

[8]   A more detailed summary of the allegations of the Complaint supporting the Trustee's specific claims for breach of fiduciary duty (First, Second, Third and Fourth Claims for Relief) and aiding and abetting breach of fiduciary duty (Fifth Claim for Relief) is set forth in § II.F below, and in Responsive Brief II, § II.A, respectively, and factual allegations of the Complaint are set forth in additional detail as relevant to the specific cause of action or responsive argument discussed in the Trustee's Responsive Briefs.

(v) Wilkin (from June 2016) (*id*. ¶ 16); (vi) Somaya (from October 2021) (*id*. ¶ 17); and (vii) Pompadur (from June 2019) (*id*. ¶ 18).

(d)    *Non-Rouhana Officer Defendants* served as officers at times relevant to the allegations in the Complaint, as follows: (i) Mitchell served as the Company's CFO from January 1, 2019 through November 2022 (and since January 1, 2019, has served as the CFO for CSS) (*id*. ¶ 12); (ii) Meier served as the Company's CFO and principal accounting officer from November 2022, and as executive vice president and chief accounting officer of the Company from September 2021 to November 2022 (*id*. ¶ 19); and (iii) Edwards served as chief of staff for Rouhana from 2017, as the Company's senior vice president and chief of staff from May 2022 through December 2023, and as the executive vice president of operations from January 2024 to October 2024 (*id*. ¶ 20).

(e)    *CSS Entity Defendants* are the direct and indirect parent companies of the Company and were under Rouhana's control at all times relevant to the allegations in the Complaint: (i) CSSP is the parent and controlling stockholder of the Company, holding 85% of the voting power of the Company (*id*. ¶ 22); (ii) CSS (the counter-party to the Insider Management and Licensing Agreements) owns 100% of CSSP (*id*. ¶ 23); and (iii) CSS Holdings owns 100% of CSS (*id*. ¶ 24).

- ***Allegations Regarding Rouhana's Control***.  The Complaint contains detailed and specific factual allegations, including references to admissions in public filings, that Rouhana had unchecked control over the Company and the other D&Os, and that he utilized this control to enter into insider transactions and other transactions unfavorable to the Company during his tenure, furthering his own interests and leading to the Company's demise. *Id*. ¶¶ 26-30.

- ***Allegations Regarding the Other D&O Defendants' Unjustifiable Acquiescence to Rouhana's Control***.  The Complaint contains detailed and specific factual allegations that the non-Rouhana D&Os did not act as proper directors and officers of a Delaware company, but were supine and loyal to Rouhana and utterly failed to adequately oversee or question him, and that their failure to make reasoned and informed decisions with respect to the transactions challenged in the Complaint led to the Company's demise. *Id*. ¶¶ 29-30, 67, 72, 77, 81.

- ***Allegations Regarding the Company's Financial Distress***.  The Complaint contains detailed and specific factual allegations regarding the Company's financial distress since no later than 2020, the admitted failure of internal controls over financial reporting, and that the Company was insolvent, undercapitalized, and/or generally unable to pay its debts as they came due, and lacked either sufficient surplus or sufficient net profits. *Id*. ¶¶ 31-33, 47-56, 65, 70, 75.

- ***Allegations Regarding the Redbox Merger***.  The Complaint contains detailed and specific factual allegations regarding the background and implementation of the Redbox Merger, the unrealistic financial information prepared by Rouhana and the other Officer Defendants upon which it was based, the resulting harm to the Company, and benefits flowing to Rouhana, Newmark, and the CSS Entities, as well as the failures of the other D&Os to, among other things, properly assess or question the financial and insider aspects of the Merger. *Id.* ¶¶ 29, 31-57.

- ***Allegations Regarding the Insider Releases***.  The Complaint contains detailed and specific factual allegations regarding the Insider Releases purportedly granted by the Company in favor of Rouhana and the other Defendants in August 2022, for no consideration, and the personal interest of the Defendant releasees in obtaining such releases. *Id.* ¶¶ 58-61.

- ***Allegations Regarding the Insider Management and Licensing Agreements***.  The Complaint contains detailed and specific factual allegations regarding the terms of the Insider Management and Licensing Agreements between the Company and CSS; that they were not characterized by fair dealing or fair price; that Rouhana, Newmark and Mitchell sat on both sides of the transaction; that the agreements were in CSS's and Rouhana's and Newmark's (as owners of CSS) self-interest and were not in the best interests of the Company, including that the agreements (1) obligated the Company to pay 10% of its net revenues to CSS regardless of the Company's financial condition, (2) were subject to one-year terms that could be terminated on an annual basis commencing in 2021, and (3) set forth the significant amounts paid in the four years prior to the Petition Date (over $55 million between 2020 and the first quarter of 2024, which include payments purportedly based on a revenue calculation that are inexplicably in the exact same dollar amount, $18.4 million each, in both 2022 and 2023); and the Company's financial distress when such payments were made. *Id.* ¶¶ 62-66.

  The Complaint also contains detailed and specific allegations that the non-Rouhana D&Os did not act as proper directors and officers of a Delaware company in connection with the Insider Management and Licensing Agreements, failed to make reasoned and informed decisions and otherwise failed to act in the best interests of the Company, and were instead supine and loyal to Rouhana, including by failing to obtain information to assess the propriety or reasonableness of the Insider Agreements or seek alternatives in light of the tens of millions of dollars being paid to insiders at a time when the Company was in significant financial distress. *Id.* ¶ 67.

- ***Allegations Regarding the Intellectual Property Agreements***.  The Complaint contains sufficiently detailed and specific factual allegations regarding thirteen Intellectual Property Agreements entered into on behalf of the Company within two years of the Petition Date (from June 2022 to May 2024) at a time when the Company was in significant financial distress, which agreements were not characterized by fair dealing or fair price, were in Rouhana's self-interest and not in the best interests of the Company, including five agreements involving

Rouhana's personal friend, David Nagelberg, the trustee of the Nagelberg Trust, as counter-party, and allegations that the Nagelberg Trust is also a Series A Preferred Shareholder and, just prior to the Petition Date, provided $1.75 million to bankruptcy counsel of Rouhana's choosing, raising distinct conflict issues. *Id.* ¶¶ 68-71.[9]

The Complaint also contains detailed and specific allegations that the non-Rouhana D&Os did not act as proper directors and officers of a Delaware company in connection with the Intellectual Property Agreements, failed to make reasoned and informed decisions and otherwise failed to act in the best interests of the Company, and were instead supine and loyal to Rouhana, including by failing to obtain sufficient (or perhaps any) information to assess the propriety or reasonableness of the Intellectual Property Agreements. *Id.* ¶ 72.[10]

- ***Allegations Regarding the Dividend Payments to Series A Preferred Shareholders***. The Complaint contains detailed and specific factual allegations regarding the payment of dividends to Series A Preferred Shareholders, totaling over $36.8 million in the four-year period from 2020 to 2023, that preferred shareholders would have remedies, including the right to appoint directors to the Board should dividends not be paid for a period of 18 months, and that the Company was in financial distress and lacked surplus or net profits sufficient to lawfully declare the dividends. *Id.* ¶¶ 73-76.

  The Complaint also contains detailed and specific allegations that the non-Rouhana D&Os did not act as proper directors and officers of a Delaware company in connection with the declaration of the dividends, failed to make reasoned and informed decisions and otherwise failed to act in the best interests of the Company, and were instead supine and loyal to Rouhana, including by failing to obtain information to assess the propriety or reasonableness of the payment of dividends in light of the Company's financial distress. *Id.* ¶¶ 75, 77.

- ***Allegations Regarding the Nonpayment of Employee Wages, Medical Benefits, and Payroll Taxes***. The Complaint contains detailed and specific factual allegations regarding the Company's admitted nonpayment of employee wages, medical benefits, and payroll taxes, including the nonpayment of approximately $15.5 million in withholding taxes during the nine-month period from October 3, 2023 to June 7, 2024; that this failure to pay employee obligations occurred while the Company was paying its shareholders and insiders; that the CSS Entities (under

---

[9]   Indeed, these allegations prompted the filing of copies of nine of the Intellectual Property Agreements by Rouhana, Newmark, and the CSS Entities. *See* Appendix, Exs. 10-A to 10-I.

[10]  Curiously, the Other Directors appear to admit that they may not have even been made aware of the Intellectual Property Agreements, let alone approved them (Other Directors Br. at 8), clearly raising a question of fact as to who approved the entry into these agreements on behalf of the Company and based upon what analysis, especially because any financial information presented to the Board during this period of time should have reflected revenue from the Intellectual Property Agreements and therefore prompted inquiry by the Board.

the control of Rouhana and Newmark, and with Mitchell as CSS's CFO) failed in their obligation to make such payments on behalf of the Company; that the CSS Entities, Rouhana, Newmark and the other D&Os did not act in the Company's best interests by failing to pay the Company's obligations to its employees; and that the D&Os knew or should have known that such obligations were not being paid and that, instead of obtaining adequate information, were concerned about their own liability and blindly followed rather than questioned the decisions of Rouhana. *Id.* ¶¶ 78-81.

