## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL<br>ENTERTAINMENT, INC., *et al.*,<br><br>     Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, CHAPTER 7 TRUSTEE<br><br>     Plaintiff.<br><br>  v.<br><br>WILLIAM J, ROUHANA, JR., AMY L.<br>NEWMARK, CHRISTOPHER MITCHELL,<br>FRED M. COHEN, COSMO DENICOLA,<br>MARTIN POMPADUR, CHRISTINA WEISS<br>LURIE, DIANA WILKIN, VIKRAM<br>SOMAYA, JASON MEIER, AMANDA R.<br>EDWARDS, CHICKEN SOUP FOR THE<br>SOUL PRODUCTIONS, LLC, CHICKEN<br>SOUP FOR THE SOUL, LLC, CHICKEN<br>SOUP FOR THE SOUL HOLDINGS, LLC,<br><br>     Defendants. | Adversary No. 25-50399 (MFW)<br><br>**Re: Adv. D.I. 1, 35, 51, 52** |

## THE INDEPENDENT DIRECTORS' REPLY BRIEF IN SUPPORT OF
## MOTION TO DISMISS ADVERSARY COMPLAINT

Dated: September 26, 2025

**SAUL EWING LLP**
Evan T. Miller (No. 5364)
1201 North Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6864
Facsimile: (302) 421-6813
Email: evan.miller@saul.com

-and-

**HOLLAND & KNIGHT LLP**
Jessica Magee (Admitted *Pro Hac Vice*)
Texas Bar No. 24037757
Steven J. Levitt (Admitted *Pro Hac Vice*)
Texas Bar No. 24092690
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214-964-9500
Jessica.Magee@hklaw.com
Steven.levitt@hklaw.com

*Counsel for Defendant Cosmo Denicola*

**TROUTMAN PEPPER LOCKE LLP**
David M. Fournier (DE No. 2812)
Christopher B. Chuff (DE No. 5729)
Tori L. Remington (DE No. 6901)
Tyler R. Wilson (DE No. 7129)
1313 N. Market Street, Suite 1000
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
david.fournier@troutman.com
chris.chuff@troutman.com
tori.remington@troutman.com
tyler.wilson@troutman.com

*Counsel for Defendants Fred M. Cohen,
Christina Weiss Lurie, Martin Pompadur,
and Diana Wilkin*


**THOMAS LAW LLC**
 Mary S. Thomas (DE Bar No. 5072)
1521 Concord Pike, Suite 301
Wilmington, DE 19803
Telephone: (302) 647-1203
mthomas@marythomaslaw.com

-and-

**LAW OFFICES OF THIRU
VIGNARAJAH LLC**
Thiru Vignarajah, Esq.
Ross Ingram, Esq.
211 Wendover Road
Baltimore, MD 21218
Telephone: (410) 456-7552
thiru@thirulaw.com
ross@thirulaw.com

*Counsel for Defendant Vikram Somaya*

# TABLE OF CONTENTS

**Pages(s)**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

I.    Plaintiff's Breach of Fiduciary Duty Claim Against the Independent
Directors (Count II) Must Be Dismissed Under the Exculpatory Provision ......... 1

    1.    The Exculpatory Provision Must Be Considered at the
Pleading Stage .............................................................................. 1

    2.    Plaintiff Has Not Pleaded Interestedness ...................................... 3

    3.    Plaintiff Has Not Pleaded that the Independent Directors
Lacked Independence or Acted in Bad Faith ................................ 5

    4.    Plaintiff's Fiduciary Duty Claims for any Actions
Occurring Before June 29, 2021 Are Partially Time-Barred ........ 8

II.    Plaintiff's Aiding and Abetting Breach of Fiduciary Duty Claim Against
the Independent Directors (Count V) Must Be Dismissed ................................... 8

III.    Plaintiff's Unlawful Dividend Claim (Count X) Against the Independent
Directors Must Be Dismissed ............................................................................. 8

    1.    The Fees Are Not Dividends Subject to Sections 170-174
of the DGCL ................................................................................ 8

    2.    Plaintiff Fails to Plead a Violation of Sections 170-174 for
Fees and Dividends from January 1, 2020 through June 30,
2023 ........................................................................................... 10

IV.    The Release Bars All Claims Before August 2022 ............................................. 11

V.    Plaintiff's FLSA Claim (Count XI) Must Be Dismissed ................................... 12

VI.    Plaintiff's Fraudulent Transfer Claims (Counts VIII and IX) Against the
Independent Directors Must Be Dismissed ......................................................... 12

    1.    The Fraudulent Transfer Claims are Barred by the Release
and Count VIII is Time-Barred ................................................... 12

    2.    The Complaint Does Not Adequately Plead Insolvency or
Reasonably Equivalent Value ..................................................... 12

VII.    Counts XII and XIII Must Be Dismissed ........................................................... 15

CONCLUSION ..................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Alloy, Inc. S'holder Litig.*,
2011 WL 4863716 (Del. Ch. Oct. 13, 2011) ................................................................6

*In re AmTrust Fin. Services, Inc. Stockholder Litig.*,
2020 WL 914563 (Del. Ch. Feb. 26, 2020) ................................................................5

*Baldonado v. Avrinmeritor, Inc.*,
2014 WL 2116112 (D. Del. May 20, 2014).................................................................12

*Bench Walk Lighting LLC v. LG Innotek Co.*,
530 F. Supp. 3d 468 (D. Del. 2021)...........................................................................3

*Blixseth v. Kirschner (In re Yellowstone Mt. Club)*,
436 B.R. 598 (Bankr. D. Mont. 2010) .......................................................................14

*Borsody v. Gibson*,
2025 WL 1650395 (Del. Ch. June 11, 2025) ............................................................3

*Buchwald Cap. Advisors LLC v. Schoen (In re OPP Liquidating Co.)*,
Adv. Case No. 21-50431-MFW (Bankr. D. Del. filed Aug. 23, 2021) .......................7

*Chamberlain v. Giampapa*,
210 F.3d 154 (3d Cir. 2000)......................................................................................2

*Eckert v. Hightower*,
2025 WL 930788 (Del. Ch. Mar. 24, 2025)...............................................................6

*In re F-Squared Inv. Mgmt., LLC*,
2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019) ...................................................14

