# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CSS ENTERTAINMENT INC. (f/k/a CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC.), *et al.*,[1] | Case No. 24-11442 (MFW) |
| | (Jointly Administered) |
| Debtors. | |
| GEORGE L. MILLER, CHAPTER 7 TRUSTEE, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 25-50399 (MFW) |
| WILLIAM J. ROUHANA, JR., AMY L. NEWMARK, CHRISTOPHER MITCHELL, FRED M. COHEN, COSMO DENICOLA, MARTIN POMPADUR, CHRISTINA WEISS LURIE, DIANA WILKIN, VIKRAM SOMAYA, JASON MEIER, AMANDA R. EDWARDS, CHICKEN SOUP FOR THE SOUL PRODUCTIONS, LLC, CHICKEN SOUP FOR THE SOUL, LLC, CHICKEN SOUP FOR THE SOUL HOLDINGS, LLC, | |
| Defendants. | |

## CHICKEN SOUP FOR THE SOUL PRODUCTIONS, LLC, CHICKEN SOUP FOR THE SOUL, LLC, AND CHICKEN SOUP FOR THE SOUL HOLDINGS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

*Counsel Listed on Next Page*

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); CSS Entertainment, Inc. (f/k/a Chicken Soup for the Soul Entertainment Inc.) (0811); CSS Studios, LLC (f/k/a Chicken Soup for the Soul Studios, LLC) (9993); CSS Television Group, LLC (f/k/a Chicken Soup for the Soul Television Group, LLC); Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

**WOMBLE BOND DICKINSON (US) LLP**

Donald J. Detweiler (DE Bar No. 3087)
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: don.detweiler@wbd-us.com

Cathy A. Hinger (admitted *pro hac vice*)
2001 K. Street NW, Suite 400 South
Washington, D.C. 20006
Telephone: (202) 467-6900
Facsimile: (202) 467-6910
Email: cathy.hinger@wbd-us.com

*Counsel for Defendants Chicken Soup for the Soul Productions, LLC,*
*Chicken Soup for the Soul, LLC, and Chicken Soup for the Soul Holdings, LLC*

# **TABLE OF CONTENTS**

ARGUMENT ......................................................................................................... 1

I. THE COMPLAINT FAILS TO ALLEGE FACTS ESTABLISHING THAT ANY CSS ENTITY BREACHED A FIDUCIARY DUTY. .................................. 1

II. THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR AIDING OR ABETTING A BREACH OF FIDUCIARY DUTY. ............................................. 4

III. THE COMPLAINT'S IMPERMISSIBLE GROUP PLEADING CANNOT SAVE THE TRUSTEE'S CLAIMS AGAINST THE CSS ENTITIES. ............................................................................................................ 6

IV. THE COMPLAINT FAILS TO ADEQUATELY ALLEGE THAT EACH OF THE CSS ENTITIES OWED FIDUCIARY DUTIES TO CSSE. .................... 7

V. THE RELEASE BARS THE MAJORITY OF THE TRUSTEE'S CLAIMS. ............................................................................................................ 8

    A. The Trustee's Claim That He Is Not Bound By The Release Is Meritless. ....................................................................................................... 8

    B. The Integrated Transaction Doctrine Prohibits Avoidance Of The Release. ......................................................................................................... 9

    C. It Is Too Late For Trustee To Avoid The Release Under Section 548 (Count 8). ........................................................................................... 10

VI. THE BANKRUPTCY CODE CLAIMS FAIL FOR ADDITIONAL REASONS. ........................................................................................................ 11

    A. The Trustee Fails To Identify Payments That Can Be Avoided (Counts 6-7). ................................................................................................ 11

    B. The Trustee Failed To Allege Any Facts To Support His Section 550 Claims. ................................................................................................... 12

    C. The Trustee Failed To Allege The Existence Of A Triggering Creditor. ......................................................................................................... 13

VII. THE CLAIM FOR RECOVERY OF PREFERRED DIVIDENDS FAILS. ........ 13

    A. Payments Under The CSS Agreements Are Not Dividends. .................... 13

    B. The Trustee Failed To Meet His Burden For Payments Between January 1, 2020 and June 30, 2023. ......................................................... 14

VIII. THE TRUSTEE ABANDONED HIS FLSA CLAIM (COUNT 11). .................. 15

CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

<u>Cases</u>

*Beskrone v. OpenGate Capital Grp. (In re PennySaver USA Publ'g)*, 587 B.R. 445 (Bankr. D. Del. 2018) ................................................................................................................ 15, 16

*Blixseth v. Kirschner (In re Yellowstone Mt. Club, LLC)*,
436 B.R. 598 (Bankr D. Mont. 2010) ................................................................................ 12

*Buchwald Capital Advisors LLC, v. Schoen (In re OPP Liquidating Co., Inc.)*,
Adv. No. 21-50431 (MFW), 2022 WL 774063 (Bankr. D. Del. Mar. 14, 2022) ................ 8, 16

*Burtch v. Avnet, Inc.*,
527 B.R. 150 (D. Del. 2015) ............................................................................................ 10, 12

*Burtch v. Owlstone, Inc.* (*In re Advance Nanotech, Inc.*), Adv. No. 13-51215 (MFW), 2014 WL 1320145 (Bankr. D. Del. Apr. 2, 2014) .................................................................... 4

*Burtch v. Zachem (In re TZEW Holdco, LLC)*,
Adv. No. 22-50255, 2023 WL 6140247 (Bankr. D. Del. Sept. 19, 2023) .......................... 6, 7

*Cred Inc. Liquidation Tr. v. Uphold HQ Inc. (In re Cred Inc.)*,
650 B.R. 803 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024) ...................... 1, 2, 6

*Finkel v. Parzych (In re Midnight Madness Distilling, LLC)*,
Adv. No. 23-00047-MDC, 2024 WL 3517620 (Bankr. E.D. Pa. July 23, 2024) .................... 8

