**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., et al.,<br><br>Debtors. | ) | Ch. 7<br><br>Case No. 24-11442 (MFW)<br>(Jointly Administered) |
| GEORGE L. MILLER, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM J. ROUHANA, JR., AMY L. NEWMARK, CHRISTOPHER MITCHELL, FRED M. COHEN, COSMO DENICOLA, MARTIN POMPADUR, CHRISTINA WEISS LURIE, DIANA WILKIN, VIKRAM SOMAYA, JASON MEIER, AMANDA R. EDWARDS, CHICKEN SOUP FOR THE SOUL PRODUCTIONS, LLC, CHICKEN SOUP FOR THE SOUL, LLC, CHICKEN SOUP FOR THE SOUL HOLDINGS, LLC,<br><br>Defendants. | ) | Adv. No. 25-50399 (MFW)<br><br>Related Docs. 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 51, 52, 55, 56, 57, 58, 59, 60, 61, 62, 64, 65 |

**MEMORANDUM OPINION**

Before the Court are several motions to dismiss (the "Motions to Dismiss") claims brought by the chapter 7 trustee George L. Miller (the "Plaintiff") against certain directors, officers, and parent companies of the Debtors (the "Defendants") alleging breach of fiduciary duties, avoidance of fraudulent and other transfers, and disallowance of claims. For the reasons stated below, the Court will grant in part and deny in part the Motions to Dismiss.

## I. FACTUAL BACKGROUND[1]

Chicken Soup for the Soul Entertainment, Inc. ("CSSE") was an entertainment content company formed in 2016 that provided advertising-supported video-on-demand products.[2] In 2017, CSSE became a publicly traded company.[3] CSSE's three flagship services were Redbox, Crackle, and Chicken Soup for the Soul video content.[4]

Defendant William J. Rouhana served as the Chairman of the Board and CEO of CSSE from its incorporation in 2016 and at all times relevant to the Plaintiff's Complaint. Previously, Rouhana served as CEO of CSSE's parent, Chicken Soup for the Soul Productions, LLC ("CSSP") from 2008-16.[5] It is alleged that Rouhana controls CSSE and its direct and indirect parents.[6]

---

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Instead, the facts recited are those averred in the Complaint, which must be accepted as true for the purposes of these Motions to Dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[2] D.I. 7 ¶ 6. References to the docket in the main case are to "D.I. #." References to the docket in this adversary proceeding are to "Adv. D.I. #."

[3] Id.

[4] Id. ¶ 6.

[5] CSSE's parent company is Defendant CSSP; CSSP's parent is Defendant Chicken Soup for the Soul, LLC ("CSS"); CSS's parent is Defendant Chicken Soup for the Soul Holdings, LLC ("CSSH"). Adv. D.I. 1 ¶¶ 22-24.

[6] Id.

At or near its inception, CSSE entered into a Management Services Agreement (the "MSA") and a trademark and intellectual property license agreement (the "License Agreement") with its indirect parent, CSS.[7] Under the MSA, CSSE paid 5% of net revenues each quarter to CSS in exchange for office space, equipment, back-office services, and the services provided by certain directors, officers, and employees.[8] Pursuant to the MSA, CSS, CSSP, and CSSH (collectively the "CSS Entities") were responsible for, inter alia, the administration and payment of CSSE's payroll, benefits, and payroll taxes.[9] Under the License Agreement, CSSE paid 5% of net revenues each quarter to CSS in exchange for a license to use the Chicken Soup for the Soul brand, content, and marketing.[10]

A large part of CSSE's business included the licensing and distribution of third-party media properties. By way of example, in the two years before the petition date, CSSE and certain of its subsidiaries entered into at least 13 intellectual property licensing agreements with third parties.[11]

---

[7] Id. ¶ 66.

[8] Id. ¶ 62.

[9] Id. ¶ 78.

[10] Id. ¶ 63.

[11] Id. ¶ 68.

In March of 2022, CSSE began exploring the possibility of acquiring Redbox Entertainment Inc. ("Redbox").[12] Redbox rented physical DVDs and Blu-Ray discs to consumers from a national network of self-service kiosks.[13] In April 2022, Redbox publicly disclosed that it was evaluating whether doubts existed about its ability to continue as a going concern.[14] Nonetheless, CSSE engaged the services of Guggenheim Securities, LLC ("Guggenheim") to act as financial advisor for its proposed acquisition of Redbox.[15] Over the next few months, Guggenheim provided presentations to CSSE's Board of Directors and Officers, summarizing financial information, projections, and estimates associated with the proposed acquisition.[16] Guggenheim used projections prepared by CSSE's management for the purpose of its financial analysis.[17]

Ultimately, CSSE acquired Redbox through a merger, with CSSE as the surviving entity (the "Merger").[18] As a result, CSSE

---

[12] Id. ¶ 35.

[13] Id. ¶ 36.

[14] Id. ¶ 37.

[15] Id. ¶ 38.

[16] Id. ¶¶ 39-42.

[17] Id.

[18] Id. ¶ 38.

assumed Redbox's liabilities.[19] The Merger agreement was signed in May 2022 and consummated in August 2022.[20] As part of the Merger, CSSE entered into a release agreement (the "Release") that, inter alia, released and discharged CSSE's officers, directors, managers, employees, and its subsidiaries and affiliates, from all past and present claims.[21]

Concurrent with consummation of the Merger, CSSE entered into an Amended and Restated Credit Agreement (the "Credit Agreement") with HPS Investment Partners LLC ("HPS")[22] under which CSSE assumed $360 million of Redbox's debt, obtained an additional $48.2 million revolving credit facility, and deferred interest payments due to HPS through February 2024.[23]

Before the Merger, CSSE's preexisting debts totaled less than $60 million with annual interest of less than $5 million.[24] After the Merger, CSSE owed $562.4 million in gross debt, with annual interest expenses of $76 million.[25]

---

[19] Id. ¶ 45.

[20] Id.

[21] Id. ¶¶ 58-59.

[22] Id. ¶ 46.

[23] Id. ¶¶ 46-47.

[24] Id. ¶ 49.

[25] Id.

CSSE hoped to service its new debt with increased revenues from a rebound in demand for DVD kiosk rentals resulting from increased movie releases as the world emerged from the Covid pandemic.[26] Unfortunately, this anticipated rebound did not materialize; in 2023 CSSE recorded a net loss of over $450 million associated with the Redbox Merger.[27]

While CSSE had reported net losses since 2018,[28] its public stock was trading at $40/share in 2021 and $8/share in 2022 prior to the Merger.[29] By the third quarter of 2023, however, NASDAQ had delisted its stock and CSSE began including a going concern qualification in its financial statements.[30] In January 2024, CSSE suspended monthly dividend payments on its Preferred Stock[31] and failed to pay $15.5 million in accrued withholding taxes.[32]

CSSE was unable to make payroll for the two-week period ending June 14, 2024.[33] On June 28, 2024, CSSE and several of its subsidiaries filed for relief under chapter 11 of the

---

[26] Id. ¶ 51.

[27] Id. ¶¶ 54-55.

[28] Id. ¶ 1.

[29] Id. ¶ 35.

[30] Id. ¶ 32.

[31] Id. ¶¶ 73-74.

[32] Id. ¶ 79.

[33] Id.

Bankruptcy Code.[34] The cases were converted to chapter 7 on July 10, 2024,[35] and the Plaintiff was appointed the chapter 7 trustee for the Debtors the next day.[36]

## II. PROCEDURAL BACKGROUND

On March 12, 2025, the Plaintiff filed a Complaint against (1) the CSS Entities, (2) Rouhana, (3) Amy L. Newmark (a member of the CSSE Board and Rouhana's spouse), (4) Christopher Michell, CFO of CSSE from January 2019 through November 2022, (5) Jason Meier, an officer of CSSE since September 2021 and CFO of CSSE since November 2022, (6) Amanda R. Edwards, Chief of Staff for Rouhana and Senior Vice President and Executive Vice President of Operations of CSSE at various relevant times, and (7) several CSSE directors (Cosmo DeNicola, Fred M. Cohen, Christina Weiss Lurie, Diana Wilkin, Vikram Somaya, and Martin Pompadur).[37]

---

[34] D.I. 1. The Debtors are CSSE; Chicken Soup for the Soul Studios, LLC; Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC; CSS AVOD Inc.; 757 Film Acquisition LLC; CSSESIG, LLC; Digital Media Enterprises LLC; Halcyon Studios, LLC; Halcyon Television, LLC; Landmark Studio Group LLC; Locomotive Global, Inc.; Pivotshare, Inc.; RB Second Merger Sub LLC; Redbox Automated Retail, LLC; Redbox Entertainment, LLC; Redbox Holdings, LLC; Redbox Incentives LLC; Redwood Intermediate, LLC; Screen Media Films, LLC; Screen Media Ventures, LLC; and TOFG LLC.

[35] D.I. 120.

[36] D.I. 130.

[37] Adv. D.I. 1 ¶¶ 10-25.

The Plaintiff's Complaint asserts claims for breaches of fiduciary duty by Rouhana, the non-Rouhana Board Members, the CSSE Officers, and the CSS Entities (Claims 1-4), a claim of aiding and abetting breaches of fiduciary duty against all Defendants (Claim 5), claims against Rouhana, Newmark, and the CSS Entities to avoid and recover various payments made to them (Claims 6-7), claims against all Defendants to avoid the Releases granted in conjunction with the Redbox Merger (Claims 8-9), claims against all Defendants to recover dividends paid to the preferred shareholders and the transfers made pursuant to the MSA and the Licensing Agreement under Delaware law (Claim 10), claims against all Defendants for non-payment of employee wages, benefits, and tax obligations under the Fair Labor Standards Act ("FLSA") (Claim 11), and the disallowance and/or equitable subordination of any proofs of claim the Defendants may have in the bankruptcy case (Claims 12-13).