The Complaint details, with specificity, the facts underlying each of the causes of action for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraudulent transfers, illegal dividends, and other relief. The Defendants' attempts to contradict the Complaint's allegations by introducing reams of allegedly competing evidence with their Motions to Dismiss should be rejected. *Zohar III*, 2021 Bankr. LEXIS 1947, at *17 (a motion to dismiss is not "a mini trial for parties to put forth their whole case and competing viewpoints of what the ultimate outcome should be.").

## C.    The Complaint Does Not Impermissibly Rely on "Group Pleading"

The Defendants' argument that the Complaint impermissibly relies on "group pleading" is not supportable. Courts in this district consistently reject arguments that a complaint should be dismissed due to "group pleading" so long as the complaint identifies the "dates, parties, and actions or inactions" of the defendants in a manner "sufficient to put them on notice of the specific conduct that gives rise to the breach of fiduciary claims asserted against them." *See, e.g., Furniture Factory,* 2023 Bankr. LEXIS 2164, at *23-27; *OPP Liq.*, 2022 Bankr. LEXIS, at *20. Where such information is provided, a complaint may utilize defined terms for the sake of convenience and to avoid unnecessary redundancy. Group pleading is particularly appropriate in cases where a plaintiff claims that multiple officers and/or directors were engaged in the same conduct. *See, e.g., Finkel v. Parzych (In re Midnight Madness Distilling, LLC)*, 2024 Bankr. LEXIS 1699, *31 (Bankr. E.D. Pa. July 23, 2024) ("[W]here certain alleged conduct was undertaken by a group of

Defendants, defining the Defendants in groups and alleging claims against them as groups does not deprive them of notice as to the basis for the claim against them or against whom it is pressed.").[11]  Here, except where specifically alleged in the Complaint, all of the D&O Defendants were either members of the Board, or served as officers, during the relevant period and engaged in the same harmful conduct.  Defining the D&O Defendants in groups and alleging claims against them as groups is therefore appropriate.

Moreover, the Company's own corporate minutes consistently refer to actions taken by a collective "Board" and  "management" without identifying any D&O Defendant individually—other than Rouhana—making it impossible for the Trustee to distinguish between the individual D&O Defendants prior to discovery.  While the Defendants' submission of exhibits in support of the Motions to Dismiss was inappropriate, the Board minutes attached as exhibits to the Appendix filed in support of Rouhana's, Newmark's, and the CSS Entities' Motions to Dismiss refer repeatedly to the members of the Board and management not as individuals, but as a collective, including with respect to the transactions challenged in the Complaint.  For example (with emphasis added):

- Ex. 4, Minutes dated February 8, 2022 ("Mr. Rouhana expressed that *management* believed that the integration of [potential acquisition targets, including Redbox] would be relatively straightforward. . . . *Management* and the *board* also discussed [another acquisition], . . . Mr. Rouhana then gave a strategy update to the *board*.")

---

[11]  *See also Katchadurian v. NGP Energy Cap. Mgmt. (In re Northstar Offshore Grp.)*, 616 B.R. 695, 723 (Bankr. S.D. Tex. 2020) ("[T]he Trustee's allegations are that each of the Defendants participated in the transfers alleged.  Moreover, the Trustee notes that it created those groups for convenience rather than doubt and has asserted that the Defendants all committed the alleged act. The Complaint does not violate Federal Rule of Procedure 8(a)'s prohibition against group pleading."). *Cf. Sama v. Mullaney (In re Wonderwork, Inc.)*, 611 B.R. 169, 199 (Bankr. S.D.N.Y. 2020) (cited by Edwards) (group pleading was found to be improper in describing director and officer defendants that served at different times and were, therefore, not involved in the same transactions).

- Ex. 7, Minutes dated May 9, 2022 ("the *Board* then reviewed a series of issues relating to a possible [Redbox] transaction. … *Discussion was also had* on the effects of the transaction on the management and licensing agreements . . . .")

- Ex. 8, Minutes dated May 10, 2022 ("Mr. Rouhana, Mr. Ross and the *Board* reviewed the Merger Agreement and the material terms thereof.  Mr. Rouhana further discussed *management's* reasons for the merger and the benefits and potential risks.  *Participants at the meeting also discussed* . . . . After *discussion was had* on the merger agreements and the transactions prescribed thereby … the *Board* [entered resolutions approving the Redbox and related transactions] . . . .")

The descriptions in the minutes highlight not only that grouping of the Board and management together at this juncture is appropriate,[12] but that the claims asserted by the Trustee are plausible, and that discovery is warranted to allow the Trustee to inquire specifically into each of the D&O Defendant's conduct in connection with the allegations in the Complaint.  Similarly, defining the CSS Entities as a group is appropriate because these entities are, directly or indirectly, the Company's controlling shareholders and, except where otherwise specified in the Complaint, are subject to the same allegations and claims.[13]

The allegations in the Complaint here sufficiently identify the relevant events, when they occurred, who was involved and, to the extent such information is available to the Trustee without the benefit of discovery, details of the transactions.  Cases cited by the Defendants—which involved complaints that completely failed to put defendants on notice of the claims against them—are clearly distinguishable.[14]  There is no question that each Defendant here has notice of the relevant claims.

---

[12]  *See also* Rouhana Br. at 6-12 (consistently referring to the "Board" as a group); Other Directors Br. at 1 (defining all non-Rouhana, Mitchell and Newmark Directors as a group).

[13]  *See also* CSS Entities Br. at 1 (defining the CSS Entities together as the "CSS Entities"); Other Directors Br. at 5 (defining the CSS Entities together as the "Parent Entities.").

[14]  *See, e.g., Bocock v. Innovate Corp.*, 2022 Del. Ch. LEXIS 307, *3-5 (Oct. 28, 2022) (dismissing certain causes of action where the complaint did not identify when the challenged events occurred, who the decision makers were, or any of the transaction details); *Raj & Sonal Abhyanker Family Trust v. Blake*, 2021 Del. Ch. LEXIS 120, *9-10 (June 17, 2021) (dismissing breach of fiduciary duty claims against

**D.    Exculpation Is an Affirmative Defense That Is Not Properly Considered at the Motion to Dismiss Stage and Exculpation Provisions Do Not, as a Matter of Law, Bar Breach of Duty of Loyalty Claims Against Directors (First and Second Claims for Relief), Any Breach of Fiduciary-Duty Claims Against Officers (Third Claim for Relief), or Any Claims for Aiding and Abetting a Breach of Fiduciary Duty (Fifth Claim for Relief)**

The Director Defendants assert that claims against them for breach of fiduciary duty must be dismissed as a matter of law under section 102(b)(7) of Delaware General Corporation Law because they are allegedly exculpated from liability for breaches of their duty of care in the Company's charter.[15]  These Defendants make this argument notwithstanding that claims for breach of their duty of loyalty are not exculpated; and the facts alleged in the Complaint amply support the inference that they did not act independently at all, precluding dismissal of the breach of fiduciary duty claims against the Director Defendants.[16]  Likewise, Rouhana and Mitchell served in both a director and officer capacity, and officers are not exculpated in any way under the

---

an interim CEO because there was not a single factual allegation asserted against him for the weeklong time period he served as interim CEO; simply including him in the definition of "Defendants" as a group was insufficient to survive a motion to dismiss); *Burtch v. Zachem (In re TZEW Holdco)*, 2023 Bankr. LEXIS 2306, *6-10 (Bankr. D. Del. Sept. 19, 2023) (dismissing, with leave to amend, a complaint that identified the defendants in the broadest terms, including with respect to their possible titles, roles and relationships with the debtor entities, and did not identify which individual director defendants breached their fiduciary duties or when, forcing the defendants and the court to guess who did what to whom and when); *In re Genworth Fin. Consol. Derivative Litig.*, 2021 Del. Ch. LEXIS 223, *51-52 (Sep. 29, 2021) (dismissing claims against officers where, beyond defining them as "Executive Defendants," the complaint made no allegations and asserted no claims against them); *Stanziale v. Heico Holdings (In re Conex Holding)*, 514 B.R. 405, 414 (Bankr. D. Del. 2014) (same); *Howland v. Kumar*, 2019 Del. Ch. LEXIS 22, *10-11 (June 13, 2019) (same). Other cases cited by Defendants simply set forth the uncontroversial proposition that "group pleading," on its own, will not suffice.  *See, e.g., In re USG Corp. S'holder Litig.*, 2020 Del. Ch. LEXIS 281, *63 (Aug. 31, 2020), *aff'd sub nom, Anderson v. Leer*, 265 A.3d 995 (Del. 2021).

[15]    *See* Rouhana Br. at 28-30, Newmark Br. at 25-27, Other Directors Br. at 9-10, Mitchell Br. at 13.

[16]    *Leal v. Meeks (In re Cornerstone Therapeutics Inc. S'holder Litig.)*, 115 A.3d 1173, 1180 (Del. 2015) (excepting from exculpation, among others, claims that nominally independent directors "acted to advance the self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith.")  *See* § II.F below regarding the plausibility and propriety of the Trustee's allegations for breach of fiduciary duties, including the duty of loyalty and lack of good faith, against the Defendants (First, Second, Third and Fourth Claims for Relief).