*In re FAH Liquidating Corp.*,
572 B.R. 117 (Bankr. D. Del. 2017) ..............................................................10, 13, 14

*Feeley v. NHAOCG, LLC*,
62 A.3d 649 (Del. Ch. 2012).....................................................................................2

*Firefighters' Pension System of City of Kansas City v. Found. Bldg. Materials, Inc.*,
318 A.3d 1105 (Del. Ch. 2024)................................................................................2, 3

*Flannery v. Genomic Health, Inc.*,
2021 WL 3615540 (Del. Ch. Aug. 16, 2021) ............................................................3

*In re Foothills*,
    476 B.R. 143, 150 (Bankr. D. Del. 2012) ...........................................................10

*Goldstein v. Denner*,
    2022 WL 1671006 (Del. Ch. May 26, 2022) ........................................................3

*Halperin v. Richards*,
    665 B.R. 626 (E.D. Wisc. 2024) ........................................................................10

*Horbal v. Three Rivers Holdings*,
    2006 Del. Ch. LEXIS 53 (March 10, 2006) ..........................................................9

*In re IT Grp. Inc.*,
    2005 WL 3050611 (D. Del. Nov. 15, 2005) ..........................................................3

*JPMorgan Chase Bank, N.A. v. Ballard*,
    213 A.3d 1211 (Del. Ch. 2019) ..........................................................................10

*In re KKR Fin. Holdings LLC S'holder Litig.*,
    101 A.3d 980 (Del. Ch. 2014), *aff'd sub nom. Corwin v. KKR Fin. Holdings
    LLC*, 125 A.3d 304 (Del. 2015) ...........................................................................6

*In re LMI Legacy Holdings, Inc.*,
    2017 WL 3432366 (Bankr. D. Del. Aug. 10, 2017) ..............................................2

*Maffei v. Palkon*,
    2025 WL 384054 (Del. Feb. 4, 2025) ...................................................................4

*Magazu v. Chileno Bay Fam. Off., LLC*,
    2025 WL 1424659 (D. Del. May 16, 2025) ...........................................................2

*Manti Holdings, LLC v. Carlyle Group Inc.*,
    2022 WL 1815759 (Del. Ch. June 3, 2022) ..........................................................3

*Miramar Firefighters Pension Fund v. AboveNet, Inc.*,
    2013 WL 4033905 (Del. Ch. July 31, 2013)..........................................................6

*New Enter. Associates 14, L.P. v. Rich*,
    295 A.3d 520 (Del. Ch. 2023)..............................................................................2

*In re Old BPSUSH, Inc.*,
    2020 WL 6818435 (Bankr. D. Del. June 30, 2020)................................................6

*In re ONH AFC CS Invs., LLC*,
    2025 WL 1353850 (Bankr. D. Del. May 8, 2025).................................................14

*In re OPP Liquidating Co.*,
    2022 WL 774063 (Bankr. D. Del. Mar. 14, 2022)..............................................6, 7

*Prime Victor Int'l Ltd. V. Simulcra Corp.*,
    682 F. Supp. 3d 428 (D. Del. 2023)................................................................3

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
    102 A.3d 155 (Del. Ch. 2014).............................................................9, 10

*Rafool v. Goldfarb Corp. (In re Fleming Pkg.)*,
    2005 Bankr. LEXIS 1740 (Bankr. C.D. Ill. Aug. 26, 2005).....................14

*In re Riverstone Nat'l, Inc. Stockholder Litig.*,
    2016 WL 4045411 (Del. Ch. July 28, 2016).......................................4, 5

*In re Rural/Metro Corp. Stockholders Litig.*,
    102 A.3d 205 (Del. Ch. 2014)................................................................2

*In re Sols. Liquidation LLC*,
    608 B.R. 384 (Bankr. D. Del. 2019)......................................................6

*In re Soporex, Inc.*,
    463 B.R. 344 (Bankr. N.D. Tex. 2011)..................................................6

*Stanziale v. Nachtomi (In re Tower Air)*,
    416 F.3d 229 (3d Cir. 2005)........................................................1, 2, 3, 7

*Teamsters Loc. 237 Additional Sec. Benefit Fund v. Caruso*,
    2021 WL 3883932 (Del. Ch. Aug. 31, 2021) .......................................6

*Teamsters Loc. 677 Health Services & Ins. Plan v. Martell*,
    2023 WL 1370852 (Del. Ch. Jan. 31, 2023)........................................3, 6

*In re Trade Desk, Inc. Deriv. Litig.*,
    2025 WL 503015 (Del. Ch. Feb. 14, 2025) .........................................6

*In re USDigital, Inc.*,
    443 B.R. 22 (Bankr. D. Del. 2011) ..................................................3, 13

*VFB LLC v. Campbell Soup Co.*,
    482 F.3d 624 (3rd Cir. 2007) ..............................................................15

**Statutes**

8 *Del. C.* § 102(b)(7)...............................................................................1, 2, 3

**Other Authorities**

Fed. R. Civ. Pro. 12(b)(6) ...............................................................6, 12, 14

## INTRODUCTION

Plaintiff's Omnibus Reply Briefs (I and II) attempt but fail to salvage claims against the Independent Directors[1] by recasting the Complaint's group-pled conclusory allegations as "detailed and specific" without identifying any detailed and specific facts (particularly with respect to individual directors) and misapplying Delaware and federal law regarding exculpation, aiding and abetting, fraudulent transfer, and unlawful dividend claims.

## ARGUMENT

**I.** **Plaintiff's Breach of Fiduciary Duty Claim Against the Independent Directors (Count II) Must Be Dismissed Under the Exculpatory Provision**

**1.** **The Exculpatory Provision Must Be Considered at the Pleading Stage**

Delaware law requires the Court to apply Section 102(b)(7) at the pleading stage. The relevant provision is clear: it precludes a breach of fiduciary duty claim against the Independent Directors, unless Plaintiff pleads facts establishing non-exculpated conduct—such as bad faith, lack of independence, or interestedness. Here, Plaintiff has failed to do so.