*Giuliano v. Ferdinand (In re Liquid Holdings Grp, Inc.)*, Adv. Pro. 17-50662 (Bankr. D. Del. Sept. 18, 2018) ........................................................................................................ 17

*Giuliano v. Schnabel* (*In re DSI Renal Holdings, LLC*), 574 B.R. 446 (Bankr. D. Del. 2017) ........... 3, 4, 5

*Gold v. Winget (In re NM Holdings Co., LLC)*,
407 B.R. 232 (Bankr. E.D. Mich. 2009) ............................................................................ 14

*Golden v. Comty Health Sys. (In re Quorum Health Corp.)*,
Adv. Pro. No. 21-51190 (BLS), 2023 Bankr. LEXIS 1471 (Bankr. D. Del Apr. 18, 2023) ........ 18

*Horbal v. Three Rivers Holdings*,
No. CIV.A. 1273-N, 2006 WL 668542 (Del. Ch. Mar. 10, 2006) ...................................... 19

*In re Chemours Co. Deriv. Litig.*,
C.A. No. 2020-0786, 2021 WL 5050285 (Del. Ch. Nov. 1, 2021) .................................... 20

*In re Mindbody, Inc., S'holder Litig.*,
332 A.3d 349 (Del. 2024) ................................................................................................ 5

*In re Sirius XM S'holder Litig.*,
C.A. No. 7800-CS, 2013 WL 5411268 (Del. Ch. Sept. 27, 2013) .................................... 2

*In re Syntax-Brillian Corp.*,
573 F. App'x 154 (3d Cir. 2014) ...................................................................................... 6

*JPMorgan Chase Bank, N.A. v. Ballard*,
213 A.3d 1211 (Del. Ch. 2019); *Halperin v. Richards*, 665 B.R. 626 (E.D. Wisc. 2024) ......... 19

*Klang v. Smith's Food & Drug Ctrs., Inc.*,
No. Civ. A. 1997 WL 257463 (Del. Ch. May 13, 1997), *aff'd*, 702 A.2d 150 (Del. 1997) ......... 20

*Le Café Creme, Ltd. v. Le Roux (In re Le Café Crème, Ltd.)*,

244 B.R. 221 (Bankr. S.D.N.Y. 2000) ........................................................................ 13, 14, 15

*Lightsway Litig. Servs., LLC v. Yung (In re Tropicana Ent., LLC)*, 520 B.R. 455 (Bankr. D. Del. 2014) ..................................................................................................................................... 7

*Metzger v. Farris (In re e2Communications, Inc.)*,
320 B.R. 849 (Bankr. N.D. Tex. 2004) ......................................................................................... 12

*Michaelson v. Farmer (In re Appleseed's Intermediate Holdings)*,
470 B.R. 289 (D. Del. 2012) ......................................................................................................... 17

*Miller v. Kirkland & Ellis LLP (In re 1H 1, Inc.)*,
Adv. No. 12-50713, 2016 WL 6394296 (Bankr. D. Del. Sept. 28, 2016) ................................... 11

*New Enter. Assocs. 14, L.P. v. Rich*,
295 A.3d 520 (Del. Ch. 2023) ...................................................................................................... 12

*Off. Comm. of Unsecured Creditors of HH Liquidation, LLC, v. Comvest Group Holdings, LLC (In re HH Liquidation, LLC)*, 590 B.R. 211 (Bankr. D. Del. 2018) ......................................... 9

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3rd. Cir. 2001) ....................................................................................................... 11

*Pardo v. Avanti Corp. Health Sys. (In re APF Co.)*,
274 B.R. 634 (Bankr. D. Del. 2001) ............................................................................................. 18

*Quadrant Structured Products Co., Ltd. v. Vertin*,
102 A.3d 155 (Del. Ch. 2014) ...................................................................................................... 19

*Rafool v. The Goldfarb Corporation (In re Fleming Pkg. Corp.)*,
No. 03–82408, 04–8166, 2005 WL 2205703 (Bankr. C.D. Ill. Aug. 26, 2005) ......................... 12

*Sama v. Mullaney  (In re Wonderwork, Inc.)*,
611 B.R. 169 (Bankr. S.D.N.Y. 2020) ........................................................................................... 7

*Shearer v. Tepsic (In re Emergency Monitoring Technologies, Inc.)*,
366 B.R. 476 (W.D. Pa. 2007) ...................................................................................................... 14

*SZ DJI Tech. Co. v. Autel Robotics USA LLC*,
No. 16-706, 2019 WL 1244947 (D. Del. Mar. 18, 2019) .............................................................. 2

*Tabachnik v. Catterton Mgmt. Co., LLC (In re Worth Collection, Ltd.)*,
666 B.R. 726 (Bankr. D. Del. 2024) ............................................................................................... 2

*The Liquidation Tr. of Hechinger Inv. Co. of Delaware, Inc. v. Fleet Retail Fin. Grp. (In re Hechinger of Delaware)*, 327 B.R. 537 (D. Del. 2005), *aff'd sub nom. In re Hechinger Inv. Co. of Delaware, Inc.*, 278 F. App'x 125 (3rd Cir. 2008) ............................................................... 13

*The Off. Comm. of Unsecured Creditors of RSL Com Primecall, Inc. (In re RSL COM Primecall, Inc.)*, No. 01-11457, Adv. No. 03-2176, 2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003) ......... 10

*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox, Inc.)*,
429 B.R. 73 (Bankr. S.D.N.Y. 2010) ............................................................................................. 14

*Wells v. Sleep (In re Michigan Machine Tool Control Corp.)*,
381 B.R. 657 (Bankr. E.D. Mich. 2008) ....................................................................................... 15

*Zazzali, v. Wavetronix LLC (In re DBSI, Inc.)*,
445 B.R 351 (Bankr. D. Del. 2011) ............................................................................................... 17