The Complaint asserts that Rouhana controlled the CSS Entities and CSSE's Board of Directors and Officers.[38] Under Rouhana's control, CSSE took actions which proved disastrous to CSSE, including entering into the Redbox Merger, granting the Releases related to it, executing the MSA and Licensing Agreements, entering into IP licensing agreements with third parties during the two years pre-petition, paying dividends to

---

[38] Id. ¶ 1.

preferred shareholders between 2020 and 2023, and failing to pay wages, benefits, and taxes to or on behalf of CSSE's employees.[39] The Complaint alleges that the other Defendants breached their fiduciary duties (and aided and abetted breaches of fiduciary duty by others) by allowing Rouhana's actions.[40]

Each Defendant filed a Motion to Dismiss the Complaint.[41] The parties stipulated to a consolidated briefing schedule,[42] and the Plaintiff filed two Omnibus Responsive Briefs on August 29, 2025.[43] Reply briefs were timely filed,[44] and the Motions to Dismiss are ripe for decision.

## III. JURISDICTION

The Bankruptcy Court has subject matter jurisdiction over all "proceedings arising under title 11 or arising in or related

---

[39] Id. ¶ 2.

[40] Id. ¶¶ 96-134.

[41] Rouhana, Newmark, Mitchell, Meier, and Edwards all filed individual motions to dismiss. Adv. D.I. 33, 36, 38, 43, 45. The CSS entities jointly filed a motion to dismiss (Adv. D.I. 40), and Cohen, DeNicola, Lurie, Pompadur, Somaya, and Wilkin (the "Independent Directors") jointly filed a motion to dismiss (Adv. D.I. 31).

[42] Adv. D.I. 21, 24, 49, 50.

[43] While the fourteen Defendants filed seven Motions to Dismiss between them, they contain overlapping arguments, and the Plaintiff chose to address all the Motions to Dismiss in the omnibus responses. Adv. D.I. 51, 52.

[44] Adv. D.I. 55, 56, 57, 59, 60, 61.

to a case under title 11."[45] The fraudulent transfer claims are core claims relying on sections 544, 548 and 550 of the Bankruptcy Code, and the disallowance/subordination claims are core claims based on sections 502 and 510 of the Code.[46] The fiduciary duty claims, the aiding and abetting claims, and the claims based on Delaware law and FLSA are non-core claims based on applicable non-bankruptcy law, but are "related to" the core claims.[47]

Although not all parties have consented to the Court entering a final order in this adversary proceeding, the Court does have the authority to enter orders on preliminary matters, such as the instant Motions to Dismiss, that do not constitute a

---

[45] 28 U.S.C. §§ 157(a), 157(b)(1), 1334(b).

[46] 28 U.S.C. §§ 157(b)(2)(H), 157(b)(2)(B). Although the Plaintiff's claim under section 544 of the Code is based on the Delaware Uniform Fraudulent Transfer Act, it is nonetheless a core claim. See, e.g., Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.), 597 B.R. 235, 243 (Bankr. D. Del. 2019) (holding that section 544 claims are core because "though state law supplies the substance of the claim, the power to bring the claim in the first place arises under federal law.").

[47] See, e.g., Miller v. ANConnect, LLC (In re Our Alchemy, LLC), Adv. No. 18-50633, 2019 WL 4447541, at *1 (Bankr. D. Del. 2019) (holding that claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty are non-core, but the court nonetheless has the power to enter orders on motions to dismiss them); AstroPower Liquidating Trust v. Xantrex Technology, Inc. (In re AstroPower Liquidating Trust), 335 B.R. 309, 323 (Bankr. D. Del. 2005) (concluding that actions arising under non-bankruptcy law that could exist independent of the bankruptcy case are non-core, but bankruptcy courts may exercise "related to" jurisdiction over such matters if they could have an effect on the estate being administered).

final adjudication.[48]

IV. DISCUSSION

A. Standard of Review

1. Rule 12(b)(6)

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."[49] Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[50] When a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[51] Two "working principles" underlie this pleading standard:

---

[48] See, e.g., O'Toole v. McTaggart (In re Trinsum Grp., Inc.), 467 B.R. 734, 738 (Bankr. S.D.N.Y. 2012) (holding that "both before and after Stern v. Marshall, it is clear that the bankruptcy court may handle all pretrial proceedings, including the entry of an interlocutory order dismissing fewer than all of the claims in an adversary complaint.") (citations omitted).

[49] Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012.

[50] Fed. R. Civ. P. 8(a)(2), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7008.

[51] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. . . . Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.[52]

Under this standard, a complaint must nudge claims "across the line from conceivable to plausible."[53] The movant carries the burden of showing that dismissal is appropriate.[54]

Interpreting this pleading standard, the Third Circuit instructs courts to follow a multi-step analysis. "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"[55] Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pleaded facts as true and disregarding any legal conclusions.[56] Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.[57] After conducting this analysis, the court may conclude that "[a] claim has facial

---

[52] Iqbal, 556 U.S. at 663–64 (citations omitted).

[53] Twombly, 550 U.S. at 570.

[54] Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.), 496 F. Supp. 2d 404, 408 (D. Del. 2007).

[55] Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675).

[56] Santiago, 629 F.3d at 130. See also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 679).

[57] Santiago, 629 F.3d at 130.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[58]

2. Rule 9(b)

In addition, there is a heightened pleading standard for allegations of fraud under Rule 9(b) which provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.[59]

The Third Circuit has stated that the purpose of Rule 9(b) is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior," while noting that plaintiffs "are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."[60]

B. Affirmative Defenses

The Defendants raise several arguments which the Plaintiff characterizes as affirmative defenses and contends are premature

---

[58] Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

[59] Fed. R. Civ. P. 9(b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7009.

[60] Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). See also, Gerbitz v. ING Bank, FSB, 967 F. Supp. 2d 1072, 1078 (D. Del. 2013) (finding complaint sufficient where plaintiff identified the "who, what, where, when, how, and why" of his fraudulent transfer claim).

to address at this stage of the proceeding, before an answer has been filed and discovery has begun. The Defendants disagree, contending that they are appropriate at this stage, because they are based on the Plaintiff's own allegations.

1. Business Judgment Rule

Rouhana, Newmark, Mitchell, and Edwards argue that the First through Third Claims, alleging that the Defendants breached their fiduciary duties of care, loyalty, and good faith, ought to be dismissed because their actions are covered by the business judgment rule which "is a presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."[61] The Defendants argue that overcoming the business judgment rule is "a near-Herculean task," requiring a plaintiff to show that (1) a business decision was so egregiously irrational that "no reasonable business person could possibly authorize the action in good faith" or (2) an action was uninformed, resulting from an irrational process or a failure to establish systems designed to ensure compliance and performance.[62]

---

[61] In re Tower Air, Inc., 416 F.3d 229, 238 (3d Cir. 2005) (citing In re Walt Disney Co. Derivative Litig., 825 A.2d 275, 286 (Del. Ch. 2003)). See also Hurwitz v. Mahoney (In re Space Case), Adv. Pro. No. 23-50748, 2024 WL 1628440, at *5 (Bankr. D. Del. April 15, 2024) (same).

[62] Tower Air, 416 F.3d at 238. See also In re Crimson Expl. Inc. S'holder Litig., C.A. No. 8541-VCP, 2014 WL 5449419, at *20-26 (Del. Ch. October 24, 2014) (granting defendants' motion to dismiss for plaintiff's failure to rebut the business judgment rule by pleading,

The Plaintiff contends that the business judgment rule is an affirmative defense which generally does not form the basis for dismissal pursuant to Rule 12(b)(6).[63] He notes that the Defendants' reliance on state court cases which do address the business judgment rule at the motion to dismiss stage is misplaced, because Delaware rules require facts to be pled with a level of specificity that exceeds the federal notice pleading standard.[64] Therefore, the Plaintiff contends that whether the actions of the Defendants complied with the business judgment rule or were egregiously irrational should await discovery and a trial on the merits.

The Defendants counter that "where an unanswered affirmative defense appears" on the face of the complaint, dismissal is appropriate.[65] They argue that because the Complaint alleges

---

inter alia, that the directors had a financial interest in the transaction); Gagliardi v. TriFoods Int'l, Inc., 683 A.2d 1049, 1052-53 (Del. Ch. 1996) (granting motion to dismiss several claims where plaintiff alleged only that board and officers acted in a manner that plaintiff thought was unwise without alleging any bad faith or conflict of interest).

[63] Tower Air, 416 F.3d at 238.

[64] Id. at 237.

[65] Id. at 238-39 (affirming in part the dismissal of a complaint which alleged that "the business judgment rule [did] not vitiate any of [the] claims" while expressly stating actions that the defendants had taken which a reasonable business person could have taken in good faith); Space Case, 2024 WL 1628440, at *6-8 (concluding that plaintiff had failed to plead around the business judgment rule where its allegations were "nothing more than disagreement about the everyday operational decisions that officers are required to make while performing their duties"). But see Miller v. Bradley (In re W.J. Bradley Mortg. Cap., LLC), 598 B.R. 150, 165 (Bankr. D. Del.

that the Defendants' "course of conduct was not grounded in any reasonable business judgment" but was instead the result of negligence and abuse of discretion,[66] the Complaint does raise the issue and the Plaintiff has not adequately pled that their actions were egregiously irrational or uninformed.