Company's charter.[17]  Exculpation does not apply in any event to claims for aiding and abetting a breach of fiduciary duty.[18]

In any event, the Defendants' assertions that claims against them are barred by the Company's exculpation provisions are wrong.  The Third Circuit has spoken to this exact issue, and this Court and others have regularly held that exculpation is an affirmative defense that does not form a basis for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  While the Defendants argue that Delaware law has changed since 2015, the Federal Rules of Civil Procedure have not.  As the Third Circuit explicitly recognized, there is a critical distinction between federal and Delaware pleading requirements, an issue these Defendants do not address.  The Third Circuit has not altered its position and, accordingly, lower courts have continued to deny motions to dismiss on this basis.

The controlling authority is *Stanziale v. Nachtomi (In re Tower Air)*, 416 F.3d 229, 242 (3d Cir. 2005), in which the Third Circuit stated that "the protection of an exculpatory charter provision appears to be in the nature of an affirmative defense. As we have said, affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6)."

Bankruptcy courts in the Third Circuit, including this Court, follow the Third Circuit's decision in *Tower Air.  See, e.g., OPP Liq.*, 2022 Bankr. LEXIS 651, at \*26 n.95 ("The Defendants

---

[17]  8 Del. Code Ann. § 102(b)(7).

[18]  *See, e.g., OPP Liq.*, 2022 Bankr. LEXIS 651, at \*28 n.99 (citing *Miller v. Bradley (In re W.J. Bradley Mortg. Cap.* ), 598 B.R. 150, 174-75 (Bankr. D. Del. 2019)) (holding that at the motion to dismiss stage, it is too early to determine the precise boundaries of each defendant's fiduciary duties, but directors shielded from liability by an exculpation clause could still be held liable for aiding and abetting a breach of fiduciary duty by another defendant); *Miller v. McCown De Leeuw & Co. (In re The Brown Schools)*, 368 B.R. 394, 402-03 (Bankr. D. Del 2007) ("While a corporate director owes the corporation fiduciary duties, in some instances those duties may be limited (by corporate charter or statute). Thus, the Court may find that a director had no fiduciary duty but aided and abetted a party that did."). *See also* Responsive Brief II § I.A, regarding the plausibility and propriety of the Trustee's aiding and abetting causes of action against all Defendants.

also argue that they have an exculpation clause which relieves them of any responsibility. The Court need not consider this argument because it is an affirmative defense which should not be considered at the motion to dismiss stage.") (citing *Friedman v. Wellspring Cap. Mgmt. (In re SportCo Holdings)*, 2021 Bankr. LEXIS 2848, *17 (Bankr. D. Del. Oct. 14, 2021)) ("The Court need not address the Defendants' arguments concerning the exculpation clause because affirmative defenses, such as exculpation, may not be considered at the motion to dismiss stage."). *See also Burtch v. Opus, L.L.C. (In re Opus E., L.L.C.)*, 480 B.R. 561, 572 (Bankr. D. Del. 2012) (MFW) ("[A]n exculpatory clause is considered an affirmative defense. . . . Because the Defendants' only argument to dismiss the counts for breach of fiduciary duty and aiding and abetting breach of fiduciary duty is the exculpation clause, the Court will deny the motion to dismiss . . . ."); *Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*, 473 B.R. 525, 561 n.112 (Bankr. D. Del. 2012) (MFW) (not only was exculpation an affirmative defense, but "where a duty of loyalty claim is properly alleged, courts generally refuse to dismiss residual duty of care claims"); *Ad Hoc Comm. of Eq. Holders v. Wolford*, 554 F. Supp. 2d 538, 561 (D. Del. 2008) ("Because a section 102(b)(7) provision is in the nature of an affirmative defense and following the statement of the Third Circuit that such defenses will generally not form the basis of a Rule 12(b)(6) dismissal, defendants' motion to dismiss the duty of care claims is denied."); *Brown Schools*, 368 B.R. at 401 ("The exculpation clause is an affirmative defense and the determination of the viability of that defense is not proper at this stage.").

The Defendants seeking dismissal based on exculpation argue that the Delaware Supreme Court's 2015 decision in *Cornerstone* marked a sea change in the law on exculpation that lifted its status from that of an affirmative defense to that of an immunity, the assertion of which suffices to require dismissal of all exculpated claims as a matter of law. Under *Cornerstone*, "plaintiffs

must plead a non-exculpated claim for breach of fiduciary duty against an independent director protected by an exculpatory charter provision, or that director will be entitled to be dismissed from the suit. . . .   When a director is protected by an exculpatory charter provision, a plaintiff can survive a motion to dismiss by that director defendant by pleading facts supporting a rational inference that the director harbored self-interest adverse to the stockholders' interests, acted to advance the self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith." *Cornerstone*, 115 A.3d at 1179-80.

    The Defendants taking this position, however, do not address the Third Circuit's decision in *Tower Air* and ignore, or barely acknowledge, its progeny.  They primarily cite *Cornerstone* and Delaware state court decisions following it, and argue that federal courts should follow suit.[19] But federal courts have not followed suit post-2015.  *See, e.g., OPP Liq.*, 2022 Bankr. LEXIS 651; *SportCo Holdings,* 2021 Bankr LEXIS 2848 ; *Brick Law PLLC v. Sticky's Holdings (In re Sticky's Holdings),* 2025 Bankr. LEXIS 1333, *9 (Bankr. D. Del. June 3, 2025) (JKS) ("Courts in this circuit regularly hold that exculpatory provisions are an affirmative defense.  The determination of the viability of a defense is not proper at the motion-to-dismiss stage.  Therefore, the Plan's exculpation provision is not a proper ground to dismiss the claim.") (footnotes omitted).  *See also Brown Schools*, 368 B.R. at 401 ("The exculpation clause is an affirmative defense and the

---

[19]  Into this category fall the following cases cited by the Defendants:  *United Food & Com. Workers Union v. Zuckerberg*, 250 A.3d 862, 884-85 (Del. Ch. 2020) ("[T]he Delaware Supreme Court clarified how Section 102(b)(7) operates at the pleading stage.") (citing *Cornerstone*), *aff'd,* 262 A.3d 1034 (Del. 2021) *In re EZCORP Inc. Consulting Agmt. Deriv. Litig.*, 130 A.3d 934, 940 (Del. 2016) (Delaware Supreme Court changed the effect of an exculpatory clause to operate "more in the nature of an immunity, comparable to the extent to which sovereign immunity typically protects government employees from suit, rather than as an affirmative defense"); *Nguyen v. Barrett*, 2016 Del. Ch. LEXIS 147, *11, n.25 (Sept. 28, 2016) (rejecting plaintiff's contention that the court could not address the 102(b)(7) exculpatory provision that was not explicitly pleaded in the complaint); *In re Essendant, Inc. S'holder Litig.*, 2019 Del. Ch. LEXIS 1404, *32-33 (Dec. 30, 2019) ("[The complaint] must clearly draw the distinction between exculpated claims . . . and nonexculpated claims").

determination of the viability of that defense is not proper at this stage."); *Furniture Factory,* 2023 Bankr. LEXIS 2164, at *28; *Pinktoe Liq. Tr. v. Dellal (In re Pinktoe Tarantula Ltd.*), 2023 Bankr. LEXIS 1030, *16 (Bankr. D. Del. April 14, 2023) ("Plaintiff is correct that an exculpatory provision is in the nature of an affirmative defense.  It is generally not proper to adjudicate the viability of an affirmative defense on a motion to dismiss."); *Zucker v. Bowl Am.,* 2022 U.S. Dist. LEXIS 186959, *9-10 (D. Md. Oct. 11, 2022) ("This Court agrees with Plaintiffs that the exculpation provision is an affirmative defense. Courts generally do not 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses' through a Rule 12(b)(6) motion.") (citing *Tower Air*; quoting *Edwards v. City of Goldsboro,* 416 F.3d 231, 241 (4th Cir. 1999)); *Guiliano v. Schnabel (In re DSI Renal Holdings*), 574 B.R. 446, 471 (Bankr. D. Del. 2017) ("An exculpatory clause is an affirmative defense and cannot form the basis of a Rule 12(b)(6) dismissal.").