In its Opposition, Plaintiff erroneously argues that an exculpation defense under Section 102(b)(7) is an affirmative defense not properly considered on a motion to dismiss. Plaintiff relies on *Tower Air*[2] and its federal progeny[3] to argue that (1) whether an exculpatory provision may be considered at the pleading stage is a procedural issue governed by federal law, not state law, and (2) an exculpatory defense under Section 102(b)(7) is an affirmative defense that, under federal law, cannot be considered at the pleading stage.[4]  Plaintiff is wrong on both counts.

---

[1] Capitalized terms used herein shall have the meaning given to them in the Independent Directors' Opening Brief, Dkt. 35 ("Independent Directors' Br.").

[2] *Stanziale v. Nachtomi (In re Tower Air)*, 416 F.3d 229 (3d Cir. 2005); *see also*

[3] *See* Plaintiff's Omnibus Brief in Opposition to Motions to Dismiss I, Dkt. 51 ("Omnibus Opp. I"), at 20–21.

[4] Omnibus Opp. I at 18–23.

First, a Section 102(b)(7) defense is a ***substantive defense*** governed by Delaware state law. In *Tower Air*, the Third Circuit observed that "an exculpatory charter provision ***appears to be*** in the nature of an affirmative defense."[5]  Since then, Delaware courts have clarified that a "defense based on Section 102(b)(7) is a feature of ***substantive law*** that limits the scope of [a fiduciary duty] claim."[6]  Indeed, this Court has recognized that "[t]he use of an exculpatory clause to form a basis upon which to dismiss a breach of fiduciary duty claim on a motion to dismiss ***is just as substantive*** as it could be procedural, and as such, [a] ***Court [can] . . . dismiss [] breach of fiduciary duty claims on such a basis***."[7]  Because a Section 102(b)(7) defense is substantive, not procedural, this Court "***must apply [Delaware] state substantive law***" regarding whether and at what stage the defense applies.[8]  The federal caselaw that Plaintiff relies upon to argue that a Section 102(b)(7) defense cannot be used at the pleading stage is therefore, respectfully, not controlling, as Delaware state courts are the "final arbiter[s] on matters of Delaware law."[9]

Second, Delaware courts have made clear since, and contrary to, *Tower Air* that a 102(b)(7) defense "***operates more in the nature of an immunity*** . . . ***than as an affirmative defense***,"[10] and that as a result, "[e]xculpation operates as a ***pleading-stage defense, akin to sovereign immunity***."[11]  Thus, the Delaware Supreme Court's 2015 *Cornerstone* decision and its progeny have left no doubt that when "a director [is] protected by an exculpatory provision, ***then to survive***

---

[5] *Tower Air*, 416 F.3d at 242 (emphasis added).

[6] *In re Rural/Metro Corp. Stockholders Litig.*, 102 A.3d 205, 252 (Del. Ch. 2014).

[7] *In re LMI Legacy Holdings, Inc.*, 2017 WL 3432366, at *2 (Bankr. D. Del. Aug. 10, 2017).

[8] *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000); *Magazu v. Chileno Bay Fam. Off., LLC*, 2025 WL 1424659, at *3 (D. Del. May 16, 2025) (same).

[9] *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 663 (Del. Ch. 2012).

[10] *Firefighters' Pension System of City of Kansas City v. Found. Bldg. Materials, Inc.*, 318 A.3d 1105, 1161 (Del. Ch. 2024).

[11] *New Enter. Associates 14, L.P. v. Rich*, 295 A.3d 520, 559 n.122 (Del. Ch. 2023).

*a motion to dismiss, the plaintiff 'must plead non-exculpated claims* against [the] director . . .'"[12]

In short, to state a claim, "Plaintiff must plead a breach of loyalty—*i.e.*, that Defendants were

interested, lacked independence, or acted in bad faith."[13]  Plaintiff has not done so here.

### 2.    Plaintiff Has Not Pleaded Interestedness

Plaintiff failed to plead facts sufficient to infer that the Independent Directors were

interested in any of the Challenged Transactions.  Plaintiff advances no fact or theory claiming

that the Independent Directors were interested in the Management Fees, the Dividends, the IP

Agreements, or the Wages and Taxes, waiving any argument to the contrary.[14] Plaintiff's sole

"interestedness" argument targets the Redbox Merger on the ground that it included an Insider

Release.[15] That is legally insufficient. Delaware law holds that releases do not render directors

interested in a challenged transaction, *unless the releases are approved in the face of a significant*

*threat of liability known to the directors at the time*.[16]

Plaintiff does not cite *a single case* holding otherwise.  Nor does he contend that he has

---

[12] *Goldstein v. Denner*, 2022 WL 1671006, at *39 (Del. Ch. May 26, 2022) (citing *Cornerstone*, 115 A.3d at 1175); *see also, e.g.*, *Firefighters' Pension System of City of Kansas City v. Found. Bldg. Materials, Inc.*, 318 A.3d 1105, 1160 (Del. Ch. 2024) (same); *Teamsters Loc. 677 Health Services & Ins. Plan v. Martell*, 2023 WL 1370852, at *21 (Del. Ch. Jan. 31, 2023) ("The Company's charter contains a Section 102(b)(7) exculpatory provision applicable to directors. As a result, *the Complaint must be dismissed, "regardless of the standard of review[,]" unless it pleads a non-exculpated fiduciary duty claim*."); *Manti Holdings, LLC v. Carlyle Group Inc.*, 2022 WL 1815759, at *10 (Del. Ch. June 3, 2022) ("*When the independent directors are protected by an exculpatory charter provision and the plaintiffs are unable to plead a non-exculpated claim against them, those directors are entitled to have the claims against them dismissed*.") (citation omitted); *Flannery v. Genomic Health, Inc.*, 2021 WL 3615540, at *12 (Del. Ch. Aug. 16, 2021) ("[R]egardless of the standard of review, *as a matter of statute*, a plaintiff 'still must plead a non-exculpated claim of breach of fiduciary duty' to survive dismissal when a company's charter contains 'an exculpatory provision authorized by 8 *Del. C.* § 102(b)(7)'"); *In re USDigital, Inc.*, 443 B.R. 22, 43–44 (Bankr. D. Del. 2011) (similar); *In re IT Grp. Inc.*, 2005 WL 3050611, at *11 & n.13 (D. Del. Nov. 15, 2005) (dismissing certain claims pursuant to a Section 102(b)(7) exculpatory provision and noting that *Tower Air* simply "declined to address an exculpatory charter provision . . . because the provision was raised for the first time on appeal").