Statutes

8 Del. C. § 172 ......................................................................................................................... 14

Defendants Chicken Soup for the Soul Productions, LLC ("<u>CSSP</u>"), Chicken Soup for the Soul, LLC ("<u>CSS</u>"), and Chicken Soup for the Soul Holdings, LLC ("<u>CSS Holdings</u>") (collectively, "<u>CSS Entities</u>") respectfully submit this Reply in support of their Motion to Dismiss (Adv. Pro. D.I. 40-41) all claims pled against them by the Trustee.[2]

## ARGUMENT

## I.    THE COMPLAINT FAILS TO ALLEGE FACTS ESTABLISHING THAT ANY CSS ENTITY BREACHED A FIDUCIARY DUTY.

The Trustee's Response (Adv. Pro. D.I. 51-52) ("<u>Response</u>") fails to rebut the CSS Entities' core argument that the Complaint fails to allege what actions of, or decisions made by, the CSS Entities allegedly breached a fiduciary duty owed to CSSE.  (Adv. Pro. D.I. 41 at 4, 9-11.)  Instead, the Response repeats the relief sought against the CSS Entities, coupled with vague, self-serving assertions that the Complaint "details" the claims.  (Adv. Pro. D.I. 51 at 3-4; Adv. Pro. D.I. 52 at 1-2, 4, 16, 38-39.)  The Response also cites the Complaint's allegations that the CSS Entities were "controlling shareholders" of CSSE, as if controlling shareholders of an entity are automatically liable for the wrongs of the company in which they own shares, but that is not the law.  (Adv. Pro. D.I. 51 at 2, 6, 11, 13, 19 n.27, 29, 31-32; Adv. Pro. D.I. 52 at 3, 34-37, 39.)  The Response's list of supposed breaches of fiduciary duties barely references the CSS Entities.  (Adv. Pro. D.I. 51 at 12-13, 32-35.)  And for the two theories where it arguably references alleged conduct by any of the CSS Entities—the CSS Agreements and Employee Wages and Benefits Theories—the Response only identifies impermissibly conclusory allegations.  As shown by the CSS Entities' Motion and Memorandum in Support, the Complaint's failure to allege which of their supposed fiduciary duties each of the CSS Entities breached, and how, mandates dismissal

---

[2] This Reply uses the same defined terms as in the CSS Entities' Memorandum in Support.  (Adv. Pro. D.I. 41.)

of Count Four.  *See Cred Inc. Liquidation Tr. v. Uphold HQ Inc. (In re Cred Inc.)*, 650 B.R. 803, 813 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024).

With respect to the CSS Agreements Theory, the Response confirms the only factual basis for this theory in the Complaint is that CSS entered into two contracts with CSSE and, pursuant to them, CSS received fees in exchange for providing services and intellectual property rights to CSSE.  (Adv. Pro. D.I. 51 at 12, 33; Adv. Pro. D.I. 52 at 6, 16-17.)  There are no allegations that CSS failed to provide these services or intellectual property rights.  Yet, without any factual basis, the Trustee argues the CSS Agreements were "not in [CSSE's] best interests" and "not characterized by fair dealing or a fair price."  (Adv. Pro. D.I. 51 at 12.)  Such rote, conclusory speculation is insufficient.  *See Cred*, 650 B.R. at 813.  This is especially true here because CSSE analyzed the CSS Agreements (and fees paid thereunder) at least annually, concluding they were "more favorable" than other options available.  (*See, e.g.*, CSSE 2021 10-K at 37; CSSE 2022 10-K at 43; CSSE 2023 10-K at 45.)[3]  Moreover, the CSS Agreements were executed in 2016 (Adv. Pro. D.I. 42 at Exs. 1 & 2), so to the extent the Trustee is purporting to assert the CSS Entities breached fiduciary duties by merely entering into the CSS Agreements, such a theory is time-barred.  *See In re Sirius XM S'holder Litig.*, C.A. No. 7800-CS, 2013 WL 5411268, at *4 (Del. Ch. Sept. 27, 2013) ("[A] plaintiff must file a claim for breach of fiduciary duty within three years of the conduct that gives rise to the claim.").  Count Four thus fails to state any claims against the CSS Entities under the CSS Agreements Theory.[4]

---

[3] The Court can and should consider these SEC filings (and other exhibits relied on by the CSS Entities) when ruling on this Motion because the Complaint relies on them (Compl. ¶¶ 22, 26, 28, 31, 66) and they are publicly available records of which the Court may take judicial notice.  *See SZ DJI Tech. Co. v. Autel Robotics USA LLC*, No. 16-706, 2019 WL 1244947, at *2 (D. Del. Mar. 18, 2019); *see also Tabachnik v. Catterton Mgmt. Co., LLC (In re Worth Collection, Ltd.)*, 666 B.R. 726, 735 n.42 (Bankr. D. Del. 2024).

[4] The Response also contends fees paid under the existing CSS Agreements stood to increase after the Redbox Merger, as the fees were calculated as a percentage of net revenue.  (Adv. Pro. D.I. 51 at 12, 39.)  This does not identify conduct by the CSS Entities relating to the Redbox Merger, however, and this theory makes no sense because CSS agreed to **exclude** revenue from Redbox's "Traditional Business" from the calculation of fees, unless and until certain financial

On the Employee Wages and Benefits Theory, the Response fails to identify any factual allegations showing the conclusion that any of the CSS Entities took any action or had any role relating to wage, tax, or benefit payments to CSSE's former employees.  (Adv. Pro. D.I. 51 at 13-14, 34-35.)  Nor does the Response provide authority for the proposition that a corporate entity is responsible for a separate entity's employee-payment obligations.  The Complaint thus fails to state a claim on this theory.