The Plaintiff responds that the Defendants' heavy reliance on the Tower Air decision is misplaced. He contends that that case is distinguishable on the facts and did not alter the Third Circuit's general rule that the business judgment rule cannot be raised at this stage of the proceedings unless the allegations of the complaint themselves prove the applicability of the business judgment rule.[67]

---

2019) (concluding that the trustee had "sufficiently pled around the business judgment rule by specifically alleging facts showing how each of the Defendants may have been grossly negligent and/or acted with willful misconduct").

[66] Adv. D.I. 1 ¶¶ 93, 105, 117, 129.

[67] Tower Air, 416 F.3d at 238 (acknowledging that affirmative defenses are not generally addressed at the motion to dismiss stage). See also Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford, 554 F. Supp. 2d 538, 556–57 (D. Del. 2008) (rejecting argument that the allegation that the defendants had made "decisions that no reasonable person could possibly authorize in good faith" invokes the business judgment rule which had to be addressed at the motion to dismiss stage); Shamrock Holdings, Inc. v. Arenson, 456 F. Supp. 2d 599, 609 (D. Del. 2006) (rejecting argument that business judgment rule was implicitly raised by allegations "repeatedly describing the minority shareholders' behavior with terms such as 'well-reasoned' in a preemptive attempt to combat a possible affirmative defense"); Dershaw v. Nevels (In re Swarthmore Grp. Inc.), 667 B.R. 258, 272 n.11 (Bankr. E.D. Pa. 2025) ("The Complaint does not raise the business judgment rule on its face. It is therefore inappropriate for consideration at this stage."); Carickhoff v. Cantor (In re Live Well Fin., Inc.), Adv. Pro. No. 21-50990 (LSS), 2023 WL 4025816, at *3 (Bankr. D. Del. June 14, 2023) (refusing to consider

The Court agrees with the Plaintiff. In Tower Air, the Third Circuit stated that "[g]enerally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)."[68] The Court affirmed dismissal of the complaint in that case only because the allegations of the complaint expressly stated facts that proved that the defendants had made a decision that a reasonable business person could have reached in good faith.[69] In this case, the Court finds no such allegations. Instead, the Plaintiff alleges that the Defendants breached their fiduciary duties by causing CSSE and its subsidiaries to enter into numerous transactions that were not in the best interests of CSSE, but were instead intended to elevate the Defendants' own interests above CSSE, including, inter alia, approving the Merger

business judgment rule defense where the complaint failed to mention it because "a review of Tower Air, the Third Circuit case on which Cantor relies and which binds this court, reveals that the business judgment rule is an affirmative defense which should not be considered at the motion to dismiss stage unless the plaintiff raises the business judgment rule on the face of the complaint"); Stanziale v. Versa Cap. Mgmt., LLC (In re Simplexity), Adv. Pro. No. 16-50212, 2017 WL 65069, at *8 (Bankr. D. Del. Jan. 5, 2017) (refusing to consider the business judgment rule defense at the motion to dismiss stage where "there is no question that the Trustee did not raise the business judgment rule in his Complaint"); Miller v. McCown De Leeuw & Co. (In re The Brown Schools), 368 B.R. 394, 401 (Bankr. D. Del. 2007) (concluding that the "application of the business judgment rule is an affirmative defense, the determination of which is not proper at the motion to dismiss stage.").

[68] Tower Air, 416 F.3d at 238.

[69] Id. at 238-39.

despite being aware of the dire financial condition of Redbox,[70] continuing to operate and pay fees under the MSA and License Agreement,[71] continuing to pay out dividends to preferred shareholders,[72] and failing to pay accrued withholding taxes.[73] The Complaint expressly alleges that it was not rational to do any of these actions.[74]

Therefore, the Court concludes that the business judgment rule is not properly considered at this stage of the proceedings. The Court will deny the Defendants' Motions to Dismiss on this point.

2. Exculpation under State Law

Rouhana, Newmark, Mitchell, and the Independent Directors also argue that any breaches of their duties of care alleged in the First and Second Claims must be dismissed as a matter of law pursuant to section 102(b)(7) of the General Corporation Laws of the State of Delaware (the "DGCL")[75] because CSSE's Company

---

[70] Adv. D.I. 1 ¶¶ 87, 98, 110, 122.

[71] Id. at ¶¶ 89, 101, 113, 125.

[72] Id. at ¶¶ 90, 102, 115, 126.

[73] Id. at ¶¶ 92, 104, 116, 128.

[74] Id. at ¶¶ 93, 105, 117, 129.

[75] Del. Code Ann. tit. 8, § 102(b)(7) (permitting a certificate of incorporation to include, with certain caveats, a "provision eliminating or limiting the personal liability of a director or officer to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer").

Charter exculpates directors and officers from any such alleged breach.[76]

The Plaintiff argues that exculpation under section 102(b)(7), like the business judgment rule, is an affirmative defense, which cannot be raised at this stage.[77]

The Director Defendants disagree, contending that in 2015 the Delaware Supreme Court changed the effect of an exculpatory clause to operate more in the nature of an immunity, rather than as an affirmative defense.[78] They argue that the Delaware Supreme Court held that "[a] plaintiff seeking only monetary damages must plead non-exculpated claims against a director who

---

[76] Adv D.I. 35, Ex. 1 at 5 ("To the fullest extent permitted by law, a director of the Corporation shall not be personally liable to the Corporation or to its stockholders for monetary damages for any breach of fiduciary duty as a director.").

[77] See, e.g., Tower Air, 416 F.3d at 242 ("[T]he protection of an exculpatory charter provision appears to be in the nature of an affirmative defense. As we have said, affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6)."); Buchwald Cap. Advisors LLC v. Schoen (In re OPP Liquidating Company, Inc.), Adv. Proc. No. 21-50431, 2022 WL 774063, at *11 n.95 (Bankr. D. Del. March 14, 2022) ("The Defendants also argue that they have an exculpation clause which relieves them of any responsibility. The Court need not consider this argument because it is an affirmative defense which should not be considered at the motion to dismiss stage."); Friedman v. Wellspring Cap. Mgmt., LLC (In re SportCo Holdings, Inc.), Adv. Proc. No. 20-50554, 2021 WL 4823513, at *7 n.81 (Bankr. D. Del. October 14, 2021) (same).

[78] In re Cornerstone Therapeutics Inc. S'holder Litig., 115 A.3d 1173, 1175 (Del. 2015). See also In re EZCORP Inc. Consulting Agreement Deriv. Litig., 130 A.3d 934, 940 (Del. Ch. 2016) (holding that "the existence of an exculpatory provision operates more in the nature of an immunity, comparable to the extent to which sovereign immunity typically protects government employees from suit, rather than as an affirmative defense.").

is protected by an exculpatory charter provision to survive a motion to dismiss."[79] The Defendants assert that this effect of an exculpatory clause has been acknowledged by the federal courts, as well.[80]

The Court disagrees with the Director Defendants' argument. The Cornerstone rule that a plaintiff must plead a non-exculpated claim only applies with respect to claims against independent directors.[81] With respect to interested Directors, however, the Delaware Supreme Court stated that the entire fairness standard applied and thus a claim could be stated regardless of an exculpatory clause.[82]

---

79 Cornerstone, 115 A.3d at 1175.

80 See, e.g., In re LMI Legacy Holdings, Inc., 625 B.R. 268, 280 (D. Del. 2020) aff'g Lipscomb v. Clairvest Equity Partners L.P. (In re LMI Legacy Holdings, Inc.), Adv. Proc. No. 15-51069, 2017 WL 1508606, at *6 (Bankr. D. Del. Apr. 27, 2017) ("Absent bad faith or financial profit, the existence of such an exculpation clause can form the basis for dismissal of a claim alleging breach of duty of care.") (citations omitted); Continuing Creditors' Committee of Star Telecom., Inc. v. Edgecomb, 385 F. Supp. 2d 449, 464 (D. Del. 2004) (granting motion to dismiss claim for breach of duty of care because of exculpatory provision).

81 115 A.3d at 1179 ("We now resolve the question presented by these cases by determining that plaintiffs must plead a non-exculpated claim for breach of fiduciary duty against an independent director protected by an exculpatory charter provision, or that director will be entitled to be dismissed from the suit.") (emphasis added).

82 Id. at 1180-81 ("When [the entire fairness] standard is invoked at the pleading stage, the plaintiffs will be able to survive a motion to dismiss by interested parties regardless of the presence of an exculpatory charter provision because their conflicts of interest support a pleading-stage inference of disloyalty.") (emphasis added).

Therefore, the Court will not consider the exculpation provision in connection with the Motions to Dismiss filed by the interested Defendants because it is an affirmative defense.

The Court also rejects the Defendants' contention that the Cornerstone decision requires heightened pleading of a cause of action against an independent director who is protected by an exculpation clause. The Third Circuit in Tower Air rejected that same argument and held that the Federal Rules of Civil Procedure apply in bankruptcy cases, not any heightened pleading standards applicable under Delaware rules.[83]

Therefore, the Court concludes that any argument for dismissal of claims based on the exculpation clause and section 102(b)(7) of the DGCL is premature. The Court will deny the Motions to Dismiss based on that argument.