There is a sound reason federal courts have not followed suit: Federal pleading requirements differ materially from Delaware state law.  *Tower Air* explained the distinction in the context of derivative claim pleading:  "Delaware cases are legion requiring specific allegations of fact to support a plaintiff's demand for relief under Chancery Rule 8." 416 F.3d at 236. *"The District Court erred by assuming that Delaware's notice pleading cases are interchangeable with federal notice pleading cases.  They are not." Id.* at 237 (emphasis added; footnote omitted).  The issue was analyzed in a 2015 Texas bankruptcy court decision, *Think3 Litig. Trust v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147 (Bankr. W.D. Tex. 2015):

> The Director Defendants counter that Delaware state courts frequently dismiss duty of care claims based on a DGCL § 102(b)(7) exculpatory defense at the motion to dismiss stage of a suit.  *See, e.g., Malpiede v. Townson*, 780 A.2d 1075, 1094 (Del. 2001).  Yet, those Delaware courts were interpreting Delaware state procedural rules.  The Director Defendants incorrectly assume that Delaware's procedural rules concerning a motion to dismiss are equivalent to the Federal

Rules of Civil Procedure.  As the Third Circuit stated, "Delaware cases are legion requiring specific allegations of fact to support a plaintiff's demand for relief under Chancery Rule 8."  *Tower Air*, 416 F.3d at 236; *see also Notinger v. Costa (In re Robotic Vision Systems, Inc.)*, 374 B.R. 36, 44 (Bankr. D.N.H. 2007) (recognizing that the federal pleading standard is a "less stringent standard" than the Delaware pleading standard).  Relying on Delaware state court decisions, which interpret state procedural law, would also run afoul of the general proposition that federal courts are to apply state substantive law and federal procedural law.  *See, e.g., Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965).

Accordingly, the breach of duty of care claims against the Defendants will not be dismissed on the basis of the DGCL § 102(b)(7) exculpatory provision defense at this Rule 12(b)(6) stage of this suit.

*Id*. at 183-84.

The disparate outcomes between Delaware state court and federal court are attributable to disparate pleading standards—not to substantive law.  Even before *Cornerstone*, some Delaware courts dismissed exculpated breach of fiduciary duty claims, as several cases cited by these Defendants evince,[20] while, as the *Think3* court pointed out, Delaware bankruptcy courts regularly denied motions to dismiss based on exculpation before 2015, just as they continue to do.  The state law may have changed, but the Federal Rules of Civil Procedure did not.

Among the few federal decisions cited by these Defendants, one actually supports the Trustee's position; in the *Opus* opinion, as referenced above, this Court rejected the very Rule 12(b)(6) argument made here.  *Opus*, 480 B.R. at 572.  The other federal decisions on this issue cited by Defendants do not cite *Tower Air* and may therefore be considered outliers and contrary to the great weight of authority.

---

[20]    *Prod. Res. Grp. v. NCT Grp.,* 863 A.2d 772, 798-99 (Del. Ch. 2004) (dismissing duty of care claims barred by an exculpatory charter provision); *Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig*.), 906 A.2d 27, 65 (Del. 2006); *Off. Comm. of Unsecured Creditors v. Elkins (In re Integrated Health Serv.)*, 2004 Del. Ch. LEXIS 122, *34 (Aug. 24, 2004); *Firefighters' Pension Sys. v. Found. Bldg. Materials*, 318 A.3d 1105, 1160-61 (Del. Ch. 2024); *Arnold v. Soc'y. for Sav. Bancorp*, 650 A.2d 1270, 1288 (Del. 1994) (the Trustee must identify the "specific actions" that Mitchell "undertook as an officer[,] as distinct from actions as a[n exculpated] director.").

Lastly, Mitchell cites in a footnote a Third Circuit decision, *In re Cognizant Tech. Sols. Corp. Derivative Litig.*, 101 F.4th 250 (3d Cir. 2024), as affirming the dismissal of a claim for breach of fiduciary duty where duty of care claims were exculpated, but *Cognizant* in no way addressed pleading standards for exculpation. Rather, the issue was the correct standard of review of a district court's decision to dismiss a derivative action for failure to plead demand futility under Federal Rule of Civil Procedure 23.1, which the court held was *de novo*. *Id.* at 262.

Under Third Circuit precedent, exculpation is an affirmative defense not properly considered at the motion to dismiss stage.

E.    **The Business Judgment Rule is an Affirmative Defense That is Not Properly Considered at the Motion to Dismiss Stage**

Similarly, the "business judgment rule" is an affirmative defense not properly considered at the motion to dismiss stage. The business judgment rule is a presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company. *Tower Air*, 416 F.3d at 238 (citing *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003)). Ultimately, a plaintiff must "show[] either irrationality or inattention." *Id.* at 238. "[A]ction may lead to liability where the action or the process that led to it were irrational; inaction may lead to liability where no red flag monitoring system is installed and non-compliance with applicable legal standards results." *Id.* at 238-39.

In *Tower Air*, the Third Circuit held that the business judgment rule is an affirmative defense that does not ordinarily form the basis of a motion to dismiss. *Id.* at 238 ("Generally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)."). Delaware state court decisions are inapt because Delaware state law imposes higher pleading standards. *Id.* at 236 ("The District Court erred by assuming that Delaware's notice pleading cases are interchangeable with federal notice pleading

cases. They are not. By requiring [plaintiff] to allege specific facts, the District Court erroneously preempted discovery on certain claims by imposing a heightened pleading standard not required by Federal Rule of Civil Procedure 8.").

The Third Circuit made one exception—for a facially defective claim. *Id*. at 238 ("A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face . . . ."). There, the plaintiff had asserted a claim that "Tower Air's directors breached their duty to act in good faith by declining to repair Tower Air's jet engines and instead replacing them with new engines . . . ." *Id*. at 239. But the complaint alleged a business justification: that they did so "because the initial payment was lower than the money needed for repair of the disabled engines which [Tower Air] already owned." *Id*. The Third Circuit affirmed dismissal of this claim: "We earlier stressed that we will not dismiss a complaint for lack of detailed facts. *The problem here, though, is not the facts that are not pleaded, but the facts that are.* It seems to us that a complaint is self-defeating when it states an ostensibly legitimate business purpose for an allegedly egregious decision." *Id*. (emphasis added).

This Court and other courts in the Third Circuit follow the rule stated in *Tower Air*. *See OPP Liq.,* 2022 Bankr. LEXIS 651, at *15-16. "[T]he business judgment rule is an affirmative defense and should not be considered at the motion to dismiss stage. Only if the complaint raises the business judgment rule on its face will courts consider its applicability at the motion to dismiss stage. Here, the Amended Complaint does not raise the business judgment rule on its face, and therefore, the Court will not consider it at this stage." *Id*. at *16 (footnotes omitted); *see also Dershaw v. Nevels (In re Swarthmore Grp.)*, 667 B.R. 258, 272 n.11 (Bankr. E.D. Pa. 2025) ("The Complaint does not raise the business judgment rule on its face. It is therefore inappropriate for consideration at this stage.") (citing *OPP Liq.*); *Carickhoff v. Cantor (In re Live Well Fin.)*, 2023

Bankr. LEXIS 1569, *10 (Bankr. D. Del. June 14, 2023) (LSS) ("a review of *Tower Air*, the Third

Circuit case on which Cantor relies and which binds this court, reveals that the business judgment

rule is an affirmative defense which should not be considered at the motion to dismiss stage unless

the plaintiff raises the business judgment rule on the face of the complaint"); *Stanziale v. Versa*

*Cap. Mgmt.* (*In re Simplexity*), 2017 Bankr. LEXIS 37, *22-23 (Bankr. D. Del. Jan. 5, 2017) ("there

is no question that the Trustee did not raise the business judgment rule in his Complaint, and

thereby did not give the Defendants any opening to raise the affirmative defense in the Motions");

*Brown Schools*, 368 B.R. at 401 ("The application of the business judgment rule is an affirmative

defense, the determination of which is not proper at the motion to dismiss stage.").

In a futile effort to align this case with the *Tower Air* exception, Rouhana argues that the

Complaint admits facts that undercut the breach of fiduciary duty claims, at least to the extent they

are based on the Redbox Merger.  These are: (i) Redbox's financial distress was public knowledge,

(ii) CSSE engaged Guggenheim to advise the Board on possible benefits from the merger,

(iii) Guggenheim made a Board presentation discussing possible synergies, (iv) some projections

were disclosed to the Board as having been provided by management, and (v) Board minutes

reflect Board discussions of the merger.[21]  However, unlike in *Tower Air*, where the alleged facts,

on their face, admitted a business justification for the challenged decision, nothing here admits that

the Directors were informed and had a robust discussion concerning the Redbox Merger.  At most,

these are facts from which adverse inferences might be drawn at trial when evidence is weighed.

Such potential adverse inferences, however, are irrelevant at the pleading stage.  As in *OPP*

*Liquidating,* when faced with arguments by the defendants similar to those raised here, to wit, that

"they were informed, did conduct due diligence, had multiple board meetings, and viewed lots of

---

[21]    Rouhana Br. at 22.

presentations and documents before making decisions," this Court denied the motions to dismiss,

holding that "[a]t the motion to dismiss stage . . . the Court must accept the allegations in the

Amended Complaint as true and not the 'allegations' of the Defendants to the contrary." *OPP*

*Liq.,* 2022 Bankr. LEXIS 651, at *18.

Equally inappropriate, procedurally, is the attempt of Rouhana and other Defendants to

import and incorporate a trove of Board minutes and related exhibits into a Rule 12(b)(6) motion.