[13] *Borsody v. Gibson*, 2025 WL 1650395, at *7 (Del. Ch. June 11, 2025) (citation omitted); *supra* n.11.

[14] *Prime Victor Int'l Ltd. V. Simulcra Corp.*, 682 F. Supp. 3d 428, 445–46 (D. Del. 2023) ("When a party files an opposition brief and fails to contest an issue raised in the opening brief, the issue is considered waived." (citation omitted)); *Bench Walk Lighting LLC v. LG Innotek Co. Ltd.*, 530 F. Supp. 3d 468, 477 (D. Del. 2021) (same).

[15] Omnibus Opp. I at 37–41.

[16] Independent Directors' Op. Br. at 11–12.

pleaded that the Release was signed in the face of a significant threat of liability.  Instead, Plaintiff

resorts to arguing that: (1) he was not required to plead a significant threat of liability; and (2) that

the case law is inapposite because it does not address liability-immunizing devices adopted *by

defendants* for their own benefit, as opposed to a release granted *by contractual counterparties*.[17]

Both arguments are simultaneously torpedoed by the *Riverstone* decision.  In *Riverstone*,

the plaintiffs argued that the defendants "obtained a special benefit *for themselves*, and were thus

interested in the transaction" by structuring a sale to a third party as a merger in order to extinguish

threatened derivative claims.[18]  The court made clear that courts "must be wary of such an

allegation" because "[i]f a conclusory allegation—that a potential derivative suit against directors

existed, but was extinguished by a merger—was sufficient to show that directors were interested

in the merger, much ground for strike suits and other mischief would be possible."[19]

To alleviate the concern for mischief, *Riverstone* established a four-part test to evaluate

whether a liability-immunizing device, such as a release, confers a special benefit upon directors.

The plaintiff must allege: "[1] the ***existence of a chose-in-action*** . . . ; [2] that the director . . . ***was

aware of the potential action***; [3] that ***the potential for liability was material*** . . . ; and [4] that the

directors obtained and recommended an agreement that extinguished the claim . . . ."[20]  The

Delaware Supreme Court has recognized that it was the "cloud of litigation" facing the directors

that rendered them interested in *Riverstone*.[21]  And subsequent Delaware case law has confirmed

that *Riverstone*'s four-part test is the "appropriate framework" for evaluating whether a liability-

---

[17] Omnibus Opp. I at 38–41.

[18] *In re Riverstone Nat'l, Inc. Stockholder Litig.*, 2016 WL 4045411, at *8 (Del. Ch. July 28, 2016) (emphasis added).

[19] *Id.*

[20] *Id.* (emphasis added).

[21] *Maffei v. Palkon*, 339 A.3d 705, 737 (Del. 2025).

immunizing device such as a release renders a director interested.[22] Thus, *Riverstone* both (i) involved a liability-immunizing device adopted by the defendants, not the "other side," and (ii) held that such device rendered the directors interested only because they were aware of threatened litigation that imposed a material risk of liability upon them.

Plaintiff alleges none of the *Riverstone* elements as to the Independent Directors. Because he does not do so, Plaintiff fails to plead facts sufficient to infer that the Release rendered the Independent Directors interested.

### 3. Plaintiff Has Not Pleaded that the Independent Directors Lacked Independence or Acted in Bad Faith

Plaintiff has also failed to plead particularized facts showing that any Independent Director lacked independence from Rouhana or acted in bad faith. Neither the Complaint nor the Opposition identifies any financial, personal, or other relationship between an Independent Director and Rouhana or the Parent Entities that would support an inference that they lacked independence or were motivated to act in bad faith. Indeed, Plaintiff fails to plead ***any*** facts to explain why the Independent Directors would "be more willing to risk his or her reputation than risk the relationship with the interested [party]"—the test for assessing whether a plaintiff has pled independence—or any motive that the Independent Directors would have to "***intentionally*** disregard[] their duties"—the test for assessing whether a plaintiff has pleaded bad faith.[23]

Plaintiff simply repeats over and over again the rote, conclusory incantation that the Independent Directors were allegedly "supine" and "beholden" to Rouhana, "did not question [his] decisions," "did not act contrary to his wishes," "failed to adequately oversee him," "rubber-stamped [his] determinations and dictates," "blindly followed" his direction, and "simply did his

---

[22] *In re AmTrust Fin. Services, Inc. Stockholder Litig.*, 2020 WL 914563, at *11 (Del. Ch. Feb. 26, 2020).

[23] Independent Directors' Br. at 14.

bidding."[24]  But courts have **_repeatedly_ _held that such conclusory allegations are not enough_** to

plead a lack of independence or bad faith under Rule 12(b)(6).[25]  These consistent results make

sense because, if this was not the law, circumventing a Section 102(b)(7) clause at the pleading

stage would be automatic—all a plaintiff would need to do is "slap a 'controlled mindset' label

onto a process or result with which it disagrees" and it could survive a motion to dismiss.[26]  That

is not the law.  And because that is all Plaintiff has done here, he fails to plead that the Independent

Directors lacked independence or acted in bad faith, either collectively or with respect to any

particular Independent Director.

> This Court's decision in *OPP Liquidating* is not to the contrary.[27]  The plaintiff in *OPP*

*Liquidating* did not rely on vague and conclusory allegations that the director defendants were

---

[24] Omnibus Opp. I at 1, 3, 11–13, 32–36; Compl. ¶¶ 57, 67, 68–72, 74–77, 81.