Unable to identify wrongful actions or conduct by the CSS Entities under any of its fiduciary duty theories, the Trustee argues generally that the CSS Entities "exercised control" of CSSE, citing *Giuliano v. Schnabel* (*In re DSI Renal Holdings, LLC*), 574 B.R. 446 (Bankr. D. Del. 2017).  (Adv. Pro. D.I. 51 at 37.)  But *DSI Renal Holdings* involved remarkably more detailed factual allegations, including allegations that corporate stockholder defendants: "developed" and "implement[ed]" a restructuring plan that "stripped [a debtor] of its valuable assets by diluting" effectively all of its ownership interest, 574 B.R. at 455-56, 472-73; did so to "wip[e] out the claims of [a debtor's] creditors," *id.* at 460, 474 n.84; prepared a "pre-structuring internal valuation" as part of a "sham sale process to justify a low valuation to support the" restructuring scheme, *id.* at 459, 472; and filed "intentionally materially false schedules" with a bankruptcy court in furtherance of the scheme.  *Id.* at 472.  The Complaint here alleges nothing of the sort.

The Response also relies on *Burtch v. Owlstone, Inc.* (*In re Advance Nanotech, Inc.*), Adv. No. 13-51215 (MFW), 2014 WL 1320145 (Bankr. D. Del. Apr. 2, 2014).  Unlike here, however, *Advance Nanotech* addressed claims by a debtor against its subsidiary where: the subsidiary's CEO and CFO took over the CEO and CFO roles at the debtor, *id.* at *1; the debtor "completely

---

and other conditions were satisfied in the future, a critical fact the Response ignores.  (Adv. Pro. D.I. 42 at Exs. 3, 9.) And when CSSE was experiencing financial difficulties following the Redbox Merger, CSS agreed to modify the CSS Agreements to provide CSSE with an additional $16.2 million in working capital and flexibility.  (*Id.* at Ex. 3.)

assigned" a "fundraising process" to those individuals when the companies were about to "run out of cash," *id.* at *1, 5-6; during that process, the CEO "switched sides" to benefit the subsidiary defendant, facilitated a financing deal that drastically reduced the debtor's equity position in the subsidiary, and caused the debtor to default on secured notes, leading to an involuntary bankruptcy petition, *id.* at *5-6; and the CEO and CFO "misled the [debtor's] board" regarding cash the debtor would receive as part of the transaction. *Id.* at *6. Again, the Complaint's allegations here bear no resemblance to this fact pattern, nor does it contain the level of specificity present in the *Advance Nanotech* complaint concerning the alleged misconduct.

In sum, *DSI Renal Holdings* and *Advance Nanotech* reinforce that the Complaint's failure to allege adequately facts regarding actions or conduct by the CSS Entities renders it insufficient to state a claim for breach of fiduciary duty.

## II.    THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR AIDING OR ABETTING A BREACH OF FIDUCIARY DUTY.

To the extent Count Five purports to allege that the CSS Entities aided and abetted unspecified Co-Defendants' breaches of unspecified fiduciary duties, this claim fails for similar reasons as Count Four, including the lack of factual allegations regarding actions or conduct by the CSS Entities in furtherance of some other Defendant's supposed breach. (*See* Section I, *supra*.) An aiding and abetting claim cannot survive a motion to dismiss absent allegations that each of the CSS Entities actively provided "substantial assistance" to the directors' or officers' supposed breaches of fiduciary duty. *In re Mindbody, Inc., S'holder Litig.*, 332 A.3d 349, 393 (Del. 2024). "[P]assive awareness" is not enough. *Id.* Yet the Complaint merely concludes "Defendants aided and abetted the foregoing breaches by knowingly participating in these breaches of fiduciary duties." (Compl. ¶ 133.) This is insufficient to state a claim. *See Mindbody*, 332 A.3d at 399.

The Complaint also fails to plead facts from which each of the CSS Entities' knowing participation in a supposed breach of fiduciary duty can be reasonably inferred.  *See In re Syntax-Brillian Corp.*, 573 F. App'x 154, 163 (3d Cir. 2014) ("Purportedly suspicious circumstances . . . coupled with bald assertions of knowledge" are insufficient); *see also Burtch v. Zachem (In re TZEW Holdco, LLC)*, Adv. No. 22-50255, 2023 WL 6140247, at *3 (Bankr. D. Del. Sept. 19, 2023).  The Trustee again relies on *Advance Nanotech* (Adv. Pro. D.I. 52 at 4-5), which is readily distinguishable.  (*See* Section I, *supra*.)  Indeed, in a 2024 decision citing *Advance Nanotech*, the U.S. District Court for the District of Delaware affirmed this Court's dismissal of a liquidation trust's claims for aiding and abetting against a cryptocurrency exchange defendant, which allegedly knew the debtor was taking "huge risks" in cryptocurrency trading, was overleveraged, and made false statements in marketing materials.  *Cred Inc. Liquidation Tr.*, 658 B.R. at 783, 788-90, 796-800.  The court affirmed dismissal despite the debtor and defendant working together on a business endeavor; the defendant's executives voicing concerns about the debtor's business model; and a defendant board member creating the debtor, serving as the debtor's CEO and on its board, and being a 50% owner of the debtor.  *Id.* at 789, 796-97.  In doing so, the court agreed with this Court that: "the presence of suspicious circumstances . . . alone is not enough" to state a claim, *id.* at 794; "knowledge that a business deal is risky does not equate to knowledge of a breach of fiduciary duty," *id.* at 795-96 (cleaned up); and "[t]he bare assertion of [an individual's] dual roles [as board member of both companies] is insufficient as a matter of law to impute [his] knowledge of [the debtor's] internal mismanagement to [the defendant]." *Id.* at 799.[5]

For all of these reasons, Count Five should be dismissed.