C. Group Pleading

Several Defendants argue that the Plaintiff's Complaint impermissibly relies on group pleading, by alleging undifferentiated conduct by collective groups of directors and officers. They assert that the Plaintiff's claims (1) lump all of the individual Defendants together as Officers and Directors

---

[83] Tower Air, 416 F.3d at 237 (holding that "[t]he District Court erred by assuming that Delaware's notice pleading cases are interchangeable with federal notice pleading cases. They are not. By requiring [the plaintiff] to allege specific facts, the District Court erroneously preempted discovery on certain claims by imposing a heightened pleading standard not required by Federal Rule of Civil Procedure 8.").

without supplying specific facts as to each Defendant's wrongdoing, (2) do not provide any specific facts as to which transactions a particular Defendant authorized, and (3) fail to allege what authority any particular Defendant had to approve such transactions.[84]

The Plaintiff disagrees, stating that the Complaint adequately identifies the dates, parties, and actions or inactions of the various Defendants in a manner sufficient to put them on notice of the specific conduct that gives rise to the breach of fiduciary duty claims asserted against them.[85] Because multiple officers and directors were engaged in the same conduct, the Plaintiff asserts that group pleading is appropriate.[86]

---

[84] See, e.g., Adverio Pharma GmbH v. Alembic Pharms. Ltd., C.A. No. 18-73-LPS, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019) (holding that "allegations lumping multiple defendants together without providing allegations of individual conduct are frequently (as here) insufficient to satisfy the notice pleading standard."); T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE), C.A. No. 16-581, 2017 WL 896988, at *7 (D. Del. Mar. 7, 2017) (same); Stanziale v. Heico Holdings, Inc. (In re Conex Holdings, LLC), 514 B.R. 405, 414 (Bankr. D. Del. 2014) (finding group allegations inadequate where the allegations do not link particular conduct to specific individuals).

[85] See, e.g., Balasiano v. Borell (In re Furniture Factory Ultimate Holding, L.P.), Adv. Pro. No. 22-50390, 2023 WL 5662747, at *10-11 (Bankr. D. Del. August 31, 2023) (finding that the trustee pled facts sufficient to overcome a group pleading argument where the complaint contained dates, parties, and actions or inactions of individual and collective groups of directors and officers); OPP Liquidating, 2022 WL 774063, at *7-8 (same).

[86] Finkel v. Parzych (In re Midnight Madness Distilling, LLC), Adv. Proc. No. 23-00047, 2024 WL 3517620, at *9 (Bankr. E.D. Pa. July 23, 2024) (holding that "where certain alleged conduct was undertaken by a group of Defendants, defining the Defendants in groups and alleging claims against them as groups does not deprive them of notice as to the basis for the claim against them"); Katchadurian v. NGP Energy

For the most part, the Court considers the Plaintiff's Complaint to be well-pled. Throughout the Plaintiff's Statement of Facts, he references Rouhana's specific conduct. Therefore, Rouhana is on notice regarding the Plaintiff's specific allegations against him and cannot argue that the Complaint is impermissibly group-pled as to him.

Further, the Court concludes that the Directors are on notice about the claims alleged against them. Broadly, the Plaintiff alleges that the Directors took, or failed to take, actions as Board members that violated their fiduciary duties to CSSE.[87] These actions were taken or not taken by the Board of Directors collectively. There is no need to separate out the allegations vis-à-vis each Director, except to the extent any particular Director Defendant was not sitting on the Board at the time the alleged breach occurred.

The Complaint also specifically identifies actions (and conflicting interests) of each of the CSS Entities which form the basis for the Plaintiff's claims against them. For example, the

---

Cap. Mgmt. (In re Northstar Offshore Grp., LLC), 616 B.R. 695, 723 (Bankr. S.D. Tex. 2020) ("[T]he Trustee's allegations are that each of the Defendants participated in the transfers alleged. Moreover, the Trustee notes that it created those groups for convenience rather than doubt and has asserted that the Defendants all committed the alleged act. The Complaint does not violate Federal Rule of [Civil] Procedure 8(a)'s prohibition against group pleading.").

[87] Adv. D.I. 1 ¶¶ 98-106 (alleging that the Directors approved the Redbox Merger and associated Releases, the MSA, and the License Agreements, continued the dividend payments through 2023, and failed to cause CSSE to pay employee wages, benefits, and tax obligations).

Complaint alleges that under the MSA, the CSS Entities were responsible for the payment of employee wages, benefits, and tax obligations.[88] Because these payments were not made, the Plaintiff alleges that the CSS Entities did not act in the best interest of CSSE.[89] The Complaint also specifically alleges that the CSS Entities "caused the Company to engage in, or failed to prevent, the Merger on the basis of Rouhana's and his management team's unsupported and wholly unreasonable financial projections of Redbox's and the Company's future performance, for reasons including that CSS would be entitled to a revenue stream from management and licensing fees."[90] It further alleges that the CSS Entities facilitated the payment of millions of dollars in dividends to preferred shareholders, while CSSE was in financial distress, even though CSSE had no legal ability or contractual obligation to make those payments.[91] Therefore, the Court finds that the Complaint puts the CSS Entities on adequate notice of the claims against them.

The Officer Defendants (Mitchell,[92] Meier, and Edwards) all assert that they are lumped with the Officers and Directors

---

[88] Id. ¶ 78.

[89] Id. ¶¶ 80, 128.

[90] Id. ¶ 122.

[91] Id. ¶ 126.

[92] Mitchell is additionally a Director Defendant. Id. ¶ 12. Rouhana is also listed as both a Director and an Officer Defendant. Id. ¶ 10.

collectively without identifying what specific actions they took that violated duties they had to CSSE. They argue that the group allegations are particularly inappropriate because they reference actions that occurred when they were not even Officers of CSSE. Furthermore, the Officer Defendants contend that making allegations against them collectively is impermissible because, unlike Directors who act as a group (i.e., the Board), officers of Delaware corporations owe context-specific duties of oversight which are limited to matters within the officer's responsibility.[93]

Despite its broad reach, the Court declines to dismiss the Complaint as to the Officer Defendants. The Complaint alleges collective action by Rouhana, the Officers and the Directors with respect to approval of the Merger and its Releases, the MSA, the License Agreements, the improper payment of dividends, and the failure to pay employees.[94] The Officers are further specifically named in the Complaint in relation to the preparation of the allegedly exaggerated business projections and presentations used to convince the Board to enter into the Redbox Merger.[95] Mitchell is also specifically alleged to have provided

---

93 Segway Inc. v. Cai, 349 A.3d 628, 633 (Del. Ch. 2023).

94 Adv. D.I. 1 ¶¶ 37, 44, 52, 58, 67, 72, 77, 80-81.

95 Id. ¶¶ 29, 43, 57.

services to CSSE under the MSA.[96]

The Complaint also specifically alleges the period when each of the Defendants served as an Officer and/or Director.[97] To the extent that the general allegations of the actions of the Directors and Officers cover periods when a specific Defendant was not an Officer or Director of CSSE, the Defendants can raise that as a defense. Similarly, to the extent that an alleged improper action was the action of the Board of Directors alone, and not an Officer, or was not within the scope of authority of an Officer, that can be raised by the Officer as a defense to the claim. Therefore, the Court concludes that the Complaint puts the Officer Defendants on notice as to the actions or inactions forming the basis of the claims against them. The Court will not dismiss the Complaint as to the Officer Defendants.

D. Breach of Fiduciary Duty

Corporate fiduciaries owe their corporations a duty of care, loyalty, and good faith.[98] The duty of care requires that fiduciaries act on an informed basis; failure to fully and deliberately inform oneself is considered gross negligence and

---

[96] Id. ¶ 62.

[97] Id. ¶¶ 12, 19, 20.

[98] See, e.g., Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.), 405 B.R. 527, 539 (Bankr. D. Del. 2009) (citing Malone v. Brincat, 722 A.2d 5, 10 (Del. 1998)).

constitutes a breach.[99] The duty of loyalty requires fiduciaries to act disinterestedly and in good faith, and a breach of that duty arises if a fiduciary enters into a self-interested transaction that is unfair to the company.[100] Finally,

> [t]he duty to act in good faith [] is a subsidiary element of the duty of loyalty. The behavior that must be shown to prove a violation of the duty to act in good faith requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence). Claiming a failure to act in good faith must allege more than gross negligence. A lack of good faith is shown by alleging conduct motivated by a subjective bad intent, or conduct that is an intentional dereliction of duty or the conscious disregard for one's responsibilities.[101]

The Defendants argue that the First through Fourth Claims of the Complaint, alleging breaches of fiduciary duties by Rouhana, the Directors, the Officers, and the CSS Entities, should be dismissed for failure to state a claim.

The Plaintiff responds that the Complaint contains ample factual allegations that all Defendants breached their respective duties of care, loyalty, and good faith. He points to specific

---

[99] Burtch v. Huston (In re USDigital, Inc.), 443 B.R. 22, 41 (Bankr. D. Del. 2011).

[100] Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361-62 (Del. 1993). See also OPP Liquidating, 2022 WL 774063, at *9.

[101] Cred Inc. Liquidation Trust v. Uphold HQ Inc. (In re Cred Inc.), 650 B.R. 803, 831 (Bankr. D. Del. 2023) (internal quotations omitted). See also Fedders, 405 B.R. at 540; Barsa v. Theseus Strategy Grp., LLC (In re Old BPSUSH, Inc.), Adv. Pro. No. 19-50726, 2020 WL 6818435, at *10 (Bankr. D. Del. June 30, 2020); Stone ex rel. AmSouth Bancorporation v. Ritter, 911 A.2d 362, 370 (Del. 2006).

allegations of the Complaint that evidence breaches of care, loyalty, and good faith as to all Defendants: (1) Rouhana's unchecked control and the Defendants' failure to oversee CSSE, (2) the approval of the Redbox Merger, (3) the approval of the gratuitous Releases, (4) the execution of the self-interested insider MSA and License Agreements, (5) the payment of unlawful dividends, and (6) the nonpayment of wages, benefits, and taxes.[102]

The Defendants counter that the Plaintiff has not factually supported his allegations that the Redbox Merger and the License Agreements were less than arms-length transactions. They contend that the MSA was a fair deal at a fair price and that the decision to continue operating under the MSA was analyzed annually and determined to have a sound basis, contradicting the Plaintiff's claim that it was not grounded in any reasonable business judgment or was grossly negligent. The Defendants further argue that the Plaintiff fails to demonstrate that the Directors and Officers were personally interested in the challenged actions and lacked independence from Rouhana.