Rouhana crafts a five-page narrative of the Redbox Merger, constructed from Board minutes and

documents such as fairness opinions attached or referenced therein. Rouhana contends that because

the Complaint alleges that "there is no indication" in the minutes of various Board actions, "the

Court may therefore consider those CSSE's Board meeting minutes without converting this to a

Motion for summary judgment," citing for support this Court's decision in *Center City Healthcare*

*v. McKesson Plasma & Biologics LLC (In re Center City Healthcare),* 641 B.R. 793, 802 (Bankr.

D. Del. 2022).[22]

But all this Court did in *Center City Healthcare* was to consider demand letters that were

referenced in the complaint. *Id.* It did not weigh evidence or decide factual issues.[23] Here,

Rouhana is asking the Court to give evidentiary weight to Board minutes in order to decide a

disputed question of fact in the context of a motion to dismiss: whether or not the Board made an

informed, good-faith decision to approve the Redbox Merger. Even further, he is effectively

asking the Court to establish a rule that, as a matter of law, the existence of Board minutes that

---

[22]  *Id.* at 6 n.9.

[23]  Rouhana also cites *Burch v. Avnet Inc. (In re Managed Storage Int'l)*, 2012 Bankr. LEXIS 5460, *7
(Bankr. D. Del. Nov. 26, 2012) (MFW), *rev'd and remanded*, 527 B.R. 150 (D. Del. 2015), in which
this Court did no more than acknowledge the rule that it may consider "(1) documents attached to or
incorporated by reference into the complaint; (2) matters of public record; [and] (3) undisputably
authentic documents upon which the claims are based" and, based thereon, consider two documents
that were of public record.

contain recitals that there were "discussions" of various matters proves conclusively that the Board made an informed, good-faith decision and so requires dismissal of a complaint under Rule 12(b)(6). The Court should decline this invitation to reinvent Rule 12(b)(6).[24]

Under Rule 12(b)(6), properly construed, the Complaint easily passes muster. *Tower Air* is explicit that plaintiffs are *not* required to plead around the business judgment rule. Certain Directors cite *Hurwitz v. Mahoney (In re Space Case)*, 2024 Bankr. LEXIS 902 (Bankr. D. Del. Apr. 15, 2024), for its statement that, in *Tower Air*, "the Third Circuit Court of Appeals [ ] determined that a complaint challenging a business decision must plead around the business judgment rule by alleging facts that rebut the presumption." *Id*. at *15. On its face, however, that statement flatly misstates the rule of *Tower Air*, which reversed the lower court on exactly that basis, excepting only the single claim that was dismissed based on the facts that were plead, "not the facts that are not pleaded." *Tower Air*, 416 F.3d at 239.

Rouhana persists that because the Complaint alleges that his conduct was "not grounded in any reasonable business judgment," it has "raised the issue" and so the Trustee must "plead around" the business judgment rule.[25] But courts reject the proposition that the business judgment rule can be raised "implicitly" in this manner. *Ad Hoc Comm. of Eq. Holders*, 554 F. Supp. 2d at 556-57 (rejecting argument that, under *Tower Air*, a complaint that implicitly invokes the business judgment rule must plead around the rule); *Shamrock Holdings v. Arenson*, 456 F. Supp. 2d 599,

---

[24]    Mitchell also submitted a declaration and exhibits in support of his Motion to Dismiss, and refers to them extensively. He cites no law under which the Court is permitted to consider them in the context of a Rule 12(b)(6) motion, other than a footnote in which he argues that the Court may take judicial notice of an exculpatory charter provision, and another in which he argues the same for public securities filings (Mitchell Br. at 13 n.2 and 23 n.4). For the latter point, he joins Rouhana in citing this Court's decision in *Managed Storage* that, as noted above, took judicial notice of two documents and in no way involved resolving disputed questions of fact in the context of a motion to dismiss.

[25]    Rouhana Br. at 19-20, and n.15. *See also* Newmark Br. at 15-16; Mitchell Br. at 20; Edwards Br. at 14.

609 (D. Del. 2006) (declining to dismiss based on unanswered affirmative defenses "which are raised only implicitly on the face of the complaint").

The Complaint does not explicitly raise the business judgment rule, and the Trustee is not required to plead around this affirmative defense at this juncture of the proceedings.[26]

**F.    The Breach of Fiduciary Duty Claims Are Plausible
       and Survive the Motions to Dismiss**

Delaware law is clear that officers, directors, and managers owe a company they serve the traditional triad duties of care, loyalty and good faith. *W.J. Bradley*, 598 B.R. at 163. Under Delaware law, the duty of care requires that directors, officers, and managers act on an informed basis. *OPP Liq.*, 2022 Bankr. LEXIS 651, at *18. If directors, officers and managers fail to inform themselves fully and in a deliberate manner, this constitutes gross negligence and a breach of their duty of care. *Id.* at *19. When directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge their fiduciary obligations in good faith. *Id.* at 25.

Corporate officers owe fiduciary duties that are identical to those owed by corporate directors, and officers can be held liable for breaches of fiduciary duty with respect to a transaction notwithstanding board approval of the transaction where there are specific allegations of misconduct against the officer. *Burtch v. Owlstone, Inc. (In re Advance Nanotech, Inc.)*, 2014 Bankr. LEXIS 1362, *19-20 (Bankr. D. Del. April 2, 2014) (MFW) (holding that cases "do not support the proposition that an officer can never be liable for a breach of fiduciary duty simply because the transaction was approved by the board. The cases relied up by the Movants each

---

[26]    Even if the Trustee had raised the business judgment rule and it was properly considered at this stage of the proceedings—which he did not and it is not—as demonstrated in § II.F below, the Trustee has "rebut[ted] the [business judgment] rule by showing that the fiduciaries 'in reaching [their] challenged decision, violated any one of [the] triad of fiduciary duties: due of care, loyalty, or good faith.'" *W.J. Bradley*, 598 B.R. at 164 (quoting *In re Troll Commc'ns*, 385 B.R. 110, 118 (Bankr. D. Del. 2008)).

dismiss claims against non-directors where both the challenged action was approved by the board *and* there were no specific allegations of misconduct against the non-directors.").

Such fiduciary duties also apply to controlling shareholders, such as the CSS Entity Defendants, affiliated entities under the dominion and control of Rouhana that directly and indirectly hold 85% of the Company's voting power. *Id.* at *14 ("Control over a corporation can give rise to a fiduciary duty.").[27]

Here, the Complaint alleges facts from which plausible inferences may be drawn supporting conclusions that each of the Defendants, while serving in fiduciary capacities, contributed to or essentially rubber-stamped transactions that were irrational from any perspective other than dereliction of duty or their and/or Rouhana's self-interest.

1.    The Complaint Alleges That Each of the Defendants Served in a Fiduciary Capacity at the Times of the Challenged Breaches of Fiduciary Duties

- *The Directors Served in Fiduciary Capacities at the Times of the Challenged Breaches of Fiduciary Duties*.  The Complaint alleges that the Directors—Rouhana, Newmark, Mitchell, DiNicola, Cohen, Lurie, Wilkin, Somaya and Pompadur—served on the Company's Board at the time of the Redbox Merger (2022), the Insider Releases (2022), and when the Company authorized payments on account of the Insider Management and Licensing Agreements (2020-2024), and Preferred Dividends (2020-2023), entered into Intellectual Property Agreements (2022-2024), and the Company failed to meet the its obligations to its employees (2023-2024).[28]  Complaint ¶¶ 10-18.

- *The Officers Served in Fiduciary Capacities at the Times of the Challenged Breaches of Fiduciary Duties*.  The Complaint alleges that the Officers—Rouhana, Mitchell, Edwards and Meier—served as officers of the

---

[27]    *See* Responsive Brief II § II.F, responding to the CSS Entities' "controlling shareholder" arguments. A stockholder is controlling under Delaware law where it owns more than 50% of the voting power of a corporation.  *See, e.g., Sheldon v. Pinto Tech. Ventures*, 220 A.3d 245, 251 (Del. 2019).  Here, the CSS Entities directly or indirectly own 85% of the voting power of the Company, making them controlling shareholders with fiduciary duties to the Company.

[28]    Mitchell and Somaya, who joined the Board in 2021, are the only Directors who did not serve when insider and dividend payments were made in the 2020-2021 timeframe, but did serve during the timeframe thereafter.  All other Directors served as members of the Board at all times from at least 2020 forward.

Company at the time of the Redbox Merger (2022), the Insider Releases (2022), and when the Company authorized payments on account of the Insider Management and Licensing Agreements (2020-2024), and Preferred Dividends (2020-2023), entered into Intellectual Property Agreements (2022-2024), and the Company failed to meet the its obligations to its employees (2023-2024). *Id.* ¶¶ 10, 12, 19-20.

- There is no dispute that Rouhana served as an officer (CEO) at all relevant times.

- Mitchell asserts that he ceased being CFO to the Company as of November 2022, but does not dispute that he continued in his role as a member of the Company's Board and as CFO to CSS— Rouhana's entity and the counter-party to the Insider Management and Licensing Agreements—post-November 2022,[29] raising distinct conflict-of-interest issues.   In any event, there is no dispute that Mitchell served as an officer at the time of the Redbox Merger, Insider Releases, and other transactions that occurred in or prior to 2022, and that he was at all times a Board member of the Company and CFO of CSS.