[25] *In re Old BPSUSH, Inc.*, 2020 WL 6818435, at \*13 (Bankr. D. Del. June 30, 2020); *In re Sols. Liquidation LLC*, 608 B.R. 384, 402 (Bankr. D. Del. 2019) ("The Complaint mentions that the Parent Defendants failed to take 'necessary steps to diligence X7's true condition . . . **However, there is no factual support provided whatsoever to forward this allegation past the point of being conclusory**."); *In re Soporex, Inc.*, 463 B.R. 344, 410 (Bankr. N.D. Tex. 2011) ("**The Trustee's allegation that Linehan did no due diligence is conclusory and devoid of factual support. It is thus not entitled to a presumption of truth under Iqbal**"); *see also In re Trade Desk, Inc. Deriv. Litig.*, 2025 WL 503015, at \*24 (Del. Ch. Feb. 14, 2025) ("[A] stockholder plaintiff **cannot merely slap a 'controlled mindset' label** onto a process or result with which it disagrees" to state a claim); *Eckert v. Hightower*, 2025 WL 930788, at \*4 (Del. Ch. Mar. 24, 2025) ("Plaintiff's **conclusory allegation that they acted with a "controlled mindset"** fails to dislodge the presumption that they acted independently and in good faith."); *Teamsters Loc. 677 Health Servs. & Ins. Plan v. Martell*, 2023 WL 1370852, at \*22 (Del. Ch. Jan. 31, 2023) (dismissing fiduciary claim under Rule 12(b)(6), finding the plaintiff's conclusory allegations insufficient to support breach, including allegation that defendants "'personally convinced the **supine Board** to proceed' with the Merger" (citation and internal quotation omitted)); *Teamsters Loc. 237 Additional Sec. Benefit Fund v. Caruso*, 2021 WL 3883932, at \*15 (Del. Ch. Aug. 31, 2021) (dismissing fiduciary claim under Rule 12(b)(6) and stating that "[i]t is not enough to merely allege that the **Board went along with [the controller's] plan or succumbed to his desire** to steer the sale of the Company to a private equity buyer"); *In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 996–97 (Del. Ch. 2014), *aff'd sub nom. Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304 (Del. 2015) (dismissing fiduciary claim under Rule 12(b)(6) and **rejecting conclusory allegations that a director was "beholden"**); *Miramar Firefighters Pension Fund v. AboveNet, Inc.*, 2013 WL 4033905, at \*3 (Del. Ch. July 31, 2013) ("The Complaint . . . contains conclusory allegations that the Board '**went along** with LaPerch's plan' and '**succumbed**' to LaPerch's desire to '**steer the sale** of the Company to private equity buyers.' **Without more, allegations that the AboveNet Directors acquiesced in LaPerch's plan are insufficient to raise a reasonable inference that they were beholden to, or controlled by, LaPerch**."); *In re Alloy, Inc. S'holder Litig.*, 2011 WL 4863716, at \*8–10 (Del. Ch. Oct. 13, 2011) (holding that allegations that two management directors "**dominated**" seven outside directors did not state a claim).

[26] *Eckert*, 2025 WL 930788, at \*5 (quoting *In re Trade Desk*, 2025 WL 503015, at \*24).

[27] *See* Omnibus Opp. I at 32–33 (citing *In re OPP Liquidating Co.*, 2022 WL 774063 (Bankr. D. Del. Mar. 14, 2022)).

"supine" and "rubber-stamped" another's decisions, as Plaintiff does here. Rather, the *OPP Liquidating* plaintiff in its complaint set forth specific "dates, parties, and actions or inactions of the Defendants."[28]  That complaint described, for example, a CEO presentation to the board of directors "with proposals to install one of three paper machines" at the company's plant—despite the board having already approved a "well-known, industry standard machine."[29]  The only "con" that the CEO identified for his new preferred option was that it was a "pilot" machine.[30]  The directors reversed course and approved the pilot machine without asking even basic "questions that would naturally and reasonably arise" from the CEO's presentation, including whether the Finnish manufacturer's designs were compatible with U.S. standards, whether the pilot machine could incorporate discarded paper as per the debtor's customary process (it could not), and what special considerations might be involved in purchasing a pilot machine.[31]  These specific allegations supported the *OPP Liquidating* plaintiff's assertion that the board defendants "ignored their fiduciary obligations entirely."[32]  No such substantive and non-conclusory allegations are present here.[33]

In sum, Plaintiff has not adequately alleged that each Independent Director was interested, lacked independence, or acted in bad faith. Therefore, Plaintiff's fiduciary duty claim (Count II) against the Independent Directors must be dismissed under the Exculpatory Provision.

---

[28] *OPP Liquidating*, 2022 WL 774063, at *8.

[29] First Amended Complaint at 9–10, *Buchwald Cap. Advisors LLC v. Schoen (In re OPP Liquidating Co.)*, Adv. Pro. No. 21-50431-MFW [D.I. 17] (Bankr. D. Del. filed Aug. 23, 2021).

[30] *Id.*

[31] *Id.* at 11–12.

[32] *See OPP Liquidating*, 2022 WL 774063, at *10.

[33] Plaintiff also cites to *Tower Air*, *see* Omnibus Opp. I at 32, but that case does not stand for the proposition that a plaintiff can survive a motion to dismiss by alleging conclusory allegations of "rubber stamping," as Plaintiff tries to do here. In *Tower Air*, there were specific allegations of director action/inaction, including "ignoring Tower Air's maintenance problems" and "failing to establish management controls." *Tower Air*, 416 F.3d at 234.

4.       **Plaintiff's Fiduciary Duty Claims for any Actions Occurring Before June 29, 2021 Are Partially Time-Barred**

While Plaintiff disputed that fraudulent transfer claims relating to the Insider Releases are time-barred,[34] he never disputed the Independent Directors' arguments that fiduciary duty claims for any actions occurring before June 29, 2021 are time-barred by the statute of limitations.[35] Accordingly, Plaintiff has waived any argument to the contrary.[36]

## II.      **Plaintiff's Aiding and Abetting Breach of Fiduciary Duty Claim Against the Independent Directors (Count V) Must Be Dismissed**

Plaintiff's aiding and abetting claim should be dismissed for the reasons set forth in the Independent Directors' Opening Brief and the arguments set forth in the Amy L. Newmark's Reply Memorandum in Support of Motion to Dismiss the Complaint, which are incorporated herein.

## III.     **Plaintiff's Unlawful Dividend Claim (Count X) Against the Independent Directors Must Be Dismissed**

1.       **The Fees Are Not Dividends Subject to Sections 170-174 of the DGCL**

As discussed in the Independent Directors' Brief, Plaintiff's effort to recast the payment of roughly $55 million in management and license fees ("Fees") as "dividends" fails as a matter of law.[37]  Plaintiff cites to a number of non-binding, outdated cases from other jurisdictions in support of its claim that Section 174(a) of the DGCL applies to "constructive dividends."[38]  But, none of

---

[34] Omnibus Opp. II at 13-14.