---

[5] If the Court dismisses the breach of fiduciary duty claims against the other Defendants (as it should), the Complaint's aiding and abetting claim fails as a matter of law.  *See Lightsway Litig. Servs., LLC v. Yung (In re Tropicana Ent., LLC)*, 520 B.R. 455, 472 (Bankr. D. Del. 2014).

### III.    THE COMPLAINT'S IMPERMISSIBLE GROUP PLEADING CANNOT SAVE THE TRUSTEE'S CLAIMS AGAINST THE CSS ENTITIES.

In lieu of sufficient factual allegations against the CSS Entities, the Trustee merely lumps them in with other "Defendants." (Adv. Pro. D.I. 41 at 5-6, 14.) The Response highlights this pleading defect by again focusing on the director and officer Defendants and simply asserting the CSS Entities were "subject to the same allegations and claims." (Adv. Pro. D.I. 51 at 14-16.) Such group pleading is insufficient to state a claim. *See TZEW Holdco*, 2023 WL 6140247, at *3 (dismissing claim that "repeatedly allege[d] that the 'Defendants' took various actions (or failed to act) without identifying which transactions each Defendant may have authorized or the nature of each Defendant's authority to approve such transactions, when such action or inaction may have occurred, and specifically which Debtor was affected").

Indeed, the Response relies on cases that further demonstrate the inadequacy of the Complaint's group pleading. In *Sama v. Mullaney  (In re Wonderwork, Inc.)*, for example, the court dismissed group-pled claims against "the Board," with "one exception" for specified directors who executed declarations "without adequate investigation of the underlying claims." 611 B.R. 169, 200-01 (Bankr. S.D.N.Y. 2020). And the Response's other citations on this issue emphasize that the relevant pleadings contained "detailed factual allegations . . . detailing the acts and involvement of each" defendant, *Finkel v. Parzych (In re Midnight Madness Distilling, LLC)*, Adv. No. 23-00047-MDC, 2024 WL 3517620, at *1-6, 9 (Bankr. E.D. Pa. July 23, 2024), and allegations regarding the "dates, parties, and actions or inactions" of the director and officer defendants "sufficient to put them on notice of specific conduct" giving rise to the claims asserted. *Buchwald Capital Advisors LLC, v. Schoen (In re OPP Liquidating Co., Inc.)*, Adv. No. 21-50431 (MFW), 2022 WL 774063, at *8 (Bankr. D. Del. Mar. 14, 2022); *Balasiano v. Borell (In re Furniture Factory Ultimate Holding, L.P.)*, Adv. No. 22-50390 (JKS), 2023 WL 5662747, at *10-

11 (Bankr. D. Del. Aug. 31, 2023) (noting further that the pleading included a "separate set of specific directors and officers involved in the particular" claim and factual allegations giving the defendants notice of "specific conduct").

Here, in contrast, there are no factual allegations regarding each of the CSS Entities' alleged actions or conduct relating to the theories forming the basis of the Complaint's claims against them. (*See* Section I, *supra*.) The Trustee cannot overcome this pleading failure through impermissible group pleading against "Defendants" generally.[6]

## IV. THE COMPLAINT FAILS TO ADEQUATELY ALLEGE THAT EACH OF THE CSS ENTITIES OWED FIDUCIARY DUTIES TO CSSE.

The Response cites several cases for the proposition that a controlling shareholder can hold fiduciary duties. (Adv. Pro. D.I. 52 at 34-35.) But CSS and CSS Holdings are not alleged to hold any CSSE shares directly. Nor does the Complaint allege that any of the CSS Entities voted their shares or otherwise exercised shareholder control over the alleged transactions or corporate actions giving rise to the breach of fiduciary duty claims. (*See* Sections I-III, *supra.*) The Trustee's argument instead relies on imputing actions allegedly taken by Mr. Rouhana as a director or officer of CSSE to the CSS Entities, but the Response fails to provide authority supporting such imputation. The Trustee also argues CSS and CSS Holdings—despite holding no direct equity ownership in CSSE—should be held liable for the fiduciary duties allegedly owed by CSSP, collapsing the three entities in one. (Adv. Pro. D.I. 52 at 36-37.) This is improper. *See Off. Comm. of Unsecured Creditors of HH Liquidation, LLC, v. Comvest Group Holdings, LLC (In re HH Liquidation, LLC)*, 590 B.R. 211, 273 (Bankr. D. Del. 2018) ("[W]hen dealing with multiple layers of parents and subsidiaries, the corporate veil likely must be pierced at each level."); *The Off.*

---

[6] The Response concedes the Trustee is not seeking to establish liability through an alter ego or veil piercing theory. (Adv. Pro. D.I. 52 at 4, 37-39.) The Complaint must therefore plead facts establishing a breach of fiduciary duty or other cognizable harm by each of the CSS Entities, which it fails to do. (*See* Sections I-III, *supra*.)

*Comm. of Unsecured Creditors of RSL Com Primecall, Inc. (In re RSL COM Primecall, Inc.)*, No. 01-11457, Adv. No. 03-2176, 2003 WL 22989669, at *15 (Bankr. S.D.N.Y. Dec. 11, 2003) ("Allegations of mere domination or control by one entity over another are insufficient; in the context of veil piercing, 'it is not sufficient at the pleading stage to make conclusory allegations of control.'").

## V.    THE RELEASE BARS THE MAJORITY OF THE TRUSTEE'S CLAIMS.

All claims premised on actions or inactions prior to August 11, 2022 are barred by the Release, which the Court ought to enforce at the motion to dismiss stage due to the Trustee's failure to plead around it.  *See Burtch v. Avnet, Inc*., 527 B.R. 150, 153-54 (D. Del. 2015) (finding no error in Judge Walrath's enforcement of a release against bankruptcy trustee where he failed to meet the high burden required to set aside a contractual release for lack of consideration).