The Court rejects the Defendants' argument because in considering a motion to dismiss, the Court must accept the allegations in the Complaint as true rather than the allegations

---

[102] Adv. D.I. 1 ¶¶ 26-30, 34-45, 52-53, 58-64, 67-73, 75-81.

of the Defendants to the contrary.[103] To the extent there are disputes of fact, those should be decided only after discovery and a full trial on the merits.

The Court finds that the allegations in the Complaint are sufficient to state in the First Claim that Rouhana breached his fiduciary duties to CSSE. The Complaint alleges that Rouhana directed CSSE to enter into several transactions to the detriment of CSSE, many of which allegedly provided Rouhana with additional streams of income.[104] Solely from the allegations in the Complaint, one could plausibly conclude that Rouhana was self-interested in these transactions. Other allegations regarding CSSE's failure to pay wages, benefits, and taxes, support a claim that Rouhana failed to fully inform himself, disregarded his responsibilities, and was derelict in his duties as an Officer and Director of CSSE.[105]

---

[103] Iqbal, 556 U.S. at 678.

[104] Adv. D.I. 1 ¶¶ 44, 49-52, 57 (the Redbox Merger promoted by Rouhana resulted in a nearly ten-fold increase in CSSE's gross debt and a nearly sixteen-fold increase in annual interest expenses), 60 (Rouhana and the other Defendants entered into broad personal Releases for no consideration), 62 (CSSE paid CSS 5% of net revenues for Rouhana's services at a time when Rouhana controlled both companies) 69-71 (Rouhana caused CSSE to enter into intellectual property licensing agreements that benefited him and a personal friend and shareholder), and 76 (Rouhana caused CSSE to pay stock dividends it could not afford in order to benefit him and his personal friends and shareholders).

[105] Id. ¶¶ 80, 92.

Similarly, the Court finds that the Complaint adequately pleads facts to support the Second Claim that the Directors breached their fiduciary duties by approving (1) the Redbox Merger (which resulted in the Release of claims against them),[106] (2) the License Agreements,[107] (3) the MSA,[108] (4) the improper payment of dividends,[109] and (5) by failing to cause CSSE to pay

---

[106] Id. ¶¶ 98-100 (alleging that the Directors approved the Merger without testing the unrealistic projections offered by Rouhana in support knowing that it was disastrous for CSSE to assume the massive obligations of Redbox, because they would get a Release of all possible claims against them without providing any consideration for those Releases), 43 ("There is no indication in the Company's Board minutes that the Board requested or obtained sufficient information to undertake a reasoned analysis of the reasonableness of the assumptions being utilized in the projections prepared by management . . . . Nor did the Board request that Guggenheim provide an opinion as to the reasonableness of management's projections or that Guggenheim provide its own projections.").

[107] Id. ¶ 103 ("the Board Defendants breached their duties by causing the Company to enter into numerous Intellectual Property License Agreements, which were not in the Company's interests, but which benefited Rouhana's known acquaintances and others. The Debtors failed to receive fair value in exchange for the Intellectual Property License Agreements, most of which were entered into shortly before the Debtors filed voluntary chapter 11 cases, and which thereby deprived the Debtors' estates of meaningful value.").

[108] Id. ¶ 101 (the Defendants "breached their duties to the Company by causing the Company to continue operating under the Insider Agreements - which were related party transactions - and to pay the Insider Revenue Transfers to CSS, notwithstanding the Company's financial distress. The terms of the Insider Agreements were not characterized by fair dealing or a fair price. Yet, the Board Defendants made no attempt to seek out alternatives to the Insider Agreements that would have been favorable to the Company, preferring instead to place Rouhana's interests ahead of the Company's, including during periods that the Company experienced severe financial distress.").

[109] Id. ¶ 102 ("the Board Defendants authorized the Company to pay out millions of dollars in dividends to preferred shareholders, while the Company was in financial distress, and when the Company had no legal ability or contractual obligation to do so. The Board

its employees' wages, benefits, and taxes.[110] The Court finds that the Plaintiff has sufficiently alleged that the Directors did this for pecuniary benefit, negligently, or because they were beholden to Rouhana.

The Court also finds that the Complaint contains sufficient allegations to state a claim for breach of fiduciary duty in the Third Claim against each non-Rouhana Officer Defendant. The Plaintiff has alleged that the Officer Defendants were involved in presenting the Redbox Merger to the Directors for approval, including preparing unrealistic financial projections.[111]

Finally, The Court concludes that the Complaint contains sufficient allegations against each CSS Entity Defendant to state a claim for breach of fiduciary duty in the Fourth Claim. The Plaintiff has alleged that the CSS Entities were responsible under the MSA for the payment of CSSE's wages, benefits, and

---

Defendants were motivated by financial gain and the gain of known shareholders, and a desire to maintain control over the Company.").

[110] Id. ¶ 104 ("the Board Defendants' failure to cause the Company to pay necessary Employee Wage, Benefit and Tax Obligations is inexcusable, especially during periods when they authorized the Company to continue performing under the Insider Agreements and paying dividends to shareholders [thereby] placing their own interests ahead of the Company's and by failing to exercise due care or to act in good faith, the Board Defendants breached their fiduciary duties.").

[111] Id. ¶¶ 43, 57 (alleging that Mitchell, Meier, and Edwards were under Rouhana's control and influence and prepared the projections for the Merger which were "wildly optimistic, unrealistic and not based on reasonable assumptions, and its use and presentation to the Board to support the Merger was negligent, grossly negligent, misleading, [and] in bad faith").

taxes[112] but failed to do so.[113] The Complaint further alleges that the CSS Entities breached their fiduciary duties by supporting Rouhana's efforts to merge with Redbox, to pay dividends to preferred shareholders, and to enter into unfavorable license agreements with Rouhana's acquaintances.[114]

Consequently, the Court will deny the Motions to Dismiss the First, Second, Third, and Fourth Claims of the Complaint.

E. Aiding and Abetting Breach of Fiduciary Duty

The Defendants argue that the Fifth Claim of the Complaint, against all Defendants for aiding and abetting breaches of fiduciary duty, must be dismissed because the Defendants are all

---

[112] Id. ¶¶ 62, 78 ("Under the terms of the CSS Management Agreement, the Company was obligated to pay CSS 5% of its net revenues for each fiscal quarter in exchange for services provided by certain insider Defendants (including Rouhana, Newmark, and Mitchell), certain back-office services, office space, and equipment. . . . Pursuant to the CSS Management Agreement, the CSS Entities (under the ownership and control of Rouhana and Newmark) were responsible for the administration and payment of the Company's payroll and benefits, including payroll taxes.").

[113] Id. ¶ 79.

[114] Id. ¶¶ 122, 126-27 (the CSS Entities supported the Redbox merger for their own pecuniary interests in achieving additional sources of income and a Release for affiliates, "facilitated the Company paying out millions of dollars in dividends to preferred shareholders, while the Company was in financial distress, and when the Company had no legal ability or contractual obligation to do so. . . . [and] breached their duties by causing the Company to enter into numerous Intellectual Property License Agreements, which were not in the Company's interests, but which benefited Rouhana's known acquaintances and others.").

fiduciaries of CSSE.[115]

Additionally, Rouhana, Newmark, and the CSS Entities argue that the Plaintiff has failed to show that they "knowingly" and overtly participated in anyone else's breach of fiduciary duty.[116]

The Plaintiff counters that the Complaint's factual allegations do sufficiently allege that the Defendants knowingly participated in and assisted other Defendants' breaches of fiduciary duty.[117] The Plaintiff also argues that he is entitled to plead in the alternative at this stage. Therefore, before it is determined that a Defendant was, or was not, a fiduciary of CSSE, the Plaintiff argues he has stated a plausible claim against each Defendant for aiding and abetting a breach of

---

[115] See, e.g., Our Alchemy, 2019 WL 4447541, at *16 ("To prevail on a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must establish: (1) the existence of a fiduciary relationship; (2) the fiduciary breached its duty; (3) a defendant, who is not a fiduciary, knowingly participated in a breach; and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary.") (emphasis added) (internal quotation omitted).

[116] See, e.g., In re Syntax-Brillian Corp., 573 F. App'x 154, 162 (3d Cir. 2014) ("A defendant knowingly participates in a breach of fiduciary duty if it 'act[s] with the knowledge that the conduct advocated or asserted constituted such a breach.'") (quoting Malpiede v. Townson, 780 A.2d 1075, 1097 (Del. 2001); In re Mindbody, Inc., S'holder Litig., 332 A.3d 349, 390-93 (Del. 2024) (concluding that knowledge of another's breach of fiduciary duty, without substantial assistance in that breach, is not sufficient).