- Edwards asserts that she was never an officer.  In direct conflict with this assertion, Edwards asserts that any claims against her are barred by the Insider Releases (which purport to release claims against the Company's directors, officers, and managers), and that the Trustee's aiding and abetting claims cannot stand against her as she served in a fiduciary capacity vis-à-vis the Company.[30]   Edwards's positions are internally inconsistent—and clearly demonstrate that there is a factual dispute as to her position with the Company that cannot be resolved at the motion to dismiss stage of these proceedings.[31] The Trustee obtained the information regarding Edwards's roles, including the dates, from her publicly available LinkedIn resume, which she presumably prepared.[32]   Additional details regarding her titles and roles, and the precise timing thereof, will be the subject of

---

[29]   Mitchell Br. at 12-13.

[30]   Edwards Br. at 1, 2, 7, 14-15, 20-21.

[31]   Edwards's citation to *Kapila v. Gregory E. Matton, P.A. (In re Am. Managed Care, LLC)*, 2016 Bankr. LEXIS 2404, *9 n.1 (Bankr. M.D. Fla. June 28, 2016), for the point that her title of "Chief of Staff" is not common and does not give the Court an understanding of her role simply highlights that there are unresolved factual issues.  In any event, the court in that case simply noted that an affidavit appeared to lack foundation for, among other reasons, that "the title 'Chief of Staff' is not a common title in private companies and does not give the Court any understanding of his role with the company.").

[32]   https://www.linkedin.com/in/amandaredwards/ (accessed August 11, 2025).

discovery, but the Trustee's allegation that Edwards was an officer, with attendant fiduciary duties, is plausible.

- Meier asserts that he did not serve as an officer until he took over the formal title of CFO from Mitchell in November 2022, just following the Redbox Merger. The Complaint alleges (and Meier admits) that, prior to serving as CFO and principal accounting officer of the Company from November 2022, for the period September 2021 through November 2022, Meier served as executive vice president, finance and chief accounting officer of the Company. The Complaint alleges that, during this time, Meier was part of the financial management team that prepared and presented wildly unreasonable projections to support the Redbox transaction. Meier's assertion that his name is not specifically mentioned in the Board minutes is a non sequitur as the minutes refer generally to "management," not specific members of management by name.[33] Similarly, his name not appearing in a search of public filings is not dispositive of his actual role. Notably, Meier's publicly available LinkedIn resume details Meier's high-level financial role and responsibilities with the Company as the same *for both periods of time*.[34] Meier indisputably served as CFO during the timeframe that, among other things, insider payments and dividends (presumably based on financial metrics prepared by him as CFO) were made, Intellectual Property Agreements were entered into, and employee obligations were not being paid or properly accounted for. As with Edwards, additional details regarding Meier's titles and roles will be the subject of discovery, but the Trustee's allegation that Meier was an officer since September 2021, with attendant fiduciary duties, is plausible.[35]

- ***The CSS Entities Served in Fiduciary Capacities at the Times of the Challenged Breaches of Fiduciary Duties***. The Complaint alleges that (i) CSSP is the parent and controlling stockholder of the Company, holding 85% of the voting power of the Company; (ii) CSS owns 100% of CSSP; and (iii) CSS Holdings owns 100% of CSS. The Complaint alleges that the CSS Entities are the direct and indirect parent companies of the Company, were under Rouhana's control, and controlled the Company as controlling shareholders, and that CSS was the counter-party to the Insider Management and Licensing Agreements at the time of the Redbox Merger

---

[33] *See* § II.C above responding to the Defendants' "group pleading" arguments. The Board minutes consistently refer to the Board and management as groups, not individuals.

[34] https://www.linkedin.com/in/jason-meier-8378869/ (accessed August 11, 2025).

[35] *See Grabski v. Andreessen*, 2024 Del. Ch. LEXIS 29, *11, 2024 WL 390890 (Del. Ch. Feb. 1, 2024) (denying motion to dismiss claims against directors and officers, including an officer with the title of chief accounting officer).

(2022), the Insider Releases (2022), and when the Company authorized payments on account of the Insider Management and Licensing Agreements (2020-2024), and Preferred Dividends (2020-2023), entered into Intellectual Property Agreements (2022-2024), and the Company failed to meet its obligations to its employees (2023-2024). Complaint ¶¶ 22-24. The CSS Entities dispute that they are "controlling shareholders" with attendant fiduciary duties.[36]   However, the Trustee makes plausible allegations that the CSS Entities, which are owned and controlled by Rouhana and Newmark (and for which Mitchell served as CFO), and directly or indirectly hold 85% of the Company's voting stock, are controlling shareholders with fiduciary duties to the Company.

2. The Complaint Alleges That Each of the Defendants Breached His, Her, or Its Fiduciary Duties to the Company

- ***Unchecked Control and Failure to Oversee****:*  The Complaint alleges facts from which it may be inferred that Rouhana had unchecked control (indeed, the Company acknowledged it) and that the other D&Os utterly acquiesced to such control and served as a rubber stamp of self-interested transactions that led to the Company's demise. *Id.* ¶¶ 26-30, 67, 72, 77, 81. *See Tower Air*, 416 F.3d at 240 ("Stanziale argues on appeal that the directors' alleged rubber-stamping of major capital expenditures is consistent with bad faith. We agree."); *OPP Liq.*, 2022 Bankr. LEXIS 651, at *25 ("even if they met regularly, the BOD Defendants did nothing more than rubber stamp management's actions"). It may be inferred from the Company's acknowledgement that its internal financial controls had failed in connection with the Redbox Merger that, at all relevant times, the Directors failed to establish, much less implement, a system designed to provide them with the information needed to make informed decisions, and that management failed to monitor Rouhana's actions and failed to provide reliable information to the Board. Complaint ¶¶ 33-34.

- ***Redbox Merger****:*  The Directors were oblivious to the red flags raised by Guggenheim's abdication to management in determining the acquisition value of Redbox. Based on management's numbers, $506 million of the ostensible $598 million acquisition value was attributed to the goodwill and intangibles of a money-losing company with an antiquated business model that had issued a going concern warning. *Id.* ¶¶ 29, 37-44, 55-57. That management's projections were grossly exaggerated when made, and that the oversight was egregious, may be inferred from the alleged fact that goodwill was written down by 75% within a year (*id.* ¶ 55), and the acknowledged failure of internal financial controls. *Id.* ¶¶ 33-34.[37] *See also*

---

[36]   CSS Entities Br. at 6-8. *See* Responsive Brief II § II.F, responding to the CSS Entities' "controlling shareholder" arguments.

[37]   Mitchell argues that no facts are alleged that support a plausible inference that the projections were unreasonable when made. Mitchell Br. at 21 (citing *EisnerAmper, LLC v. Morgan (In re SRC*

*OPP Liq.*, 2022 Bankr. LEXIS 651, at *25 ("the CFO Defendants failed to monitor the expansion and consistently prepared erroneous financial reports which they failed to correct").

- ***Gratuitous D&O Releases***: The Complaint contains detailed and specific factual allegations regarding the Insider Releases purportedly granted by the Company in favor of Rouhana and the other Defendants in 2022, for no consideration whatsoever, and the self-interest of the Defendant releasees in obtaining such an atypical release.  Complaint ¶¶ 58-61.  The Complaint alleges that the Insider Releases by the Company of the Company's own directors, officers, managers, and affiliates was a gratuitous, avoidable fraudulent transfer by the Company to the Defendants, and the releases were was not a customary or integral part of the Redbox Merger.[38]

- ***Self-Interested Insider Management and Licensing Agreements***: The Complaint contains detailed and specific factual allegations regarding the terms of the Insider Management and Licensing Agreements between the Company and CSS—with Rouhana, Newmark and Mitchell sitting on both sides of the transaction; that the agreements were not characterized by fair dealing or fair price; were in Rouhana's and Newmark's self-interest as owners of CSS, not in the best interests of the Company, including that the agreements obligated the Company to pay 10% of its net revenues to CSS, regardless of the Company's financial condition; the agreements could have been terminated (or renegotiated) on an annual basis commencing in 2021 (but were not); and setting forth the extraordinary amounts paid for management and licensing by the Company in the four years prior to the Petition Date (over $55 million between 2020 and the first quarter of 2024, amounts that inexplicably include payments purportedly based on a revenue calculation in the *exact* same amount, $18.4 million each, in both 2022 and 2023), and detailing the Company's financial distress when such payments were made, and that the other D&Os rubber-stamped Rouhana's decisions without making any effort to obtain information to assess the propriety or reasonableness of the Insider Agreements in light of the significant payments being made thereunder and Company's financial distress.[39]  *Id.* ¶¶ 62-67.

---

*Liquidation, LLC)*, 765 F. App'x 726, 729 (3d Cir. 2019)).  The 75% write-down within a year alone supports such an inference.  This stands in stark contrast to *EisnerAmper*, where "the complaint presented conclusory statements about [defendants'] knowledge regarding the value of WorkflowOne and its possible effects on SRC's financial health at the time of the acquisition."  *Id.*

[38]    *See* Responsive Brief II § II.B, responding to the Defendants' assertions regarding the avoidability of the Insider Releases (Eighth and Ninth Claims for Relief).