[35] Independent Directors' Br. at 19.

[36] *See supra* n.14.

[37] Independent Directors' Br. at 20.

[38] *See* Omnibus Opp. II at 23-30 (citing cases).

those cases are a Delaware state-court decision supporting such a proposition,[39] and Plaintiff acknowledges that more recent Delaware state court decisions *expressly* hold the opposite.[40]

*Quadrant* is directly on point: the Court of Chancery granted a motion to dismiss on almost identical allegations to those asserted here that a company paid excessive service and license fees to its sole shareholder, which were alleged to be constructive dividends.[41]  Contrary to Plaintiffs' assertion that "Courts do not construe the DGCL's unlawful dividend provisions strictly,"[42] the Court of Chancery expressly held the opposite and stated that "[w]hen evaluating claimed violations of the DGCL, Delaware law *takes a formal and technical approach*."[43]  Importantly, the Court of Chancery also *expressly* rejected the line of cases from other jurisdictions cited by Plaintiff, holding that: "To the extent the *Growe* court construed Section 174 to apply to the services agreement, I respectfully disagree with its analysis and do not believe the decision accurately reflects Delaware law."[44]

Plaintiff falsely claims that the more recent and directly on point Delaware state court decisions are "contrary to the weight of authority."[45]  Since *Quadrant*, no courts applying Delaware law have recognized a "constructive dividend" theory, while other cases have followed

---

[39] Plaintiff also cites to out-of-context tax cases to support his "constructive dividend" theory.  *See* Omnibus Opp. II at 27 (citing cases).  However, Delaware state courts have rejected application of tax cases in this context.  *Horbal v. Three Rivers Holdings*, 2006 Del. Ch. LEXIS 53, *10–11 (March 10, 2006).

[40] *See* Omnibus Opp. II at 23-24 n. 22 (citing *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 102 A.3d 155, 202 (Del. Ch. 2014); *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211 (Del. Ch. 2019); *Horbal v. Three Rivers Holdings*, 2006 Del. Ch. LEXIS 53 (March 10, 2006)).

[41] *Quadrant*, 102 A.3d at 200-02.

[42] Omnibus Opp. II at 24.

[43] *Quadrant*, 102 A.3d at 201.

[44] *Id.* at 202.  Notably, *Growe* cited to the *Crowthers* and *Buckhead* decisions that formed the basis for the cases cited by Plaintiff.  *Growe*, 2004 U.S. Dist. LEXIS 23746, *43.  Thus, in expressly rejecting *Growe*, the Court of Chancery in *Quadrant* rejected the reasoning of those cases as well.

[45] Omnibus Opp. II at 23-24 n. 22

*Quadrant* and expressly rejected the earlier cases cited by Plaintiff.[46] Other courts likewise treat the Court of Chancery's readings of the DGCL as highly persuasive when applying Delaware law, underscoring why Plaintiff's non-Delaware cases cannot carry the day against *Quadrant's* analysis.[47] Thus, not only did *Quadrant* expressly reject the earlier cases cited by Plaintiff, but the clear trend since *Quadrant* has been to grant motions to dismiss cases that assert a "constructive dividend" theory.  The Court should follow *Quadrant's* formal approach and dismiss Count X to the extent it depends on recharacterizing fee payments as "dividends."

### 2.    Plaintiff Fails to Plead a Violation of Sections 170-174 for Fees and Dividends from January 1, 2020 through June 30, 2023

Even if one could recharacterize the Fees as dividends (one cannot), Plaintiff has not alleged sufficient facts to support its allegations that the Company had insufficient surplus for any payment made prior to June 30, 2023.  As explained in the Independent Directors' Opening Brief, Plaintiff incorporated the Company's publicly filed, audited financial statements in the Complaint,[48] which show that the Company's surplus, calculated in accordance with GAAP, was tens of millions of dollars greater than the Dividends and Fees from January 1, 2020, through June 30, 2023.[49] Yet, Plaintiff pleads no particularized facts undermining those numbers.

---

[46] *See JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1247 (Del. Ch. 2019) (holding that "[t]here is no claim for a constructive dividend in Delaware"); *Halperin v. Richards*, 665 B.R. 626, 639-41 (E.D. Wisc. 2024) (granting motion to dismiss illegal dividends claims based on alleged intercompany loans, rejecting the reasoning of cases cited by Plaintiff, and of following *Quadrant*).

[47] As one court held, whatever the reasoning of the pre-*Quadrant* cases cited by Plaintiff "it makes little difference — these are not decisions of a Delaware state court (nor do they rely on any). This court's duty is to predict how the Delaware Supreme Court would resolve the question. As this court has already noted, the Delaware Court of Chancery is an especially significant predictor not only because it is a lower state court but also because it is the 'nation's leading authority on corporate law issues.'" *Halperin v. Richards*, 665 B.R. at 641 (citations omitted).

[48] *See, e.g.*, Compl. ¶¶ 31–33. The Court "may consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and some matters judicially noticed." *In re Foothills*, 476 B.R. 143, 150 (Bankr. D. Del. 2012); *see In re FAH Liquidating Corp.*, 572 B.R. 117, 128 (Bankr. D. Del. 2017) (acknowledging same).

[49] *See* Independent Directors' Br. at 22–23; *see also* Exs. D–R attached to Independent Directors' Br.

To escape this conclusion, Plaintiff relies on conclusory, unsupported allegations to dispute the GAAP-based surplus figures, including unsupported allegations that the Independent Directors did not act in good faith—precisely the sort of *ipse dixit* Delaware courts reject absent particularized facts showing the board relied on unacceptable data or ignored red flags.[50] To support such conclusory allegations, Plaintiff asserts only alleged facts that occurred because of, or that followed, the Redbox Merger (which was consummated on August 11, 2022): (a) ***following the Redbox Merger***, the Company's goodwill was allegedly inflated by the goodwill acquired *in* such merger, (b) ***following the Redbox Merger***, the Company wrote down a substantial amount of the goodwill it acquired in such Merger, (c) ***pursuant to the Redbox Merger***, the Company acquired substantial debt that it allegedly could not service, and (d) ***following the Redbox Merger***, the Company in its Form 10Q filed on May 20, 2024, stated that "[m]anagement concluded that the Company's internal controls over financial reporting were not effective at the reasonable assurance level ***as of December 31, 2023***."[51] ***None of these alleged facts*** relate to the Company's surplus ***prior to*** the Redbox Merger.[52]  Accordingly, the Court should dismiss the illegal dividend claims insofar as they relate to any payments issued prior to June 30, 2023, or, at least, any payments issued prior to August 11, 2022.