### A.    <u>The Trustee's Claim That He Is Not Bound By The Release Is Meritless.</u>

The Trustee's claim that he is not bound by the Release because it predates his appointment has no merit.  (Adv. Pro. D.I. 52 at 12.)  That argument only applies, if at all, to post-bankruptcy statutory claims.  The Trustee is bound by the Debtors' release of the pre-bankruptcy common law claims, which comprise the bulk of the case.  As this Court explained in *Miller v. Kirkland & Ellis LLP (In re 1H 1, Inc.)*, a bankruptcy trustee can pursue two categories of actions: "(1) those brought by the trustee as successor to the debtor's interest included in the estate under Section 541, and (2) those brought under one or more of the trustee's avoiding powers."  Adv. No. 12-50713, 2016 WL 6394296, at *13 (Bankr. D. Del. Sept. 28, 2016).  "Any action included in the estate under section 541 that is later pursued by a bankruptcy trustee is brought by the trustee as successor to the debtor's interest in that claim . . . . Because the trustee stands in the shoes of the debtor . . . , the trustee is 'subject to the same defense as could have been asserted by the defendant had the action been instituted by the debtor.'"  *Id.* (quoting *Official Comm. of Unsecured Creditors v. R.F.*

*Lafferty & Co.*, 267 F.3d 340, 356 (3rd. Cir. 2001)).  The Release constitutes such a defense to the non-bankruptcy claims, and the Response cites no case that states otherwise.

### B.    The Integrated Transaction Doctrine Prohibits Avoidance Of The Release.

The Release bars all claims based on pre-August 11, 2022 events and conduct unless the Court avoids it as a fraudulent transfer.  (*See* Adv. Pro. D.I. 52 at 11.)  Counts Eight and Nine, which seek this relief, are incurably defective because they violate the Integrated Transaction Doctrine.  Once the doctrine is applied, the Trustee's lawsuit collapses.

First, none of the cases cited by the Trustee support his spurious claim that the Court can pluck a subset of releases out of the ***fully integrated*** Merger Agreement for avoidance as constructive fraudulent conveyances.  (*See id.* at 14-15.)[7]

Second, the Trustee's assertions that the Release was "gratuitous," and transferred for no value, is also meritless.  (*See id.* at 11.)  The Trustee has pled no facts to support his conclusory lack-of-consideration allegation.  *See, e.g.*, *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 536-37 (Del. Ch. 2023) (acknowledging Delaware courts generally enforce covenants not to sue that arise out of or relate to a transaction); *see also*, *e.g.*, *Burtch*, 527 B.R. at 153-54.

Plainly, the Integrated Transaction Doctrine bars the Trustee's attempt to set aside only a portion of the Redbox Merger Agreement without avoiding the entire transaction.  The Trustee fails to cite any contrary authorities, and *The Liquidation Tr. of Hechinger Inv. Co. of Delaware, Inc. v. Fleet Retail Fin. Grp. (In re Hechinger of Delaware)*, 327 B.R. 537, 546 (D. Del. 2005),

---

[7] Cases cited by the Trustee are inapposite.  In *Blixseth v. Kirschner (In re Yellowstone Mt. Club, LLC)*, 436 B.R. 598 (Bankr. D. Mont. 2010), the court avoided a release issued as part of a settlement agreement that provided for the division of assets in a divorce proceeding by which the husband transferred ownership of several corporate entities to his wife, and the entities granted the husband a release of claims for no consideration to the entities.  *See also Rafool v. The Goldfarb Corporation (In re Fleming Pkg. Corp.)*, No. 03–82408, 04–8166, 2005 WL 2205703 (Bankr. C.D. Ill. Aug. 26, 2005) (release of a claim against an insider stated a preference claim); *Metzger v. Farris (In re e2Communications, Inc.)*, 320 B.R. 849 (Bankr. N.D. Tex. 2004) (contribution and release agreement by which the debtor's obligations to the president were consolidated into a single note, the president conveyed his stock in the debtor back to the debtor as a contribution in capital, and the parties exchanged releases).

*aff'd sub nom. In re Hechinger Inv. Co. of Delaware, Inc.*, 278 F. App'x 125 (3rd Cir. 2008), is binding in this District.  The doctrine is clear—the Release, which is appended to the Redbox Merger Agreement and, along with numerous other attachments, constitute the entire Merger Agreement, must be treated as a single transaction, and the Release cannot be avoided as a constructive fraudulent conveyance without avoiding the entire Redbox Merger, which the Complaint does not seek to do.

### C.    It Is Too Late To Avoid The Release Under Section 548 (Count 8).

The Trustee does not dispute that all parties executed the Release on May 10, 2022, a patent bar to the Section 548(a)(1)(B) claim, which must be brought within two years of when the obligation was "made or incurred."  (*Compare* Adv. Pro. D.I. 52 at 13 *with* Adv. Pro. D.I. 37 at 38 and n.36.)  The CSS Entities cited *Le Café Creme, Ltd. v. Le Roux (In re Le Café Crème, Ltd.)*, 244 B.R. 221 (Bankr. S.D.N.Y. 2000), to show contract obligations become effective upon execution of an agreement, not a subsequent time of performance.  The Trustee's criticisms of *Café Crème* fail, and the cases he cites are easily distinguishable.  (*See* Doc. 52 at 13-14.)

In *Café Crème*, the defendants performed their obligations outside of the look-back period, and the debtor was obligated to make installment payments, some of which it made post-petition, due under the "indivisible" agreement. 244 B.R. at 234.  The courts in both *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox, Inc.)*, 429 B.R. 73 (Bankr. S.D.N.Y. 2010), and *Shearer v. Tepsic (In re Emergency Monitoring Technologies, Inc.)*, 366 B.R. 476 (W.D. Pa. 2007), expressly found that the facts in their cases were distinguishable from those in *Café Crème* because, unlike the contract in *Café Crème*, the contracts in those cases were divisible.  *See Tronox*, 429 B.R. at 102 (the post-petition payments were due on a pre-petition contract, which were "divisible from the underlying agreements."); *Emergency Monitoring*, 366 B.R. at 503 ("[T]he grant of a security interest is necessarily distinguishable, yes divisible, from an execution upon

10

such security interest . . . ."). *Gold v. Winget (In re NM Holdings Co., LLC)*, 407 B.R. 232, 268 (Bankr. E.D. Mich. 2009), is also distinguishable from this case because it addressed post-petition payments made on a pre-petition contract.