[117] Adv. D.I. 1 ¶¶ 29-30, 43-44, 57, 67, 72, 77, 80-81, 133. See, e.g., Burtch v. Owlstone, Inc. (In re Advance Nanotech, Inc.), Adv. No. 13-51215, 2014 WL 1320145, at *7 (Bankr. D. Del. April 2, 2014) (finding knowing participation in a breach of fiduciary duty where defendant advocated a less than arms-length transaction knowing that it would lead the debtor to default).

fiduciary duty by another Defendant.[118]

Finally, the Plaintiff argues that, contrary to the Defendants' position, it is possible to state a claim for aiding and abetting another's breach of fiduciary duty against a fiduciary to a corporation.[119]

The Court concludes that the Plaintiff is correct that, at this stage in the proceeding, arguments in the alternative are permissible.[120] As noted above, the Court has found that the Plaintiff has stated breach of fiduciary duty claims. Consequently, it is plausible that any of the Defendants could have aided and abetted another Defendant in committing one or

---

[118] See, e.g., OPP Liquidating, 2022 WL 774063, at *12 ("if the Liquidating Trustee is unable to prove its allegations [for breach of fiduciary duty] with respect to any [Director Defendant], the Court concludes that the Amended Complaint has nonetheless alleged enough facts to support its claims that the [Director] Defendants knowingly participated in the breach of fiduciary duties by the other Defendants."); Our Alchemy, 2019 WL 4447541, at *16 ("At the pleading stage, the Trustee is entitled to plead in the alternative and to assert claims of aiding and abetting to the extent that some defendants did not themselves have any fiduciary duties or were shielded from breach of fiduciary duty claims by exculpatory provisions of debtor's operating agreement.").

[119] See Giuliano v. Schnabel (In re DSI Renal Holdings, LLC), 574 B.R. 446, 474 n.87 (Bankr. D. Del. 2017) ("Although the elements of a claim for aiding and abetting a breach of fiduciary duty count are couched in terms of the primary violator being a fiduciary and the aider and abettor a non-fiduciary, there is no case law that precludes such a claim against a fiduciary. While a corporate director owes the corporation fiduciary duties, in some instances those duties may be limited (by corporate charter or statute). Thus, the Court may find that a director had no fiduciary duty but aided and abetted a party that did.") (citation omitted).

[120] See OPP Liquidating, 2022 WL 774063, at *12; Our Alchemy, 2019 WL 4447541, at *16 (citations omitted).

more of those breaches. It is also premature at this time, before affirmative defenses are considered, to determine whether or not a Defendant is a fiduciary or owes a specific duty related to each of those alleged breaches. Finally, the Plaintiff has alleged facts to support a claim that the Defendants knowingly and overtly participated in the breaches of fiduciary duty by other Defendants.[121] Therefore, the Court will deny the Motions to Dismiss the Fifth Claim.

F. Avoiding and Recovering MSA Payments

Under the Sixth and Seventh Claims, the Plaintiff seeks to avoid and recover payments made under the MSA to Rouhana, Newmark, and the CSS Entities as initial or subsequent transferees, pursuant to sections 548(a)(1)(B), 550(a), and 544(b) of the Bankruptcy Code and Delaware's fraudulent transfer statute.[122]

Rouhana, Newmark, and the CSS Entities argue that these claims should be dismissed for failure to state a claim because, inter alia, the Plaintiff does not allege sufficient facts to establish that the MSA payments were constructively fraudulent[123]

---

[121] Adv. D.I. 1 ¶¶ 29-30, 43-44, 57, 67, 72, 77, 80-81, 133.

[122] Del. Code Ann. tit. 6, § 1305.

[123] The Defendants argue that to establish a constructively fraudulent transfer, the Plaintiff must plead that (1) the challenged transfer was for less than reasonably equivalent value; and (2) at the time of each transfer the debtor was or became insolvent. See 11 U.S.C. § 548(a)(1)(B).

and fails to identify each of the quarterly MSA payments, instead lumping the payments together by year.[124] The Defendants argue that the Plaintiff's recovery under section 550(a) must also fail because, among other reasons, the fraudulent transfer claims fail.[125] The Defendants suggest that compared to a case like PennySaver, where the plaintiff alleged that services under a management service agreement were never provided, here the Plaintiff has only made conclusory allegations that the MSA was "not characterized by fair dealing or a fair price."[126]

In response, the Plaintiff argues that PennySaver itself undercuts the Defendants' position by noting that "[r]easonably equivalent value and insolvency are generally factual

---

[124] See, e.g., Beskrone v. OpenGate Cap. Grp., LLC (In re PennySaver USA Publ'g, LLC), 602 B.R. 256, 266 (Bankr. D. Del. 2019) (stating that a complaint which identifies the "dates, amounts, source, and transferee of each of the alleged transfers successfully support claims of constructive fraudulent transfer" and dismissing claim that failed to identify which defendant received the transfer).

[125] 11 U.S.C. § 550(a) ("Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred. . . .") (emphasis added). See also Official Comm. of Unsecured Creditors of Champion Enters., Inc. v. Credit Suisse (In re Champion Enters., Inc.), Adv. Proc. No. 10-50514, 2010 WL 3522132, at *22 (Bankr. D. Del. Sept. 1, 2010) ("As the Court has determined that the Complaint fails to state claims pursuant to sections 544 and 547 of the Bankruptcy Code, the Complaint's section 550 claim likewise fails."); USDigital, 443 B.R. at 38-40 (dismissing claims under section 550(a) where the trustee failed to allege facts that payments were for less than reasonably equivalent value and were therefore fraudulent transfers).

[126] Adv. D.I. 1 ¶ 66.

determinations that should be reserved for discovery."[127] The Plaintiff further asserts that he need not plead the specifics of each allegedly fraudulent transfer but can lump together payments over time and plead amounts in the aggregate, which he has done.[128] The Plaintiff argues that the Complaint sufficiently alleges both a lack of reasonably equivalent value and, based on CSSE's own securities filings, evidence of insolvency.[129]

The Court agrees with the Plaintiff that he has sufficiently pled a lack of reasonably equivalent value and insolvency at this stage.[130] The Plaintiff has specifically alleged that at the time of the transfers CSSE "was engaged or about to engage in a business for which its remaining assets and/or capital were unreasonably small in relation to the business" or "intended to incur, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due."[131] This is

---

[127] 602 B.R. at 267. See also Zazzali v. Mott (In re DBSI, Inc.), 445 B.R. 344, 349 (Bankr. D. Del. 2011) (concluding that "insolvency is generally a factual determination not appropriate for resolution in a motion to dismiss.").

[128] Adv. D.I. 1 ¶¶ 62-64. See, e.g., Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC), 458 B.R. 87, 113-14 (Bankr. S.D.N.Y. 2011) (concluding that the aggregation of alleged transfers still put defendants on notice of the claims against them because of the factual allegations related to those transfers); Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.), 429 B.R. 73, 102 (Bankr. S.D.N.Y. 2010) (same).

[129] Adv. D.I. 1 ¶¶ 31-33, 62-63, 65-66, 78-80, 87-89, 98, 101, 122, 125.

[130] Id.

[131] Id. ¶¶ 139, 147, 155, 162.

sufficient under both the Bankruptcy Code and the Delaware statute.[132]

However, the Court agrees with the Defendants that to state a claim under section 548 and 544, the Plaintiff must identify the transfers by name of transferor, name of transferee, date, and amount.[133] Therefore, the Court will dismiss the Sixth and Seventh Claims of the Complaint without prejudice to an amendment that provides this requisite detail.

Because the fraudulent transfer claims are being dismissed, the Court agrees with the Defendants that at this stage, the section 550 claims must also be dismissed without prejudice.[134]

---

[132] See 11 U.S.C. § 548(a)(1)(B)(II), (III); Del. Code Ann. tit. 6, § 1302(a) & (b).

[133] PennySaver, 602 B.R. at 266-28 ("complaints that identify the dates, amounts, source, and transferee of each of the alleged transfers successfully support claims of constructive fraudulent transfer"); JLL Consultants, Inc. v. Gothner (In re AgFeed USA, LLC), 546 B.R. 318, 339 (Bankr. D. Del. 2016) (finding the trustee to have alleged sufficient facts for constructive fraud claim where "the complaint identifies the date, amounts, source and transferee of each of the transfers"); Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC), 426 B.R. 488, 498 (Bankr. D. Del. 2010) (finding sufficient facts to allege constructive fraud where the movant described the property and dates of the transaction, the value of the transfers made, the source of the funds, and the identity of the transferee). Cf. Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.), 288 B.R. 189, 192 (Bankr. D. Del. 2003) (concluding that to survive a motion to dismiss "the following information must be included in a complaint to avoid preferential transfers in order to survive a motion to dismiss: (a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer.").

[134] Champion Enters., 2010 WL 3522132, at *22; USDigital, 443 B.R. at 40.

G. Avoidance of Releases as Fraudulent Transfers

In the Eighth and Ninth Claims, the Plaintiff seeks to avoid the Releases granted to any Defendant through the consummation of the Redbox Merger, pursuant to sections 544(b), 548(a)(1)(B), and 550(a) of the Bankruptcy Code and Delaware's fraudulent transfer act.[135]

All of the Defendants move to dismiss these claims arguing that they fail as a matter of law because (1) the Plaintiff has not alleged facts establishing that CSSE was insolvent at the time, (2) the Releases were signed more than two years prior to the petition date, and (3) the Releases cannot be avoided because they were a single component of a larger, integrated transaction pursuant to which CSSE received reasonably equivalent value.

1. Insolvency

The Court has already concluded that the Complaint sufficiently alleges that CSSE was insolvent.[136] Therefore, the

---

[135] See 11 U.S.C. § 548(a)(1)(B) (allowing avoidance of a transfer as fraudulent if the transfer was for "less than a reasonably equivalent value" while the debtor was insolvent); Del. Code Ann. tit. 6, § 1305 ("(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation. (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.").