[39]    *See* Responsive Brief II § II.C, responding to the Defendants' assertions regarding the avoidability of the Insider Revenue Transfers of approximately $38 million within 2 years prior to the Petition Date, and $55 million within 4 years prior to the Petition Date (Sixth and Seventh Claims for Relief), and

- ***Intellectual Property Agreements***:   The Complaint contains factual allegations (as detailed as possible without the benefit of discovery) regarding thirteen Intellectual Property Agreements entered into on behalf of the Company within two years of the Petition Date (from June 2022 to May 2024) that support a plausible inference that these agreements were not characterized by fair dealing or fair price, did not reflect arm's length, market transactions, were entered into at a time when the Company was in significant financial distress following the Redbox Merger, and were in Rouhana's self-interest and not in the best interests of the Company, and that the other D&Os rubber-stamped Rouhana's decisions without making any effort to obtain information to assess the propriety or reasonableness of the agreements in light of the Company's financial distress, including five agreements involving Rouhana's personal friend, David Nagelberg, the trustee of the Nagelberg Trust, as counter-party, and allegations that the Nagelberg Trust is also a Series A Preferred Shareholder and, just prior to the Petition Date, provided $1.75 million to bankruptcy counsel of Rouhana's choosing, raising distinct conflict concerns. *Id.* ¶¶ 68-72.

- ***Unlawful Dividend Payments***:   The Complaint contains detailed and specific factual allegations regarding the payment of dividends to Series A Preferred Shareholders, totaling over $36.8 million in the four-year period from 2020 to 2023, that preferred shareholders would have remedies (including the right to appoint directors to the Board should dividends not be paid for a period of eighteen months); that the Company was in financial distress and lacked surplus or net profits sufficient to lawfully declare the dividends; that Rouhana acted in his own self-interest, and not in the best interests of the Company; and that the Board failed to act as proper directors and officers but instead rubber-stamped Rouhana's decisions without making any effort to obtain information to assess the propriety or reasonableness of the payment of dividends in light of the Company's financial distress. *Id.* ¶¶ 73-77.[40]

- ***Nonpayment of Wages, Benefits, and Taxes***:   The Complaint contains detailed and specific factual allegations regarding the Company's admitted nonpayment of employee wages, medical benefits, and payroll taxes, including the nonpayment of approximately $15.5 million in withholding taxes during the nine-month period from October 3, 2023 to June 7, 2024, that this failure to pay employee obligations occurred while the Company was paying its shareholders and insiders; that the CSS Entities (under the control of Rouhana and Newmark, and with Mitchell as CFO) failed in their obligation to make such payments on behalf of the Company; that the CSS

---

§ II.E responding to the Defendants' assertions regarding the recovery of such amounts as illegal dividends (Tenth Claim for Relief).

[40]   *See* Responsive Brief II § II.E, responding to the Defendants' assertions regarding the recovery of the Preferred Dividends (in the total amount of $36.8 million since 2020) as illegal dividends (Tenth Claim for Relief).

> Entities, Rouhana, Newmark and the other D&Os did not act in the Company's best interests by failing to pay the Company's obligations to its employees; that the D&Os knew or should have known that such obligations were not being paid; and that, instead of obtaining adequate information, were concerned about their own liability and blindly followed and did not question the decisions of Rouhana. *Id.* ¶¶ 78-81.

These allegations are sufficient to state plausible claims for breach of the duty of care, breach of the duty of loyalty, and a lack of good faith against all Defendants, and the Trustee's causes of action for breach of fiduciary duty should withstand dismissal under Rule 12(b)(6). *See Autobacs Strauss, Inc.*, 473 B.R. at 561-62 (holding that where duty of loyalty claims are properly alleged, courts generally refuse to dismiss corresponding duty of care claims at the motion to dismiss stage, even if such duty of care claims may ultimately be subject to affirmative defenses based on exculpatory provisions or the business judgment rule).

This Court's decision in *OPP Liquidating* is an exemplar.  In that case, the complaint alleged that the principal, Schoen, "pushed the BOD to approve a simultaneous, ill-advised, and poorly implemented expansion on the East and West Coasts.  It alleged that the BOD Defendants did not adequately inform themselves of the advisability of those plans and allowed its principal, Schoen, free rein instead of fulfilling their fiduciary role.  As a result, the Debtor exceeded the expansion budget by more than $50 million, was unable to operate any of its three plants efficiently, incurred significant operational losses, violated the covenants of its loans, and ultimately was forced to file bankruptcy."  2022 Bankr. LEXIS 651, at *5.  The complaint alleged that, prior to entering into a purchase transaction, Schoen "did not gather enough information" or "compare the prices the Debtor was paying to market rates, which resulted in the Debtor paying a substantial premium . . . ."  *Id.* at *19.  Similarly, the complaint alleged that the CFO defendants "failed to inform themselves in the appropriate manner about the costs" and "failed to update budgets and report accurate financial information to the BOD . . . ."  *Id.*

This Court denied a motion to dismiss the breach of fiduciary duty of care claims against the principal and the officer defendants based on these allegations. *Id.* at \*20. This Court also denied the motion to dismiss the breach of fiduciary duty of care claims against the directors where the complaint alleged, *inter alia*, that the director defendants "failed to (a) properly monitor the Debtor's management, (b) educate themselves about the paper industry, (c) recognize the numerous irregularities in the Debtor's financial reports and budgets, (d) insist on the replacement of incompetent management, (e) object to the extensions of the Debtor's credit facility which increased costs, and (f) prohibit the Debtor from continuing to operate while insolvent." *Id.* at \*19-20. This Court "conclude[d], based on these allegations of the Amended Complaint, that the Liquidating Trustee ha[d] pleaded sufficient facts to state a claim against the Defendants for breach of the fiduciary duty of care." *Id.* at \*20.

This Court also declined to dismiss claims against the principal, officers, and directors for breach of the duty of loyalty for a lack of good faith, finding that the complaint "contain[ed] numerous allegations that the Defendants failed to act in the face of a known duty to act, demonstrating a conscious disregard for their duties." *Id.* at \*25. Specifically, the Court denied dismissal based on allegations that "even if they met regularly, the BOD Defendants did nothing more than rubber stamp management's actions" and "the BOD Defendants did not properly oversee management or act when it became apparent that the financial reports were erroneous and the expansion was a disaster." *Id.* Likewise, allegations that "Schoen failed to oversee and control the costs and complications of the buildout and expansion" and that "the CFO Defendants failed to monitor the expansion and consistently prepared erroneous financial reports which they failed to correct," were sufficient to adequately state a claim that the principal and the officer defendants breached their duty of good faith. *Id.* Here, the action, inaction and inattention of the other

Defendants in the face of Rouhana's unchecked control and self-interested, disastrous business decisions was a dereliction of duty at least as great as that of the officers and directors in *OPP Liquidating*.

Moreover, as this Court found in *Advance Nanotech*, the allegations in the Complaint that the CSS Entities exercised control of the Company, sat on both sides of interested transactions—including with respect to the Insider Management and Licensing Agreements—and failed to act independently of Rouhana, states a plausible claim that the CSS Entities breached their fiduciary duties to the Company. *Advance Nanotech*, 2014 Bankr. LEXIS 1362, at *17-18 (finding a plausible claim for breach of fiduciary duty against a subsidiary of a debtor where the trustee alleged that the subsidiary exercised actual control over the debtor through the CEO and CFO); *DSI Renal*, 574 B.R. at 472 ("The presence of the Centre Defendants [alleged control group] on both sides of the transaction, combined with the charge that the Centre Defendants were exercising control over the affairs of the [Debtors'] board and, more specifically, the restructuring process, alleges sufficient breach of the fiduciary duties of loyalty and good faith.").

### 3.   The Redbox Merger Was an Interested-Party Transaction

In an attempt to evade the Trustee's duty of loyalty claims, the Defendants argue that causing the Company to gratuitously release its own directors, officers, managers, and affiliates from all claims ever held by the Company through the date of the Redbox Merger should not be treated as a "self-interested" transaction as a matter of Delaware law.[41]  The Defendants argue that the Complaint fails to plead specific facts to show that they had an interest in the Redbox Merger

---

[41]   *See* Other Directors Br. at 11-12; Rouhana Br. at 23-24; Newmark Br. at 19; Mitchell Br. at 13-15; Edwards Br. at 16, n.8.

by virtue of the Insider Releases because there was no pending or substantial threat of litigation against them.[42]  This argument is conceptually inapt and inherently factual.

The Insider Releases here were gratuitous, avoidable fraudulent transfers by the Company to its Board, management, and affiliates, not a customary or integral part of the Redbox Merger.[43]  The Insider Releases were also atypical.  While it may be customary to include such parties in a *mutual release between transacting parties,* this was a *party's release of claims against its own agents*.  Its bona fides are a question of fact.  So is the question of just how substantial a threat of litigation was created by the transaction.