## IV.   The Release Bars All Claims Before August 2022

For the reasons set forth in the Independent Directors' Opening Brief and in Section V of

---

[50] *See Klang v. Smith's Food & Drug Ctrs., Inc.*, 702 A.2d 150, 152 (Del. 1997) (noting that directors may determine surplus in good faith on the basis of any reasonable method).

[51] Omnibus Opp. II at 32-33; Compl. ¶¶ 33, 49.

[52] For example, the GAAP surplus as of the end of 2021 was $91,597,128 and Plaintiff admits that "[t]he Company ended 2021 with approximately $43 million in unrestricted cash."  Compl. ¶ 50.  Plaintiff further admits that as of year-end 2021, the Company had total gross debt of approximately $56.7 million and annual interest expense of $4.8 million, while goodwill and net intangible assets were only $40 million and $18 million in 2021.  Omnibus Opp. II at 32.  Thus, even if the Court ascribed *no* value to goodwill and net intangible assets, which is *not* a reasonable inference from Plaintiff's Complaint given that there are no allegations that the pre-Redbox Merger goodwill was inflated, there would still be a substantial surplus from which to make distributions until the Redbox Merger.

the CSS Entities' reply brief, filed contemporaneously herewith and which the Independent Directors incorporate herein by reference, the Release bars the Plaintiffs claims for alleged misconduct before August 11, 2022.

## V.      Plaintiff's FLSA Claim (Count XI) Must Be Dismissed

Dismissal of Count XI is appropriate for the reasons set out in the Independent Directors' Brief.[53]  Rather than providing a substantive response, Plaintiff stated that he has "determined not to pursue damages" for Count XI.[54]  Thus, Plaintiff has abandoned and waived that claim.[55]

## VI.     Plaintiff's Fraudulent Transfer Claims (Counts VIII and IX) Against the Independent Directors Must Be Dismissed

### 1.      The Fraudulent Transfer Claims are Barred by the Release and Count VIII is Time-Barred

For the reasons set forth in Sections V and VI.C of the CSS Entities' reply brief, filed contemporaneously herewith and which the Independent Directors incorporate herein by reference, the Trustee's attempt to avoid the Release as a fraudulent transfer fail.

### 2.      The Complaint Does Not Adequately Plead Insolvency or Reasonably Equivalent Value

Additionally, Plaintiff argues that disputes over reasonably equivalent value and insolvency as it relates to the May 2022 Release Agreement are fact issues "not appropriate for determination on a motion to dismiss."[56]  That is not the issue before the Court; rather, the Court must decide whether the Complaint pleads sufficient facts to state a claim under Rule 12(b)(6) as to Counts VIII and IX.  Because it does not do so, those Counts must be dismissed.

---

[53] Independent Directors' Br. at 24-26.

[54] Omnibus Opp. II at 42.

[55] *Baldonado v. Avrinmeritor, Inc.*, 2014 WL 2116112, at *7 (D. Del. May 20, 2014) ("[W]here a party responds to a dispositive motion, but only addresses some subset of the arguments that are the subject of the motion, courts have consistently held that the claims that are not defended are deemed abandoned.") (collecting cases).

[56] *See* Omnibus Opp. II at 19–20.

<u>Reasonably Equivalent Value</u>.  Plaintiff argues that the allegation in the Complaint that "the Insider Releases were made in exchange for *no* consideration…is more than sufficient to overcome a motion to dismiss."[57]  This conclusory statement is not sufficient to show a plausible claim for relief,[58] and even if it were, it misstates the Complaint[59] and is contradicted by the admission that the releases were mutual (*i.e.*, there was consideration).[60]  Plaintiff's primary citation on this point is *In re FAH Liquidating Corp.,* 572 B.R. 117, 127 (Bankr. D. Del. 2017),[61] where the court held that the plaintiff adequately pled a lack of reasonably equivalent value for payments made under a supply agreement.[62]

*FAH Liquidating Corp.* is distinguishable.  The plaintiff there *did not* plead merely that the transfers at issue were for no consideration; rather, it pled that the debtor did not receive the benefit of its bargain under a supply agreement because it did not receive engines in exchange for the payments it made.  By contrast, the plain language of the May 2022 Release shows that other parties to the agreement granted ***the Company*** (and other "Mutual Release Parties") a release.[63] Under Third Circuit law, value includes indirect benefits and the compromise/release of potential

---

[57] *See* Omnibus Opp. II at 19 (emphasis in original).

[58] *See In re USDigital, Inc.,* 443 B.R. 22, 40 (Bankr. D. Del. 2011) ("[T]he Trustee merely pleads that the payment did not result in the return of any reasonably equivalent value to the Debtor.  The Trustee fails to assert in its Complaint any factual allegations supporting that contention.").

[59] The Complaint alleges that "none ***of the Defendants*** provided any consideration to the Company" in exchange for the releases. Compl. ¶ 49 (emphasis added).  It does not allege that the Company received no consideration at all under the May 2022 Release Agreement, which is a relevant distinction given the contemporaneous RedBox Merger that the Plaintiff does not seek to avoid.

[60] *See* Compl. ¶ 58 (describing the ***mutual*** release of the "Mutual Release Parties" who "agreed to release claims against (i) each of the ***other*** Mutual Release Parties…") (emphasis added).

[61] The Plaintiff also cites *Stanziale v. Brown-Minneapolis Tank ULC (In re BMT-NW Acq.),* which in turn cites to *In re FAH Liquidating Corp.*

[62] *See FAH Liquidating Corp.,* 572 B.R. at 127.