Whereas, other authorities are consistent with *Café Crème.* In *Wells v. Sleep (In re Michigan Machine Tool Control Corp.)*, 381 B.R. 657 (Bankr. E.D. Mich. 2008), the debtor entered into binding contracts and promissory notes to redeem the defendants' stock. The court concluded that the debtor's payment obligations were fixed at the time the debtor signed the promissory notes incorporating the terms of the agreement and the payments the debtor made to the defendants, both pre-petition and post-petition, were controlled by the terms of the notes. *Id.* at 668. Because the debtors' payments were made pursuant to a pre-petition contract, the court held that the payments were not separate transfers and could not be avoided as constructive fraudulent conveyances. *Id.*

In sum, because the Release is, like the contracts in *Café Crème* and *Michigan Machine*, an indivisible contract that was executed more than two years prior to the Petition Date, the Trustee's Section 548 claim (Count Eight) is time-barred and fails.

## VI.    THE BANKRUPTCY CODE CLAIMS FAIL FOR ADDITIONAL REASONS.

### A.    The Trustee Fails To Identify Payments That Can Be Avoided (Counts 6-7).

The Trustee contends that he adequately pled the payments that he claims are avoidable by aggregating them together by type and year. (Adv. Pro. D.I. 52 at 16-17.) Courts in this District require more. *Beskrone v. OpenGate Capital Grp. (In re PennySaver USA Publ'g)*, 587 B.R. 445, 457 (Bankr. D. Del. 2018), the sole case the Trustee cites in support of his scant pleading, decisively undermines the Trustee's contention. The *PennySaver* Court stated:

> The Trustee must . . . state facts with sufficient particularly to provide the defendant with fair notice of the charges against him. Thus, complaints that identify ***the dates,***

>*amounts, source, and transferee of <u>each</u> of the alleged transfers* successfully support claims of constructive fraudulent transfer . . . .

*Id.* at 546 (emphasis added); *compare with OPP Liquidating*, 2022 WL 774063, at \*14 (dismissing claims for avoidance of constructively fraudulent transfers because the liquidating trustee failed to allege the transfer dates, amounts, name of the transferor, and name of the transferee).  The Court did not dismiss the complaint in *PennySaver* because it "sufficiently stated the specific amount each Defendant received, the dates they received the amounts, and that the[y] made the salary payments for no material benefit."  587 B.R. at 548.  Here, though, the Trustee alleged neither the dates of the payments, the specific amounts of each payment, nor the identity of each transferee associated with each payment sought to be avoided.  These failures mandate dismissal of Counts 6 and 7.

### B.    <u>The Trustee Failed To Allege Any Facts To Support His Section 550 Claims.</u>

The Trustee similarly failed to allege any facts to support his Section 550 claims.  The Response claims the allegations he made in paragraphs 142 and 150 of the Complaint satisfy his pleading requirements (Adv. Pro. D.I. 52 at 18), but they do not.  Neither paragraph contains any factual allegations, much less plausible factual allegations, establishing that the payments were made for the benefit of Mr. Rouhana, Ms. Newmark, or any of the CSS Entities, nor do they allege that CSS transferred any of the payments to any other Defendant.  *See Zazzali, v. Wavetronix LLC (In re DBSI, Inc.)*, 445 B.R 351, 354-56 (Bankr. D. Del. 2011) (finding trustee failed to state a Section 550(a) claim against the president and CEO of a company where the complaint merely insinuated that the transfers were for his benefit without factual allegations to support the theory); *see also Bonded Fin. Servs., Inc. v. European Am. Bank,* 838 F.2d 890, 895 (7th Cir. 1988) (defining "for whose benefit" narrowly to require a direct benefit at the time of transfer).  The Trustee fails to cite any contrary authority.  Nor does he cite any allegations of fact in the Complaint that support his

conclusory assertion that payments were made for the benefit of subsequent transferees, because there are none.

### C.   The Trustee Failed To Allege The Existence Of A Triggering Creditor.

The Trustee claims he is not required to identify a specific triggering creditor to state a claim under Section 544(b) (Adv. Pro. D.I. 52 at 19-20), but this Court has held otherwise.  *See Giuliano v. Ferdinand (In re Liquid Holdings Grp., Inc.)*, Adv. Pro. 17-50662, at *5 (Bankr. D. Del. Sept. 18, 2018).  The Trustee's conclusory allegations at paragraphs 148 and 163 of the Complaint that "[a]t all relevant times, the Company had actual creditors holding unsecured claims allowable within the meaning of Sections 502 and 544(b) of the Bankruptcy Code" fail to identify a "specific" triggering creditor.  (*See* Adv. Pro. D.I. 41 at 18.)  Moreover, the cases the Trustee cites do not help him.  In *Michaelson v. Farmer (In re Appleseed's Intermediate Holdings)*, 470 B.R. 289, 301 (D. Del. 2012), the plaintiff identified four specific categories of unsecured creditors that qualified as triggering creditors including vendors, landlords, suppliers, and lenders, *id.* at 301, whereas the Trustee here has not offered any such specificity.  In *Golden v. Comty Health Sys. (In re Quorum Health Corp.)*, Adv. No. 21-51190 (BLS), 2023 Bankr. LEXIS 1471 (Bankr. D. Del Apr. 18, 2023), unlike here, the plaintiff actually identified a triggering creditor.  Finally, in *Pardo v. Avanti Corp. Health Sys. (In re APF Co.)*, 274 B.R. 634, 640 (Bankr. D. Del. 2001), the court dismissed the complaint, as this Court should here, because the allegations regarding the existence of a triggering creditor were deficient.  In sum, none of these authorities cited by the Trustee excuse his failure to adequately allege a specific triggering creditor.