[136] See supra notes 130-32 and accompanying text.

Court rejects the Defendants' contention that this mandates dismissal of the Eighth and Ninth Claims.

2. Within the Period Covered by Section 548

The Defendants also argue that the Plaintiff's claim under section 548 is time-barred because the Releases were signed and dated May 10, 2022, which is more than two years before CSSE's bankruptcy petition was filed on June 28, 2024.[137] They rely on caselaw holding that the execution date of a contract, not the date transfers required under it were made, is the operative date for section 548.[138]

The Plaintiff responds that it has alleged in the Complaint that the Releases "would take effect only upon the consummation of the Merger."[139] The Complaint further alleges that the effective date of the Redbox Merger was August 11, 2022, when the transaction closed.[140] Because that date was within two years of the petition date, the Plaintiff contends that his claim is

---

137 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition. . . .").

138 See Le Café Creme, Ltd. v. Le Roux (In re Le Café Creme, Ltd.), 244 B.R. 221, 233-34, 237–38 (Bankr. S.D.N.Y. 2000) (holding that, where a debtor signs an indivisible contract obligating it to make future payments, the relevant date for purposes of section 548(a) is the date the party transferred its interest in the property, in this case the date the contract was signed, not the date of the installment payments).

139 Adv. D.I. 1 ¶¶ 58-60.

140 Id. ¶ 45.

timely.[141]

The Plaintiff argues that the case on which the Defendants rely, Le Café Creme, has been widely criticized by other courts and should not be followed by this Court.[142] The Plaintiff further contends that the facts of that case are distinguishable because the Le Café Creme Court concluded that the installment payments were indivisible from the contract which was executed and became effective outside the period. The Plaintiff argues that the Releases in this case did not become effective under the express terms of section 2.1 of the Release Agreement until the consummation of the Merger.[143]

The Court agrees with the Plaintiff that the holding in Le Café Creme is factually distinguishable. In this case the Plaintiff alleges that the Releases did not become effective until the Merger was consummated. That is, the mere execution of the Merger Agreement did not create any obligation to release any claims until the closing, which occurred within the section 548 period.[144] Furthermore, the Court agrees with the analysis of the

---

141 11 U.S.C. § 548(a)(1).

142 Tronox, 429 B.R. at 101-02 ("Le Café Creme has not been followed in a number of jurisdictions, and numerous courts have explicitly disagreed with it.").

143 Adv. D.I. 1 ¶ 59 ("Mutual Releases and Waivers. Effective as of the consummation of the transactions contemplated by the Merger Agreement (the "Effective Time"). . . .").

144 Id.

numerous courts that have refused to follow the Le Café Creme decision and have held that section 548 allows the avoidance of both an obligation and a transfer separately, even if the transfer was required under the obligation.[145] Therefore, the Court concludes that the claim for avoidance of the Releases, which became effective within the two years prior to the petition date, is not time-barred under section 548(a).

3. Reasonably Equivalent Value

Finally, the Defendants argue that CSSE received reasonably equivalent value for the Releases. In support, the Defendants rely on the integrated transaction doctrine, originating in tax law, to contend that the value of the Releases cannot be considered separately from the overall value provided by the

[145] See, e.g., Belfance v. Buonpane (In re Omega Door Co., Inc.), 399 B.R. 295, 302–04 (B.A.P. 6th Cir. 2009) (concluding that although the obligation to make installment payments arose when the note was signed, the Bankruptcy Code allows the avoidance of any "transfer . . . or any obligation" which is broad enough to include payments which occurred after the execution of the note and within the time allowed by § 548); Shearer v. Tepsic (In re Emergency Monitoring Techs., Inc.), 366 B.R. 476, 503 (W.D. Pa. 2007) (rejecting the holding of Le Café Creme and concluding that both the execution of the security agreement and the attempted foreclosure on the alleged security interest were transfers of property of the debtor for purposes of § 547); Gold v. Winget (In re NM Holdings Co., LLC), 407 B.R. 232, 267-68 (Bankr. E.D. Mich. 2009) (disagreeing with Le Café Creme and concluding that "regardless of the divisible or non-divisible nature of the contract or whether it was executed outside of the limitations period, each payment made by the debtor under the contract was a separate 'transfer' for purposes of the fraudulent transfer statutes.").

Redbox Merger.[146] In essence, they contend that the Plaintiff cannot isolate the Releases from the Merger when alleging that CSSE did not receive reasonably equivalent value for the Releases nor can he avoid the Releases without avoiding the entire Redbox Merger.[147]

The Plaintiff asserts that the Defendants do not cite any authority suggesting that courts must apply the integrated transaction doctrine, or that a trustee cannot avoid a transfer simply because the agreement documenting the transfer was entered into concurrently with another transaction.

---

[146] See, e.g., Pereira v. WWRD US, LLC (In re Waterford Wedgwood USA, Inc.), 500 B.R. 371, 379-80 (Bankr. S.D.N.Y. 2013) (explaining that under the integrated transaction doctrine, interrelated steps in a transaction may be considered together (or collapsed) permitting the avoidance of numerous transfers embodied in leveraged buyouts, where distinguishing between the steps would deny the economic reality of the transaction); Coughlan v. NXP B.V., C.A. No. 5110-VCP, 2011 WL 5299491, at *7 (Del. Ch. Nov. 4, 2011) (in order to determine the substance of what truly occurred courts should treat "the 'steps' in a series of formally separate but related transactions involving the transfer of property as a single transaction if all the steps are substantially linked. Rather than viewing each step as an isolated incident, the steps are viewed together as components of an overall plan.") (citations omitted).

[147] Waterford, 500 B.R. at 382-83 (granting summary judgment for the defendant on the fraudulent transfer claim, finding that reasonably equivalent value was given for the collapsed transaction). See also The Liquidation Trust v. Daimler AG (In re Old CarCo LLC), 435 B.R. 169, 183, 187 (Bankr. S.D.N.Y. 2010) (deciding that integrated transactions may be collapsed and granting motion to dismiss fraudulent conveyance claim because it did not include the significant value received by the debtor in all of the parts of the integrated transaction); The Liquidation Trust of Hechinger Inv. Co. of Delaware, Inc. v. Fleet Retail Finance Grp. (In re Hechinger Inv. Co. of Delaware), 327 B.R. 537, 546–47 (D. Del. 2005) (collapsing multiple steps of a merger into one transaction in considering summary judgment motion on, inter alia, fraudulent transfer claims).

The Court cannot conclude at this stage that the integrated transaction doctrine mandates dismissal of the Eighth and Ninth Claims. A decision to collapse transactions into one integrated whole is a fact-intensive inquiry, not typically done at this stage of the proceedings.[148]

Furthermore, even if the integrated transaction doctrine is applicable, the Plaintiff alleges not only that CSSE received less than reasonably equivalent value for the Releases,[149] but he also alleges that the overall Redbox Merger did not provide reasonably equivalent value.[150] Because the Court must accept the Plaintiff's allegations as true at this stage,[151] the Court must deny the Motions to Dismiss the Eighth and Ninth Claims.

H. Recovery of Unlawful Dividend Payments

In the Tenth Claim of the Complaint, the Plaintiff seeks to recover from all Defendants, jointly and severally, the dividends

---

[148] See, e.g., Coughlan, 2011 WL 5299491, at *7-8 (describing the different analyses courts consider in determining whether to collapse a series of transactions into one). See also Waterford, 500 B.R. at 374 (granting summary judgment where the relevant facts were undisputed); Hechinger, 327 B.R. at 542-43, 546-47 (granting summary judgment after concluding there were no material issues of fact in dispute). But see Old CarCo, 435 B.R. at 183, 187 (considering transaction as a single integrated transaction when deciding motion to dismiss because the complaint alleged that it was).

[149] Adv. D.I. 1 ¶¶ 154, 161.

[150] Id. ¶ 88 ("Neither the Merger nor the Release Agreement was in the best interest of [CSSE]. . . . The Merger was disastrous for the Company, including for the easily foreseeable reason that the Company had no ability to support the massive liabilities that it assumed in connection with the Merger.").

[151] Iqbal, 556 U.S. at 678.

paid to preferred shareholders between 2020 and 2023, totaling $36.8 million, pursuant to the DGCL.[152] The Plaintiff also seeks to recover payments (totaling $55 million) which CSSE made to CSS under the MSA as unlawful dividends, in substance if not in name.[153]

The Defendants move to dismiss the Tenth Claim, in whole or in part, arguing that the fees paid under the MSA do not constitute dividends subject to the DGCL.[154] They further contend that the Plaintiff failed to plead an essential element of his claim: that CSSE lacked a surplus during the relevant period.[155] Finally, Defendant Edwards and the CSS Entities argue that they were never responsible for the issuance of dividends and, therefore, cannot be held liable for them as a matter of law.

---

[152] Del. Code Ann. tit. 8, §§ 170, 172–74.

[153] Adv. D.I. 1 ¶¶ 165–73.