The Defendants' leading cited case, *H-M Wexford LLC v. Encorp, Inc*., 832 A.2d 129 (Del. Ch. 2003), is not to the contrary.  It states:

> [I]t is more or less universally the case that when a corporation pays value to settle a claim, it demands and receives releases in favor of its directors, officers and other agents, in order to preclude the possibility of having to defend against any additional claims arising out of the matters at issue in the settlement.  There would be little sense in a rule providing that the presence of such prophylactic measures in a settlement agreement results in that agreement being treated as an interested party transaction.

---

[42]  The Defendants argue that, to constitute a conflict of interest, a release agreement must be approved in the face of known and threatened litigation against the directors.  *See, e.g.,* Other Directors Br. at 12 (stating, "for releases to constitute disabling conflicts, the directors must have been 'aware that they faced a threatened claim at the time they were considering the Merger, that the claim was viable, and that potential liability was material to them.") (quoting *In re Riverstone Nat'l, Inc. Stockholder Litig.*, 2016 Del. Ch. LEXIS 111, *8 (July 28, 2016)).  Notably, the court in *Riverstone* concluded that the directors in that case had engaged in a self-interested transaction by approving a merger that precluded prosecution of the corporation's own claims against them by an acquirer.  While the existence of known claims was a factor in the court's decision*,* the court's holding turned on the fact that the insiders "secured a valuable benefit" for themselves, which gave rise to self-interest that implicated their duty of loyalty.  *Id.* at *49.  The Complaint here sufficiently alleges that the Defendants secured a valuable benefit for themselves by causing the Company to enter into the Insider Releases.  The Other Directors mischaracterize *Maffei v. Palkon*, 2025 Del. LEXIS 51, *53-54 (Feb. 4, 2025), which they quote as holding that, to represent a disabling conflict, "the release must have been signed in the face of a 'cloud of litigation* relating to past conduct.'"  Other Directors Br. at 12.  That was not the court's holding.  Instead, that quote came in the context of discussing the facts of *Riverstone,* in which claims had been threatened at the time of the transaction.

[43]  *See* Responsive Brief II § II.B.

*Id*. at 149-50 (emphasis added).

In other words, this decision involved including the board in a release given *by the other side*. That was not the case here. Also relevant in *Wexford* was whether there was a substantial threat of litigation: "Because the threat of personal liability was so insubstantial, there is no force to Wexford's contention that, because the Settlement Agreement includes releases running in favor of the directors, those directors were 'interested' in that transaction." *Id*. at 149.[44] But, patently, the degree of risk presents a question of fact.

The Complaint alleges that the Redbox Merger was motivated, in part, by the Defendants' expectation that Rouhana, Newmark, and the CSS Entities would benefit directly through increased Insider Revenue Transfers derived from Redbox revenues (that were to be obtained only by having the Company take on crippling debt). Rouhana argues that allegation is false, because the Board had "determined that Redbox's traditional business would be excluded from revenue calculations under the CSS Agreements."[45] As support, Rouhana refers indirectly to three different exhibits, all of which are extrinsic evidence that cannot be considered on a motion to dismiss under Rule 12(b)(6).[46] Furthermore, two of his own cited documents refer to *conditions* that must be met "*unless and until certain prescribed conditions have occurred,*" raising an obvious factual issue. In any event, the Defendants do not appear to dispute that at least some portion of the Redbox revenues would be distributed as Insider Revenue Transfers under the CSS Agreements following

---

[44] Rouhana also cites *Shabbouei v. Laurent*, 2020 Del. Ch. LEXIS 121, *19 (Apr. 2, 2020), which: (a) does not state a rule that litigation must be pending or threatened, but simply cites *Wexford*; (b) like *Wexford*, involved obtaining a release from a potentially *adverse party*, i.e., the board received a release in a settlement of threatened litigation between the Lululemon CEO and the company; and (c) like all other Delaware state court cases, applied heightened pleading requirements not applicable to a Rule 12(b)(6) motion.

[45] Rouhana Br. at 24.

[46] *Id*. at 13.

the Merger.  Any dispute concerning *how much* they stood to benefit from the Redbox Merger

raises questions of fact that are not appropriate for consideration at this stage.

The allegation that the Defendants acted in bad faith in approving the transaction is

supported by far more than simply reciting the phrase "bad faith," as the Directors argue.[47]  As

detailed above, the Complaint contains a multitude of factual allegations from which an inference

of bad faith may be drawn, not the least of which is the Board's reliance on management, rather

than Guggenheim, for setting an acquisition value primarily based on goodwill and intangibles that

it may be inferred were irrationally valued, given their 75% write-down within a year and the

acknowledged failure of internal financial controls.  Even if the Trustee were required to plead an

"extreme set of facts," as the Other Directors argue based on inapposite Delaware state court

authority,[48] that heightened pleading standard would be met.[49]  Here, the Complaint alleges that

the Defendants authorized the Company to release the Company's *own* claims against its *own*

fiduciaries for no value at a time that the Company was in deep financial distress.  The Complaint

---

[47]  *See, e.g.,* Rouhana Br. at 24; Mitchell Br. at 18; Other Directors Br. at 16-19.

[48]  Other Directors Br. at 16 n.62.

[49]  Two federal cases are cited by the Other Directors (*id*. at 17 n. 67).  In the first, *Liquidation Tr. v. Stiens (In re Solutions Liq.)*, 608 B.R. 384, 402 (Bankr. D. Del. 2019), Judge Sontchi explicitly relies on Delaware state court pleading requirements for bad faith.  *Id*. at 401 ("Under Delaware Law, '[t]o state a legally sufficient claim . . . plaintiffs must allege facts showing . . . .'") (quoting *Official Comm. v. Goldman Sachs Credit Partners (In re Fedders N. Am.)*, 405 B.R. 527, 540 (Bankr. D. Del. 2009)).  That is error.  *Tower Air*, 416 F.3d at 236 ("The District Court erred by assuming that Delaware's notice pleading cases are interchangeable with federal notice pleading cases.  They are not.  By requiring [plaintiff] to allege specific facts, the District Court erroneously preempted discovery on certain claims by imposing a heightened pleading standard not required by Federal Rule of Civil Procedure 8.") (footnote omitted).  The *only* claim dismissal the Third Circuit upheld was based "*not the facts that are not pleaded, but the facts that are*."  *Id*. at 239 (emphasis added).  Under this erroneous, heightened pleading standard, Judge Sontchi found "*there is absolutely no factual support in the Complaint to support a Claim for a breach of the duty of loyalty or the duty of good faith*."  *Id*. at 401-02 (emphasis added).  That is clearly not the case here, particularly because, under Rule 12(b)(6), courts may rely on inferences from alleged facts.  *Tower Air*, 416 F.3d at 236.  Here, as discussed above, there are a multitude of alleged facts from which bad faith may be inferred.  The second cited decision, *Barsa v. Theseus Strategy Grp. (In re Old BPSUCH, Inc.)*, 2020 Bankr. LEXIS 1697, *27 (Bankr. D. Del. June 30, 2020), simply cites Judge Sontchi's decision and so repeats its error.

further alleges that, at the time of the Insider Releases, the Defendants had authorized the Company to assume a massive, secured obligation that it could not bear in exchange for acquiring a large company that was itself on the verge of bankruptcy.  Around the same time, the Defendants regularly authorized large transfers by the Company to its shareholders and insiders, apparently without any concern for the Company's interests.  These allegations depict "egregious" circumstances that would undermine the Defendants' independence even in an otherwise unexceptional case involving a release given by a third party under a settlement agreement.  *See, e.g., H-M Wexford*, 832 A.2d at 149 ("*except in egregious circumstances*, 'the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors.'") (emphasis added; quoting *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984)).  Certainly, the extraordinary circumstances alleged in the Complaint are more than sufficient to undermine the Defendants' independence here. In any event, the Defendants' arguments raise disputes of fact (*e.g.,* the extent to which the transaction was "egregious" or that the Defendants were aware of their potential liability at the time of the Insider Releases), which are not appropriate for resolution on a motion to dismiss.

Under *OPP Liquidating*  and the many other decisions in this district and elsewhere denying motions to dismiss claims for breach of fiduciary duty, the allegations in the Complaint are sufficient to permit the Trustee to move past the pleading stage and conduct discovery. Accordingly, the Motions to Dismiss seeking to dismiss the Complaint's causes of action for breach of fiduciary duty against the Defendants should be denied.

## III.

## CONCLUSION

Based on the foregoing, and for the reasons set forth in Responsive Brief II, the Trustee requests that the Court deny the Motions to Dismiss, and allow this matter to proceed to discovery and a trial on the merits.

Dated: August 29, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*

Richard M. Pachulski (admitted *pro hac vice*)
Alan J. Kornfeld (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Tavi C. Flanagan (admitted *pro hac vice*)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  rpachulski@pszjlaw.com
    akornfeld@pszjlaw.com
    joneill@pszjlaw.com
    tflanagan@pszjlaw.com

*Counsel to George L. Miller, Chapter 7 Trustee*