[63] Compl. ¶ 59.

claims, so long as there was some realistic prospect those claims had value.[64] The Complaint never

pleads facts that the Company's reciprocal release was **worthless.** In light of that, more is required

of Plaintiff than a bare allegation of no consideration. Accordingly, the Complaint does not pass

muster under *FAH Liquidating Corp.* or Rule 12(b)(6).[65]

    <u>Insolvency</u>. Plaintiff recites (albeit in a conclusory manner) the elements of Section

548(b)(ii) at paragraphs 155 and 162 of the Complaint with respect to Counts VIII and IX but fails

to adequately allege insolvency. Indeed, none of the facts alleged in the Complaint would permit

the Court to reasonably infer that the Company was insolvent at the time, or as a result, of the

execution of the May 2022 Release Agreement.[66] Plaintiff tries to distract from this deficiency by

arguing that "as a whole" the allegations of the Complaint regarding insolvency suffice, and that

"allegations of the Company's insolvency and financial distress over several years"[67] raise a

factual issue, but fails to support this with references to specific allegations of the Complaint

showing insolvency of the Company at any point in time relevant to Counts VIII and IX. Most of

the facts regarding the financial condition of the Company relate to periods *after* the RedBox

---

[64] *See Mellon Bank v. Metro Commc'ns, Inc.*, 945 F.2d 635, 646 (3d Cir. 1991) ("[I]n evaluating whether reasonably equivalent value has been given the debtor under section 548, indirect benefits may also be evaluated."); *In re R.M.L., Inc.*, 92 F.3d 139, 148 (3d Cir. 1996) (noting that value exists if consideration had a chance of conferring an economic benefit).

[65] The cases cited by Plaintiff analyzing alleged constructive fraudulent transfers on account of release agreements involved *unilateral* releases granted by a debtor. *See Blixseth v. Kirschner (In re Yellowstone Mt. Club)*, 436 B.R. 598 (Bankr. D. Mont. 2010) (release between spouses entered as part of a divorce settlement included debtors as signatories purporting to release founder); *Rafool v. Goldfarb Corp. (In re Fleming Pkg.)*, 2005 Bankr. LEXIS 1740, *45 (Bankr. C.D. Ill. Aug. 26, 2005) (denying motion to dismiss constructive fraudulent transfer count where debtor released majority shareholder of payment obligations).

[66] *See In re ONH AFC CS Invs., LLC,* No. 23-10931 (CTG), 2025 WL 1353850, at *12 (Bankr. D. Del. May 8, 2025) (granting motion to dismiss where plaintiff offered "no specific facts about the debtor's assets and liabilities at the date(s) of the challenged transfers" or "specific facts that would support an allegation that the debtor was left insolvent as a result of the transfers"); *In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168, at *11–12 (Bankr. D. Del. Sept. 6, 2019) (granting motion to dismiss based in part on Plaintiff's facts showing only financial distress after the time the alleged constructive fraudulent transfers occurred, which did not "permit [the court] to draw a reasonable inference that Debtors were insolvent at the time of each transfer.").

[67] *See* Opposition II, at pp. 20-21.

Merger. The few facts alleged with respect to the Company's financial condition prior to or at the time of the May 2022 Release Agreement do not plausibly allege insolvency: that the Company ended 2021 with $43 million in unrestricted cash, gross debt of approximately $56.7 million and annual interest expense of $4.8 million;[68] that the Company experienced operating losses in 2020, 2021 and 2022; and that the Company had a stock price of $8/share in March 2022 that had fallen from $40/share in May 2021.[69]  These facts are insufficient to support an inference that the Company was insolvent at the time the May 2022 Release Agreement was executed or was rendered insolvent thereby.  To the contrary, the Complaint's allegation of a stock price of $8/share in March of 2022 suggests that the market valued the Company as solvent.[70]  Because Plaintiff fails to plead facts necessary to support the elements of Section 548 and Section 1305, Counts VIII and IX must be dismissed.

**VII.**    **Counts XII and XIII Must Be Dismissed**

The Plaintiff concedes that the Independent Directors have not filed a claim but asserts that Counts XII–XIII should not be dismissed until judgment is rendered in this action, citing no case law.  The Independent Directors have not filed a claim.  Thus, there is no alleged claim to disallow or subordinate and such claims must be dismissed.

## CONCLUSION

For these reasons and the reasons set forth in the Independent Directors' Opening Brief, the Independent Directors respectfully request that the Court grant their Motion to Dismiss.

---

[68] Compl. ¶¶ 49 & 50.

[69] Compl. ¶ 35.

[70] *See, e.g., VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 633 (3rd Cir. 2007) ("Absent some reason to distrust it, the market price is 'a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses.'") (internal citations omitted).

Dated: September 26, 2025

**SAUL EWING LLP**

/s/ Evan T. Miller
Evan T. Miller (No. 5364)
1201 North Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6864
Facsimile: (302) 421-6813
Email: evan.miller@saul.com

-and-

**HOLLAND & KNIGHT LLP**
Jessica Magee (Admitted *Pro Hac Vice*)
Texas Bar No. 24037757
Steven J. Levitt (Admitted *Pro Hac Vice*)
Texas Bar No. 24092690
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214-964-9500
Jessica.Magee@hklaw.com
Steven.levitt@hklaw.com

*Counsel for Defendant Cosmo Denicola*

**TROUTMAN PEPPER LOCKE LLP**

/s/ Christopher B. Chuff
David M. Fournier (DE No. 2812)
Christopher B. Chuff (DE No. 5729)
Taylor B. Bartholomew (DE No. 6223)
Tori L. Remington (DE No. 6901)
Tyler R. Wilson (DE No. 7129)
1313 N. Market Street, Suite 1000
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
david.fournier@troutman.com
chris.chuff@troutman.com
tori.remington@troutman.com
tyler.wilson@troutman.com

*Counsel for Defendants Fred M. Cohen,
Christina Weiss Lurie, Martin Pompadur,
and Diana Wilkin*

**THOMAS LAW LLC**

/s/ Mary S. Thomas
 Mary S. Thomas (DE Bar No. 5072)
1521 Concord Pike, Suite 301
Wilmington, DE 19803
Telephone: (302) 647-1203
mthomas@marythomaslaw.com

-and-

**LAW OFFICES OF THIRU VIGNARAJAH
LLC**
Thiru Vignarajah, Esq.
Ross Ingram, Esq.
211 Wendover Road
Baltimore, MD 21218
Telephone: (410) 456-7552
thiru@thirulaw.com
ross@thirulaw.com

*Counsel for Defendant Vikram Somaya*