## VII.   THE CLAIM FOR RECOVERY OF PREFERRED DIVIDENDS FAILS.

### A.   Payments Under The CSS Agreements Are Not Dividends.

Payments made by CSSE pursuant to the CSS Agreements are not dividends subject to Sections 170-174 of the DGCL.  The Trustee's citation to cases addressing "constructive

dividends" (Adv. Pro. D.I. 52 at 23-30) do not save his flawed claim, nor can citation to cases arising under other state's laws.  Delaware law is clear and to the contrary.  Controlling Delaware decisions are fatal to the Trustee's attempt to expand or reformulate Delaware law, including as to the following:

- Delaware law takes a "formal and technical approach" in evaluating dividend allegations. *Quadrant Structured Products Co., Ltd. v. Vertin*, 102 A.3d 155, 200-02 (Del. Ch. 2014).

- The restrictions on dividend payments do not extend to other transactions between a corporation and its shareholders.  *Id.* at 201-02.

- Tax cases are inapposite and neither controlling nor persuasive in this context.  *See Horbal v. Three Rivers Holdings*, C.A. No. 1273-N, 2006 WL 668542, at *3-4 (Del. Ch. Mar. 10, 2006).

- Recent decisions of Delaware courts (and other courts interpreting Delaware law) are in accord with Delaware law and do not countenance a "constructive dividends" theory. *Quadrant*, 102 A.3d at 202; *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1247 (Del. Ch. 2019); *Halperin v. Richards*, 665 B.R. 626, 639-41 (E.D. Wisc. 2024).  These decisions and others have expressly and implicitly rejected prior decisions to the contrary.

- A company's license fee payments to its own shareholder are not dividends governed by Sections 170-14 of the DGCL.  *Quadrant*, 102 A.3d at 200-02.

The fees paid under the CSS Agreements therefore cannot be the predicate for this claim.

### B.    The Trustee Failed To Meet His Burden For Payments Between January 1, 2020 and June 30, 2023.

As an initial matter, the CSS Entities are not alleged to have taken any actions authorizing CSSE's payment of dividends or fees.  The Complaint also fails to allege sufficient facts to support its allegation that CSSE had insufficient surplus to issue dividends prior to June 30, 2023. Delaware's statutory scheme is clear—in calculating the surplus, directors "shall be ***fully protected*** in relying" on the "corporation's records, officers and employees, committees of the board, or experts."  8 Del. C. § 172 (emphasis added); *In re Chemours Co. Deriv. Litig.*, C.A. No. 2020-0786, 2021 WL 5050285, at *13 (Del. Ch. Nov. 1, 2021) ("[D]irectors are 'fully protected' under Section 172 from liability if they rely 'in good faith' upon the corporation's records, officers and employees . . . .").  Surplus may be calculated by any "methods that fully take into account the

assets and liabilities of the corporation." *Id.* at *16; *see also Klang v. Smith's Food & Drug Ctrs., Inc.*, C.A. No. 15012, 1997 WL 257463, at *4 (Del. Ch. May 13, 1997), *aff'd*, 702 A.2d 150 (Del. 1997). Reliance on GAAP to determine a surplus has been expressly approved by the Delaware courts, and failing to plead around this has formed the basis for dismissing claims such as those the Trustee advances here. *See Chemours*, 2021 WL 5050285, at *17 (acknowledging that "Delaware corporations . . . follow generally accepted accounting principles" (i.e., GAAP) and that a complaint needs to "allege with particularity why the Board was required to depart from this 'generally accepted' approach" where GAAP-based calculations suggest that there was a surplus).

The other Directors' Memorandum in Support of their Motion to Dismiss (Adv. Pro. D.I. 35 at 6, 20-23) and Reply demonstrate this in greater detail, but the conclusion is inescapable—the publicly filed, audited financial statements relied on by the Complaint demonstrate that CSSE's surplus was millions of dollars greater than the dividends and fees CSSE paid out from January 1, 2020 through June 30, 2023. Plaintiff's conclusory and unsupported allegations, which primarily concern times after August 2022, do not suffice to defeat the presumption of protection for decisions relying on, among others, CSSE's outside auditors. Nor do the allegations overcome the stark truth of CSSE's audited financial statements.

## VIII.   THE TRUSTEE ABANDONED HIS FLSA CLAIM (COUNT 11).

The Trustee abandoned Count 11 in his Response and offered no substantive rebuttal. (Adv. D.I. 52 at 42-43.) This claim should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, and those set forth in the CSS Entities' prior Memorandum (Adv. Pro. D.I. 41), all claims against the CSS Entities should be dismissed with prejudice.

Dated: September 26, 2025
Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *Donald J. Detweiler*
Donald J. Detweiler (DE Bar No. 3087)
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: don.detweiler@wbd-us.com

-and-

Cathy A. Hinger
(admitted *pro hac vice*)
2001 K. Street NW, Suite 400 South
Washington, D.C. 20006
Telephone: (202) 467-6900
Facsimile: (202) 467-6910
Email: cathy.hinger@wbd-us.com

-and-

James S. Derrick
(admitted *pro hac vice*)
301 South College Street, Suite 3500
Charlotte, North Carolina 28202
Telephone: (704) 331-4913
Facsimile: (704) 338-7819
Email: james.derrick@wbd-us.com

*Counsel for William J. Rouhana, Jr., Amy L. Newmark, Chicken Soup for the Soul Productions, LLC, Chicken Soup for the Soul, LLC, and Chicken Soup for the Soul Holdings, LLC*