[154] See, e.g., Quadrant Structured Prods. Co., Ltd. v. Vertin, 102 A.3d 155, 166, 200-02 (Del. Ch. 2014) (dismissing claim that the company's payment of excessive service and licensing fees to affiliate while insolvent constituted an illegal constructive dividend, holding that Delaware law did not recognize such a claim); Horbal v. Three Rivers Holdings, Inc., C.A. No. 1273–N, 2006 WL 668542, at *3-4 (Del. Ch. Mar. 10, 2006) (dismissing claim that payment of excessive salaries and bonuses were de facto dividends, finding it was really a breach of fiduciary duty claim without the requisite element of fraud). See also JPMorgan Chase Bank, N.A. v. Ballard, 213 A.3d 1211, 1247 (Del. Ch. 2019) (dismissing claim that transfers to insiders and affiliates of the defendant were unlawful constructive dividends, because they were limited to specific individuals rather than to all stockholders).

[155] Del. Code Ann. tit. 8, § 170(a) ("The directors of every corporation . . . may declare and pay dividends upon the shares of its capital stock . . . [o]ut of its surplus . . . .").

While there is scant argument from the parties regarding this latter point, the Court agrees with Edwards and the CSS Entities. Section 170 of the DGCL states that it is the directors of a corporation that have the authority to issue dividends,[156] and section 174 of the DGCL states, in part, that "[i]n case of any willful or negligent violation of . . . § 173 of this title [Declaration and payment of dividends], the directors under whose administration the same may happen shall be jointly and severally liable."[157] Elsewhere, the Delaware statute states that "[t]he board of directors of a corporation shall consist of 1 or more members, each of whom shall be a natural person."[158] The statute describes officers in another section,[159] and distinguishes them from directors.[160]

Therefore, it appears from the plain text of the DGCL that the Plaintiff can only seek to hold CSSE's Directors liable for any unlawful payment of dividends, but not its Officers or the CSS Entities, which are not natural persons. As a result, the Court will grant the Motions to Dismiss the Tenth Claim of the Complaint filed by Defendants Edwards, Meier, and the CSS

---

156 Id.

157 Id. § 174(a) (emphasis added).

158 Id. § 141(b).

159 Id. § 142.

160 Id. § 144 (addressing interestedness in directors and officers).

Entities.

With respect to the remaining Defendants' argument that payments made pursuant to the MSA are not dividends covered by the DGCL, the Plaintiff responds that substance should be elevated over form. He asserts that the MSA payments were made to, or for the benefit of, the Debtor's parent and are, in substance, dividends which are recoverable.[161]

The Court finds that the Plaintiff has stated a plausible claim that the MSA payments are in substance dividends which are recoverable under section 173 of the DGCL and relevant legal authority.[162]

---

[161] See, e.g., Official Comm. of Unsecured Creditors of Buckhead Am. Corp. v. Reliance Cap. Grp., Inc. (In re Buckhead Am. Corp.), 178 B.R. 956, 973–74 (D. Del. 1994) (declining to dismiss claim that payments made in connection with a leveraged buyout were substantively unlawful dividends); Crowthers McCall Pattern, Inc. v. Lewis, 129 B.R. 992, 1001 (S.D.N.Y. 1991) (refusing to dismiss claims that payments were unlawful dividends under the DGCL concluding that the court should not "concentrate on the form of the transaction rather than its substantive economic effect."). See also U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc., 892 F. Supp. 2d 805, 822 (N.D. Tex. 2012) (noting that "most courts have adopted an expansive view of what constitutes a dividend under the Delaware unlawful dividend statute."); The Responsible Person of Musicland Holding Corp. v. Best Buy Co., Inc. (In re Musicland Holding Corp.), 398 B.R. 761, 784 (Bankr. S.D.N.Y. 2008) (considering "the substance, not the form, of the transaction" and concluding that "the allegations are sufficient to state a claim that the Transfers were actually dividends" under the DGCL).

[162] Buckhead, 178 B.R. at 974 ("While the relevance and application of these and related authorities to the case at bar is unclear, it is apparent that disposition of this claim should await further briefing and further development of the factual record, particularly since the purposes underlying the statutory dividend payment and stock repurchase restrictions appear to be at stake here."); Crowthers, 129 B.R. at 1001 ("Here, too, at least at this stage of the proceedings, dismissal of the claim for unlawful dividends, stock purchases or

The Court also rejects the Defendants' argument that the Plaintiff failed to plead a lack of surplus or that each of the Independent Directors was willful or negligent in authorizing the Dividends or MSA payments particularly because they relied on financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP").[163]

The Court disagrees with the Defendants. The Plaintiff has adequately pled in the Complaint that CSSE was insolvent at the time the Preferred Dividends and MSA payments were made, and that the Director Defendants knew or should have known that this was the case.[164] Just as the Plaintiff is not required to plead

---

stock redemptions would be inappropriate. If the plaintiff's allegations are true, as must be assumed on these motions to dismiss, the economic substance of the transactions in question brings them within the purview of the relevant sections of the Delaware General Corporation Law."). See also Sheffield Steel Corp. v. HMK Enterprises, Inc. (In re Sheffield Steel Corp.), 320 B.R. 405, 416 (Bankr. N.D. Okla. 2004) ("A liberal reading of the Complaint, taken as a whole and in the light most favorable to Sheffield, allows the Court to reasonably infer that [defendants] knew or should have known that the negative financial position, as alleged by Sheffield, precluded the lawful payment of dividends" pursuant to the DGCL).

[163] See, e.g., In re Chemours Co. Deriv. Litig., C.A. No. 2020-0786-SG, 2021 WL 5050285, at *17 (Del. Ch. Nov. 1, 2021) (holding, inter alia, that complaint failed to state a claim that directors were willful or negligent in issuing dividends when they relied on GAAP accounting which showed a surplus). See also Klang v. Smith's Food & Drug Ctrs., Inc., C.A. No. 15012, 1997 WL 257463, at *4 (Del. Ch. May 13, 1997) (holding that directors were entitled to rely on the methods and results of a solvency opinion in approving a stock repurchase).

[164] Adv. D.I. 1 ¶¶ 31-57. See also IT Litig. Trust v. D'Aniello (In re IT Grp., Inc.), C.A. No. 04-1268-KAJ, 2005 WL 3050611, at *16 (D. Del. Nov. 15, 2005) (director defendants' motion to dismiss claim of unlawful payment of dividends denied where the plaintiff sufficiently alleged the company's insolvency and the defendants' knowledge

around the business judgment rule, he is not required to plead around GAAP accounting or any other method the Directors might assert they used to determine whether CSSE had a surplus.

Therefore, the Court will deny the Motions to Dismiss the Tenth Claim as to the remaining Defendants.

I. <u>Non-Payment of Employee Wages, Benefits, and Taxes</u>

The Eleventh Claim of the Complaint seeks to recover damages against all Defendants under the FLSA[165] for failing to pay wages to employees prior to commencing their chapter 11 cases, failing to cause CSSE to pay and provide medical benefits to its employees, and failing to pay approximately $15.5 million in accrued but unpaid withholding taxes during the nine months prior to the petition date.[166]

The Plaintiff states that following the filing of his Complaint, a purported class of CSSE's employees initiated a separate adversary proceeding based on the FLSA violations.[167] In light of this litigation, the Plaintiff has decided not to pursue the Eleventh Claim of the Complaint.[168] Therefore, the Court will

---

thereof).

165 29 U.S.C. § 201, <u>et seq</u>.

166 Adv. D.I. 1 ¶ 79.

167 <u>Skajem v. Chicken Soup for the Soul Ent.</u>, 24-ap-50128.

168 Adv. D.I. 52 at 42. The Plaintiff asserts, however, that the non-payment of employee wages, benefits, and taxes continues to form part of the factual basis for the breach of fiduciary duty and aiding and abetting breaches of fiduciary duty asserted in the First through

dismiss the Eleventh Claim.

J. Disallowance and/or Equitable Subordination of Claims

In the Twelfth and Thirteenth Claims, the Plaintiff seeks to disallow or equitably subordinate any claims filed by the Defendants, under sections 502(d) and 510(c) of the Bankruptcy Code.[169]

The Complaint alleges only that Rouhana and CSS have timely filed proofs of claim.[170] Some of the Defendants argue that the Twelfth and Thirteenth Claims must be dismissed as not applicable or as premature because none of the Defendants have allowed claims against the estate nor any liability for a fraudulent transfer or other claim asserted in the Complaint at this stage.[171]

While the Defendants' arguments have facial appeal, the Court notes that if the Plaintiff succeeds on his other claims,

Fifth Claims. Id.

[169] 11 U.S.C. § 502(d) ("the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under section . . . 544 [or] 548 . . . of this title."); id. § 510(c) (allowing a court "under principles of equitable subordination, [to] subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim").

[170] See Adv. D.I. 1 ¶¶ 82-83. The claims deadline expired on September 18, 2024. D.I. 158.

[171] Cf., In re Lids Corp., 260 B.R. 680, 684 (Bankr. D. Del. 2001) (granting creditor's request for payment of an administrative claim and overruling debtor's assertion that the claim must be disallowed because the debtor had filed a complaint, but had not obtained a judgment, against the claimant seeking avoidance of a preference).

he would have a basis to have claims of any of the Defendants disallowed and possibly subordinated. Further, because the basis for subordination or disallowance is premised on the same facts as the other claims, the Court concludes that it is appropriate to hear this claim at the same time it hears the others. The Court will therefore deny the Motions to Dismiss the Twelfth and Thirteenth Claims.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss the First through Fifth Claims, the Eighth and Ninth Claims, and the Twelfth and Thirteenth Claims will be denied. The Motions to Dismiss the Sixth, Seventh, and Eleventh Claims will be granted. The Motions to Dismiss the Tenth Claim will be granted as to the CSS Entities, Edwards, and Meier only and denied as to the remaining Defendants.

The Court will issue an Order consistent with this Opinion.

Dated: September 2, 2026

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge